**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **HOUSTON REAL ESTATE PROPERTIES,** | § | **CASE NO. 22-32998** |
| **LLC,** | § | **(Chapter 7)** |
| Debtor. | § | |
| | § | |
| **JOHN QUINLAN, OMAR KHAWAJA,** | § | |
| **AND OSAMA ABDULLATIF,** | § | |
| Movants, | § | **ADVERSARY NO. 23-03141** |
| | § | |
| **v.** | § | |
| | § | |
| **HOUSTON REAL ESTATE PROPERTIES,** | § | |
| **LLC, et al.,** | § | |
| Respondents. | § | |

---

**JOHN QUINLAN, OMAR KHAWAJA, and OSAMA ABDULLATIF'S**
**FIRST SUPPLEMENTAL COMPLAINT**

---

Movants, John Quinlan, Omar Khawaja, and Osama Abdullatif, file this First Supplemental Complaint against, Jetall Companies, Inc., Arabella PH 3201 LLC, 9201 Memorial Dr. LLC, 2727 Kirby 26L LLC, Texas REIT LLC, Dalio Holdings I, LLC, Dalio Holdings II, LLC, Houston Real Estate Properties, LLC *[Debtor]*, Shahnaz Choudhri, Ali Choudhri, Shepherd-Huldy Development I, LLC, Shepherd-Huldy Development II, LLC, and Galleria Loop Note Holder LLC, adding Cypress BridgCo, LLC, Magnolia BridgeCo, LLC, and A. Kelly Williams, and seeking injunctive relief.

### Additional Parties

1. Defendant, Cypress Bridgeco, LLC, is a domestic limited liability company, that may be served with process by serving its registered agent, Corporation Service Company d/b/a

CSC-Lawyers Incorporating Service Company, at its place of business, located at 211 E. 7th Street, Suite 620 Austin, Texas 78701, or wherever it is located.

2. Defendant, Magnolia Bridgeco, LLC, is a domestic limited liability company, that may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at its place of business, located at 211 E. 7th Street, Suite 620 Austin, Texas 78701, or wherever it is located.

3. Defendant, A. Kelly Williams, is an individual and may be served with service of process at 12140 Wickchester Ln., Suite 100, Houston, Texas 77079, or wherever he be found.

### Additional Facts

4. On August 19, 2022, a Harris County Jury awarded Abdullatif a multi-million-dollar judgment against Choudhri and HREP in Cause No. 2013-41273, *Osama Abdullatif and Abdullatif & Company, LLC v. Ali Choudhri and Houston Real Estate Properties, LLC*; filed in the 334th Judicial District Court of Harris County ("Lawsuit 1"). Choudhri and HREP spent the next 3 months trying to prevent the entry of the final judgment in that case, requesting continuances, swapping out counsel, and seeking removal to federal court.

5. These delay tactics were undertaken to frustrate the collection efforts of Abdulatiff, as well as his other judgment holders Quinlan and Khawaja. Despite the fact that Choudhri and HREP were faced with three substantial judgments, Choudhri, HREP, and the other Respondents, began encumbering assets (and specifically here real property) under their collective control with the following deeds of trust.[1]

---

[1] Please note that Movants do not believe these deeds of trust and alleged loans are legitimate.

2

a. **Respondent, Shepherd-Huldy Development I, LLC: 2503 S. Shepherd Dr., 2421 Shepherd Dr., 2502 Huldy St., and 2424 Huldy St.** On October 3, 2022, Respondents allegedly obtained a loan for $2,277,222.00 from Magnolia BridgeCo, LLC, a "mezzanine" or "hard money" lender pledging these properties as collateral;[2]

b. **Respondent, 9201 Memorial Dr. LLC: 9201 Memorial Drive.** On November 2, 2022, Respondents allegedly obtained another loan for $2,760,000.00 from Cypress BridgeCo, LLC, another "mezzanine" or "hard money" lender, pledging the previously unencumbered 9201 Memorial Dr. property as collateral;[3]

c. **Respondent, 2727 Kirby 26L LLC: 2727 Kirby 26L.** Also on November 2, 2022, Respondents allegedly obtained another loan for $2,079,000.00 from Cypress BridgeCo, LLC pledging the previously unencumbered 2727 Kirby 26L property as collateral.[4]

6. The encumbrance of these properties with promissory notes was undertaken for the purpose of allowing Respondents, through their numerous proxies and shills, to place assets beyond the reach of creditors. A fact which has only become more apparent since the discovery that these properties are now listed for foreclosure. *See* Exhibits 1-3.

7. A. Kelly Williams, who appeared at a previous hearing in this Court prepared to testify on behalf of some or all of the Respondents, is named in the Deeds of Trust for 2503 S. Shepherd Dr., 2421 Shepherd Dr., 2502 Huldy St., and 2424 Huldy St. collectively, 9201 Memorial Drive, and 2727 Kirby 26L. *See* Exhibits 1-3.

8. On August 14, 2023, Magnolia BridgCo, LLC, Cypress BridgeCo, LLC, and A Kelly Williams (the "BridgeCo Defendants"), recorded three Notices of Foreclosure Sale: one for 2503 S. Shepherd Dr., 2421 Shepherd Dr., 2502 Huldy St., and 2424 Huldy St. collectively, one

---

[2] Attached as Exhibit 1 is the Notice of Foreclosure Sale and Deed of Trust for Shepherd-Huldy Development I, LLC.
[3] Attached as Exhibit 2 is the Notice of Foreclosure Sale and Deed of Trust for 9201 Memorial Dr. LLC.
[4] Attached as Exhibit 3 is the Notice of Foreclosure Sale and Deed of Trust for 2727 Kirby 26L LLC.

for 9201 Memorial Drive, and one for 2727 Kirby 26L, in an obvious attempt to insulate these assets from collections.

### Causes of Action as to the Additional and New Parties

**Fraudulent Transfer.**

9.      The BridgeCo Defendants committed fraudulent transfers. Under the Texas Uniform Fraudulent Transfers Act, a judgment creditor may bring a claim for fraudulent transfer if debtor's conveyances were made with actual intent to hinder, delay, or defraud any creditor of the debtor; or without receiving a reasonably equivalent value in exchange for the transfer or obligation. TEX. BUS. & COM. CODE § 24.005. The BridgeCo Defendants' concealment and facilitation of certain transactions, only some of which are discussed herein, constitute fraudulent conveyances under TEX. BUS. & COM. CODE §§ 24.005 and 24.006.

10.      The BridgeCo Defendants' fraudulent conveyances of these properties are the latest in a long history of obfuscation of justice and attempts at evasion, as they seek to hinder, delay, and defraud Movants as judgment creditors. Further, Choudhri desires to devalue his personal assets and, upon information and belief, has not received a reasonably equivalent value in return for these transfers, to discourage his creditors from seizing assets. Pursuant to TEX. BUS. & COM. CODE § 24.008, Movants seek: [i] an avoidance of the transfer or obligation to the extent necessary to satisfy their claim; [ii] an injunction and injunctive relief against further disposition by the all Defendants, or a transferee, or both, of the asset transferred or of other property; [iii] their reasonable and necessary attorneys' fees and court costs; [iv] that a constructive trust be imposed for the assets fraudulently transferred; and [v] after obtaining a judgment against the BridgeCo Defendants for their violations, Movants ask that they be authorized to levy execution

on the assets found to have been fraudulently transferred or their proceeds as well as any other relief the circumstances may require.

**Joint Enterprise Liability.**

11.     On information and belief, the BridgeCo Defendants were engaged in a joint enterprise because they had an understanding or common purpose to be carried out by the enterprise, a community of pecuniary interest in that common purpose and an equal right to direct and control the enterprise. The BridgeCo Defendants also committed one or more torts against Movants while acting within the scope of the enterprise.  Movants have been damaged as a result.

**Injunctive Relief**

12.     Movants request an order restraining all Respondents, their agents, attorneys, trustees, servants, and employees from directly or indirectly devising/selling/foreclosing, attempting to devise/sell/foreclose, taking steps to perfect the devise/sale/foreclosure, and posting for devise/sale/foreclosure the aforementioned properties and specifically:

[1]  2503 S. Shepherd Dr.,
[2]  2421 Shepherd Dr.,
[3]  2502 Huldy St.,
[4]  2424 Huldy St.,
[5]  9201 Memorial Drive, and
[6]  2727 Kirby 26L.

These properties are currently posted for foreclosure sale to occur on Tuesday, September 5, 2023. Injunctive relief is proper and available under multiple legal authorities and specifically the Texas Uniform Fraudulent Transfer Act[5], general injunction statute,[6] as well as expressly in the Texas Property Code to enjoin the foreclosure of real property[7].

---

[5] TEX. BUS. COM. CODE §24.008(a)(3)(A)-(C).
[6] TEX. CIV. PRAC. REM. CODE §§ 65.011(1) and 65.011(5).
[7] TEX. PROP. CODE § 51.007(e).

13.     For the reasons set forth herein above, Movants have established a probable right to recovery against Respondents.  If this application is not granted, probable, imminent and irreparable harm will result, as a sale of the subject properties on Tuesday, September 5, 2023, that would permanently deprive Movants of the subject property and prevent their collection on the judgments included in Movants' Original Complaint.  Movants will also show that there is no remedy at law that is clear and adequate to protect its property interest against this wrongful foreclosure, and allowing the foreclosures to go forward would permit Respondents to continue engaging in the very fraudulent activities that Choudhri and Respondents have been caught by Courts engaging in time after time.  All of these facts make the potential loss of this subject property irreparable.  Additionally, injunctive relief is appropriate to preserve the status quo pending the outcome of this litigation.  This request for injunctive relief is so that justice may be done, not merely for delay.  Movants are willing to post a bond.  There is not enough time to serve notice on Defendants and to hold a hearing on this application, because the BridgeCo Defendants intend to proceed to foreclosure on Tuesday, September 5, 2023, and Monday is a holiday.

14.     Movants ask the Court to set its application for temporary injunction for a hearing and, after the hearing, issue a temporary injunction against all Respondents.  Movants further ask the Court to set its request for a permanent injunction for a full trial on the merits and, after the trial, issue a permanent injunction against all Respondents.

### Conclusion

Movants, John Quinlan, Omar Khawaja, and Osama Abdullatif, request that all Respondents, Jetall Companies, Inc., Arabella PH 3201 LLC, 9201 Memorial Dr. LLC, 2727 Kirby 26L LLC, Texas REIT LLC, Dalio Holdings I, LLC, Dalio Holdings II, LLC, Houston Real Estate Properties, LLC *[Debtor]*, Shahnaz Choudhri, Ali Choudhri, Shepherd-Huldy Development

I, LLC, Shepherd-Huldy Development II, LLC, Galleria Loop Note Holder LLC, Cypress BridgeCo, LLC, and Magnolia BridgeCo, LLC be cited to appear and answer, and that on final trial, Movants have the following relief against all Respondents, jointly and severally:

a) Judgment against all Respondents for actual, economic, and consequential damages in an amount within the jurisdictional limits of the court;

b) Exemplary damages;

c) Pre- and post-judgment interest on the damages awarded as provided by law;

d) Reasonable and necessary attorneys= fees for trial, and if necessary, appeal;

e) Costs of Court and Suit;

f) Avoidance of the transfers or obligations to the extent necessary to satisfy Movants' claims;

g) An injunction against further disposition by Respondents, or a transferee, or both, of the assets transferred or of other property;

h) A constructive trust be imposed for the assets fraudulently transferred;

i) After obtaining a judgment against Respondents for their violations, Movants ask that they be authorized to levy execution on the assets found to have been fraudulently transferred or their proceeds as well as any other relief the circumstances may require; and

j) All other relief, at law or in equity, to which Movants are or may be justly entitled.

DATED:       August 30, 2023

Respectfully submitted,

**HOOVER SLOVACEK LLP**

By: _____

T. Michael Ballases
State Bar No. 24036179
ballases@hooverslovacek.com
Steve A. Leyh
State Bar No. 12318300
leyh@hooverslovacek.com
Angeline V. Kell
State Bar No. 24040009
kell@hooverslovacek.com
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: (713) 977-8686
Facsimile: (713) 977-5395

**ATTORNEYS FOR MOVANTS, JOHN QUINLAN, OMAR KHAWAJA, AND OSAMA ABDULLATIF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of John Quinlan, Omar Khawaja, and Osama Abdullatif's Original Complaint was served electronically upon each of the parties listed on the Court's ECF Service List maintained in this case on August 30, 2023.

**23-03141 Notice will be electronically mailed to:**

Thomas Michael Ballases on behalf of Plaintiff John Quinlan
ballases@hooverslovacek.com

Thomas Michael Ballases on behalf of Plaintiff Omar Khawaja
ballases@hooverslovacek.com

Thomas Michael Ballases on behalf of Plaintiff Osama Abdullatif
ballases@hooverslovacek.com

Angeline Vachris Kell on behalf of Plaintiff John Quinlan

kell@hooverslovacek.com, avkell@gmail.com;doucet@hooverslovacek.com

Angeline Vachris Kell on behalf of Plaintiff Omar Khawaja
kell@hooverslovacek.com, avkell@gmail.com;doucet@hooverslovacek.com

Angeline Vachris Kell on behalf of Plaintiff Osama Abdullatif
kell@hooverslovacek.com, avkell@gmail.com;doucet@hooverslovacek.com

US Trustee
USTPRegion07.HU.ECF@USDOJ.GOV

Timothy L. Wentworth on behalf of Trustee Randy W Williams
twentworth@okinadams.com, bmoore@okinadams.com

Jana Smith Whitworth on behalf of U.S. Trustee US Trustee
jana.whitworth@usdoj.gov

Randy W Williams
rww@bymanlaw.com,
rw13@trustesolutions.com;rw13@trustesolutions.net;rw11@trustesolutions.net;rww.trustee1@gmail.com

**23-03141 Notice will be also be emailed to:**

| | | |
|---|---|---|
| Houston Real Estate Properties, LLC 2500 West Loop South, Suite 255 Houston, Texas 77027 ali@jetallcompanies.com | Ali Choudhri 2500 West Loop South, Suite 255 Houston, Texas 77027 ali@jetallcompanies.com | Shahnaz Choudhri 2500 West Loop South, Suite 255 Houston, Texas 77027 ali@jetallcompanies.com |
| Jeannie Lee Anderson Linebarger Goggan Blair & Sampson LLP P.O. Box 3064 Houston, Texas 77253-3064 Houston_bankruptcy@lgbs.com | Rodney Lee Drinnon McCathern Houston 2000 West Loop South, Suite 1850 Houston, Texas 77027 ndrinnon@mccathernlaw.com | Michael J. Durrschmidt Hirsch & Westheimer, P.C. 1415 Louisiana, 36th Floor Houston, Texas 77002 mdurrschmidt@hirschwest.com |
| Bennett Greg Fisher Lewis Brisbois Bisgaard & Smith 24 Greenway Plaza, Suite 1400 Houston, Texas 77046 Bennett.fisher@lewisbrisbois.com | Melissa S. Hayward Hayward PLLC 1050 N. Central Expwy, Suite 106 Dallas, Texas 75231 mhayward@haywardfirm.com | James Q. Pope The Pope Law Firm 6161 Savoy, Suite 1125 Houston, Texas 77036 ecf@thepopelawfirm.com |
| Melissa E. Valdez Perdue Brandon Felder Collins & Mott 1235 North Loop West, Suite 600 Houston, Texas 77008 mvaldez@pbfcm.com | Ruth A. Van Meter Hayward PLLC 10501 N. Central Expwy, Suite 106 Dallas, Texas 75231 rvanmeter@haywardfirm.com | Timothy L. Wentworth Okin Adams, LLP 1113 Vine St., Suite 240 Houston, Texas 77002 twentworth@okinadams.com |
| Jana Smith Whitworth Office of United States Trustee 515 Rusk Street, Suite 3516 Houston, Texas 77002 Jana.whitworth@usdoj.gov | Brandon L. Collins Substitute Trustee of Cypress Bridgeco LLC 12140 Wickchester Dr. Suite 111 Houston, Texas 77079 info@bridgecofinancial.com | Kelly Williams Cypress Bridgeco LLC 12140 Wickchester Dr. Suite 111 Houston, Texas 77079 Kelly.williams@bridgecofinancial.com |

9

Gary Lancaster
Lancaster Law Firm, PLLC
12140 Wickchester Dr. Suite 111
Houston, Texas 77079
glancaster@lancasterlawfirmpllc.com

Milestone Venture Group
3 Riverway
Houston, Texas 77056
Akw@milestoneVG.com

Jennifer MacGeorge
MacGorge Law Firm, PLLC
2921 E 17th Street Bldg D, Suite 6
Austin, Texas 78702
jmac@jlm-law.com



_____

T. Michael Ballases

10

## VERIFICATION OF OSAMA ABDULLATIF

THE STATE OF TEXAS      §
                        §
COUNTY OF HARRIS        §

BEFORE ME, the undersigned authority, on this day personally appeared Osama Abdullatif, who is the movant for the requested injunctive relief, in the above-entitled and numbered cause, who, being first duly sworn by me, says and deposes as follows, to-wit:

- My name is Osama Abdullatif. I am over the age of 18 years, of sound mind, competent to make this affidavit, and have personal knowledge of the facts herein as a result of my involvement in the underlying transactions that led to this lawsuit;

- I have read the foregoing document, and the facts stated therein are true and correct based upon my personal knowledge.

_____
Osama Abdullatif

SWORN TO AND SUBSCRIBED BEFORE ME on this the 30th day of August 2023.

P B MENDEZ
Notary ID #125173015
My Commission Expires
January 21, 2025

_____
Notary Public, State of Texas

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS     FRCL-2023-4998     FILED 8/14/2023 3:53:03 PM

# NOTICE OF FORECLOSURE SALE

ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE-DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.

RECITALS:

A. The undersigned is the current owner and holder of the Promissory Note described below.

B. The Promissory Note is secured by the Deed of Trust described below.

C. The Borrower named below is in default under the Promissory Note and the Deed of Trust and the default has not been cured after receiving notice of default and opportunity to cure.

D. The undersigned has accelerated the indebtedness evidenced by the Promissory Note.

NOTICE OF FORECLOSURE SALE:

Notice is given that the Property described below shall be sold at public auction on the date, at the time, and in accordance with the terms contained in this Notice of Foreclosure Sale and the applicable laws of the State of Texas.

1. **Date, Time, and Place of Sale:**

   **Date:** The sale shall be held on Tuesday, September 5, 2023.

   **Time:** The sale will begin at 10:00 AM and will be conducted within three hours thereafter.

   **Place:** In the area designated by the Commissioners Court of such County, pursuant to § 51.002 of the Texas Property Code as the place where foreclosure sales are to take place (if no such place is so designated, the sale will take place in the area where this Notice of Foreclosure Sale is posted).

2. **Terms of Sale:**

   Because of the default in performance of the obligations secured by the Deed of Trust, the Substitute Trustee will sell the property "As Is" by public auction to the highest bidder for cash.

3. **Instrument to be Foreclosed:**

   The security instrument to be foreclosed is the Deed of Trust dated October 3, 2022, by Shepherd-Huldy Development I, LLC as grantor(s), to Gary Lancaster, as Trustee, for the benefit

**Exhibit 1**

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2023-4998

FILED 8/14/2023 3:53:03 PM

of Magnolia Bridgeco, LLC as beneficiary, and recorded under **RP-2022-493731** in the official public records of Harris County, Texas.

**4.** **Name and Address of Substitute Trustee:**

The name of the Substitute Trustee is: Brandon L. Collins.

The address of the Substitute Trustee is: 12140 Wickchester Drive, Suite 111, Houston, Texas 77079.

**5.** **Obligations Secured:**

The indebtedness evidenced by the Promissory Note in the original principal amount of two million two hundred seventy-seven thousand two hundred twenty-two dollars ($2,277,222.00), including all accrued and unpaid interest and all other amounts payable by the debtor[s] as described in the promissory note, any other related documents and all modifications, renewals, and extensions thereof. Magnolia Bridgeco, LLC is the current lien holder of the Deed of Trust and the current owner and holder of the Promissory Note.

**6.** **Property to Be Sold:**

The property to be sold is described as follows:

See attached **Exhibit A** incorporated herein as if set forth at length.

**7.** **Additional Provisions:**

Default has occurred in the payment of the Promissory Note and in the performance of the obligations of the Deed of Trust. Because of that default, Magnolia Bridgeco, LLC, the owner and holder of the Promissory Note and Deed of Trust, has requested Substitute Trustee to sell the Property.

The Deed of Trust may encumber both real and personal property. Formal notice is given of Magnolia Bridgeco, LLC's election to proceed against and sell both the real property and any personal property described in the Deed of Trust in accordance with Magnolia Bridgeco, LLC's rights and remedies under the Deed of Trust and Section 9.604(a) of the Texas Business and Commerce Code.

Notice is given that on and at the Date, Time, and Place for the Foreclosure Sale described above, Substitute Trustee will sell the Property in accordance with the Terms of Sale described above, the Deed of Trust and applicable Texas law.

If Magnolia Bridgeco, LLC passes the Foreclosure Sale, notice of the date of any rescheduled foreclosure sale will be reposted and refiled in accordance with the posting and filing requirements of the Deed of Trust and the Texas Property Code.

The Foreclosure Sale will be made expressly subject to any title matters set forth in the Deed of Trust, but prospective bidders are reminded that by law the Foreclosure Sale will be made

2

**Exhibit 1**



FILED 8/14/2023 3:53:03 PM

FRCL-2023-4998

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

subject to all prior matters of record affecting the Property, if any, to the extent that they remain in force and effect and have not been released or subordinated to the Deed of Trust. For the avoidance of doubt, the Foreclosure Sale will not cover any part of the Property that has been released of public record by Magnolia Bridgeco, LLC from the security interest of the Deed of Trust. Prospective bidders are urged to examine the applicable property records to determine the nature and extent of such matters, if any.

Pursuant to Section 51.009 of the Texas Property Code, the Property will be sold "AS IS," without any expressed or implied warranties, except as to the warranties (if any) provided for under the Deed of Trust. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the Property.

Pursuant to Section 51.0075(a) of the Texas Property Code, Substitute Trustee reserves the right to set further reasonable conditions for conducting the Foreclosure Sale. Any such further conditions shall be announced before bidding is opened for the first sale of the day held by Substitute Trustee.

This Notice of Foreclosure Sale is executed this 14 day of August 2023.

LANCASTER LAW FIRM, PLLC

By: _____
Brandon L. Collins

12140 Wickchester Drive, Suite 111

Houston, Texas 77079

LENDER CONTACT:

Magnolia Bridgeco, LLC
info@bridgecofinancial.com

3



**Exhibit 1**

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2023-4998

FILED 8/14/2023 3:53:03 PM

## EXHIBIT A

### Legal Description of Real Property

**TRACT 1: 2503 S. Shepherd Dr., 2421 S. Shepherd Dr., 2502 Huldy St., 2424 Huldy St.**

A 0.558 ACRE (23,324 SQUARE FEET) TRACT OF LAND BEING ALL OF LOT FIVE (5), AND IN BLOCK ONE (1), OF THE MORGAN ADDITION, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 572, PAGE 282 OF THE DEED RECORDS OF HARRIS COUNTY, TEXAS, ALL OF LOTS E AND F OF 08498 ACRE BEING A PARTIAL REPLAT OF LOTS A, B, C, D SHEPHERD LAWN ADDITION AS RECORDED IN VOLUME 725, PAGE 688 OF HARRIS COUNTY DEED RECORDS, SAID 0.558 ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT A 5/8 INCH CAPPED IRON ROD SET AT THE NORTHWEST CORNER OF

RESTRICTED RESERVE "A" OF EXXON MOBIL NO. 67878 SHEPHERD AT WESTHEIMER AS RECORDED IN FILM CODE NO. 613002 OF HARRIS COUNTY MAP RECORDS, SAID POINT BEING IN THE EAST LINE OF SHEPHERD DRIVE (80 FT RIGHT-OF-WAY), AND MARKING THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 00 DEGREES 00 MINUTES AND 00 SECONDS WEST, A DISTANCE OF 88.63 FEET TO A 5/8 INCH IRON CAPPED ROD FOUND AND MARKING THE NORTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 90 DEGREES 00 MINUTES AND 00 SECONDS EAST, A DISTANCE OF 131.00 FEET TO A 5/8 INCH IRON ROD SET IN THE WEST LINE OF LOT 4, BLOCK ONE (1) OF THE MORGAN ADDITION;

THENCE NORTH 00 DEGREES 00 MINUTES AND 00 SECONDS EAST, A DISTANCE OF 1.3 FEET TO A POINT FROM WHICH A FOUND FENCE POST BEARS NORTH 77 DEGREES 27 MINUTES EAST, 1.44 FEET FOR THE COMMON CORNER OF SAID LOTS 4 AND 5; THENCE NORTH 90 DEGREES 00 MINUTES AND 00 SECONDS EAST, ALONG THE COMMON LINE OF SAID LOTS 4 AND 5, A DISTANCE OF 126.26 FEET TO A 5/8 INCH CAPPED IRON ROD SET AND MARKING THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT; THENCE SOUTH 00 DEGREES 00 MINUTES AND 00 SECONDS EAST, A DISTANCE OF 100.00 FEET TO A 5/8 INCH CAPPED IRON ROD SET AND MARKING THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED TRACT; THENCE SOUTH 90 DEGREES 00 MINUTES AND 00 SECONDS WEST, A DISTANCE OF 126.26 FEET TO A POINT FROM WHICH A FOUND FENCE POST BEARS NORTH 88 DEGREES 08 MINUTES WEST, 1.70 FEET;

THENCE NORTH 00 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 13.00 FEET TO A 5/8 INCH CAPPED IRON ROD FOR AN ELL CORNER;

THENCE SOUTH 90 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 131.99 TO THE POINT OF BEGINNING AND CONTAINING 0.558 ACRES OF LAND, MORE OR LESS.

**Exhibit 1**



I, Teneshia Hudspeth, County Clerk of Harris County, Texas certify that these pages are a true and correct copy of the original record filed and recorded in my office, electronically or hard copy, as it appears on this date.

Witness my official hand and seal of office
This August 30, 2023

Teneshia Hudspeth, County Clerk
Harris County, Texas

Confidential information may have been redacted from the document in compliance with the Public Information Act.



**Exhibit 1**

RP-2022-493731
10/04/2022 ER $126.00

Page 1 of 29    Wednesday, August 30, 2023    County Clerk Harris County, Texas

FAH22012667

----------------------------[Space Above This Line For Recording Data]----------------------------

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

After recording return to:

Magnolia BridgeCo, LLC
A. Kelly Williams, Executive Vice President
12140 Wickchester Lane, Suite 100
Houston, Texas 77079
Tel: 713-600-2687
kelly.williams@bridgecofinancial.com

Prepared by:

Lancaster Law Firm PLLC
12140 Wickchester Lane, Suite 111
Houston, Texas 77079
Telephone: (832) 594-3825
glancaster@lancasterlawfirmpllc.com

## MORTGAGE, DEED OF TRUST, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES

THIS MORTGAGE, DEED OF TRUST, SECURITY AGREEMENT, and ASSIGNMENT OF LEASES (this **"Mortgage"**) is made as of October 3, 2022, by SHEPHERD-HULDY DEVELOPMENT I, LLC, a Texas limited liability company (**"Mortgagor"**), having its principal place of business at 700 Lavaca Street, Suite 1401, Austin, Texas 78701 to GARY LANCASTER (**"Trustee"**), the trustee hereunder to the extent that this Mortgage operates as a deed of trust, and to and for the benefit of MAGNOLIA BRIDGECO, LLC, a Texas limited liability company (**"Mortgagee"**), having its principal place of business at 12140 Wickchester Lane, Suite 100, Houston, Texas 77079, which is the mortgagee hereunder to the extent that this Mortgage operates as a mortgage, the grantee hereunder to the extent that this Mortgage operates as a deed to secure debt, and the beneficiary hereunder to the extent that this Mortgage operates as a deed of trust.

To secure (i) the payment of an indebtedness in the original principal sum in the amount referenced in the that certain note, to be paid with interest as described therein (**"Note"**) dated the date hereof made by Mortgagor to Mortgagee, and all other sums, liabilities and obligations constituting the Debt (as defined in the Note), and (ii) the performance of the obligations and covenants herein contained, Mortgagor by these presents does hereby mortgage, give, grant, bargain, sell, alien, convey, confirm, warrant, pledge, assign and hypothecate unto Mortgagee and/or Trustee the following property, rights and estates (**"Mortgaged Property"**): (a) the real property described in Exhibit A attached hereto (the **"Premises"**) and the buildings, structures, fixtures and improvements now or hereafter located thereon

**Exhibit 1**



("**Improvements**"); (b) all right, title, interest and estate of Mortgagor now owned, or hereafter acquired, in and to all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, utility rights, air rights and development rights, and all estates, rights, titles, interests, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements; (c) all machinery, furnishings, equipment, fixtures (including, but not limited to, all heating, air conditioning, plumbing, lighting, communications, elevator, and other fixtures) and other property of every kind and nature (hereinafter collectively called the "**Equipment**") owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, including all building equipment, materials and supplies and the proceeds of any sale or transfer of the foregoing; (d) all awards or payments, including interest thereon, which may be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and Improvements; (e) all leases, subleases and other agreements affecting the use, enjoyment or occupancy of the Premises and the Improvements heretofore or hereafter entered into ("**Leases**") and all income, rents, issues, profits and revenues (including all oil and gas or other mineral royalties and bonuses) from the Premises and the Improvements ("**Rents**") and all proceeds from the sale or other disposition of the Leases; (f) all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property; (g) all accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code (as hereinafter defined, and all contract rights, franchises, books, records, plans, specifications, permits, licenses (to the extent assignable), approvals, actions, and causes of action which now or hereafter relate to, are derived from or are used in connection with the Premises, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively called the "**Intangibles**"); and (h) any and all proceeds and products of any of the foregoing and any and all other security and collateral of any nature whatsoever, now or hereafter given for the repayment of the Debt and the performance of Mortgagor's obligations under the Loan Documents.

      **TO HAVE AND TO HOLD** the Mortgaged Property unto and to the use and benefit of Mortgagee and/or Trustee, and their successors and assigns, forever; PROVIDED, HOWEVER, these presents are upon the express condition that, if Mortgagor shall pay to Mortgagee the Debt at the time and in the manner provided in the Note and this Mortgage and shall abide by and comply with each and every covenant and condition set forth herein, in the Note and in the other Loan Documents in a timely manner, these presents and the estate hereby granted shall cease, terminate and be void.

      Mortgagor represents and warrants to and covenants and agrees with Mortgagee as follows:

      1.      **Warranty of Title**. Mortgagor warrants that (i) Mortgagor is (a) the sole owner of and has good, legal, marketable and insurable fee simple title to the Mortgaged Property, (b) possesses an unencumbered fee estate in the Premises and the Improvements, and (c) owns the Mortgaged Property free and clear of all liens, encumbrances and charges whatsoever, except for those exceptions shown in the title insurance policy insuring the lien of this Mortgage ("**Permitted Exceptions**") and (ii) this Mortgage is and will remain a valid and enforceable first lien on and security interest in the Mortgaged Property, subject only to said Permitted Exceptions. Mortgagor shall forever warrant, defend, and preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Mortgagee and/or Trustee against the claims of all persons whomsoever.

      2.      **Taxes**. Mortgagor, at its sole cost and expense, will pay and discharge, or cause to be paid and discharged, the Taxes, as hereafter defined, not later than the earlier to occur of (i) the due date thereof, (ii) the day any fine, penalty, interest or cost may be added thereto or imposed, or (iii) the day any lien may be filed for the nonpayment thereof (if such day is used to determine the due date of the respective item)

RP-2022-493731

**Exhibit 1**



Page 3 of 29   Wednesday, August 30, 2023   County Clerk Harris County, Texas

RP-2022-493731

and Grantor shall deliver to Mortgagee a written report evidencing the payment of the respective Taxes. For purposes hereof, the term "**Taxes**" shall mean all real estate and personal property taxes, charges, assessments, standby fees, excises and levies and any interest, costs or penalties with respect thereto, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever which at any time prior to or after the execution hereof may be assessed, levied or imposed upon the Mortgaged Property or the ownership, use, occupancy, or enjoyment thereof, or any portion thereof.

3.       **Insurance**. (a) Mortgagor, at its sole cost and expense, will keep the Mortgaged Property insured during the entire term of this Mortgage for the mutual benefit of Mortgagor and Mortgagee against loss or damage by fire and against loss or damage by other risks and hazards covered by a standard extended coverage insurance policy and included within the classification "All Risks of Physical Loss". Such insurance shall be (i) in an amount equal to the lesser of the then full replacement cost of the Improvements and Equipment, without deduction for physical depreciation, or the outstanding amount of the Debt, and (ii) with extended coverage in amounts sufficient such that the insurer would not deem Mortgagor a co-insurer under said policies. The policies of insurance carried in accordance with this paragraph shall be paid annually in advance and shall contain the "Replacement Cost Endorsement" with a waiver of depreciation.

(b)       Mortgagor, at its sole cost and expense, for the mutual benefit of Mortgagor and Mortgagee, shall also obtain and maintain during the entire term of this Mortgage the following policies of insurance:

(i)       Flood insurance if any part of the Mortgaged Property now (or subsequently determined to be) is located in an area identified as being on land other than a 500 year flood plain or as otherwise identified by the Federal Emergency Management Agency as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (and any amendment or successor act thereto) in an amount at least equal to the lesser of the full replacement cost of the Improvements and the Equipment, the outstanding principal amount of the Note or the maximum limit of coverage available with respect to the Improvements and Equipment under said Act. Mortgagor hereby agrees to pay Mortgagee such fees as may be permitted under applicable law for the costs incurred by Mortgagee in determining, from time to time, whether the Mortgaged Property is then located within such area.

(ii)       Comprehensive General Liability insurance, including broad form property damage, blanket contractual and personal injuries (including death resulting therefrom) coverages and containing minimum limits per occurrence of $3 million for the Improvements and the Premises with excess umbrella coverage in an amount of at least $1 million arising out of any one occurrence.

(iii)       Rental loss insurance in an amount equal to the aggregate annual amount of all Rents payable under the Leases, such rental loss insurance to cover rental losses for a period of at least one year after the date of the fire or casualty in question. The amount of such rental loss insurance shall be reviewed annually and shall be increased from time to time during the term of this Mortgage to reflect all increased Rent payable under all Leases.

(iv)       Insurance against loss or damage from (1) leakage of sprinkler systems, and (2) explosion of steam boilers, air conditioning equipment, high pressure piping, machinery and equipment, pressure vessels or similar apparatus now or hereafter installed in the Improvements and including broad form boiler and machinery insurance (without exclusion for explosion) covering all boilers or other pressure vessels, machinery and equipment (including all electrical equipment, sprinkler systems, heating and air conditioning equipment, refrigeration equipment and piping) located in, on, or about the Premises and the Improvements, in an amount at least equal to the full replacement cost of such equipment and the building or buildings housing same.

**Exhibit 1**



(v)     If the Mortgaged Property includes commercial property, worker's compensation insurance with respect to any employees of Mortgagor, as required by any governmental authority or legal requirement.

(vi)     Such other insurance as may from time to time be reasonably required by Mortgagee in order to protect its interests, including, but not limited to, environmental insurance.

(c)     All policies of insurance (**"Policies"**) required pursuant to Section 3: (i) shall contain a standard noncontributory mortgagee clause naming Mortgagee as the person to which all payments made by such insurance company shall be paid, (ii) shall be assigned and delivered to Mortgagee, (iii) shall contain endorsements providing that neither Mortgagor, Mortgagee nor any other party shall be a co-insurer under said Policies, (iv) Mortgagee shall receive at least thirty (30) days' prior written notice of any modification, reduction or cancellation, (v) shall be for a term of not less than one year, (vi) shall be satisfactory in form and substance to Mortgagee, (vii) shall be approved by Mortgagee as to amounts, form, risk coverage, deductibles, loss payees and insureds, and (viii) shall provide that all claims shall be allowable on events as they occur. Upon demand therefore, Mortgagor shall reimburse Mortgagee for all of Mortgagee's (or its servicer's) reasonable costs and expenses incurred in obtaining any or all of the Policies or otherwise causing the compliance with the terms and provisions of this Section 3, including (without limitation) obtaining updated flood hazard certificates and replacement of any so-called "forced placed" insurance coverages. All Policies required pursuant to subsections 3(a) and 3(b) shall be issued by an insurer and licensed in the state in which the Mortgaged Property is located with a claims paying ability rating of "A-" or better by Standard & Poor's Corporation or A: VIII or better by A.M. Best as published in Best's Key Rating Guide. Mortgagor shall pay the premiums for such Policies (**"Insurance Premiums"**) as the same become due and payable (unless such Insurance Premiums have been paid by Mortgagee pursuant to Section 5 hereof). Not later than **fifteen (15)** days prior to the expiration date of each of the Policies, Mortgagor will deliver to Mortgagee satisfactory evidence of the renewal of each Policy.

(d)     If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty, Mortgagor shall give prompt notice thereof to Mortgagee and the following shall apply:

(i)     In case of loss covered by Policies (an **"Insured Casualty"**), Mortgagee may either (1) settle and adjust any claim without the consent of Mortgagor, or (2) allow Mortgagor to agree with the insurance company on the amount to be paid upon the loss; provided that in any case Mortgagee shall and is hereby authorized to collect and receipt for any such insurance proceeds.

(ii)     In the event of any Insured Casualty, the net proceeds of insurance collected shall, at the option of Mortgagee in its sole discretion, be applied to the payment of the Debt or applied to reimburse Mortgagor for the cost of restoring, repairing, replacing, or rebuilding the Mortgaged Property or part thereof subject to the Insured Casualty, in the manner set forth below. Any such application to the Debt shall not reduce or postpone any payments otherwise required pursuant to the Note, other than the amount of the final payment on the Note.

(iii)     In the event that proceeds of insurance, if any, shall be made available to Mortgagor for the restoring, repairing, replacing, or rebuilding of the Mortgaged Property, Mortgagor hereby covenants to restore, repair, replace or rebuild the same to be of at least equal value and of substantially the same character as prior to such damage or destruction, all to be effected in accordance with applicable law and plans and specifications approved in advance by Mortgagee.

(iv)     In the event Mortgagor is entitled to reimbursement out of insurance proceeds held by Mortgagee, such proceeds shall be disbursed from time to time upon Mortgagee being furnished with (1) evidence satisfactory to it that the restoration, repair, replacement and rebuilding covered by the disbursement has been completed in accordance with plans and specifications approved by Mortgagee, (2) evidence satisfactory to it of the estimated cost of completion of the restoration,

4



**Exhibit 1**

repair, replacement and rebuilding, (3) funds, or, at Mortgagee's option, assurances satisfactory to Mortgagee that such funds are available, sufficient in addition to the net proceeds of insurance to complete the proposed restoration, repair, replacement and rebuilding, and (4) such architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of cost, payment and performance as Mortgagee may reasonably require and approve. With respect to disbursements to be made by Mortgagee: (A) no payment made prior to the final completion of the restoration, repair, replacement and rebuilding shall exceed eighty percent (80%) of the value of the work performed from time to time; (B) funds other than proceeds of insurance shall be disbursed prior to disbursement of such proceeds; and (C) at all times, the undisbursed balance of such proceeds remaining in the hands of Mortgagee, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Mortgagee by or on behalf of Mortgagor for that purpose, shall be at least sufficient in the reasonable judgment of Mortgagee to pay for the cost of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien and the costs described in subsection 3(d)(v) below. Any surplus which may remain out of insurance proceeds held by Mortgagee after payment of such costs of restoration, repair, replacement, or rebuilding shall be paid to any party entitled thereto.

(v)      Notwithstanding anything to the contrary contained herein, the proceeds of insurance reimbursed to Mortgagor in accordance with the terms and provisions of this Mortgage shall be reduced by the reasonable costs (if any) incurred by Mortgagee in the adjustment and collection thereof and in the reasonable costs incurred by Mortgagee of paying out such proceeds (including, without limitation, reasonable attorneys' fees and costs paid to third parties for inspecting the restoration, repair, replacement and rebuilding and reviewing the plans and specifications therefore).

4.      **Payment of Other Charges**. Mortgagor shall pay all assessments, water rates and sewer rents, ground rents, maintenance charges, other governmental impositions, and other charges, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (**"Other Charges"**) as the same become due and payable. Mortgagor will deliver to Mortgagee evidence satisfactory to Mortgagee that the Other Charges have been so paid or are not then delinquent no later than thirty (30) days following the date on which the Other Charges would otherwise be delinquent if not paid. Mortgagor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Mortgaged Property and shall promptly pay for all utility services provided to the Mortgaged Property.

5.      **Tax and Insurance Escrow Fund**. If initially required prior to the effective date of this Deed of Trust by mutual agreement of Mortgagor and Mortgagee, Mortgagor shall make an initial deposit to the Tax and Insurance Escrow Fund, as hereinafter defined, of an amount which, when added to the monthly amounts to be deposited as specified below, will be sufficient in the estimation of Mortgagee to satisfy the next due taxes, assessments, insurance premiums and other similar charges. Mortgagor shall pay to Mortgagee on the first day of each calendar month (a) one-twelfth of an amount which would be sufficient to pay all Taxes payable or estimated by Mortgagee to be payable, during the next ensuing twelve (12) months, and (b) one-twelfth of an amount which would be sufficient to pay the Insurance Premiums due for the renewal of the coverage afforded by the Policies upon the expiration thereof (said initial deposit and the amounts in [a] and [b] above are hereinafter called the **"Tax and Insurance Escrow Fund"**). Mortgagee may, in its sole discretion, retain a third-party tax consultant to obtain tax certificates or other evidence or estimates of tax due or to become due or to verify the payment of taxes and Mortgagor will promptly reimburse Mortgagee for the reasonable cost of retaining any such third parties or obtaining such certificates. Mortgagor hereby pledges (and grants a lien and security interest) to Mortgagee any and all monies now or hereafter deposited in the Tax and Insurance Escrow Fund as additional security for the payment of the Debt. Mortgagee will apply the Tax and Insurance Escrow Fund to payments of Taxes and Insurance Premiums required to be made by Mortgagor pursuant to Sections 2 and 3 hereof. If the amount

5

RP-2022-493731

**Exhibit 1**

RP-2022-493731

of the Tax and Insurance Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to Sections 2 and 3 hereof, Mortgagee shall, in its discretion, return any excess to Mortgagor or credit such excess against future payments to be made to the Tax and Insurance Escrow Fund. If the Tax and Insurance Escrow Fund is not sufficient to pay the Taxes and Insurance Premiums due from time to time hereunder, Mortgagor shall promptly pay to Mortgagee, upon demand, an amount which Mortgagee shall estimate as sufficient to make up the deficiency. Upon the occurrence of an Event of Default, Mortgagee shall be entitled to exercise both the rights of setoff and banker's lien, if applicable, against the interest of Mortgagor in the Tax and Insurance Escrow Fund to the full extent of the outstanding balance of the Debt, application of any such sums to the Debt to be in any order in its sole discretion. The Tax and Insurance Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Mortgagee or its servicer. Unless otherwise required by applicable law, no earnings or interest on the Tax and Insurance Escrow Fund shall be payable to Mortgagor even if the Mortgagee or its servicer is paid a fee and/or receives interest or other income in connection with the deposit or placement of such fund (in which event such income shall be reported under Mortgagee's or its servicer's tax identification number, as applicable). Upon payment of the Debt and performance by Mortgagor of all its obligations under this Mortgage and the other Loan Documents, any amounts remaining in the Tax and Insurance Escrow Fund shall be refunded to Mortgagor.

6.        **Future Advance Escrow Fund.** If initially required prior to the effective date of this Deed of Trust by mutual agreement of Mortgagor and Mortgagee for anticipated or projected investments with respect to Other Property (as defined below) or the Mortgaged Property, Mortgagor shall pay to Mortgagee the agreed sum at Closing for Other Property and on the first day of each calendar month one-twelfth of the amount reasonably estimated by Mortgagee to be due for replacements, capital repairs, and other sums required to be made to the Mortgaged Property during each calendar year (all such monies being collectively referred to as the **"Future Advance Escrow Fund"**). Mortgagor hereby grants a lien and security interest in any Other Property and pledges to Mortgagee any and all monies now or hereafter deposited in the Future Advance Fund as additional security for the payment of the Debt. Mortgagee may, upon notice to Mortgagor, adjust the monthly amounts required to be deposited into the Future Advance Fund to a monthly amount equal to one-twelfth of the total amount estimated by Mortgagee to be required. So long as no Event of Default exists and is continuing, Mortgagee shall make disbursements from the Future Advance Fund for items specified in each approved Budget on a quarterly basis in increments of no less than $10,000.00 upon delivery by Mortgagor of Mortgagee's standard form of draw request accompanied by copies of paid invoices for the amounts requested and, if required by Mortgagee, lien waivers and releases from all parties furnishing materials and/or services in connection with the requested payment, delivery of such certificates and certifications as Mortgagee may require, including but not limited to a new certificate of occupancy for the portion of the Improvements covered by such repairs, if a new certificate of occupancy is required by applicable law, or a certification by Mortgagor that no new certificate of occupancy is required. Mortgagee may require an inspection of the Mortgaged Property in order to establish the amount required for deposit in the Future Advance Funds and/or prior to making a quarterly disbursement in order to verify completion of replacements and repairs. Mortgagee reserves the right to make any disbursement from the Future Advance Fund directly to the party furnishing materials and/or services. In the event that the amounts on deposit or available in the Future Advance Fund are inadequate to pay the costs of such repairs or capital expenditure, Mortgagor shall pay the amount of such deficiency. Upon the occurrence of an Event of Default, Mortgagee may apply any sums then present in the Future Advance Fund to the payment of the Debt in any order in its sole discretion. Upon payment of the Debt and performance by Mortgagor of all its obligations under this Mortgage and the other Loan Documents, any amounts remaining in the Future Advance Fund shall be refunded to Mortgagor. The Future Advance Fund shall not constitute a trust fund and may be commingled with other monies held by Mortgagee or its servicer. Unless otherwise required by applicable law, no earnings or interest on the Future Advance Fund shall be payable to Mortgagor even if the Mortgagee or its servicer is paid a fee and/or receives interest or other income in connection with the deposit or placement of such fund (in which event such income shall be reported under Mortgagee's or its servicer's tax identification number, as applicable). For all purposes of this Paragraph 6, the term **"Other Property"** means real property other than the Mortgaged Property originally subject to this Mortgage

6

Exhibit 1



purchased, in whole or in part, with monies from the Future Advance Fund that hereafter becomes subject to the Mortgage.

7. **Condemnation**. Mortgagor shall promptly give Mortgagee written notice of the actual or threatened commencement of any condemnation or eminent domain proceeding and shall deliver to Mortgagee copies of any and all papers served in connection with such proceedings. Mortgagee is hereby irrevocably appointed as Mortgagor's attorney-in-fact, coupled with an interest, with exclusive power to collect, receive and retain any award or payment for said condemnation or eminent domain and to make any compromise or settlement in connection with such proceeding, subject to the provisions of this Mortgage. Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Mortgagor shall continue to pay the Debt at the time and in the manner provided for its payment in the Note, in this Mortgage and the other Loan Documents and the Debt shall not be reduced until any award or payment therefore shall have been actually received after expenses of collection and applied by Mortgagee to the discharge of the Debt. Mortgagor shall cause the award or payment made in any condemnation or eminent domain proceeding, which is payable to Mortgagor, to be paid directly to Mortgagee. Mortgagee may apply any such award or payment to the reduction or discharge of the Debt whether or not then due and payable.

8. **Representations Concerning Loan**. Mortgagor represents, warrants and covenants as follows:

(a)     Neither Mortgagor nor any guarantor of the Debt or any part thereof (a **"Guarantor"**) has any defense to the payment in full of the Debt that arises from applicable Federal, state, or local laws, regulations, or other requirements.

(b)     None of the Loan Documents are subject to any right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, nor will the operation of any of the terms of any such Loan Documents, or the exercise of any right thereunder, render any Loan Documents unenforceable, in whole or in part, or subject to any right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, and no such right of rescission, set-off, abatement, diminution, counterclaim or defense has been, or will be, asserted with respect thereto.

(c)     All certifications, permits and approvals, including, without limitation, certificates of completion and occupancy permits required for the legal use and occupancy of the Mortgaged Property, have been obtained and are in full force and effect.

(d)     The Mortgaged Property is in good repair, good order and good condition, free and clear of any damage that would affect materially and adversely the value of the Mortgaged Property as security for the Debt, and the Mortgaged Property has not been materially damaged by fire, wind or other casualty or physical condition that has not been fully repaired. There are no proceedings pending or threatened for the partial or total condemnation of the Mortgaged Property.

(e)     All of the Improvements which were included in determining the appraised value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of the Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property, and no easements or other encumbrances upon the Premises encroach upon any of the Improvements, so as to affect the value or marketability of the Mortgaged Property except for immaterial encroachments which do not adversely affect the security intended to be provided by this Mortgage or the use, enjoyment, value or marketability of the Mortgaged Property. All of the Improvements comply with all material requirements of any applicable zoning and subdivision laws and ordinances.

(f)     The Mortgaged Property is not subject to any leases or operating agreements other than the

7

RP-2022-493731

 

Page 8 of 29 Wednesday, August 30, 2023 County Clerk Harris County, Texas

RP-2022-493731

Leases and the operating agreements, if any, described in the rent roll delivered to Mortgagee in connection with this Mortgage, and all such Leases and agreements are in full force and effect. No person has any possessory interest in the Mortgaged Property or right to occupy the same, except under and pursuant to the provisions of the Leases and any such operating agreements.

(g)     All financial data, including, without limitation, statements of cash flow and income and operating expenses, delivered to Mortgagee by, or on behalf of Mortgagor are (i) true and correct in all material respects; (ii) accurately represent the financial condition of Mortgagor or the Mortgaged Property as of the date thereof in all material respects; and (iii) have been prepared in accordance with generally accepted accounting principles consistently applied throughout the periods covered.

(h)     To the best of Mortgagor's knowledge, the survey of the Mortgaged Property delivered to Mortgagee in connection with this Mortgage does not fail to reflect any material matter affecting the Mortgaged Property or the title thereto.

(i)     The Mortgaged Property (A) is served by public utilities and services in the surrounding community (including public water and sewer systems, police and fire protection, public transportation, refuse removal, public education, and enforcement of safety codes), (B) abuts upon a dedicated, all-weather road, or is served and benefitted by an irrevocable easement permitting ingress and egress, and (C) has parking and other amenities necessary for the operation of the business currently conducted thereon, which public utilities and services, ingress and egress and parking and other amenities are adequate in relation to the premises and location on which the Mortgaged Property is located.

(j)     The Mortgaged Property is a separate tax parcel, and there are no delinquent Taxes or other outstanding charges adversely affecting the Mortgaged Property.

(k)     The Mortgaged Property is not relied upon by, and does not rely upon, any building or improvement not part of the Mortgaged Property to fulfill any zoning, building code or other governmental or municipal requirement for structural support or the furnishing of any essential building systems or utilities, except to the extent of any valid and existing reciprocal easement agreements shown in the title insurance policy insuring the lien of this Mortgage that are Permitted Exceptions.

(l)     No action, omission, misrepresentation, negligence, fraud, or similar occurrence has taken place on the part of any person that would reasonably be expected to result in the failure or impairment of full and timely coverage under any insurance policies providing coverage for the Mortgaged Property.

(m)     There are no defaults by Mortgagor beyond any applicable grace period under any contract or agreement that binds Mortgagor and/or the Mortgaged Property, including any management, service, supply, security, maintenance or similar contracts; and Mortgagor has no knowledge of any such default for which notice has not yet been given; and no such agreement is in effect with respect to the Mortgaged Property that is not capable of being terminated by Mortgagor on less than thirty (30) days' notice, except as previously disclosed to Mortgagee by a delivery of a copy of all such agreements.

9.     **Representations Concerning Mortgagor**. Mortgagor represents, warrants and covenants that Mortgagor (i) will not enter into any contract or agreement with any Guarantor or any party which is directly or indirectly controlling, controlled by or under common control with Mortgagor or Guarantor (an "**Affiliate**"), except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any Guarantor or Affiliate; (ii) has not incurred and will not incur any indebtedness, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation), other than (a) the Debt, and (b) trade and operational debt incurred in the ordinary course of business with trade creditors and in amounts as are normal and reasonable under the circumstances and no indebtedness other than the Debt may be secured (subordinate or *pari passu*) by the Mortgaged Property; (iii) has not made and will not make any loans or advances to

8

<u>**Exhibit 1**</u>

any third party, nor to Guarantor, any Affiliate or any constituent party of Mortgagor; (iv) is and will remain solvent and will pay its debts from its assets as the same shall become due; (v) has done or caused to be done and will do all things necessary, to preserve its existence; (vi) will maintain books and records and bank accounts for the Mortgaged Property separate from those of its Affiliates and any constituent party of Mortgagor, and will file its own tax returns; (vii) will preserve and keep in full force and effect its existence, good standing and qualification to do business in the state in which the Mortgaged Property is located; (viii) will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations; (ix) will not commingle the funds and other assets of the Mortgaged Property with other funds or assets of Mortgagor or those of any Affiliate, any Guarantor, any constituent party of Mortgagor or any other person; (x) has and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any constituent party of Mortgagor, Affiliate, Guarantor or any other person; and (xi) shall obtain and maintain in full force and effect, and abide by and satisfy the material terms and conditions of, all material permits, licenses, registrations and other authorizations with or granted by any governmental authorities that may be required from time to time with respect to the performance of its obligations under this Mortgage.

10.    **Maintenance of Mortgaged Property**. Mortgagor shall cause the Mortgaged Property to be operated and maintained in a good and safe condition and state of repair and in keeping with the condition and repair of properties of a similar use, value, age, nature, and construction. Mortgagor shall not use, maintain, or operate the Mortgaged Property in any manner which constitutes a public or private nuisance, or which makes void, voidable, or cancelable, or increases the premium of, any insurance then in force with respect thereto. The Improvements and the Equipment shall not be removed, demolished, or materially altered (except for normal replacement of the Equipment) without the consent of Mortgagee. Mortgagor shall promptly comply with all laws, orders and ordinances affecting the Mortgaged Property, or the use thereof. Mortgagor shall promptly repair, replace, or rebuild any part of the Mortgaged Property which may be destroyed by any casualty, or become damaged, worn, or dilapidated or which may be affected by any proceeding of the character referred to in Section 7 hereof and shall complete and pay for any structure at any time in the process of construction or repair on the Premises.

11.    **Use of Mortgaged Property**. Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof, nor shall Mortgagor initiate, join in, acquiesce in, or consent to any zoning change or zoning matter affecting the Mortgaged Property. If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Mortgagor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee. Mortgagor shall not permit or suffer to occur any waste on or to the Mortgaged Property or to any portion thereof and shall not take any steps whatsoever to convert the Mortgaged Property, or any portion thereof, to a condominium or cooperative form of management. Mortgagor will not install or permit to be installed on the Premises any underground storage tank or above-ground storage tank without the written consent of Mortgagee.

12.    **Transfer or Encumbrance of the Mortgaged Property**. (a) Mortgagor acknowledges that Mortgagee has examined and relied on the creditworthiness and experience of Mortgagor in owning and operating properties such as the Mortgaged Property in agreeing to make the loan secured hereby, and that Mortgagee will continue to rely on Mortgagor's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for repayment of the Debt. Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Mortgagor default in the repayment of the Debt, Mortgagee can recover the Debt in full by a sale of the Mortgaged Property. Mortgagor shall not, without the prior written consent of Mortgagee, which shall not be unreasonably withheld by Mortgagee, sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any part thereof, or permit the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise

9

**Exhibit 1**



RP-2022-493731

transferred; provided, however, Mortgagee may, in its sole but reasonable discretion, give such written consent (and shall have an obligation not to unreasonably withhold its consent) to any such sale, conveyance, alienation, mortgage, encumbrance, pledge or other transfer, and any such consent may be conditioned upon the satisfaction of such conditions precedent as Mortgagee, in its sole discretion, may require.

(b)     A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this Section 12 shall not include (x) transfers made by devise or descent or by operation of law upon the death of a joint tenant, partner or shareholder, subject, however, to all the following requirements: (1) written notice of any transfer under this subsection 12(b)(x), whether by will, trust or other written instrument, operation of law or otherwise, is provided to Mortgagee or its servicer, together with copies of such documents relating to the transfer as Mortgagee or its servicer may reasonably request, (2) control over the management and operation of the Mortgaged Property is retained by persons who are acceptable in all respects to Mortgagee in its sole and absolute discretion, and (3) no such transfer, death or other event has any adverse effect on the status of Mortgagor as a continuing legal entity liable for the payment of the Debt and the performance of all other obligations secured hereby, or (y) transfers other than by operation of law in the event of a bankruptcy, nor shall the meaning include a Lease, but shall be deemed to include (i) an installment sales agreement wherein Mortgagor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) an agreement by Mortgagor leasing all or a substantial part of the Mortgaged Property for any purpose other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in and to any Leases or any Rents; (iii) if Mortgagor, Guarantor, or any general partner of Mortgagor or Guarantor is a corporation, any merger, consolidation or the voluntary or involuntary sale, conveyance or transfer of such corporation's stock (or the stock of any corporation directly or indirectly controlling such corporation by operation of law or otherwise) or the creation or issuance of new stock in one or a series of transactions by which an aggregate of more than 10% of such corporation's stock shall be vested in a party or parties who are not now stockholders (provided, however, in no event shall this subpart (iii) apply to any Guarantor whose stock, shares or partnership interests are traded on a nationally recognized stock exchange); (iv) if Mortgagor, Guarantor, or any general partner of Mortgagor or Guarantor is a limited liability company or limited partnership, the voluntary or involuntary sale, conveyance or transfer by which an aggregate of more than fifty percent (50%) of the ownership interest in such limited liability company or more than fifty percent (50%) of the limited partnership interests in such limited partnership shall be vested in parties not having an ownership interest as of the date of this Mortgage; and (v) if Mortgagor, any Guarantor or any general partner of Mortgagor or any Guarantor is a limited or general partnership or joint venture, the change, removal or resignation of a general partner, managing partner or joint venturer or the transfer of all or any portion of the partnership interest of any general partner, managing partner or joint venturer.

(c)     Mortgagee's consent to one sale, conveyance, alienation, mortgage, encumbrance, pledge, or transfer of the Mortgaged Property shall not be deemed to be a waiver of Mortgagee's right to require such consent to any future occurrence of same. Any sale, conveyance, alienation, mortgage, encumbrance, pledge, or transfer of the Mortgaged Property made in contravention of this Section 12 shall be null and void and of no force and effect. Mortgagor agrees to bear and shall pay or reimburse Mortgagee on demand for all reasonable expenses (including, without limitation, all recording costs, reasonable attorney's fees and disbursements and title search costs) incurred by Mortgagee in connection with the review, approval, and documentation of any such sale, conveyance, alienation, mortgage, encumbrance, pledge, or transfer. In no event shall any of the terms and provisions of this Section 12 amend or modify the terms and provisions contained in Section 9 herein.

(d)     Mortgagee may release, regardless of consideration, any part of the Mortgaged Property without, as to the remainder, in any way impairing, affecting, subordinating, or releasing the lien or security interests evidenced by this Deed of Trust or the other Loan Documents or affecting the obligations of Grantor or any other party to pay the Indebtedness or perform and discharge the Obligations. For payment

10

**Exhibit 1**



of the Indebtedness, Mortgagor may resort to any of the collateral therefor in such order and manner as Mortgagor may elect. No collateral heretofore, herewith, or hereafter taken by Mortgagor shall in any manner impair or affect the collateral given pursuant to the Loan Documents, and all collateral shall be taken, considered, and held as cumulative. Notwithstanding anything to the contrary herein, Mortgagee shall consent to partial releases of individual parcels of the Mortgaged Property; provided that Mortgagor shall pay to Mortgagee at the time of such partial release an amount equal 130% of the allocable loan payoff applicable to such parcel, with such allocable loan payoff amount to be determined in Mortgagee's sole and absolute discretion.

13. **Estoppel Certificates and No Default Affidavits.** (a) After written request by Mortgagee, Mortgagor shall within ten (10) days furnish Mortgagee with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note, this Mortgage and the other Loan Documents are valid, legal and binding obligations and have not been modified or, if modified, the particulars of such modification.

(b) After request by Mortgagee, Mortgagor shall, within ten (10) days thereafter, furnish Mortgagee with a certificate reaffirming all representations and warranties of Mortgagor set forth herein and in the other Loan Documents as of the date requested by Mortgagee or, to the extent of any changes to any such representations and warranties, stating such changes.

(c) If the Mortgaged Property includes commercial property, Mortgagor shall deliver to Mortgagee, upon request, tenant estoppel certificates from each commercial tenant at the Mortgaged Property in form and substance reasonably satisfactory to Mortgagee; provided that Mortgagor shall not be required to deliver such certificates more frequently than two (2) times in any calendar year.

14. **Changes in the Laws Regarding Taxation**. If any law is amended, enacted, or adopted after the date of this Mortgage which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Mortgaged Property, Mortgagor will pay such tax, with interest and penalties thereon, if any. In the event Mortgagee is advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury, then in any such event, Mortgagee shall have the option, by written notice of not less than forty-five (45) days, to declare the Debt immediately due and payable.

15. **No Credits on Account of the Debt**. Mortgagor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Mortgaged Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Mortgaged Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt. In the event such claim, credit or deduction shall be required by law, Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

16. **Documentary Stamps**. If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

17. **Books and Records**. Mortgagor will keep accurate books and records in accordance with sound generally accepted accounting principles in which full, true and correct entries shall be promptly made with respect to the Mortgaged Property and the operation thereof, and will permit all such books and records (including without limitation all contracts, statements, invoices, bills and claims for labor, materials

11

RP-2022-493731

**Exhibit 1**



Page 12 of 29   Wednesday, August 30, 2023   County Clerk Harris County, Texas

RP-2022-493731

and services supplied for the construction, repair or operation of the Improvements) to be inspected or audited and copies made by Mortgagee and its representatives during normal business hours and at any other reasonable times. Mortgagor represents that its chief executive office is as set forth in the introductory paragraph of this Mortgage and that all books and records pertaining to the Mortgaged Property are maintained at such location. Within ninety (90) days following the end of each calendar year, Mortgagor shall furnish a statement of the financial affairs and condition of the Mortgagor and the Mortgaged Property, including a statement of profit and loss for the Mortgagor and the Mortgaged Property in such format and in such detail as Mortgagee or its servicer may request, and setting forth the financial condition and the income and expenses for the Mortgagor and the Mortgaged Property for the immediately preceding calendar year, which shall be certified to by Mortgagor as being complete and accurate to the best of Mortgagor's knowledge and belief. Mortgagor shall deliver to Mortgagee copies of all income tax returns, requests for extension and other similar items contemporaneously with its delivery of same to the Internal Revenue Service. Failure to provide annual reports shall constitute an Event of Default under Section 22 and shall entitle Mortgagee to audit or cause to be audited Mortgagor's books and records. The late charge and the cost of such audit shall be immediately payable from Mortgagor upon demand by Mortgagee or, at Mortgagee's election, deducted from the Future Advance Fund, and, until paid, shall be added to, and constitute a part of the Debt. At any time and from time-to-time, Mortgagor shall deliver to Mortgagee or its agents such other financial data as Mortgagee or its agents shall request with respect to the ownership, maintenance, use and operation of the Mortgaged Property, including, but not limited to, schedules of gross sales or percentage rents under Leases. Mortgagor will permit representatives appointed by Mortgagee, including independent accountants, agents, attorneys, appraisers and any other persons, to visit and inspect during its normal business hours and at any other reasonable times any of the Mortgaged Property and to make photographs thereof, and to write down and record any information such representatives obtain, and shall permit Mortgagee or its representatives to investigate and verify the accuracy of the information furnished to Mortgagee under or in connection with this Mortgage or any of the other Loan Documents and to discuss all such matters with its officers, employees and representatives. Mortgagor will furnish to Mortgagee, at Mortgagor's expense, all evidence which Mortgagee may from time-to-time reasonably request as to the accuracy and validity of or compliance with all representations and warranties made by Mortgagor in the Loan Documents and satisfaction of all conditions contained therein.

18.     **Performance of Other Agreements**. Mortgagor shall observe and perform each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

19.     **Further Acts; Sale of Loan and Advertising**. (a) Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, perform, execute, acknowledge and deliver any and all such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, Uniform Commercial Code financing statements or continuation statements, transfers and assurances as Mortgagee shall, from time to time, require to better assure and confirm unto Mortgagee the property and rights hereby mortgaged, conveyed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage. Mortgagor, on demand, will execute and deliver, and hereby authorizes Mortgagee to execute and deliver in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in the Mortgaged Property. Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including without limitation such rights and remedies available to Mortgagee pursuant to this paragraph.

(b)     Mortgagee (and its mortgage servicer and their respective assigns) shall have the right to disclose in confidence such financial information regarding Mortgagor, Guarantor or the Mortgaged Property as may be necessary (i) to complete any sale or attempted sale of the Note or participations in the

12





**Exhibit 1**



RP-2022-493731

Loan (or any transfer of the mortgage servicing thereof) evidenced by the Note and the Loan Documents, (ii) to service the Note or (iii) to furnish information concerning the payment status of the Note to the holder or beneficial owner thereof, including, without limitation, all Loan Documents, financial statements, projections, internal memoranda, audits, reports, payment history, appraisals and any and all other information and documentation in the Mortgagee's files (and such servicer's files) relating to the Mortgagor, any Guarantor and the Mortgaged Property. This authorization shall be irrevocable in favor of the Mortgagee (and its mortgage servicer and their respective assigns), and Mortgagor and Guarantor waive any claims that they may have against the Mortgagee, its mortgage servicer and their respective assigns or the party receiving information from the Mortgagee pursuant hereto regarding disclosure of information in such files and further waive any alleged damages which they may suffer as a result of such disclosure.

(c)      The Mortgagor acknowledges that the Mortgagee may elect to sell the loan evidenced by the Note and the Loan Documents or a participation interest therein to a party who may pool the Loan with a number of other loans and to have the holder of such loans (most likely a special purpose REMIC) issue one or more classes of Mortgage-Backed Pass-Through Certificates (**"Certificates"**), which may be rated by one or more national rating agencies. Mortgagee (and its mortgage servicer and their respective assigns) shall be permitted to share any of the information referred to in subsection (b) above, whether obtained before or after the date of the Note, with the holders or potential holders of the Certificates, investment banking firms, rating agencies, accounting firms, custodians, successor mortgage servicers, law firms and other third-party advisory firms involved with the Loan and the Loan Documents or the Certificates. It is understood that the information provided by the Mortgagor to the Mortgagee (or its mortgage servicer and their respective assigns) or otherwise received by Mortgagee (or its mortgage servicer and their respective assigns) in connection with the loan evidenced by the Loan Documents may ultimately be incorporated into the offering documents for the Certificates and thus various prospective investors may also see some or all of the information. The Mortgagee (and its mortgage servicer and their respective assigns) and all of the aforesaid third-party advisors and professional firms shall be entitled to rely on the information supplied by, or on behalf of, the Mortgagor.

(d)      Mortgagee shall have the unrestricted right (but not the obligation) to disclose in any advertising of the Mortgagee at any time or from time to time the name of the Mortgagor (and/or the Maker of the Note, if not the same), Guarantor and, the Mortgaged Property and the nature of the Loan. This authorization shall be irrevocable in favor of the Mortgagee and Mortgagor and Guarantor shall waive any claims that they may have against the Mortgagee pursuant hereto regarding disclosure of such information in such advertising and shall further waive any alleged damages which they may suffer as a result of such disclosure

20.      **Recording of Mortgage, etc**. Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property and any instrument of further assurance, and all federal, state, county and municipal, fees, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. Mortgagor shall hold harmless and indemnify Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

21.      **Reporting Requirements**. Mortgagor agrees to give prompt notice to Mortgagee of the insolvency or bankruptcy filing of Mortgagor or the death, insolvency or bankruptcy filing of any Guarantor.

22.      **Events of Default**. The term **"Event of Default"** as used herein shall mean the occurrence or happening, at any time and from time to time, of any one or more of the following:

13



**Exhibit 1**

(a) if any portion of the Debt is not paid within ten (10) days from the date when the same is due;

(b) if Mortgagor sells, conveys, alienates, mortgages, encumbers, pledges, or otherwise transfers any portion of the Mortgaged Property or permits the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, levied, pledged, or otherwise transferred without Mortgagee's prior written consent;

(c) if any representation or warranty of Mortgagor, or of any Guarantor, made herein, in any Loan Document, any guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Mortgagee shall have been false or misleading in any material respect when made or thereafter becomes false or misleading in any material respect;

(d) if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors or if Mortgagor or any Guarantor shall admit in writing its inability to pay, or Mortgagor's or any Guarantor's failure to pay, debts generally as the debts become due;

(e) if a receiver, liquidator or trustee of Mortgagor or of any Guarantor shall be appointed or if Mortgagor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Mortgagor or any Guarantor or if Mortgagor or any Guarantor shall admit in writing its insolvency or bankruptcy or if any proceeding for the dissolution or liquidation of Mortgagor or of any Guarantor shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Mortgagor or such Guarantor, upon the same not being discharged, stayed or dismissed within sixty (60) days;

(f) if Mortgagor shall default under any term, covenant, or condition of this Mortgage or any of the other Loan Documents other than as specified in any of the above subparagraphs;

(g) if all or a substantial part of Mortgagor's assets (other than the Mortgaged Property) are attached, seized, subjected to a writ or distress warrant, or are levied upon (unless such attachment, seizure, writ, distress warrant or levy is vacated within sixty (60) days following the date of the same);

(h) entry of a judgment in excess of $50,000.00 and the expiration of any appeal rights or the dismissal or final adjudication of appeals against Mortgagor (unless such judgment is vacated within sixty (60) days following the date of the same);

(i) the Mortgage shall cease to constitute a first-priority lien on the Mortgaged Property (other than in accordance with its terms); and

(j) seizure or forfeiture of the Mortgaged Property, or any portion thereof, or Mortgagor's interest therein, resulting from criminal wrongdoing or other unlawful action of Mortgagor, its affiliates, or any tenant in the Mortgaged Property under any federal, state, or local law.

23. **Remedies.** Upon the occurrence of an Event of Default and subject to any applicable cure period, Mortgagee may, at Mortgagee's option, and by or through Trustee, by Mortgagee itself or otherwise, do any one or more of the following:

(a) *Right to Perform Mortgagor's Covenants.* If Mortgagor has failed to keep or perform any covenant whatsoever contained in this Mortgage or the other Loan Documents, Mortgagee may, but shall not be obligated to any person to do so, perform or attempt to perform said covenant; and any payment made or expense incurred in the performance or attempted performance of any such covenant, together with any sum expended by Mortgagee that is chargeable to Mortgagor or subject to reimbursement by Mortgagor

14

RP-2022-493731

**Exhibit 1**



under the Loan Documents, shall be and become a part of the **"Debt,"** and Mortgagor promises, upon demand, to pay to Mortgagee, at the place where the Note is payable, all sums so incurred, paid or expended by Mortgagee, with interest from the date when paid, incurred or expended by Mortgagee at the Default Rate as specified in the Note.

(b)   *Right of Entry.* Mortgagee may, prior or subsequent to the institution of any foreclosure proceedings, enter upon the Mortgaged Property, or any part thereof, and take exclusive possession of the Mortgaged Property and of all books, records, and accounts relating thereto and to exercise without interference from Mortgagor any and all rights which Mortgagor has with respect to the management, possession, operation, protection, or preservation of the Mortgaged Property.

(c)   *Right to Accelerate.* Mortgagee may, without notice, demand, presentment, notice of nonpayment or nonperformance, protest, notice of protest, notice of intent to accelerate, notice of acceleration, or any other notice or any other action, all of which are hereby waived by Mortgagor and all other parties obligated in any manner whatsoever on the Debt, declare the entire unpaid balance of the Debt immediately due and payable, and upon such declaration, the entire unpaid balance of the Debt shall become immediately due and payable.

(d)   *Foreclosure; Power of Sale.* Mortgagee may institute a proceeding or proceedings, judicial, or nonjudicial, by advertisement or otherwise, for the complete or partial foreclosure of this Mortgage or the complete or partial sale of the Mortgaged Property under the power of sale contained herein or under any applicable provision of law. Mortgagee may sell the Mortgaged Property, and all estate, right, title, interest, claim and demand of Mortgagor therein, and all rights of redemption thereof, at one or more sales, as an entirety or in parcels, with such elements of real and/or personal property, and at such time and place and upon such terms as it may deem expedient, or as may be required by applicable law, and in the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Mortgaged Property.

(e)   *Rights Pertaining to Sales.* Subject to the requirements of applicable law and except as otherwise provided herein, the following provisions shall apply to any sale or sales of all or any portion of the Mortgaged Property under or by virtue of subsection (d) above, whether made under the power of sale herein granted or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale:

(i)   Trustee or Mortgagee may conduct any number of sales from time to time. The power of sale set forth above shall not be exhausted by any one or more such sales as to any part of the Mortgaged Property which shall not have been sold, nor by any sale which is not completed or is defective in Mortgagee's opinion, until the Debt shall have been paid in full. Any sale may be postponed or adjourned by public announcement at the time and place appointed for such sale or for such postponed or adjourned sale without further notice. It shall not be necessary for Trustee, Mortgagee or any public officer acting under execution or order of court to have present or constructively in its possession any of the Mortgaged Property. Any such sale or sales shall operate to divest all of the estate, right, title, interest, claim and demand whatsoever, whether under contract, at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and any and all persons claiming or who may claim the same, or any part thereof or any interest therein, by, through or under Mortgagor to the fullest extent permitted by applicable law. Upon any such sale or sales, Mortgagee may bid for and acquire the Mortgaged Property and, in lieu of paying cash, therefore, may make settlement for the purchase price by crediting against the Debt the amount of the bid made therefore, after deducting therefrom the expenses of the sale, the cost of any enforcement proceeding hereunder, and any other sums which Trustee or Mortgagee is authorized to deduct under the terms hereof, to the extent necessary to satisfy such bid.

(ii)   After each sale, Mortgagee, Trustee, or an officer of any court empowered to do so shall

15

RP-2022-493731

**Exhibit 1**



RP-2022-493731

execute and deliver to the purchaser or purchasers at such sale a good and sufficient instrument or instruments granting, conveying, assigning, and transferring all right, title and interest of Mortgagor in and to the property and rights sold and shall receive the proceeds of said sale or sales and apply the same as specified in the Note. Any and all statements of fact or other recitals made in any of such instruments given by Trustee or Mortgagee shall be taken as conclusive and binding against all persons as to evidence of the truth of the facts so stated and recited. Each of Trustee and Mortgagee is hereby appointed the true and lawful attorney-in-fact of Mortgagor, which appointment is irrevocable and shall be deemed to be coupled with an interest, in Mortgagor's name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the property and rights so sold, Mortgagor hereby ratifying and confirming all that said attorney, or such substitute or substitutes shall lawfully do by virtue thereof.

(f)     *Mortgagee's Judicial Remedies.* Mortgagee, or Trustee upon written request of Mortgagee, may proceed by suit or suits, at law or in equity, to enforce the payment of the Debt to foreclose the liens and security interests of this Mortgage as against all or any part of the Mortgaged Property, and to have all or any part of the Mortgaged Property sold under the judgment or decree of a court of competent jurisdiction.

(g)     *Mortgagee's Right to Appointment of Receiver.* Mortgagee, as a matter of right and (i) without regard to the sufficiency of the security for repayment of the Debt and without notice to Mortgagor, (ii) without any showing of insolvency, fraud, or mismanagement on the part of Mortgagor, (iii) without the necessity of filing any judicial or other proceeding other than the proceeding for appointment of a receiver, and (iv) without regard to the then value of the Mortgaged Property, shall be entitled to the appointment of a receiver or receivers for the protection, possession, control, management and operation of the Mortgaged Property, including (without limitation) the power to collect the Rents, enforce this Mortgage and, in case of a sale and deficiency, during the full statutory period of redemption (if any), whether there be a redemption or not, as well as during any further times when Mortgagor, except for the intervention of such receiver, would be entitled to collection of such Rents. Mortgagor hereby irrevocably consents to the appointment of a receiver or receivers. Any receiver appointed pursuant to the provisions of this subsection shall have the usual powers and duties of receivers in such matters.

(h)     *Other Rights.* Mortgagee shall have and may exercise any and all other rights and remedies which Mortgagee may have at law or in equity, or by virtue of any of the Loan Documents, or otherwise. For payment of the Debt, Mortgagee may resort to any collateral securing the payment of the Debt in such order and manner as Mortgagee may elect.

(i)     *Discontinuance of Remedies.* In case Mortgagee shall have proceeded to invoke any right, remedy, or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon same for any reason, Mortgagee shall have the unqualified right so to do and, in such event, Mortgagor and Mortgagee shall be restored to their former positions with respect to the Debt, the Loan Documents, the Mortgaged Property or otherwise, and the rights, remedies, recourses and powers of Mortgagee shall continue as if same had never been invoked.

(j)     *Remedies Cumulative.* All rights, remedies, and recourses of Mortgagee granted in the Note, this Mortgage and the other Loan Documents, any other pledge of collateral, or otherwise available at law or equity: (i) shall be cumulative and concurrent; (ii) may be pursued separately, successively, or concurrently against Mortgagor, the Mortgaged Property, or any one or more of them, at the sole discretion of Mortgagee; (iii) may be exercised as often as occasion therefore shall arise, it being agreed by Mortgagor that the exercise or failure to exercise any of same shall in no event be construed as a waiver or release thereof or of any other right, remedy, or recourse; (iv) shall be nonexclusive; (v) shall not be conditioned upon Mortgagee exercising or pursuing any remedy in relation to the Mortgaged Property prior to Mortgagee bringing suit to recover the Debt; and (vi) in the event Mortgagee elects to bring suit on the Debt and obtains a judgment against Mortgagor prior to exercising any remedies in relation to the Mortgaged

16

**Exhibit 1**



Page 17 of 29 Wednesday, August 30, 2023 County Clerk Harris County, Texas

Property, all liens and security interests, including the lien of this Mortgage, shall remain in full force and effect and may be exercised thereafter at Mortgagee's option.

(k)  *Waivers.* Mortgagor hereby irrevocably and unconditionally waives and releases: (i) all benefits that might accrue to Mortgagor by virtue of any present or future law exempting the Mortgaged Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption, or extension of time for payment; (ii) all notices of any Event of Default, except as expressly provided herein or of Trustee's exercise of any right, remedy, or recourse provided for under the Loan Documents; and (iii) any right to a marshalling of assets, a sale in inverse order of alienation or any other right to direct in any manner, the order of sale of any of the Mortgaged Property.

(l)  *Application of Proceeds.* The proceeds from any sale, lease, or other disposition made pursuant to this Mortgage, or the proceeds from the surrender of any insurance policies pursuant hereto, or any Rents collected by Mortgagee from the Mortgaged Property, or the Tax and Insurance Escrow Fund or the Future Advance Fund or sums received pursuant to Section 7 hereof, or proceeds from insurance which Mortgagee elects to apply to the Debt pursuant to Section 3 hereof, shall be applied by Trustee, or by Mortgagee, as the case may be, to the Debt in the following order and priority: (1) to the payment of all expenses of advertising, selling, and conveying the Mortgaged Property or any part thereof, and/or prosecuting or otherwise collecting Rents, proceeds, premiums or other sums, including reasonable attorneys' fees and a reasonable fee or commission to Trustee, not to exceed five percent of the proceeds thereof or sums so received; (2) to the remainder of the Debt as follows: first, to the remaining accrued but unpaid interest, second, to the matured portion of principal of the Debt, and third, to prepayment of the unmatured portion, if any, of principal of the Debt applied to installments of principal in inverse order of maturity; (3) the balance, if any or to the extent applicable, remaining after the full and final payment of the Debt to the holder or beneficiary of any inferior liens covering the Mortgaged Property, if any, in order of the priority of such inferior liens (Trustee and Mortgagee shall hereby be entitled to rely exclusively on a commitment for title insurance issued to determine such priority); and (4) the cash balance, if any, to the Mortgagor. The application of proceeds of sale or other proceeds as otherwise provided herein shall be deemed to be a payment of the Debt like any other payment. The balance of the Debt remaining unpaid, if any, shall remain fully due and owing in accordance with the terms of the Note and the other Loan Documents.

24.  **Right of Inspection.** Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property during normal business hours upon reasonable notice.

25.  **Security Agreement.** This Mortgage is both a real property mortgage or deed of trust and a "security agreement" within the meaning of the Uniform Commercial Code as adopted and enacted by the State in which any of the Mortgaged Property is located (**"Uniform Commercial Code"**). The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property. Mortgagor, by executing and delivering this Mortgage, has granted and hereby grants to Mortgagee, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the Uniform Commercial Code (said portion of the Mortgaged Property so subject to the Uniform Commercial Code being called in this paragraph the **"Collateral"**). Mortgagor hereby agrees with Mortgagee to execute and deliver to Mortgagee, in form and substance satisfactory to Mortgagee, such financing statements and such further assurances as Mortgagee may from time to time, reasonably consider necessary to create, perfect, and preserve Mortgagee's security interest herein granted. Notwithstanding the foregoing or anything else herein to the contrary, Mortgagor hereby authorizes Mortgagee to file all UCC Financing Statement forms, including but not limited to, Form UCC-1 and Form UCC-3 covering the Collateral, along with all attachments thereto with any and all filing entities that Mortgagee deemed necessary, at Mortgagor's expense; moreover, Mortgagor authorizes the Mortgagee to file one or more financing or continuation statement, and amendments thereto relating to all or any part of the Collateral without the

RP-2022-493731

17

**Exhibit 1**



signature of Mortgagor, where permitted by law. Mortgagor shall immediately give written notice to Mortgagee of any and all changes to Mortgagor's name, organizational status, state of organization, organization's chief operating office, and any other change that would affect the validity of any financing statement filing or perfection of lien or security interest. This Mortgage shall also constitute a "fixture filing" for the purposes of the Uniform Commercial Code. All or part of the Mortgaged Property are or are to become fixtures. Information concerning the security interest herein granted may be obtained from the parties at the addresses of the parties set forth in the first paragraph of this Mortgage. If an Event of Default shall occur, Mortgagee, in addition to any other rights and remedies which they may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee, Mortgagor shall, at its expense, marshal the Collateral and make it available to Mortgagee at a convenient place accessible to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including all costs, expenses, and reasonable attorneys' fees, incurred, or paid by Mortgagee in protecting the interest in the Collateral and in enforcing the rights hereunder with respect to the Collateral. Any notice of sale, disposition, or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper. If Mortgagee shall require the filing or recording of additional Uniform Commercial Code forms or continuation statements, Mortgagor shall, promptly after request, execute, where applicable, file and record such Uniform Commercial Code forms or continuation statements as Mortgagee shall deem necessary, and shall pay all expenses and fees in connection with the filing and recording thereof, it being understood and agreed, however, that no such additional documents shall increase Mortgagor's obligations under the Note, this Mortgage and the other Loan Documents. Mortgagor hereby irrevocably appoints Mortgagee as its attorney-in-fact, coupled with an interest, to file with the appropriate public office on its behalf any financing or other statements signed only by Mortgagee, as Mortgagor's attorney-in-fact, in connection with the Collateral covered by this Mortgage. Notwithstanding the foregoing, Mortgagor shall appear and defend in any action or proceeding which affects or purports to affect the Mortgaged Property and any interest or right therein, whether such proceeding effects title or any other rights in the Mortgaged Property (and in conjunction therewith, Mortgagor shall fully cooperate with Mortgagee in the event Mortgagee is a party to such action or proceeding).

26.     **Assignment of Leases and Rents**. The Leases and Rents are assigned to Mortgagee on the following terms, covenants, and conditions:

(a)     *Warranties Regarding Leases and Rents*. Mortgagor warrants to Mortgagee that (a) Mortgagor is the sole owner of the entire lessor's interest in the Leases; (b) the Leases are valid, enforceable and in full force and effect and have not been altered, modified or amended in any manner whatsoever except as disclosed to Mortgagee; (c) neither the Leases nor the Rents reserved in the Leases have been assigned or otherwise pledged or hypothecated; (d) none of the Rents have been collected for more than one (1) month in advance; (e) the premises demised under the Leases have been completed and Lessees under the Leases have accepted the same and have taken possession of the same on a rent-paying basis except as explicitly identified on the certified rent roll delivered by Mortgagor to Mortgagee; and (f) there exist no offsets or defenses to the payment of any portion of the Rents.

(b)     *Covenants Regarding Leases and Rents*. Mortgagor covenants with Mortgagee that Mortgagor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send to Mortgagee copies of all notices of default which Mortgagor shall receive under the Leases; (iii) shall not collect any Rents more than one (1) month in advance; (iv) shall not execute any other

18

Exhibit 1

Page 19 of 29    Wednesday, August 30, 2023    County Clerk Harris County, Texas

RP-2022-493731

assignment of lessor's interest in the Leases or the Rents; (v) shall execute and deliver at the request of Mortgagee all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Mortgagee shall from time to time require; (vi) shall not enter into any new lease of the Mortgaged Property without the prior written consent of Mortgagee, and in any event, any new Lease shall be on a form of lease approved by Mortgagee; (vii) shall deliver to Mortgagee, upon request, tenant estoppel certificates from each commercial Lessee at the Mortgaged Property in form and substance reasonably satisfactory to Mortgagee (provided, however, that Mortgagor shall not be required to deliver such certificates more frequently than two [2] times in any calendar year); and (viii) shall deliver to Mortgagee, at Mortgagee's request, executed copies of all Leases now existing or hereafter arising.

(c)    *Enforcement of Existing Leases.* Except to the extent that Mortgagor is acting in the ordinary course of business as a prudent operator of property similar to the Mortgaged Property, Mortgagor (i) shall promptly send to Mortgagee copies of all notices of default which Mortgagor shall send to Lessees under the Leases; (ii) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the Lessees thereunder to be observed or performed, short of termination thereof; (iii) shall not alter, modify or change the terms of the Leases without the prior written consent of Mortgagee, or cancel or terminate the Leases or accept a surrender thereof or take any other action which would effect a merger of the estates and rights of, or a termination or diminution of the obligations of, Lessees thereunder; provided however, that any Lease may be canceled if, at the time of cancellation thereof, a new Lease is entered into on substantially the same terms or more favorable terms as the canceled Lease; (iv) shall not alter, modify or change the terms of any guaranty of any of the Leases or cancel or terminate any such guaranty without the prior written consent of Mortgagee; (v) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Mortgagee; and (vi) shall not waive, release, reduce, discount or otherwise discharge or compromise the payment of any of the Rents to accrue under the Leases.

(d)    *New Leases.* Mortgagor further covenants with Mortgagee that (i) all Leases shall be written on the standard form of lease which has been approved by Mortgagee; (ii) no material changes may be made to the Mortgagee-approved standard lease without the prior written consent of Mortgagee; (iii) all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates and shall be arm's-length transactions; (iv) all Leases shall provide that (A) they are subordinate to the Mortgage and any other indebtedness now or hereafter secured by the Mortgaged Property, (B) Lessees agree to attorn to Mortgagee (such attornment to be effective upon Mortgagee's acquisition of title to the Mortgaged Property), (C) Lessees agree to execute such further evidences of attornment as Mortgagee may from time to time request, (D) the attornment of Lessees shall not be terminated by foreclosure, (E) Mortgagee may, at Mortgagee's option, accept or reject such attornment, and (F) Lessees agree to furnish, up to two times in any calendar year at such times as Mortgagee may request, a certificate signed by Lessee confirming and containing such factual certifications and representations deemed reasonably appropriate by Mortgagee; and (v) all new Leases shall be subject to the prior approval of Mortgagee.

(e)    *Present Assignment.* This assignment constitutes a present, absolute assignment and is not an assignment for additional security only. Mortgagor agrees to execute and deliver to Mortgagee such additional instruments, in form and substance satisfactory to Mortgagee, as may hereinafter be requested by Mortgagee to further evidence and confirm said assignment. Mortgagee is hereby granted and assigned by Mortgagor the right to enter the Mortgaged Property for the purpose of enforcing its interest in the Leases and the Rents, this assignment constituting a present, absolute, and unconditional assignment of the Leases and Rents. Nevertheless, subject to the terms of this paragraph, Mortgagee grants to Mortgagor a revocable license to operate and manage the Mortgaged Property and to collect the Rents. Mortgagor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums. Upon an Event of Default, the license granted to Mortgagor herein shall automatically be revoked and Mortgagee shall immediately be entitled to receive and apply all Rents, whether or not Mortgagee enters upon and takes control of the Mortgaged Property.

19

**Exhibit 1**



(f)  *Rights of Mortgagee.* Upon or at any time after an Event of Default, Mortgagee may, at its option, without waiving such Event of Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, take possession of the Mortgaged Property and have, hold, manage, lease and operate the Mortgaged Property on such terms and for such period of time as Mortgagee may deem proper and either with or without taking possession of the Mortgaged Property in its own name, demand, sue for or otherwise collect and receive all Rents, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Mortgagee and may apply the Rents to the payment of the following in such order and proportion as Mortgagee in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (i) all expenses of managing, operating, maintaining and securing the Mortgaged Property as Mortgagee may deem necessary or desirable and all expenses of the Mortgaged Property; and (ii) the Debt. For purposes of this and the preceding paragraph, Mortgagor grants to Mortgagee its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Mortgagee for the proper management and preservation of the Mortgaged Property.

(g)  *No Liability of Mortgagee.* Mortgagee shall not be liable for any loss sustained by Mortgagor resulting from Mortgagee's failure to secure a new tenant to lease the Mortgaged Property after an Event of Default or from any other act or omission of Mortgagee in managing the Mortgaged Property after an Event of Default unless such loss is caused by the willful misconduct and bad faith of Mortgagee. Mortgagee shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or under or by reason of this assignment and Mortgagor agrees to protect, defend, indemnify, and hold Mortgagee harmless from and against any and all liability, loss or damage which may or might be incurred under the Leases or under or by reason of this assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Mortgagee. This assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Mortgaged Property upon Mortgagee; nor shall it operate to make Mortgagee responsible or liable for any waste committed on the Mortgaged Property, including without limitation the presence of any Hazardous Substances (as defined in the Environmental Liabilities Agreement executed by Mortgagor to Mortgagee of even date herewith), or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any Lessee, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Mortgagee a "mortgagee in possession" in the absence of the taking of actual possession of the Mortgaged Property by Mortgagee.

(h)  *Notice to Lessees.* Mortgagor hereby authorizes and directs Lessees named in the Leases or any other or future Lessees or occupants of the Mortgaged Property (**"Lessee[s]"**) upon receipt from Mortgagee of written notice to the effect that Mortgagee is then the holder of the Note and that an Event of Default exists thereunder or under the other Loan Documents to pay over to Mortgagee all Rents and to continue so to do until otherwise notified by Mortgagee, without further notice or consent of Mortgagor and regardless of whether Mortgagee has taken possession of the Mortgaged Property, and Lessees may rely upon any written statement delivered by Mortgagee to Lessees without any obligation or right to inquire as to whether such default actually exists and notwithstanding any notice from or claim of Mortgagor to the contrary.

(i)  *Security Deposits.* All security deposits of Lessees, whether held in cash or any other form, shall be treated by Mortgagor as trust funds, shall not be commingled with any other funds of Mortgagor and, if in the form of cash, shall be deposited by Mortgagor in one or more segregated accounts at such commercial banks as is reasonably satisfactory to Mortgagee. Following the occurrence and during the continuance of any Event of Default, Mortgagor shall, upon Mortgagee's request, if permitted by applicable legal requirements, turn over to Mortgagee the security deposits (and any interest theretofore earned thereon) with respect to all or any portion of the Mortgaged Property, to be held by Mortgagee subject to the terms of the Leases.

Exhibit 1

27.    **Indemnification**. In addition to any other indemnifications provided in any of the Loan Documents, Mortgagor shall protect, defend, indemnify and hold Mortgagee, its subsidiaries, affiliates, persons controlling or under common control with Mortgagee, their agents, officers, directors, shareholders, employees, servants, consultants, representatives and their respective successors and assigns and Trustee (collectively, the **"Indemnified Parties"**) harmless from and against all liabilities, obligations, claims, demands, damages, penalties, causes of action, losses, fines, costs and expenses (including without limitation reasonable attorneys' fees and expenses), imposed upon or incurred by or asserted against any of the Indemnified Parties by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (d) any representation or warranty made in the Note, this Mortgage or the other Loan Documents being false or misleading in any respect as of the date such representation or warranty was made; (e) any claim by brokers, finders or similar persons claiming to be entitled to a commission in connection with any Lease or other transaction involving the Mortgaged Property or any part thereof under any legal requirement or any liability asserted against Mortgagee with respect thereto; and (f) the claims of any lessee to any portion of the Mortgaged Property or any person acting through or under any lessee or otherwise arising under or as a consequence of any Lease. Any amounts payable to any of the Indemnified Parties by reason of the application of this paragraph shall be secured by this Mortgage, become immediately due and payable, and bear interest at the Default Rate specified in the Note from the date that loss or damage is sustained by any of the Indemnified Parties until paid. The obligations and liabilities of Mortgagor under this Section 27 (A) shall survive for a period of one (1) year following any release of this Mortgage executed by Mortgagee and satisfaction of the loan evidenced by the Loan Documents, and (B) shall survive the transfer or assignment of this Mortgage, the entry of a judgment of foreclosure, the sale of the Mortgaged Property by nonjudicial foreclosure sale, or the delivery of a deed in lieu of foreclosure (including, without limitation, any transfer by Mortgagor of any of its rights, title and interest in and to the Mortgaged Property to any party, whether or not affiliated with Mortgagor).

28.    **Trustee**. Trustee may resign by the giving of notice of such resignation in writing to Mortgagee. If Trustee shall die, resign, or become disqualified from acting in the execution of this trust, or if, for any reason, Mortgagee shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Mortgagee shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers, and duties of the aforenamed Trustee. Such appointment may be executed by any authorized agent of Mortgagee, and if such Mortgagee be a corporation and such appointment be executed in its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation. Mortgagor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute Trustees are appointed, each of such multiple substitute Trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Mortgage or applicable law. Any substitute Trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed, or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its or his predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Mortgagee or of the substitute Trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute Trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute Trustee so appointed in the Trustee's place. No fees or expenses shall be payable to Trustee, except in

21

Exhibit 1

connection with a foreclosure of the Mortgaged Property or any part thereof or in connection with the release of the Mortgaged Property following payment in full of the Debt.

29. **Notices.** Unless oral notice is expressly permitted hereunder any notice, demand, statement, request or consent made hereunder shall be in writing and shall be deemed to be received by the addressee on the first (1st) business day after such notice is tendered to a nationally-recognized overnight delivery service or on the third (3rd) day following the day such notice is deposited with the United States postal service first class certified mail, return receipt requested, in either instance, addressed to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Mortgagor or Mortgagee, as the case may be, shall in like manner designate in writing.

30. **Authority.** (a) Mortgagor (and the undersigned representative of Mortgagor, if any) has full power, authority and right to execute, deliver and perform its obligations pursuant to this Mortgage, and to encumber the Mortgaged Property pursuant to the terms hereof; and (b) Mortgagor represents and warrants that Mortgagor is not a **"foreign person"** within the meaning of Section 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations.

31. **Sole Discretion of Mortgagee.** Wherever pursuant to this Mortgage, Mortgagee exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Mortgagee, the decision of Mortgagee to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Mortgagee and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

32. **Non-Waiver; No Oral Change.** The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. This Mortgage may not be modified, amended, waived, extended, changed, discharged, or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge, or termination is sought.

33. **Liability; Successors and Assigns.** If Mortgagor consists of more than one person, the obligations, and liabilities of each such person hereunder shall be joint and several. Subject to the provisions hereof requiring Mortgagee's consent to any transfer of the Mortgaged Property, this Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns forever.

34. **Inapplicable Provisions; Headings, etc.; Counterparts.** (a) If any term, covenant or condition of this Mortgage is held to be invalid, illegal or unenforceable in any respect, this Mortgage shall be construed without such provision, (b) the headings and captions of various paragraphs of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof and (c) this Mortgage may be executed in any number of counterparts each of which shall be deemed to be an original but all of which when taken together shall constitute one agreement.

35. **Definitions.** Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and, whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa. For all purposes herein, the terms: (i) **"Mortgagor"** shall mean "each Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein" and shall include the Maker of the Note if the Mortgagor and the Maker of the Note are not the same; (ii) **"Mortgagee"** shall mean "Mortgagee and any subsequent holder of the Note"; (iii) **"Debt"** shall mean "indebtedness under the Note and other Loan Documents and any other evidence of indebtedness secured

22

**Exhibit 1**



Page 23 of 29   Wednesday, August 30, 2023   County Clerk Harris County, Texas

RP-2022-493731

by this Mortgage"; (iv) **"person"** shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity; (v) **"Mortgaged Property"** shall include any portion of the Mortgaged Property and any interest therein; and (vi) **"attorneys' fees"** shall include any and all attorneys' fees, paralegal and law clerk fees, including, but not limited to, fees at the pre-trial, trial and appellate levels incurred or paid by Mortgagee in protecting its interest in the Mortgaged Property and Collateral and enforcing its rights hereunder.

36.     **Homestead.** Mortgagor hereby waives and renounces all homestead and exemption rights provided by the constitution and the laws of the United States and of the state in which the Mortgaged Property is located, in and to the Premises as against the collection of the Debt, or any part hereof.

37.     **Assignments.** Mortgagee shall have the right to assign or transfer its rights under this Mortgage and the other Loan Documents, including, without limitation, the right to assign or transfer its rights to a servicing agent. Any assignee or transferee shall be entitled to all the benefits afforded Mortgagee under this Mortgage and the other Loan Documents.

38.     **Survival of Obligations; Survival of Warranties and Representations.** Each and all of the covenants and obligations of Mortgagor (other than warranties and representations contained herein) shall survive the execution and delivery of the Loan Documents and shall continue in full force and effect until the Debt shall have been paid in full; provided, however, that nothing contained in this paragraph shall limit the obligations of Mortgagor except as otherwise set forth herein. In addition, any and all warranties and representations of Mortgagor contained herein shall survive the execution and delivery of the Loan Documents and (i) shall continue for a period of one (1) year following any release of this Mortgage executed by Mortgagee and satisfaction of the loan evidenced by the Loan Documents, and (ii) shall survive the transfer or assignment of this Mortgage, the entry of a judgment of foreclosure, sale of the Mortgaged Property by non-judicial foreclosure or deed in lieu of foreclosure (including, without limitation, any transfer of the Mortgage by Mortgagee of any of its rights, title and interest in and to the Mortgaged Property to any party, whether or not affiliated with Mortgagee). Any and all representations, warranties, covenants, and agreements made in this Mortgage (and/or in other Loan Documents) shall survive any investigation or inspection made by or on behalf of Mortgagee.

39.     **Covenants Running with the Land.** All covenants, conditions, warranties, representations, and other obligations contained in this Mortgage and the other Loan Documents are intended by Mortgagor, Mortgagee and Trustee to be, and shall be construed as, covenants running with the Mortgaged Property until the lien of this Mortgage has been fully released by Mortgagee.

40.     **Governing Law; Jurisdiction.** THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE MORTGAGED PROPERTY IS LOCATED (WITHOUT REGARD TO ANY CONFLICT OF LAWS PRINCIPLES) AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA. MORTGAGOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY COURT OF COMPETENT JURISDICTION LOCATED IN THE STATE IN WHICH THE MORTGAGED PROPERTY IS LOCATED IN CONNECTION WITH ANY PROCEEDING OUT OF OR RELATING TO THIS MORTGAGE.

41.     **Time.** Time is of the essence in this Mortgage and the other Loan Documents.

42.     **No Third-Party Beneficiaries; Relationship of Parties.** The provisions of this Mortgage and the other Loan Documents are for the benefit of Mortgagor, Mortgagee and Trustee and shall not inure to the benefit of any third party (other than any successor or assignee of either Trustee or Mortgagee). The relationship of Mortgagee and Mortgagor is solely that of debtor and creditor, and Mortgagee has no fiduciary or other special relationship with the Mortgagor, and no term or condition of any of the Loan Documents shall be construed to be other than that of debtor and creditor. Mortgagor represents and

23

**Exhibit 1**



Page 24 of 29     Wednesday, August 30, 2023     County Clerk Harris County, Texas

acknowledges that the Loan Documents do not provide for any shared appreciation rights or other equity participation interest.

43.     **Trustee Provisions.** In the event that this Mortgage operates as a mortgage, the provisions of this Mortgage which pertain to the Trustee shall be of no force or effect.

44.     **Subrogation.** If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Mortgaged Property, then, to the extent of such funds so used, Mortgagee shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Mortgaged Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Mortgagee and are merged with the liens and security interests created herein as cumulative security for the repayment of the Debt and the performance and discharge of any and all obligations arising hereunder or otherwise. In the event a portion of the Debt cannot be lawfully secured against the Mortgaged Property by this Mortgage under applicable laws, it is agreed that the payments first made on the Debt shall be applied to the discharge of that portion of the Debt which cannot be so lawfully secured.

45.     **Cross-collateralization.** In addition to the Note, all liens, security interests, assignments, suretyship obligations, stock pledges, rights and remedies granted to the Lender in the Loan Documents secure all obligations, debts and liabilities, plus interest thereon, of the Mortgagor to the Lender, as well as claims by the Lender against the Mortgagor, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, absolute or contingent, whether the Mortgagor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

<div align="center">[Remainder of Page Left Blank]</div>



**Exhibit 1**



Mortgagor has executed this instrument the day and year first above written.

<div style="text-align:center">

**MORTGAGOR:**

**Shepherd-Huldy Development I, LLC,**
a Texas limited liability company

By: _____
        Jennifer L. MacGeorge,
        its General Counsel

</div>

<div style="text-align:center">

**ACKNOWLEDGEMENT**

</div>

THE STATE OF TEXAS        §
                                §
COUNTY OF _Harris_        §

    This instrument was acknowledged before me on the ___ day of October 2022, by Jennifer L. MacGeorge, as General Counsel of Shepherd-Huldy Development II, LLC, a Texas limited liability company and the Manager of Shepherd-Huldy Development I, LLC, a Texas limited liability company, on behalf of said limited liability companies.



_____
NOTARY PUBLIC, STATE OF TEXAS

<div style="border:1px solid; display:inline-block; padding:4px">
CHARLES HABEEB MANSOUR
Notary Public, State of Texas
Comm. Expires 05-21-2026
Notary ID 124136773
</div>

<div style="text-align:center; border:1px solid; display:inline-block; padding:4px">
CHARLES HABEEB MANSOUR
Notary Public, State of Texas
Comm. Expires 05-21-2026
Notary ID 124136773
</div>

RP-2022-493731

Signature Page – Deed of Trust

**Exhibit 1**



Page 26 of 29    Wednesday, August 30, 2023    County Clerk Harris County, Texas

RP-2022-493731

## EXHIBIT A
### LEGAL DESCRIPTION OF REAL PROPERTY

**TRACT 1**: 2503 S. Shepherd Dr., 2421 S. Shepherd Dr., 2502 Huldy St., 2424 Huldy St.

A 0.558 ACRE (23,324 SQUARE FEET) TRACT OF LAND BEING ALL OF LOT FIVE (5), AND IN BLOCK ONE (1), OF THE MORGAN ADDITION, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 572, PAGE 282 OF THE DEED RECORDS OF HARRIS COUNTY, TEXAS, ALL OF LOTS E AND F OF 08498 ACRE BEING A PARTIAL REPLAT OF LOTS A, B, C, D SHEPHERD LAWN ADDITION AS RECORDED IN VOLUME 725, PAGE 688 OF HARRIS COUNTY DEED RECORDS, SAID 0.558 ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT A 5/8 INCH CAPPED IRON ROD SET AT THE NORTHWEST CORNER OF

RESTRICTED RESERVE "A" OF EXXON MOBIL NO. 67878 SHEPHERD AT WESTHEIMER AS RECORDED IN FILM CODE NO. 613002 OF HARRIS COUNTY MAP RECORDS, SAID POINT BEING IN THE EAST LINE OF SHEPHERD DRIVE (80 FT RIGHT-OF-WAY), AND MARKING THE SOUTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 00 DEGREES 00 MINUTES AND 00 SECONDS WEST, A DISTANCE OF 88.63 FEET TO A 5/8 INCH IRON CAPPED ROD FOUND AND MARKING THE NORTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE NORTH 90 DEGREES 00 MINUTES AND 00 SECONDS EAST, A DISTANCE OF 131.00 FEET TO A 5/8 INCH IRON ROD SET IN THE WEST LINE OF LOT 4, BLOCK ONE (1) OF THE MORGAN ADDITION;

THENCE NORTH 00 DEGREES 00 MINUTES AND 00 SECONDS EAST, A DISTANCE OF 1.3 FEET TO A POINT FROM WHICH A FOUND FENCE POST BEARS NORTH 77 DEGREES 27 MINUTES EAST, 1.44 FEET FOR THE COMMON CORNER OF SAID LOTS 4 AND 5;

THENCE NORTH 90 DEGREES 00 MINUTES AND 00 SECONDS EAST, ALONG THE COMMON LINE OF SAID LOTS 4 AND 5, A DISTANCE OF 126.26 FEET TO A 5/8 INCH CAPPED IRON ROD SET AND MARKING THE NORTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE SOUTH 00 DEGREES 00 MINUTES AND 00 SECONDS EAST, A DISTANCE OF 100.00 FEET TO A 5/8 INCH CAPPED IRON ROD SET AND MARKING THE SOUTHEAST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE SOUTH 90 DEGREES 00 MINUTES AND 00 SECONDS WEST, A DISTANCE OF 126.26 FEET TO A POINT FROM WHICH A FOUND FENCE POST BEARS NORTH 88 DEGREES 08 MINUTES WEST, 1.70 FEET;

**Exhibit 1**



THENCE NORTH 00 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 13.00 FEET TO A 5/8 INCH CAPPED IRON ROD FOR AN ELL CORNER;

THENCE SOUTH 90 DEGREES 00 MINUTES 00 SECONDS WEST, A DISTANCE OF 131.99 TO THE POINT OF BEGINNING AND CONTAINING 0.558 ACRES OF LAND, MORE OR LESS.

RP-2022-493731

Exhibit A

**Exhibit 1**



## EXHIBIT B
### PERMITTED EXCEPTIONS

Each of the liens and other encumbrances set forth in Schedule B to the title insurance commitment issued by Fidelity National Title Agency Inc.  as Policy Issuing Agent for Fidelity National Title Insurance Company issued September 29, 2022, identified as GF No.: FTH-77F-FAH22012667, relating to the Land and Improvements, and delivered to Mortgagee.

Exhibit B

**Exhibit 1**



Page 29 of 29    Wednesday, August 30, 2023    County Clerk Harris County, Texas

RP-2022-493731

# Pages 29

10/04/2022 01:49 PM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

TENESHIA HUDSPETH

COUNTY CLERK

Fees  $126.00

RP-2022-493731

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

**Exhibit 1**





I, Teneshia Hudspeth, County Clerk of Harris County, Texas certify that these pages are a true and correct copy of the original record filed and recorded in my office, electronically or hard copy, as it appears on this date.

Witness my official hand and seal of office
This August 30, 2023

**Teneshia Hudspeth, County Clerk**
**Harris County, Texas**

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.



**Exhibit 1**

FILED 8/14/2023 3:53:02 PM

FRCL-2023-4997

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

# NOTICE OF FORECLOSURE SALE

ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE-DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.

## RECITALS:

A. The undersigned is the current owner and holder of the Promissory Note described below.

B. The Promissory Note is secured by the Deed of Trust described below.

C. The Borrower named below is in default under the Promissory Note and the Deed of Trust and the default has not been cured after receiving notice of default and opportunity to cure.

D. The undersigned has accelerated the indebtedness evidenced by the Promissory Note.

## NOTICE OF FORECLOSURE SALE:

Notice is given that the Property described below shall be sold at public auction on the date, at the time, and in accordance with the terms contained in this Notice of Foreclosure Sale and the applicable laws of the State of Texas.

1. **Date, Time, and Place of Sale:**

   **Date:** The sale shall be held on Tuesday, September 5, 2023.

   **Time:** The sale will begin at 10:00 AM and will be conducted within three hours thereafter.

   **Place:** In the area designated by the Commissioners Court of such County, pursuant to § 51.002 of the Texas Property Code as the place where foreclosure sales are to take place (if no such place is so designated, the sale will take place in the area where this Notice of Foreclosure Sale is posted).

2. **Terms of Sale:**

   Because of the default in performance of the obligations secured by the Deed of Trust, the Substitute Trustee will sell the property "As Is" by public auction to the highest bidder for cash.

3. **Instrument to be Foreclosed:**

   The security instrument to be foreclosed is the Deed of Trust dated November 2, 2022, by 9201 MEMORIAL DR LLC as grantor(s), to Gary Lancaster, as Trustee, for the benefit of

**Exhibit 2**

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2023-4997

FILED 8/14/2023 3:53:02 PM

Cypress Bridgeco, LLC as beneficiary, and recorded under **RP-2022-538332** in the official public records of Harris County, Texas.

**4.** **Name and Address of Substitute Trustee:**

The name of the Substitute Trustee is: Brandon L. Collins.

The address of the Substitute Trustee is: 12140 Wickchester Drive, Suite 111, Houston, Texas 77079.

**5.** **Obligations Secured:**

The indebtedness evidenced by the Promissory Note in the original principal amount of two million seven hundred sixty thousand dollars ($2,760,000.00), including all accrued and unpaid interest and all other amounts payable by the debtor[s] as described in the promissory note, any other related documents and all modifications, renewals, and extensions thereof. Cypress Bridgeco, LLC is the current lien holder of the Deed of Trust and the current owner and holder of the Promissory Note.

**6.** **Property to Be Sold:**

The property to be sold is described as follows:

See attached **Exhibit A** incorporated herein as if set forth at length.

**7.** **Additional Provisions:**

Default has occurred in the payment of the Promissory Note and in the performance of the obligations of the Deed of Trust. Because of that default, Cypress Bridgeco, LLC, the owner and holder of the Promissory Note and Deed of Trust, has requested Substitute Trustee to sell the Property.

The Deed of Trust may encumber both real and personal property. Formal notice is given of Cypress Bridgeco, LLC's election to proceed against and sell both the real property and any personal property described in the Deed of Trust in accordance with Cypress Bridgeco, LLC's rights and remedies under the Deed of Trust and Section 9.604(a) of the Texas Business and Commerce Code.

Notice is given that on and at the Date, Time, and Place for the Foreclosure Sale described above, Substitute Trustee will sell the Property in accordance with the Terms of Sale described above, the Deed of Trust and applicable Texas law.

If Cypress Bridgeco, LLC passes the Foreclosure Sale, notice of the date of any rescheduled foreclosure sale will be reposted and refiled in accordance with the posting and filing requirements of the Deed of Trust and the Texas Property Code.

The Foreclosure Sale will be made expressly subject to any title matters set forth in the Deed of Trust, but prospective bidders are reminded that by law the Foreclosure Sale will be made



2



**Exhibit 2**

FILED 8/14/2023 3:53:02 PM    FRCL-2023-4997    TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

subject to all prior matters of record affecting the Property, if any, to the extent that they remain in force and effect and have not been released or subordinated to the Deed of Trust. For the avoidance of doubt, the Foreclosure Sale will not cover any part of the Property that has been released of public record by Cypress Bridgeco, LLC from the security interest of the Deed of Trust. Prospective bidders are urged to examine the applicable property records to determine the nature and extent of such matters, if any.

Pursuant to Section 51.009 of the Texas Property Code, the Property will be sold "AS IS," without any expressed or implied warranties, except as to the warranties (if any) provided for under the Deed of Trust. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the Property.

Pursuant to Section 51.0075(a) of the Texas Property Code, Substitute Trustee reserves the right to set further reasonable conditions for conducting the Foreclosure Sale. Any such further conditions shall be announced before bidding is opened for the first sale of the day held by Substitute Trustee.

This Notice of Foreclosure Sale is executed this 14 day of August 2023.

LANCASTER LAW FIRM, PLLC

By: _____

Brandon L. Collins

12140 Wickchester Drive, Suite 111

Houston, Texas 77079

LENDER CONTACT:

Cypress Bridgeco, LLC
info@bridgecofinancial.com

3

**Exhibit 2**



TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2023-4997

FILED 8/14/2023 3:53:02 PM

## EXHIBIT A

## Legal Description of 9201 Memorial Drive, Houston, Texas 77024

A tract of land containing 1.34 acres being out of Lot 4, Peter Wilson Tract Division, and Lot 2 of Bayou Woods Subdivision, Section 2, a subdivision in Harris County Texas as recorded in Volume 18, Page 46 of the Map Records of said Harris County, Texas, and being the same tract of land as described in deed to James Tang under Clerk's File Number L423456 of the Real Property Records of said Harris County, said tract of land being more particularly described by metes and bounds as follows:

BEGINNING at a 1" Iron pipe (found) at the northwest corner of the herein described tract, and being the northeast corner of Lot 1, Block 1 of Bayou Woods Section 2, Partial Replat No. 2, as recorded under Film Code Number 666296 of said Map Records, and being located on a southerly right-of-way line of Memorial Drive (100 feet in width);

THENCE along the north line of said Tang tract with said southerly right-of-way line of Memorial Drive along a curve to the right having a radius of 1860 feet and a central angle of 08 deg 44 min 11 see, an arc length of 283.61 feet having a chord hearing of S 82 deg 06 min 00 sec E and a chord distance of 283.34 feet to a capped Iron rod (set) at the northeast turner of the herein described tract, bring the intersection of said southerly right-of-way line of Memorial Drive with the westerly right-of-way line of Buckingham Drive (60 feet in width);

THENCE S 31 deg 38 min 00 sec W along the east line of said Tang tract, with said westerly right-of-way line of Buckingham Drive, passing at a distance of 250.36 feet the northeast corner of Lot 2 of said Bayou Woods Section 2, a total distance of 254.36 feet to the Point of Beginning of a curve to the left in said westerly right-of-way line of Buckingham Drive;

THENCE continuing along the east line of said Tang tract and Lot 2 and the westerly right-of-way line of Buckingham Drive along a curve to the left having a radius of 1111.44 feet and a central angle of 02 deg 25 min 45 sec, an arc length of 47.12 feet having a chord bearing of S 30 deg 25 min 08 sec W and a chord distance of 47.12 feet to a capped iron red (set) at the southeast corner of the herein described tract and being the northeast corner of a tract of land being a Part of Lot 2 of said Bayou Woods, Section 2 as described in deed to AZ Revocable Trust under Clerk's File Number 20110460652;

THENCE N 71 deg 28 min 00 sec W departing said westerly right-of-way line of Buckingham Drive along The south line of said Tang tract and the north line of said AZ Revocable Trust tract passing through a portion of Lot 2, a distance of 156.18 feet to a capped Iron rod (set) at the southwest corner of the herein described tract, being located on an easterly line of said Lot 1, Block 1 of Bayou Woods Section 2, Partial Replat No. 2;

THENCE N 09 deg 19 min 00 see E along the southwest line of said Tang tract and the westerly tine of Lot 2 with the easterly line of Lot 1, a distance of 50.56 feet to a capped iron rod (set) at the northwest corner of Lot 2, being an angle point in the westerly line of said Tang tract;

THENCE N 04 deg 48 min 00 sec E along the northwest line of said Tang tract with the easterly line of Lot 1, a distance of 197.30 feet to the POINT OF BEGINNING and containing 1.34 acres of land.

**Exhibit 2**





I, Teneshia Hudspeth, County Clerk of Harris County, Texas certify that these pages are a true and correct copy of the original record filed and recorded in my office, electronically or hard copy, as it appears on this date.

Witness my official hand and seal of office
This August 30, 2023

Teneshia Hudspeth, County Clerk
Harris County, Texas

Confidential information may have been redacted from the document in compliance with the Public Information Act.



**Exhibit 2**

RP-2022-538332

11/04/2022   ER   $126.00

--------------------------------[Space Above This Line For Recording Data] --------------------------------

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

*FAH 21012944*

After recording return to:

Cypress BridgeCo, LLC
A. Kelly Williams, Executive Vice President
12140 Wickchester Lane, Suite 100
Houston, Texas 77079
Tel: 713-600-2687
kelly.williams@bridgecofinancial.com

Prepared by:

Lancaster Law Firm PLLC
12140 Wickchester Lane, Suite 111
Houston, Texas 77079
Telephone: (832) 594-3825
glancaster@lancasterlawfirmpllc.com

### MORTGAGE, DEED OF TRUST, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES

THIS MORTGAGE, DEED OF TRUST, SECURITY AGREEMENT, and ASSIGNMENT OF LEASES (this "**Mortgage**") is made as of November ___, 2022, by 9201 MEMORIAL DR LLC, a Wyoming limited liability company ("**Mortgagor**"), having its principal place of business at 251 Little Falls Drive, Wilmington, Delaware 19808 to GARY LANCASTER ("**Trustee**"), the trustee hereunder to the extent that this Mortgage operates as a deed of trust, and to and for the benefit of CYPRESS BRIDGECO, LLC, a Texas limited liability company ("**Mortgagee**"), having its principal place of business at 12140 Wickchester Lane, Suite 100, Houston, Texas 77079, which is the mortgagee hereunder to the extent that this Mortgage operates as a mortgage, the grantee hereunder to the extent that this Mortgage operates as a deed to secure debt, and the beneficiary hereunder to the extent that this Mortgage operates as a deed of trust.

To secure (i) the payment of an indebtedness in the original principal sum in the amount referenced in the that certain note, to be paid with interest as described therein ("**Note**") dated the date hereof made by Mortgagor to Mortgagee, and all other sums, liabilities and obligations constituting the Debt (as defined in the Note), and (ii) the performance of the obligations and covenants herein contained, Mortgagor by these presents does hereby mortgage, give, grant, bargain, sell, alien, convey, confirm, warrant, pledge, assign and hypothecate unto Mortgagee and/or Trustee the following property, rights and estates ("**Mortgaged Property**"): (a) the real property described in Exhibit A attached hereto (the "**Premises**")

**Exhibit 2**

Page 2 of 29   Wednesday, August 30, 2023   County Clerk Harris County, Texas

RP-2022-538332

and the buildings, structures, fixtures and improvements now or hereafter located thereon ("**Improvements**"); (b) all right, title, interest and estate of Mortgagor now owned, or hereafter acquired, in and to all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, utility rights, air rights and development rights, and all estates, rights, titles, interests, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements; (c) all machinery, furnishings, equipment, fixtures (including, but not limited to, all heating, air conditioning, plumbing, lighting, communications, elevator, and other fixtures) and other property of every kind and nature (hereinafter collectively called the "**Equipment**") owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, including all building equipment, materials and supplies and the proceeds of any sale or transfer of the foregoing; (d) all awards or payments, including interest thereon, which may be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and Improvements; (e) all leases, subleases and other agreements affecting the use, enjoyment or occupancy of the Premises and the Improvements heretofore or hereafter entered into ("**Leases**") and all income, rents, issues, profits and revenues (including all oil and gas or other mineral royalties and bonuses) from the Premises and the Improvements ("**Rents**") and all proceeds from the sale or other disposition of the Leases; (f) all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property; (g) all accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code (as hereinafter defined, and all contract rights, franchises, books, records, plans, specifications, permits, licenses (to the extent assignable), approvals, actions, and causes of action which now or hereafter relate to, are derived from or are used in connection with the Premises, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively called the "**Intangibles**"); and (h) any and all proceeds and products of any of the foregoing and any and all other security and collateral of any nature whatsoever, now or hereafter given for the repayment of the Debt and the performance of Mortgagor's obligations under the Loan Documents.

**TO HAVE AND TO HOLD** the Mortgaged Property unto and to the use and benefit of Mortgagee and/or Trustee, and their successors and assigns, forever; PROVIDED, HOWEVER, these presents are upon the express condition that, if Mortgagor shall pay to Mortgagee the Debt at the time and in the manner provided in the Note and this Mortgage and shall abide by and comply with each and every covenant and condition set forth herein, in the Note and in the other Loan Documents in a timely manner, these presents and the estate hereby granted shall cease, terminate and be void.

Mortgagor represents and warrants to and covenants and agrees with Mortgagee as follows:

1. **Warranty of Title.** Mortgagor warrants that (i) Mortgagor is (a) the sole owner of and has good, legal, marketable and insurable fee simple title to the Mortgaged Property, (b) possesses an unencumbered fee estate in the Premises and the Improvements, and (c) owns the Mortgaged Property free and clear of all liens, encumbrances and charges whatsoever, except for those exceptions shown in the title insurance policy insuring the lien of this Mortgage ("**Permitted Exceptions**") and (ii) this Mortgage is and will remain a valid and enforceable first lien on and security interest in the Mortgaged Property, subject only to said Permitted Exceptions. Mortgagor shall forever warrant, defend, and preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Mortgagee and/or Trustee against the claims of all persons whomsoever.

2. **Taxes.** Mortgagor, at its sole cost and expense, will pay and discharge, or cause to be paid and discharged, the Taxes, as hereafter defined, not later than the earlier to occur of (i) the due date thereof, (ii) the day any fine, penalty, interest or cost may be added thereto or imposed, or (iii) the day any lien may

**Exhibit 2**

County Clerk Harris County, Texas

RP-2022-538332

be filed for the nonpayment thereof (if such day is used to determine the due date of the respective item) and Grantor shall deliver to Mortgagee a written report evidencing the payment of the respective Taxes. For purposes hereof, the term "**Taxes**" shall mean all real estate and personal property taxes, charges, assessments, standby fees, excises and levies and any interest, costs or penalties with respect thereto, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever which at any time prior to or after the execution hereof may be assessed, levied or imposed upon the Mortgaged Property or the ownership, use, occupancy, or enjoyment thereof, or any portion thereof.

3.      **Insurance.** (a) Mortgagor, at its sole cost and expense, will keep the Mortgaged Property insured during the entire term of this Mortgage for the mutual benefit of Mortgagor and Mortgagee against loss or damage by fire and against loss or damage by other risks and hazards covered by a standard extended coverage insurance policy and included within the classification "All Risks of Physical Loss". Such insurance shall be (i) in an amount equal to the lesser of the then full replacement cost of the Improvements and Equipment, without deduction for physical depreciation, or the outstanding amount of the Debt, and (ii) with extended coverage in amounts sufficient such that the insurer would not deem Mortgagor a co-insurer under said policies. The policies of insurance carried in accordance with this paragraph shall be paid annually in advance and shall contain the "Replacement Cost Endorsement" with a waiver of depreciation.

(b)      Mortgagor, at its sole cost and expense, for the mutual benefit of Mortgagor and Mortgagee, shall also obtain and maintain during the entire term of this Mortgage the following policies of insurance:

(i)      Flood insurance if any part of the Mortgaged Property now (or subsequently determined to be) is located in an area identified as being on land other than a 500 year flood plain or as otherwise identified by the Federal Emergency Management Agency as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (and any amendment or successor act thereto) in an amount at least equal to the lesser of the full replacement cost of the Improvements and the Equipment, the outstanding principal amount of the Note or the maximum limit of coverage available with respect to the Improvements and Equipment under said Act. Mortgagor hereby agrees to pay Mortgagee such fees as may be permitted under applicable law for the costs incurred by Mortgagee in determining, from time to time, whether the Mortgaged Property is then located within such area.

(ii)      Comprehensive General Liability insurance, including broad form property damage, blanket contractual and personal injuries (including death resulting therefrom) coverages and containing minimum limits per occurrence of $3 million for the Improvements and the Premises with excess umbrella coverage in an amount of at least $1 million arising out of any one occurrence.

(iii)      Rental loss insurance in an amount equal to the aggregate annual amount of all Rents payable under the Leases, such rental loss insurance to cover rental losses for a period of at least one year after the date of the fire or casualty in question. The amount of such rental loss insurance shall be reviewed annually and shall be increased from time to time during the term of this Mortgage to reflect all increased Rent payable under all Leases.

(iv)      Insurance against loss or damage from (1) leakage of sprinkler systems, and (2) explosion of steam boilers, air conditioning equipment, high pressure piping, machinery and equipment, pressure vessels or similar apparatus now or hereafter installed in the Improvements and including broad form boiler and machinery insurance (without exclusion for explosion) covering all boilers or other pressure vessels, machinery and equipment (including all electrical equipment, sprinkler systems, heating and air conditioning equipment, refrigeration equipment and piping) located in, on, or about the Premises and the Improvements, in an amount at least equal to the full replacement cost of such equipment and the building or buildings housing same.

3

**Exhibit 2**



(v)     If the Mortgaged Property includes commercial property, worker's compensation insurance with respect to any employees of Mortgagor, as required by any governmental authority or legal requirement.

(vi)     Such other insurance as may from time to time be reasonably required by Mortgagee in order to protect its interests, including, but not limited to, environmental insurance.

(c)     All policies of insurance ("**Policies**") required pursuant to Section 3: (i) shall contain a standard noncontributory mortgagee clause naming Mortgagee as the person to which all payments made by such insurance company shall be paid, (ii) shall be assigned and delivered to Mortgagee, (iii) shall contain endorsements providing that neither Mortgagor, Mortgagee nor any other party shall be a co-insurer under said Policies, (iv) Mortgagee shall receive at least thirty (30) days' prior written notice of any modification, reduction or cancellation, (v) shall be for a term of not less than one year, (vi) shall be satisfactory in form and substance to Mortgagee, (vii) shall be approved by Mortgagee as to amounts, form, risk coverage, deductibles, loss payees and insureds, and (viii) shall provide that all claims shall be allowable on events as they occur. Upon demand therefore, Mortgagor shall reimburse Mortgagee for all of Mortgagee's (or its servicer's) reasonable costs and expenses incurred in obtaining any or all of the Policies or otherwise causing the compliance with the terms and provisions of this Section 3, including (without limitation) obtaining updated flood hazard certificates and replacement of any so-called "forced placed" insurance coverages. All Policies required pursuant to subsections 3(a) and 3(b) shall be issued by an insurer and licensed in the state in which the Mortgaged Property is located with a claims paying ability rating of "A-" or better by Standard & Poor's Corporation or A: VIII or better by A.M. Best as published in Best's Key Rating Guide. Mortgagor shall pay the premiums for such Policies ("**Insurance Premiums**") as the same become due and payable (unless such Insurance Premiums have been paid by Mortgagee pursuant to Section 5 hereof). Not later than **fifteen (15)** days prior to the expiration date of each of the Policies, Mortgagor will deliver to Mortgagee satisfactory evidence of the renewal of each Policy.

(d)     If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty, Mortgagor shall give prompt notice thereof to Mortgagee and the following shall apply:

(i)     In case of loss covered by Policies (an "**Insured Casualty**"), Mortgagee may either (1) settle and adjust any claim without the consent of Mortgagor, or (2) allow Mortgagor to agree with the insurance company on the amount to be paid upon the loss; provided that in any case Mortgagee shall and is hereby authorized to collect and receipt for any such insurance proceeds.

(ii)     In the event of any Insured Casualty, the net proceeds of insurance collected shall, at the option of Mortgagee in its sole discretion, be applied to the payment of the Debt or applied to reimburse Mortgagor for the cost of restoring, repairing, replacing, or rebuilding the Mortgaged Property or part thereof subject to the Insured Casualty, in the manner set forth below. Any such application to the Debt shall not reduce or postpone any payments otherwise required pursuant to the Note, other than the amount of the final payment on the Note.

(iii)     In the event that proceeds of insurance, if any, shall be made available to Mortgagor for the restoring, repairing, replacing, or rebuilding of the Mortgaged Property, Mortgagor hereby covenants to restore, repair, replace or rebuild the same to be of at least equal value and of substantially the same character as prior to such damage or destruction, all to be effected in accordance with applicable law and plans and specifications approved in advance by Mortgagee.

(iv)     In the event Mortgagor is entitled to reimbursement out of insurance proceeds held by Mortgagee, such proceeds shall be disbursed from time to time upon Mortgagee being furnished with (1) evidence satisfactory to it that the restoration, repair, replacement and rebuilding covered by the disbursement has been completed in accordance with plans and specifications approved by

4

**Exhibit 2**



RP-2022-538332

Mortgagee, (2) evidence satisfactory to it of the estimated cost of completion of the restoration, repair, replacement and rebuilding, (3) funds, or, at Mortgagee's option, assurances satisfactory to Mortgagee that such funds are available, sufficient in addition to the net proceeds of insurance to complete the proposed restoration, repair, replacement and rebuilding, and (4) such architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of cost, payment and performance as Mortgagee may reasonably require and approve. With respect to disbursements to be made by Mortgagee: (A) no payment made prior to the final completion of the restoration, repair, replacement and rebuilding shall exceed eighty percent (80%) of the value of the work performed from time to time; (B) funds other than proceeds of insurance shall be disbursed prior to disbursement of such proceeds; and (C) at all times, the undisbursed balance of such proceeds remaining in the hands of Mortgagee, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Mortgagee by or on behalf of Mortgagor for that purpose, shall be at least sufficient in the reasonable judgment of Mortgagee to pay for the cost of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien and the costs described in subsection 3(d)(v) below. Any surplus which may remain out of insurance proceeds held by Mortgagee after payment of such costs of restoration, repair, replacement, or rebuilding shall be paid to any party entitled thereto.

(v)      Notwithstanding anything to the contrary contained herein, the proceeds of insurance reimbursed to Mortgagor in accordance with the terms and provisions of this Mortgage shall be reduced by the reasonable costs (if any) incurred by Mortgagee in the adjustment and collection thereof and in the reasonable costs incurred by Mortgagee of paying out such proceeds (including, without limitation, reasonable attorneys' fees and costs paid to third parties for inspecting the restoration, repair, replacement and rebuilding and reviewing the plans and specifications therefore).

4.      **Payment of Other Charges**. Mortgagor shall pay all assessments, water rates and sewer rents, ground rents, maintenance charges, other governmental impositions, and other charges, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof ("**Other Charges**") as the same become due and payable. Mortgagor will deliver to Mortgagee evidence satisfactory to Mortgagee that the Other Charges have been so paid or are not then delinquent no later than thirty (30) days following the date on which the Other Charges would otherwise be delinquent if not paid. Mortgagor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Mortgaged Property and shall promptly pay for all utility services provided to the Mortgaged Property.

5.      **Tax and Insurance Escrow Fund**. If initially required prior to the effective date of this Deed of Trust by mutual agreement of Mortgagor and Mortgagee, Mortgagor shall make an initial deposit to the Tax and Insurance Escrow Fund, as hereinafter defined, of an amount which, when added to the monthly amounts to be deposited as specified below, will be sufficient in the estimation of Mortgagee to satisfy the next due taxes, assessments, insurance premiums and other similar charges. Mortgagor shall pay to Mortgagee on the first day of each calendar month (a) one-twelfth of an amount which would be sufficient to pay all Taxes payable or estimated by Mortgagee to be payable, during the next ensuing twelve (12) months, and (b) one-twelfth of an amount which would be sufficient to pay the Insurance Premiums due for the renewal of the coverage afforded by the Policies upon the expiration thereof (said initial deposit and the amounts in [a] and [b] above are hereinafter called the "**Tax and Insurance Escrow Fund**"). Mortgagee may, in its sole discretion, retain a third-party tax consultant to obtain tax certificates or other evidence or estimates of tax due or to become due or to verify the payment of taxes and Mortgagor will promptly reimburse Mortgagee for the reasonable cost of retaining any such third parties or obtaining such certificates. Mortgagor hereby pledges (and grants a lien and security interest) to Mortgagee any and all monies now or hereafter deposited in the Tax and Insurance Escrow Fund as additional security for the payment of the Debt. Mortgagee will apply the Tax and Insurance Escrow Fund to payments of Taxes and

5

**Exhibit 2**

Page 6 of 29 Wednesday, August 30, 2023 County Clerk Harris County, Texas

RP-2022-538332

Insurance Premiums required to be made by Mortgagor pursuant to Sections 2 and 3 hereof. If the amount of the Tax and Insurance Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to Sections 2 and 3 hereof, Mortgagee shall, in its discretion, return any excess to Mortgagor or credit such excess against future payments to be made to the Tax and Insurance Escrow Fund. If the Tax and Insurance Escrow Fund is not sufficient to pay the Taxes and Insurance Premiums due from time to time hereunder, Mortgagor shall promptly pay to Mortgagee, upon demand, an amount which Mortgagee shall estimate as sufficient to make up the deficiency. Upon the occurrence of an Event of Default, Mortgagee shall be entitled to exercise both the rights of setoff and banker's lien, if applicable, against the interest of Mortgagor in the Tax and Insurance Escrow Fund to the full extent of the outstanding balance of the Debt, application of any such sums to the Debt to be in any order in its sole discretion. The Tax and Insurance Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Mortgagee or its servicer. Unless otherwise required by applicable law, no earnings or interest on the Tax and Insurance Escrow Fund shall be payable to Mortgagor even if the Mortgagee or its servicer is paid a fee and/or receives interest or other income in connection with the deposit or placement of such fund (in which event such income shall be reported under Mortgagee's or its servicer's tax identification number, as applicable). Upon payment of the Debt and performance by Mortgagor of all its obligations under this Mortgage and the other Loan Documents, any amounts remaining in the Tax and Insurance Escrow Fund shall be refunded to Mortgagor.

6.      **Future Advance Escrow Fund.** If initially required prior to the effective date of this Deed of Trust by mutual agreement of Mortgagor and Mortgagee for anticipated or projected investments with respect to Other Property (as defined below) or the Mortgaged Property, Mortgagor shall pay to Mortgagee the agreed sum at Closing for Other Property and on the first day of each calendar month one-twelfth of the amount reasonably estimated by Mortgagee to be due for replacements, capital repairs, and other sums required to be made to the Mortgaged Property during each calendar year (all such monies being collectively referred to as the **"Future Advance Escrow Fund"**). Mortgagor hereby grants a lien and security interest in any Other Property and pledges to Mortgagee any and all monies now or hereafter deposited in the Future Advance Fund as additional security for the payment of the Debt. Mortgagee may, upon notice to Mortgagor, adjust the monthly amounts required to be deposited into the Future Advance Fund to a monthly amount equal to one-twelfth of the total amount estimated by Mortgagee to be required. So long as no Event of Default exists and is continuing, Mortgagee shall make disbursements from the Future Advance Fund for items specified in each approved Budget on a quarterly basis in increments of no less than $10,000.00 upon delivery by Mortgagor of Mortgagee's standard form of draw request accompanied by copies of paid invoices for the amounts requested and, if required by Mortgagee, lien waivers and releases from all parties furnishing materials and/or services in connection with the requested payment, delivery of such certificates and certifications as Mortgagee may require, including but not limited to a new certificate of occupancy for the portion of the Improvements covered by such repairs, if a new certificate of occupancy is required by applicable law, or a certification by Mortgagor that no new certificate of occupancy is required. Mortgagee may require an inspection of the Mortgaged Property in order to establish the amount required for deposit in the Future Advance Funds and/or prior to making a quarterly disbursement in order to verify completion of replacements and repairs. Mortgagee reserves the right to make any disbursement from the Future Advance Fund directly to the party furnishing materials and/or services. In the event that the amounts on deposit or available in the Future Advance Fund are inadequate to pay the costs of such repairs or capital expenditure, Mortgagor shall pay the amount of such deficiency. Upon the occurrence of an Event of Default, Mortgagee may apply any sums then present in the Future Advance Fund to the payment of the Debt in any order in its sole discretion. Upon payment of the Debt and performance by Mortgagor of all its obligations under this Mortgage and the other Loan Documents, any amounts remaining in the Future Advance Fund shall be refunded to Mortgagor. The Future Advance Fund shall not constitute a trust fund and may be commingled with other monies held by Mortgagee or its servicer. Unless otherwise required by applicable law, no earnings or interest on the Future Advance Fund shall be payable to Mortgagor even if the Mortgagee or its servicer is paid a fee and/or receives interest or other income in connection with the deposit or placement of such fund (in which event such income shall be reported under Mortgagee's or its servicer's tax identification number, as applicable). For all purposes of this Paragraph 6, the term **"Other**

**Exhibit 2**

County Clerk Harris County, Texas

RP-2022-538332

Property" means real property other than the Mortgaged Property originally subject to this Mortgage purchased, in whole or in part, with monies from the Future Advance Fund that hereafter becomes subject to the Mortgage.

7.      **Condemnation.** Mortgagor shall promptly give Mortgagee written notice of the actual or threatened commencement of any condemnation or eminent domain proceeding and shall deliver to Mortgagee copies of any and all papers served in connection with such proceedings. Mortgagee is hereby irrevocably appointed as Mortgagor's attorney-in-fact, coupled with an interest, with exclusive power to collect, receive and retain any award or payment for said condemnation or eminent domain and to make any compromise or settlement in connection with such proceeding, subject to the provisions of this Mortgage. Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Mortgagor shall continue to pay the Debt at the time and in the manner provided for its payment in the Note, in this Mortgage and the other Loan Documents and the Debt shall not be reduced until any award or payment therefore shall have been actually received after expenses of collection and applied by Mortgagee to the discharge of the Debt. Mortgagor shall cause the award or payment made in any condemnation or eminent domain proceeding, which is payable to Mortgagor, to be paid directly to Mortgagee. Mortgagee may apply any such award or payment to the reduction or discharge of the Debt whether or not then due and payable.

8.      **Representations Concerning Loan.** Mortgagor represents, warrants and covenants as follows:

(a)      Neither Mortgagor nor any guarantor of the Debt or any part thereof (a "**Guarantor**") has any defense to the payment in full of the Debt that arises from applicable Federal, state, or local laws, regulations, or other requirements.

(b)      None of the Loan Documents are subject to any right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, nor will the operation of any of the terms of any such Loan Documents, or the exercise of any right thereunder, render any Loan Documents unenforceable, in whole or in part, or subject to any right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, and no such right of rescission, set-off, abatement, diminution, counterclaim or defense has been, or will be, asserted with respect thereto.

(c)      All certifications, permits and approvals, including, without limitation, certificates of completion and occupancy permits required for the legal use and occupancy of the Mortgaged Property, have been obtained and are in full force and effect.

(d)      The Mortgaged Property is in good repair, good order and good condition, free and clear of any damage that would affect materially and adversely the value of the Mortgaged Property as security for the Debt, and the Mortgaged Property has not been materially damaged by fire, wind or other casualty or physical condition that has not been fully repaired. There are no proceedings pending or threatened for the partial or total condemnation of the Mortgaged Property.

(e)      All of the Improvements which were included in determining the appraised value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of the Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property, and no easements or other encumbrances upon the Premises encroach upon any of the Improvements, so as to affect the value or marketability of the Mortgaged Property except for immaterial encroachments which do not adversely affect the security intended to be provided by this Mortgage or the use, enjoyment, value or marketability of the Mortgaged Property. All of the Improvements comply with all material requirements of any applicable zoning and subdivision laws and ordinances.

7

**Exhibit 2**



RP-2022-538332

(f)     The Mortgaged Property is not subject to any leases or operating agreements other than the Leases and the operating agreements, if any, described in the rent roll delivered to Mortgagee in connection with this Mortgage, and all such Leases and agreements are in full force and effect. No person has any possessory interest in the Mortgaged Property or right to occupy the same, except under and pursuant to the provisions of the Leases and any such operating agreements.

(g)     All financial data, including, without limitation, statements of cash flow and income and operating expenses, delivered to Mortgagee by, or on behalf of Mortgagor are (i) true and correct in all material respects; (ii) accurately represent the financial condition of Mortgagor or the Mortgaged Property as of the date thereof in all material respects; and (iii) have been prepared in accordance with generally accepted accounting principles consistently applied throughout the periods covered.

(h)     To the best of Mortgagor's knowledge, the survey of the Mortgaged Property delivered to Mortgagee in connection with this Mortgage does not fail to reflect any material matter affecting the Mortgaged Property or the title thereto.

(i)     The Mortgaged Property (A) is served by public utilities and services in the surrounding community (including public water and sewer systems, police and fire protection, public transportation, refuse removal, public education, and enforcement of safety codes), (B) abuts upon a dedicated, all-weather road, or is served and benefitted by an irrevocable easement permitting ingress and egress, and (C) has parking and other amenities necessary for the operation of the business currently conducted thereon, which public utilities and services, ingress and egress and parking and other amenities are adequate in relation to the premises and location on which the Mortgaged Property is located.

(j)     The Mortgaged Property is a separate tax parcel, and there are no delinquent Taxes or other outstanding charges adversely affecting the Mortgaged Property.

(k)     The Mortgaged Property is not relied upon by, and does not rely upon, any building or improvement not part of the Mortgaged Property to fulfill any zoning, building code or other governmental or municipal requirement for structural support or the furnishing of any essential building systems or utilities, except to the extent of any valid and existing reciprocal easement agreements shown in the title insurance policy insuring the lien of this Mortgage that are Permitted Exceptions.

(l)     No action, omission, misrepresentation, negligence, fraud, or similar occurrence has taken place on the part of any person that would reasonably be expected to result in the failure or impairment of full and timely coverage under any insurance policies providing coverage for the Mortgaged Property.

(m)     There are no defaults by Mortgagor beyond any applicable grace period under any contract or agreement that binds Mortgagor and/or the Mortgaged Property, including any management, service, supply, security, maintenance or similar contracts; and Mortgagor has no knowledge of any such default for which notice has not yet been given; and no such agreement is in effect with respect to the Mortgaged Property that is not capable of being terminated by Mortgagor on less than thirty (30) days' notice, except as previously disclosed to Mortgagee by a delivery of a copy of all such agreements.

9.     **Representations Concerning Mortgagor**. Mortgagor represents, warrants and covenants that Mortgagor (i) will not enter into any contract or agreement with any Guarantor or any party which is directly or indirectly controlling, controlled by or under common control with Mortgagor or Guarantor (an "**Affiliate**"), except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any Guarantor or Affiliate; (ii) has not incurred and will not incur any indebtedness, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation), other than (a) the Debt, and (b) trade and operational debt incurred in the ordinary course of business with trade creditors and in amounts as are normal and reasonable under the circumstances and no indebtedness other than the Debt may be secured (subordinate

8

**Exhibit 2**

Page 9 of 29   Wednesday, August 30, 2023   County Clerk Harris County, Texas

RP-2022-538332

or *pari passu*) by the Mortgaged Property; (iii) has not made and will not make any loans or advances to any third party, nor to Guarantor, any Affiliate or any constituent party of Mortgagor; (iv) is and will remain solvent and will pay its debts from its assets as the same shall become due; (v) has done or caused to be done and will do all things necessary, to preserve its existence; (vi) will maintain books and records and bank accounts for the Mortgaged Property separate from those of its Affiliates and any constituent party of Mortgagor, and will file its own tax returns; (vii) will preserve and keep in full force and effect its existence, good standing and qualification to do business in the state in which the Mortgaged Property is located; (viii) will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations; (ix) will not commingle the funds and other assets of the Mortgaged Property with other funds or assets of Mortgagor or those of any Affiliate, any Guarantor, any constituent party of Mortgagor or any other person; (x) has and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any constituent party of Mortgagor, Affiliate, Guarantor or any other person; and (xi) shall obtain and maintain in full force and effect, and abide by and satisfy the material terms and conditions of, all material permits, licenses, registrations and other authorizations with or granted by any governmental authorities that may be required from time to time with respect to the performance of its obligations under this Mortgage.

10.     **Maintenance of Mortgaged Property**. Mortgagor shall cause the Mortgaged Property to be operated and maintained in a good and safe condition and state of repair and in keeping with the condition and repair of properties of a similar use, value, age, nature, and construction. Mortgagor shall not use, maintain, or operate the Mortgaged Property in any manner which constitutes a public or private nuisance, or which makes void, voidable, or cancelable, or increases the premium of, any insurance then in force with respect thereto. The Improvements and the Equipment shall not be removed, demolished, or materially altered (except for normal replacement of the Equipment) without the consent of Mortgagee. Mortgagor shall promptly comply with all laws, orders and ordinances affecting the Mortgaged Property, or the use thereof. Mortgagor shall promptly repair, replace, or rebuild any part of the Mortgaged Property which may be destroyed by any casualty, or become damaged, worn, or dilapidated or which may be affected by any proceeding of the character referred to in Section 7 hereof and shall complete and pay for any structure at any time in the process of construction or repair on the Premises.

11.     **Use of Mortgaged Property**. Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof, nor shall Mortgagor initiate, join in, acquiesce in, or consent to any zoning change or zoning matter affecting the Mortgaged Property. If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Mortgagor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee. Mortgagor shall not permit or suffer to occur any waste on or to the Mortgaged Property or to any portion thereof and shall not take any steps whatsoever to convert the Mortgaged Property, or any portion thereof, to a condominium or cooperative form of management. Mortgagor will not install or permit to be installed on the Premises any underground storage tank or above-ground storage tank without the written consent of Mortgagee.

12.     **Transfer or Encumbrance of the Mortgaged Property**. (a) Mortgagor acknowledges that Mortgagee has examined and relied on the creditworthiness and experience of Mortgagor in owning and operating properties such as the Mortgaged Property in agreeing to make the loan secured hereby, and that Mortgagee will continue to rely on Mortgagor's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for repayment of the Debt. Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Mortgagor default in the repayment of the Debt, Mortgagee can recover the Debt in full by a sale of the Mortgaged Property. Mortgagor shall not, without the prior written consent of Mortgagee, which shall not be unreasonably withheld by Mortgagee, sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any part thereof, or permit the Mortgaged

9

**Exhibit 2**



Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred; provided, however, Mortgagee may, in its sole but reasonable discretion, give such written consent (and shall have an obligation not to unreasonably withhold its consent) to any such sale, conveyance, alienation, mortgage, encumbrance, pledge or other transfer, and any such consent may be conditioned upon the satisfaction of such conditions precedent as Mortgagee, in its sole discretion, may require.

(b)     A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this Section 12 shall not include (x) transfers made by devise or descent or by operation of law upon the death of a joint tenant, partner or shareholder, subject, however, to all the following requirements: (1) written notice of any transfer under this subsection 12(b)(x), whether by will, trust or other written instrument, operation of law or otherwise, is provided to Mortgagee or its servicer, together with copies of such documents relating to the transfer as Mortgagee or its servicer may reasonably request, (2) control over the management and operation of the Mortgaged Property is retained by persons who are acceptable in all respects to Mortgagee in its sole and absolute discretion, and (3) no such transfer, death or other event has any adverse effect on the status of Mortgagor as a continuing legal entity liable for the payment of the Debt and the performance of all other obligations secured hereby, or (y) transfers other than by operation of law in the event of a bankruptcy, nor shall the meaning include a Lease, but shall be deemed to include (i) an installment sales agreement wherein Mortgagor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) an agreement by Mortgagor leasing all or a substantial part of the Mortgaged Property for any purpose other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in and to any Leases or any Rents; (iii) if Mortgagor, Guarantor, or any general partner of Mortgagor or Guarantor is a corporation, any merger, consolidation or the voluntary or involuntary sale, conveyance or transfer of such corporation's stock (or the stock of any corporation directly or indirectly controlling such corporation by operation of law or otherwise) or the creation or issuance of new stock in one or a series of transactions by which an aggregate of more than 10% of such corporation's stock shall be vested in a party or parties who are not now stockholders (provided, however, in no event shall this subpart (iii) apply to any Guarantor whose stock, shares or partnership interests are traded on a nationally recognized stock exchange); (iv) if Mortgagor, Guarantor, or any general partner of Mortgagor or Guarantor is a limited liability company or limited partnership, the voluntary or involuntary sale, conveyance or transfer by which an aggregate of more than fifty percent (50%) of the ownership interest in such limited liability company or more than fifty percent (50%) of the limited partnership interests in such limited partnership shall be vested in parties not having an ownership interest as of the date of this Mortgage; and (v) if Mortgagor, any Guarantor or any general partner of Mortgagor or any Guarantor is a limited or general partnership or joint venture, the change, removal or resignation of a general partner, managing partner or joint venturer or the transfer of all or any portion of the partnership interest of any general partner, managing partner or joint venturer.

(c)     Mortgagee's consent to one sale, conveyance, alienation, mortgage, encumbrance, pledge, or transfer of the Mortgaged Property shall not be deemed to be a waiver of Mortgagee's right to require such consent to any future occurrence of same. Any sale, conveyance, alienation, mortgage, encumbrance, pledge, or transfer of the Mortgaged Property made in contravention of this Section 12 shall be null and void and of no force and effect. Mortgagor agrees to bear and shall pay or reimburse Mortgagee on demand for all reasonable expenses (including, without limitation, all recording costs, reasonable attorney's fees and disbursements and title search costs) incurred by Mortgagee in connection with the review, approval, and documentation of any such sale, conveyance, alienation, mortgage, encumbrance, pledge, or transfer. In no event shall any of the terms and provisions of this Section 12 amend or modify the terms and provisions contained in Section 9 herein.

(d)     Mortgagee may release, regardless of consideration, any part of the Mortgaged Property without, as to the remainder, in any way impairing, affecting, subordinating, or releasing the lien or security interests evidenced by this Deed of Trust or the other Loan Documents or affecting the obligations of

10

**Exhibit 2**



Page 11 of 29    Wednesday, August 30, 2023    County Clerk Harris County, Texas

RP-2022-538332

Grantor or any other party to pay the Indebtedness or perform and discharge the Obligations. For payment of the Indebtedness, Mortgagor may resort to any of the collateral therefor in such order and manner as Mortgagor may elect. No collateral heretofore, herewith, or hereafter taken by Mortgagor shall in any manner impair or affect the collateral given pursuant to the Loan Documents, and all collateral shall be taken, considered, and held as cumulative. Notwithstanding anything to the contrary herein, Mortgagee shall consent to partial releases of individual parcels of the Mortgaged Property; provided that Mortgagor shall pay to Mortgagee at the time of such partial release an amount equal 130% of the allocable loan payoff applicable to such parcel, with such allocable loan payoff amount to be determined in Mortgagee's sole and absolute discretion.

13. **Estoppel Certificates and No Default Affidavits**. (a) After written request by Mortgagee, Mortgagor shall within ten (10) days furnish Mortgagee with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note, this Mortgage and the other Loan Documents are valid, legal and binding obligations and have not been modified or, if modified, the particulars of such modification.

(b) After request by Mortgagee, Mortgagor shall, within ten (10) days thereafter, furnish Mortgagee with a certificate reaffirming all representations and warranties of Mortgagor set forth herein and in the other Loan Documents as of the date requested by Mortgagee or, to the extent of any changes to any such representations and warranties, stating such changes.

(c) If the Mortgaged Property includes commercial property, Mortgagor shall deliver to Mortgagee, upon request, tenant estoppel certificates from each commercial tenant at the Mortgaged Property in form and substance reasonably satisfactory to Mortgagee; provided that Mortgagor shall not be required to deliver such certificates more frequently than two (2) times in any calendar year.

14. **Changes in the Laws Regarding Taxation**. If any law is amended, enacted, or adopted after the date of this Mortgage which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Mortgaged Property, Mortgagor will pay such tax, with interest and penalties thereon, if any. In the event Mortgagee is advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury, then in any such event, Mortgagee shall have the option, by written notice of not less than forty-five (45) days, to declare the Debt immediately due and payable.

15. **No Credits on Account of the Debt**. Mortgagor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Mortgaged Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Mortgaged Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt. In the event such claim, credit or deduction shall be required by law, Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

16. **Documentary Stamps**. If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

17. **Books and Records**. Mortgagor will keep accurate books and records in accordance with sound generally accepted accounting principles in which full, true and correct entries shall be promptly made with respect to the Mortgaged Property and the operation thereof, and will permit all such books and

11

**Exhibit 2**



records (including without limitation all contracts, statements, invoices, bills and claims for labor, materials and services supplied for the construction, repair or operation of the Improvements) to be inspected or audited and copies made by Mortgagee and its representatives during normal business hours and at any other reasonable times. Mortgagor represents that its chief executive office is as set forth in the introductory paragraph of this Mortgage and that all books and records pertaining to the Mortgaged Property are maintained at such location. Within ninety (90) days following the end of each calendar year, Mortgagor shall furnish a statement of the financial affairs and condition of the Mortgagor and the Mortgaged Property, including a statement of profit and loss for the Mortgagor and the Mortgaged Property in such format and in such detail as Mortgagee or its servicer may request, and setting forth the financial condition and the income and expenses for the Mortgagor and the Mortgaged Property for the immediately preceding calendar year, which shall be certified to by Mortgagor as being complete and accurate to the best of Mortgagor's knowledge and belief. Mortgagor shall deliver to Mortgagee copies of all income tax returns, requests for extension and other similar items contemporaneously with its delivery of same to the Internal Revenue Service. Failure to provide annual reports shall constitute an Event of Default under Section 22 and shall entitle Mortgagee to audit or cause to be audited Mortgagor's books and records. The late charge and the cost of such audit shall be immediately payable from Mortgagor upon demand by Mortgagee or, at Mortgagee's election, deducted from the Future Advance Fund, and, until paid, shall be added to, and constitute a part of the Debt. At any time and from time-to-time, Mortgagor shall deliver to Mortgagee or its agents such other financial data as Mortgagee or its agents shall request with respect to the ownership, maintenance, use and operation of the Mortgaged Property, including, but not limited to, schedules of gross sales or percentage rents under Leases. Mortgagor will permit representatives appointed by Mortgagee, including independent accountants, agents, attorneys, appraisers and any other persons, to visit and inspect during its normal business hours and at any other reasonable times any of the Mortgaged Property and to make photographs thereof, and to write down and record any information such representatives obtain, and shall permit Mortgagee or its representatives to investigate and verify the accuracy of the information furnished to Mortgagee under or in connection with this Mortgage or any of the other Loan Documents and to discuss all such matters with its officers, employees and representatives. Mortgagor will furnish to Mortgagee, at Mortgagor's expense, all evidence which Mortgagee may from time-to-time reasonably request as to the accuracy and validity of or compliance with all representations and warranties made by Mortgagor in the Loan Documents and satisfaction of all conditions contained therein.

RP-2022-538332

18.     **Performance of Other Agreements.** Mortgagor shall observe and perform each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

19.     **Further Acts; Sale of Loan and Advertising.** (a) Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, perform, execute, acknowledge and deliver any and all such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, Uniform Commercial Code financing statements or continuation statements, transfers and assurances as Mortgagee shall, from time to time, require to better assure and confirm unto Mortgagee the property and rights hereby mortgaged, conveyed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage. Mortgagor, on demand, will execute and deliver, and hereby authorizes Mortgagee to execute and deliver in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in the Mortgaged Property. Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including without limitation such rights and remedies available to Mortgagee pursuant to this paragraph.

(b)     Mortgagee (and its mortgage servicer and their respective assigns) shall have the right to disclose in confidence such financial information regarding Mortgagor, Guarantor or the Mortgaged

**Exhibit 2**



Property as may be necessary (i) to complete any sale or attempted sale of the Note or participations in the Loan (or any transfer of the mortgage servicing thereof) evidenced by the Note and the Loan Documents, (ii) to service the Note or (iii) to furnish information concerning the payment status of the Note to the holder or beneficial owner thereof, including, without limitation, all Loan Documents, financial statements, projections, internal memoranda, audits, reports, payment history, appraisals and any and all other information and documentation in the Mortgagee's files (and such servicer's files) relating to the Mortgagor, any Guarantor and the Mortgaged Property. This authorization shall be irrevocable in favor of the Mortgagee (and its mortgage servicer and their respective assigns), and Mortgagor and Guarantor waive any claims that they may have against the Mortgagee, its mortgage servicer and their respective assigns or the party receiving information from the Mortgagee pursuant hereto regarding disclosure of information in such files and further waive any alleged damages which they may suffer as a result of such disclosure.

(c)     The Mortgagor acknowledges that the Mortgagee may elect to sell the loan evidenced by the Note and the Loan Documents or a participation interest therein to a party who may pool the Loan with a number of other loans and to have the holder of such loans (most likely a special purpose REMIC) issue one or more classes of Mortgage-Backed Pass-Through Certificates ("**Certificates**"), which may be rated by one or more national rating agencies. Mortgagee (and its mortgage servicer and their respective assigns) shall be permitted to share any of the information referred to in subsection (b) above, whether obtained before or after the date of the Note, with the holders or potential holders of the Certificates, investment banking firms, rating agencies, accounting firms, custodians, successor mortgage servicers, law firms and other third-party advisory firms involved with the Loan and the Loan Documents or the Certificates. It is understood that the information provided by the Mortgagor to the Mortgagee (or its mortgage servicer and their respective assigns) or otherwise received by Mortgagee (or its mortgage servicer and their respective assigns) in connection with the loan evidenced by the Loan Documents may ultimately be incorporated into the offering documents for the Certificates and thus various prospective investors may also see some or all of the information. The Mortgagee (and its mortgage servicer and their respective assigns) and all of the aforesaid third-party advisors and professional firms shall be entitled to rely on the information supplied by, or on behalf of, the Mortgagor.

(d)     Mortgagee shall have the unrestricted right (but not the obligation) to disclose in any advertising of the Mortgagee at any time or from time to time the name of the Mortgagor (and/or the Maker of the Note, if not the same), Guarantor and, the Mortgaged Property and the nature of the Loan. This authorization shall be irrevocable in favor of the Mortgagee and Mortgagor and Guarantor shall waive any claims that they may have against the Mortgagee pursuant hereto regarding disclosure of such information in such advertising and shall further waive any alleged damages which they may suffer as a result of such disclosure

20.     **Recording of Mortgage, etc.** Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property and any instrument of further assurance, and all federal, state, county and municipal, fees, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. Mortgagor shall hold harmless and indemnify Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

21.     **Reporting Requirements.** Mortgagor agrees to give prompt notice to Mortgagee of the insolvency or bankruptcy filing of Mortgagor or the death, insolvency or bankruptcy filing of any Guarantor.

22.     **Events of Default.** The term "**Event of Default**" as used herein shall mean the occurrence or happening, at any time and from time to time, of any one or more of the following:

RP-2022-538332

**Exhibit 2**



(a)  if any portion of the Debt is not paid within ten (10) days from the date when the same is due;

(b)  if Mortgagor sells, conveys, alienates, mortgages, encumbers, pledges, or otherwise transfers any portion of the Mortgaged Property or permits the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, levied, pledged, or otherwise transferred without Mortgagee's prior written consent;

(c)  if any representation or warranty of Mortgagor, or of any Guarantor, made herein, in any Loan Document, any guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Mortgagee shall have been false or misleading in any material respect when made or thereafter becomes false or misleading in any material respect;

(d)  if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors or if Mortgagor or any Guarantor shall admit in writing its inability to pay, or Mortgagor's or any Guarantor's failure to pay, debts generally as the debts become due;

(e)  if a receiver, liquidator or trustee of Mortgagor or of any Guarantor shall be appointed or if Mortgagor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Mortgagor or any Guarantor or if Mortgagor or any Guarantor shall admit in writing its insolvency or bankruptcy or if any proceeding for the dissolution or liquidation of Mortgagor or of any Guarantor shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Mortgagor or such Guarantor, upon the same not being discharged, stayed or dismissed within sixty (60) days;

(f)  if Mortgagor shall default under any term, covenant, or condition of this Mortgage or any of the other Loan Documents other than as specified in any of the above subparagraphs;

(g)  if all or a substantial part of Mortgagor's assets (other than the Mortgaged Property) are attached, seized, subjected to a writ or distress warrant, or are levied upon (unless such attachment, seizure, writ, distress warrant or levy is vacated within sixty (60) days following the date of the same);

(h)  entry of a judgment in excess of $50,000.00 and the expiration of any appeal rights or the dismissal or final adjudication of appeals against Mortgagor (unless such judgment is vacated within sixty (60) days following the date of the same);

(i)  the Mortgage shall cease to constitute a first-priority lien on the Mortgaged Property (other than in accordance with its terms); and

(j)  seizure or forfeiture of the Mortgaged Property, or any portion thereof, or Mortgagor's interest therein, resulting from criminal wrongdoing or other unlawful action of Mortgagor, its affiliates, or any tenant in the Mortgaged Property under any federal, state, or local law.

23.  **Remedies.** Upon the occurrence of an Event of Default and subject to any applicable cure period, Mortgagee may, at Mortgagee's option, and by or through Trustee, by Mortgagee itself or otherwise, do any one or more of the following:

(a)  *Right to Perform Mortgagor's Covenants.* If Mortgagor has failed to keep or perform any covenant whatsoever contained in this Mortgage or the other Loan Documents, Mortgagee may, but shall not be obligated to any person to do so, perform or attempt to perform said covenant; and any payment made or expense incurred in the performance or attempted performance of any such covenant, together with

14

RP-2022-538332

**Exhibit 2**



any sum expended by Mortgagee that is chargeable to Mortgagor or subject to reimbursement by Mortgagor under the Loan Documents, shall be and become a part of the "**Debt,**" and Mortgagor promises, upon demand, to pay to Mortgagee, at the place where the Note is payable, all sums so incurred, paid or expended by Mortgagee, with interest from the date when paid, incurred or expended by Mortgagee at the Default Rate as specified in the Note.

(b)    *Right of Entry.* Mortgagee may, prior or subsequent to the institution of any foreclosure proceedings, enter upon the Mortgaged Property, or any part thereof, and take exclusive possession of the Mortgaged Property and of all books, records, and accounts relating thereto and to exercise without interference from Mortgagor any and all rights which Mortgagor has with respect to the management, possession, operation, protection, or preservation of the Mortgaged Property.

(c)    *Right to Accelerate.* Mortgagee may, without notice, demand, presentment, notice of nonpayment or nonperformance, protest, notice of protest, notice of intent to accelerate, notice of acceleration, or any other notice or any other action, all of which are hereby waived by Mortgagor and all other parties obligated in any manner whatsoever on the Debt, declare the entire unpaid balance of the Debt immediately due and payable, and upon such declaration, the entire unpaid balance of the Debt shall become immediately due and payable.

(d)    *Foreclosure; Power of Sale.* Mortgagee may institute a proceeding or proceedings, judicial, or nonjudicial, by advertisement or otherwise, for the complete or partial foreclosure of this Mortgage or the complete or partial sale of the Mortgaged Property under the power of sale contained herein or under any applicable provision of law. Mortgagee may sell the Mortgaged Property, and all estate, right, title, interest, claim and demand of Mortgagor therein, and all rights of redemption thereof, at one or more sales, as an entirety or in parcels, with such elements of real and/or personal property, and at such time and place and upon such terms as it may deem expedient, or as may be required by applicable law, and in the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Mortgaged Property.

(e)    *Rights Pertaining to Sales.* Subject to the requirements of applicable law and except as otherwise provided herein, the following provisions shall apply to any sale or sales of all or any portion of the Mortgaged Property under or by virtue of subsection (d) above, whether made under the power of sale herein granted or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale:

(i)    Trustee or Mortgagee may conduct any number of sales from time to time. The power of sale set forth above shall not be exhausted by any one or more such sales as to any part of the Mortgaged Property which shall not have been sold, nor by any sale which is not completed or is defective in Mortgagee's opinion, until the Debt shall have been paid in full. Any sale may be postponed or adjourned by public announcement at the time and place appointed for such sale or for such postponed or adjourned sale without further notice. It shall not be necessary for Trustee, Mortgagee or any public officer acting under execution or order of court to have present or constructively in its possession any of the Mortgaged Property. Any such sale or sales shall operate to divest all of the estate, right, title, interest, claim and demand whatsoever, whether under contract, at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and any and all persons claiming or who may claim the same, or any part thereof or any interest therein, by, through or under Mortgagor to the fullest extent permitted by applicable law. Upon any such sale or sales, Mortgagee may bid for and acquire the Mortgaged Property and, in lieu of paying cash, therefore, may make settlement for the purchase price by crediting against the Debt the amount of the bid made therefore, after deducting therefrom the expenses of the sale, the cost of any enforcement proceeding hereunder, and any other sums which Trustee or Mortgagee is authorized to deduct under the terms hereof, to the extent necessary to satisfy such bid.

15

**Exhibit 2**

(ii)　After each sale, Mortgagee, Trustee, or an officer of any court empowered to do so shall execute and deliver to the purchaser or purchasers at such sale a good and sufficient instrument or instruments granting, conveying, assigning, and transferring all right, title and interest of Mortgagor in and to the property and rights sold and shall receive the proceeds of said sale or sales and apply the same as specified in the Note. Any and all statements of fact or other recitals made in any of such instruments given by Trustee or Mortgagee shall be taken as conclusive and binding against all persons as to evidence of the truth of the facts so stated and recited. Each of Trustee and Mortgagee is hereby appointed the true and lawful attorney-in-fact of Mortgagor, which appointment is irrevocable and shall be deemed to be coupled with an interest, in Mortgagor's name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the property and rights so sold, Mortgagor hereby ratifying and confirming all that said attorney, or such substitute or substitutes shall lawfully do by virtue thereof.

(f)　*Mortgagee's Judicial Remedies.* Mortgagee, or Trustee upon written request of Mortgagee, may proceed by suit or suits, at law or in equity, to enforce the payment of the Debt to foreclose the liens and security interests of this Mortgage as against all or any part of the Mortgaged Property, and to have all or any part of the Mortgaged Property sold under the judgment or decree of a court of competent jurisdiction.

(g)　*Mortgagee's Right to Appointment of Receiver.* Mortgagee, as a matter of right and (i) without regard to the sufficiency of the security for repayment of the Debt and without notice to Mortgagor, (ii) without any showing of insolvency, fraud, or mismanagement on the part of Mortgagor, (iii) without the necessity of filing any judicial or other proceeding other than the proceeding for appointment of a receiver, and (iv) without regard to the then value of the Mortgaged Property, shall be entitled to the appointment of a receiver or receivers for the protection, possession, control, management and operation of the Mortgaged Property, including (without limitation) the power to collect the Rents, enforce this Mortgage and, in case of a sale and deficiency, during the full statutory period of redemption (if any), whether there be a redemption or not, as well as during any further times when Mortgagor, except for the intervention of such receiver, would be entitled to collection of such Rents. Mortgagor hereby irrevocably consents to the appointment of a receiver or receivers. Any receiver appointed pursuant to the provisions of this subsection shall have the usual powers and duties of receivers in such matters.

(h)　*Other Rights.* Mortgagee shall have and may exercise any and all other rights and remedies which Mortgagee may have at law or in equity, or by virtue of any of the Loan Documents, or otherwise. For payment of the Debt, Mortgagee may resort to any collateral securing the payment of the Debt in such order and manner as Mortgagee may elect.

(i)　*Discontinuance of Remedies.* In case Mortgagee shall have proceeded to invoke any right, remedy, or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon same for any reason, Mortgagee shall have the unqualified right so to do and, in such event, Mortgagor and Mortgagee shall be restored to their former positions with respect to the Debt, the Loan Documents, the Mortgaged Property or otherwise, and the rights, remedies, recourses and powers of Mortgagee shall continue as if same had never been invoked.

(j)　*Remedies Cumulative.* All rights, remedies, and recourses of Mortgagee granted in the Note, this Mortgage and the other Loan Documents, any other pledge of collateral, or otherwise available at law or equity: (i) shall be cumulative and concurrent; (ii) may be pursued separately, successively, or concurrently against Mortgagor, the Mortgaged Property, or any one or more of them, at the sole discretion of Mortgagee; (iii) may be exercised as often as occasion therefore shall arise, it being agreed by Mortgagor that the exercise or failure to exercise any of same shall in no event be construed as a waiver or release thereof or of any other right, remedy, or recourse; (iv) shall be nonexclusive; (v) shall not be conditioned upon Mortgagee exercising or pursuing any remedy in relation to the Mortgaged Property prior to Mortgagee bringing suit to recover the Debt; and (vi) in the event Mortgagee elects to bring suit on the Debt

16

**Exhibit 2**

and obtains a judgment against Mortgagor prior to exercising any remedies in relation to the Mortgaged Property, all liens and security interests, including the lien of this Mortgage, shall remain in full force and effect and may be exercised thereafter at Mortgagee's option.

(k)     *Waivers.* Mortgagor hereby irrevocably and unconditionally waives and releases: (i) all benefits that might accrue to Mortgagor by virtue of any present or future law exempting the Mortgaged Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption, or extension of time for payment; (ii) all notices of any Event of Default, except as expressly provided herein or of Trustee's exercise of any right, remedy, or recourse provided for under the Loan Documents; and (iii) any right to a marshalling of assets, a sale in inverse order of alienation or any other right to direct in any manner, the order of sale of any of the Mortgaged Property.

(l)     *Application of Proceeds.* The proceeds from any sale, lease, or other disposition made pursuant to this Mortgage, or the proceeds from the surrender of any insurance policies pursuant hereto, or any Rents collected by Mortgagee from the Mortgaged Property, or the Tax and Insurance Escrow Fund or the Future Advance Fund or sums received pursuant to Section 7 hereof, or proceeds from insurance which Mortgagee elects to apply to the Debt pursuant to Section 3 hereof, shall be applied by Trustee, or by Mortgagee, as the case may be, to the Debt in the following order and priority: (1) to the payment of all expenses of advertising, selling, and conveying the Mortgaged Property or any part thereof, and/or prosecuting or otherwise collecting Rents, proceeds, premiums or other sums, including reasonable attorneys' fees and a reasonable fee or commission to Trustee, not to exceed five percent of the proceeds thereof or sums so received; (2) to the remainder of the Debt as follows: first, to the remaining accrued but unpaid interest, second, to the matured portion of principal of the Debt, and third, to prepayment of the unmatured portion, if any, of principal of the Debt applied to installments of principal in inverse order of maturity; (3) the balance, if any or to the extent applicable, remaining after the full and final payment of the Debt to the holder or beneficiary of any inferior liens covering the Mortgaged Property, if any, in order of the priority of such inferior liens (Trustee and Mortgagee shall hereby be entitled to rely exclusively on a commitment for title insurance issued to determine such priority); and (4) the cash balance, if any, to the Mortgagor. The application of proceeds of sale or other proceeds as otherwise provided herein shall be deemed to be a payment of the Debt like any other payment. The balance of the Debt remaining unpaid, if any, shall remain fully due and owing in accordance with the terms of the Note and the other Loan Documents.

(m)     *Notice and Cure.* Except to the extent otherwise specifically set forth in this the Deed of Trust or the Note, or any other loan document related to the Note, it shall not be an Event of Default unless if any default shall occur which is not cured: (i) In the case of any default which can be cured by the payment of a sum of money, within ten (10) days after written notice from Mortgagee to Mortgagor; or (ii) In the case of any other default, within thirty (30) days after written notice from Mortgagee to Mortgagor, except that if said default cannot be cured within such thirty (30) of days, and provided that Mortgagor is diligently pursuing a cure and no other default is then existing, then, Mortgagor shall have an additional reasonable period to effect a cure, but in no event shall the entire cure period be more than sixty (60) days.

24.     **Right of Inspection.** Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property during normal business hours upon reasonable notice.

25.     **Security Agreement.** This Mortgage is both a real property mortgage or deed of trust and a "security agreement" within the meaning of the Uniform Commercial Code as adopted and enacted by the State in which any of the Mortgaged Property is located ("**Uniform Commercial Code**"). The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property. Mortgagor, by executing and delivering this Mortgage, has granted and hereby grants to Mortgagee, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the

RP-2022-538332

**Exhibit 2**



Page 18 of 29   Wednesday, August 30, 2023   County Clerk Harris County, Texas

RP-2022-538332

Uniform Commercial Code (said portion of the Mortgaged Property so subject to the Uniform Commercial Code being called in this paragraph the "**Collateral**"). Mortgagor hereby agrees with Mortgagee to execute and deliver to Mortgagee, in form and substance satisfactory to Mortgagee, such financing statements and such further assurances as Mortgagee may from time to time, reasonably consider necessary to create, perfect, and preserve Mortgagee's security interest herein granted. Notwithstanding the foregoing or anything else herein to the contrary, Mortgagor hereby authorizes Mortgagee to file all UCC Financing Statement forms, including but not limited to, Form UCC-1 and Form UCC-3 covering the Collateral, along with all attachments thereto with any and all filing entities that Mortgagee deemed necessary, at Mortgagor's expense; moreover, Mortgagor authorizes the Mortgagee to file one or more financing or continuation statement, and amendments thereto relating to all or any part of the Collateral without the signature of Mortgagor, where permitted by law. Mortgagor shall immediately give written notice to Mortgagee of any and all changes to Mortgagor's name, organizational status, state of organization, organization's chief operating office, and any other change that would affect the validity of any financing statement filing or perfection of lien or security interest. This Mortgage shall also constitute a "fixture filing" for the purposes of the Uniform Commercial Code. All or part of the Mortgaged Property are or are to become fixtures. Information concerning the security interest herein granted may be obtained from the parties at the addresses of the parties set forth in the first paragraph of this Mortgage. If an Event of Default shall occur, Mortgagee, in addition to any other rights and remedies which they may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee, Mortgagor shall, at its expense, marshal the Collateral and make it available to Mortgagee at a convenient place accessible to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including all costs, expenses, and reasonable attorneys' fees, incurred, or paid by Mortgagee in protecting the interest in the Collateral and in enforcing the rights hereunder with respect to the Collateral. Any notice of sale, disposition, or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper. If Mortgagee shall require the filing or recording of additional Uniform Commercial Code forms or continuation statements, Mortgagor shall, promptly after request, execute, where applicable, file and record such Uniform Commercial Code forms or continuation statements as Mortgagee shall deem necessary, and shall pay all expenses and fees in connection with the filing and recording thereof, it being understood and agreed, however, that no such additional documents shall increase Mortgagor's obligations under the Note, this Mortgage and the other Loan Documents. Mortgagor hereby irrevocably appoints Mortgagee as its attorney-in-fact, coupled with an interest, to file with the appropriate public office on its behalf any financing or other statements signed only by Mortgagee, as Mortgagor's attorney-in-fact, in connection with the Collateral covered by this Mortgage. Notwithstanding the foregoing, Mortgagor shall appear and defend in any action or proceeding which affects or purports to affect the Mortgaged Property and any interest or right therein, whether such proceeding effects title or any other rights in the Mortgaged Property (and in conjunction therewith, Mortgagor shall fully cooperate with Mortgagee in the event Mortgagee is a party to such action or proceeding).

26.   **Assignment of Leases and Rents**. The Leases and Rents are assigned to Mortgagee on the following terms, covenants, and conditions:

(a)   *Warranties Regarding Leases and Rents*. Mortgagor warrants to Mortgagee that (a) Mortgagor is the sole owner of the entire lessor's interest in the Leases; (b) the Leases are valid, enforceable and in full force and effect and have not been altered, modified or amended in any manner whatsoever except as disclosed to Mortgagee; (c) neither the Leases nor the Rents reserved in the Leases have been assigned or otherwise pledged or hypothecated; (d) none of the Rents have been collected for

18

**Exhibit 2**



RP-2022-538332

more than one (1) month in advance; (e) the premises demised under the Leases have been completed and Lessees under the Leases have accepted the same and have taken possession of the same on a rent-paying basis except as explicitly identified on the certified rent roll delivered by Mortgagor to Mortgagee; and (f) there exist no offsets or defenses to the payment of any portion of the Rents.

    (b)    *Covenants Regarding Leases and Rents.* Mortgagor covenants with Mortgagee that Mortgagor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send to Mortgagee copies of all notices of default which Mortgagor shall receive under the Leases; (iii) shall not collect any Rents more than one (1) month in advance; (iv) shall not execute any other assignment of lessor's interest in the Leases or the Rents; (v) shall execute and deliver at the request of Mortgagee all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Mortgagee shall from time to time require; (vi) shall not enter into any new lease of the Mortgaged Property without the prior written consent of Mortgagee, and in any event, any new Lease shall be on a form of lease approved by Mortgagee; (vii) shall deliver to Mortgagee, upon request, tenant estoppel certificates from each commercial Lessee at the Mortgaged Property in form and substance reasonably satisfactory to Mortgagee (provided, however, that Mortgagor shall not be required to deliver such certificates more frequently than two [2] times in any calendar year); and (viii) shall deliver to Mortgagee, at Mortgagee's request, executed copies of all Leases now existing or hereafter arising.

    (c)    *Enforcement of Existing Leases.* Except to the extent that Mortgagor is acting in the ordinary course of business as a prudent operator of property similar to the Mortgaged Property, Mortgagor (i) shall promptly send to Mortgagee copies of all notices of default which Mortgagor shall send to Lessees under the Leases; (ii) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the Lessees thereunder to be observed or performed, short of termination thereof; (iii) shall not alter, modify or change the terms of the Leases without the prior written consent of Mortgagee, or cancel or terminate the Leases or accept a surrender thereof or take any other action which would effect a merger of the estates and rights of, or a termination or diminution of the obligations of, Lessees thereunder; provided however, that any Lease may be canceled if, at the time of cancellation thereof, a new Lease is entered into on substantially the same terms or more favorable terms as the canceled Lease; (iv) shall not alter, modify or change the terms of any guaranty of any of the Leases or cancel or terminate any such guaranty without the prior written consent of Mortgagee; (v) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Mortgagee; and (vi) shall not waive, release, reduce, discount or otherwise discharge or compromise the payment of any of the Rents to accrue under the Leases.

    (d)    *New Leases.* Mortgagor further covenants with Mortgagee that (i) all Leases shall be written on the standard form of lease which has been approved by Mortgagee; (ii) no material changes may be made to the Mortgagee-approved standard lease without the prior written consent of Mortgagee; (iii) all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates and shall be arm's-length transactions; (iv) all Leases shall provide that (A) they are subordinate to the Mortgage and any other indebtedness now or hereafter secured by the Mortgaged Property, (B) Lessees agree to attorn to Mortgagee (such attornment to be effective upon Mortgagee's acquisition of title to the Mortgaged Property), (C) Lessees agree to execute such further evidences of attornment as Mortgagee may from time to time request, (D) the attornment of Lessees shall not be terminated by foreclosure, (E) Mortgagee may, at Mortgagee's option, accept or reject such attornment, and (F) Lessees agree to furnish, up to two times in any calendar year at such times as Mortgagee may request, a certificate signed by Lessee confirming and containing such factual certifications and representations deemed reasonably appropriate by Mortgagee; and (v) all new Leases shall be subject to the prior approval of Mortgagee.

    (e)    *Present Assignment.* This assignment constitutes a present, absolute assignment and is not an assignment for additional security only. Mortgagor agrees to execute and deliver to Mortgagee such additional instruments, in form and substance satisfactory to Mortgagee, as may hereinafter be requested

<div align="center">19</div>

**Exhibit 2**



by Mortgagee to further evidence and confirm said assignment. Mortgagee is hereby granted and assigned by Mortgagor the right to enter the Mortgaged Property for the purpose of enforcing its interest in the Leases and the Rents, this assignment constituting a present, absolute, and unconditional assignment of the Leases and Rents. Nevertheless, subject to the terms of this paragraph, Mortgagee grants to Mortgagor a revocable license to operate and manage the Mortgaged Property and to collect the Rents. Mortgagor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums. Upon an Event of Default, the license granted to Mortgagor herein shall automatically be revoked and Mortgagee shall immediately be entitled to receive and apply all Rents, whether or not Mortgagee enters upon and takes control of the Mortgaged Property.

(f)  *Rights of Mortgagee.* Upon or at any time after an Event of Default, Mortgagee may, at its option, without waiving such Event of Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, take possession of the Mortgaged Property and have, hold, manage, lease and operate the Mortgaged Property on such terms and for such period of time as Mortgagee may deem proper and either with or without taking possession of the Mortgaged Property in its own name, demand, sue for or otherwise collect and receive all Rents, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Mortgagee and may apply the Rents to the payment of the following in such order and proportion as Mortgagee in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (i) all expenses of managing, operating, maintaining and securing the Mortgaged Property as Mortgagee may deem necessary or desirable and all expenses of the Mortgaged Property; and (ii) the Debt. For purposes of this and the preceding paragraph, Mortgagor grants to Mortgagee its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Mortgagee for the proper management and preservation of the Mortgaged Property.

(g)  *No Liability of Mortgagee.* Mortgagee shall not be liable for any loss sustained by Mortgagor resulting from Mortgagee's failure to secure a new tenant to lease the Mortgaged Property after an Event of Default or from any other act or omission of Mortgagee in managing the Mortgaged Property after an Event of Default unless such loss is caused by the willful misconduct and bad faith of Mortgagee. Mortgagee shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or under or by reason of this assignment and Mortgagor agrees to protect, defend, indemnify, and hold Mortgagee harmless from and against any and all liability, loss or damage which may or might be incurred under the Leases or under or by reason of this assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Mortgagee. This assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Mortgaged Property upon Mortgagee; nor shall it operate to make Mortgagee responsible or liable for any waste committed on the Mortgaged Property, including without limitation the presence of any Hazardous Substances (as defined in the Environmental Liabilities Agreement executed by Mortgagor to Mortgagee of even date herewith), or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any Lessee, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Mortgagee a "mortgagee in possession" in the absence of the taking of actual possession of the Mortgaged Property by Mortgagee.

(h)  *Notice to Lessees.* Mortgagor hereby authorizes and directs Lessees named in the Leases or any other or future Lessees or occupants of the Mortgaged Property ("Lessee[s]") upon receipt from Mortgagee of written notice to the effect that Mortgagee is then the holder of the Note and that an Event of Default exists thereunder or under the other Loan Documents to pay over to Mortgagee all Rents and to continue so to do until otherwise notified by Mortgagee, without further notice or consent of Mortgagor and regardless of whether Mortgagee has taken possession of the Mortgaged Property, and Lessees may rely upon any written statement delivered by Mortgagee to Lessees without any obligation or right to inquire as to whether such default actually exists and notwithstanding any notice from or claim of Mortgagor to the contrary.

20

**Exhibit 2**

(i)    *Security Deposits.* All security deposits of Lessees, whether held in cash or any other form, shall be treated by Mortgagor as trust funds, shall not be commingled with any other funds of Mortgagor and, if in the form of cash, shall be deposited by Mortgagor in one or more segregated accounts at such commercial banks as is reasonably satisfactory to Mortgagee. Following the occurrence and during the continuance of any Event of Default, Mortgagor shall, upon Mortgagee's request, if permitted by applicable legal requirements, turn over to Mortgagee the security deposits (and any interest theretofore earned thereon) with respect to all or any portion of the Mortgaged Property, to be held by Mortgagee subject to the terms of the Leases.

27.    **Indemnification.** In addition to any other indemnifications provided in any of the Loan Documents, Mortgagor shall protect, defend, indemnify and hold Mortgagee, its subsidiaries, affiliates, persons controlling or under common control with Mortgagee, their agents, officers, directors, shareholders, employees, servants, consultants, representatives and their respective successors and assigns and Trustee (collectively, the **"Indemnified Parties"**) harmless from and against all liabilities, obligations, claims, demands, damages, penalties, causes of action, losses, fines, costs and expenses (including without limitation reasonable attorneys' fees and expenses), imposed upon or incurred by or asserted against any of the Indemnified Parties by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (d) any representation or warranty made in the Note, this Mortgage or the other Loan Documents being false or misleading in any respect as of the date such representation or warranty was made; (e) any claim by brokers, finders or similar persons claiming to be entitled to a commission in connection with any Lease or other transaction involving the Mortgaged Property or any part thereof under any legal requirement or any liability asserted against Mortgagee with respect thereto; and (f) the claims of any lessee to any portion of the Mortgaged Property or any person acting through or under any lessee or otherwise arising under or as a consequence of any Lease. Any amounts payable to any of the Indemnified Parties by reason of the application of this paragraph shall be secured by this Mortgage, become immediately due and payable, and bear interest at the Default Rate specified in the Note from the date that loss or damage is sustained by any of the Indemnified Parties until paid. The obligations and liabilities of Mortgagor under this Section 27 (A) shall survive for a period of one (1) year following any release of this Mortgage executed by Mortgagee and satisfaction of the loan evidenced by the Loan Documents, and (B) shall survive the transfer or assignment of this Mortgage, the entry of a judgment of foreclosure, the sale of the Mortgaged Property by nonjudicial foreclosure sale, or the delivery of a deed in lieu of foreclosure (including, without limitation, any transfer by Mortgagor of any of its rights, title and interest in and to the Mortgaged Property to any party, whether or not affiliated with Mortgagor).

28.    **Trustee.** Trustee may resign by the giving of notice of such resignation in writing to Mortgagee. If Trustee shall die, resign, or become disqualified from acting in the execution of this trust, or if, for any reason, Mortgagee shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Mortgagee shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers, and duties of the aforenamed Trustee. Such appointment may be executed by any authorized agent of Mortgagee, and if such Mortgagee be a corporation and such appointment be executed in its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation. Mortgagor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute Trustees are appointed, each of such multiple substitute Trustees shall be empowered and authorized to act alone without the necessity of the

21

RP-2022-538332

**Exhibit 2**

joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Mortgage or applicable law. Any substitute Trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed, or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its or his predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Mortgagee or of the substitute Trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute Trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute Trustee so appointed in the Trustee's place. No fees or expenses shall be payable to Trustee, except in connection with a foreclosure of the Mortgaged Property or any part thereof or in connection with the release of the Mortgaged Property following payment in full of the Debt.

29.     **Notices.** Unless oral notice is expressly permitted hereunder any notice, demand, statement, request or consent made hereunder shall be in writing and shall be deemed to be received by the addressee on the first (1st) business day after such notice is tendered to a nationally-recognized overnight delivery service or on the third (3rd) day following the day such notice is deposited with the United States postal service first class certified mail, return receipt requested, in either instance, addressed to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Mortgagor or Mortgagee, as the case may be, shall in like manner designate in writing.

30.     **Authority.** (a) Mortgagor (and the undersigned representative of Mortgagor, if any) has full power, authority and right to execute, deliver and perform its obligations pursuant to this Mortgage, and to encumber the Mortgaged Property pursuant to the terms hereof; and (b) Mortgagor represents and warrants that Mortgagor is not a **"foreign person"** within the meaning of Section 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations.

31.     **Sole Discretion of Mortgagee.** Wherever pursuant to this Mortgage, Mortgagee exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Mortgagee, the decision of Mortgagee to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Mortgagee and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

32.     **Non-Waiver; No Oral Change.** The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. This Mortgage may not be modified, amended, waived, extended, changed, discharged, or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge, or termination is sought.

33.     **Liability; Successors and Assigns.** If Mortgagor consists of more than one person, the obligations, and liabilities of each such person hereunder shall be joint and several. Subject to the provisions hereof requiring Mortgagee's consent to any transfer of the Mortgaged Property, this Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns forever.

34.     **Inapplicable Provisions; Headings, etc.; Counterparts.** (a) If any term, covenant or condition of this Mortgage is held to be invalid, illegal or unenforceable in any respect, this Mortgage shall be construed without such provision, (b) the headings and captions of various paragraphs of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof and (c) this Mortgage may be executed in any number of counterparts each of which shall be deemed to be an original but all of which when taken together shall constitute one agreement.

RP-2022-538332

**Exhibit 2**



Page 23 of 29   Wednesday, August 30, 2023   County Clerk Harris County, Texas

RP-2022-538332

35. **Definitions**. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and, whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa. For all purposes herein, the terms: (i) **"Mortgagor"** shall mean "each Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein" and shall include the Maker of the Note if the Mortgagor and the Maker of the Note are not the same; (ii) **"Mortgagee"** shall mean "Mortgagee and any subsequent holder of the Note"; (iii) **"Debt"** shall mean "indebtedness under the Note and other Loan Documents and any other evidence of indebtedness secured by this Mortgage"; (iv) **"person"** shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity; (v) **"Mortgaged Property"** shall include any portion of the Mortgaged Property and any interest therein; and (vi) **"attorneys' fees"** shall include any and all attorneys' fees, paralegal and law clerk fees, including, but not limited to, fees at the pre-trial, trial and appellate levels incurred or paid by Mortgagee in protecting its interest in the Mortgaged Property and Collateral and enforcing its rights hereunder.

36. **Homestead**. Mortgagor hereby waives and renounces all homestead and exemption rights provided by the constitution and the laws of the United States and of the state in which the Mortgaged Property is located, in and to the Premises as against the collection of the Debt, or any part hereof.

37. **Assignments**. Mortgagee shall have the right to assign or transfer its rights under this Mortgage and the other Loan Documents, including, without limitation, the right to assign or transfer its rights to a servicing agent. Any assignee or transferee shall be entitled to all the benefits afforded Mortgagee under this Mortgage and the other Loan Documents.

38. **Survival of Obligations; Survival of Warranties and Representations**. Each and all of the covenants and obligations of Mortgagor (other than warranties and representations contained herein) shall survive the execution and delivery of the Loan Documents and shall continue in full force and effect until the Debt shall have been paid in full; provided, however, that nothing contained in this paragraph shall limit the obligations of Mortgagor except as otherwise set forth herein. In addition, any and all warranties and representations of Mortgagor contained herein shall survive the execution and delivery of the Loan Documents and (i) shall continue for a period of one (1) year following any release of this Mortgage executed by Mortgagee and satisfaction of the loan evidenced by the Loan Documents, and (ii) shall survive the transfer or assignment of this Mortgage, the entry of a judgment of foreclosure, sale of the Mortgaged Property by non-judicial foreclosure or deed in lieu of foreclosure (including, without limitation, any transfer of the Mortgage by Mortgagee of any of its rights, title and interest in and to the Mortgaged Property to any party, whether or not affiliated with Mortgagee). Any and all representations, warranties, covenants, and agreements made in this Mortgage (and/or in other Loan Documents) shall survive any investigation or inspection made by or on behalf of Mortgagee.

39. **Covenants Running with the Land**. All covenants, conditions, warranties, representations, and other obligations contained in this Mortgage and the other Loan Documents are intended by Mortgagor, Mortgagee and Trustee to be, and shall be construed as, covenants running with the Mortgaged Property until the lien of this Mortgage has been fully released by Mortgagee.

40. **Governing Law; Jurisdiction**. THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE MORTGAGED PROPERTY IS LOCATED (WITHOUT REGARD TO ANY CONFLICT OF LAWS PRINCIPLES) AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA. MORTGAGOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY COURT OF COMPETENT JURISDICTION LOCATED IN THE STATE IN WHICH THE MORTGAGED PROPERTY IS LOCATED IN CONNECTION WITH ANY

**Exhibit 2**

PROCEEDING OUT OF OR RELATING TO THIS MORTGAGE.

41. **Time.** Time is of the essence in this Mortgage and the other Loan Documents.

42. **No Third-Party Beneficiaries; Relationship of Parties.** The provisions of this Mortgage and the other Loan Documents are for the benefit of Mortgagor, Mortgagee and Trustee and shall not inure to the benefit of any third party (other than any successor or assignee of either Trustee or Mortgagee). The relationship of Mortgagee and Mortgagor is solely that of debtor and creditor, and Mortgagee has no fiduciary or other special relationship with the Mortgagor, and no term or condition of any of the Loan Documents shall be construed to be other than that of debtor and creditor. Mortgagor represents and acknowledges that the Loan Documents do not provide for any shared appreciation rights or other equity participation interest.

43. **Trustee Provisions.** In the event that this Mortgage operates as a mortgage, the provisions of this Mortgage which pertain to the Trustee shall be of no force or effect.

44. **Subrogation.** If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Mortgaged Property, then, to the extent of such funds so used, Mortgagee shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Mortgaged Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Mortgagee and are merged with the liens and security interests created herein as cumulative security for the repayment of the Debt and the performance and discharge of any and all obligations arising hereunder or otherwise. In the event a portion of the Debt cannot be lawfully secured against the Mortgaged Property by this Mortgage under applicable laws, it is agreed that the payments first made on the Debt shall be applied to the discharge of that portion of the Debt which cannot be so lawfully secured.

45. **Cross-collateralization.** In addition to the Note, all liens, security interests, assignments, suretyship obligations, stock pledges, rights and remedies granted to the Lender in the Loan Documents secure all obligations, debts and liabilities, plus interest thereon, of the Mortgagor to the Lender, as well as claims by the Lender against the Mortgagor, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, absolute or contingent, whether the Mortgagor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

[Remainder of Page Left Blank]

RP-2022-538332

**Exhibit 2**



Mortgagor has executed this instrument the day and year first above written.

**MORTGAGOR**:

9201 MEMORIAL DR LLC,
a Wyoming limited liability company,

By: _____
Jennifer MacGeorge,
its General Counsel

## ACKNOWLEDGEMENT

THE STATE OF TEXAS            §
                             §
COUNTY OF ___Harris___       §

    This instrument was acknowledged before me on the 2ⁿᵈ day of November 2022, by JENNIFER MacGEORGE, in her capacity as the General Counsel of 9201 MEMORIAL DR LLC, a Wyoming limited liability company, on behalf of said business limited liability company.

_____
NOTARY PUBLIC, STATE OF TEXAS

SCARLET MACGEORGE
My Notary ID # 124519627
Expires April 9, 2023

Signature Page — Deed of Trust

**Exhibit 2**

RP-2022-538332

Page 26 of 29   Wednesday, August 30, 2023

County Clerk Harris County, Texas

RP-2022-538332

## EXHIBIT A

### Legal Description of 9201 Memorial, Houston, Texas 77024

A tract of land containing **1.34 acres** being out of Lot 4, Peter Wilson Tract Division, and Lot 2 of Bayou Woods Subdivision, Section 2, a subdivision in Harris County Texas as recorded in Volume 18, Page 46 of the Map Records of said Harris County, Texas, and being the same tract of land as described in deed to James Tang under Clerk's File Number L423456 of the Real Property Records of said Harris County, said tract of land being more particularly described by metes and bounds as follows:

**BEGINNING** at a 1" Iron pipe (found) at the northwest corner of the herein described tract, and being the northeast corner of Lot 1, Block 1 of Bayou Woods Section 2, Partial Replat No. 2, as recorded under Film Code Number 666296 of said Map Records, and being located on a southerly right-of-way line of Memorial Drive (100 feet in width);

**THENCE** along the north line of said Tang tract with said southerly right-of-way line of Memorial Drive along a curve to the right having a radius of 1860 feet and a central angle of 08 deg 44 min 11 see, an arc length of 283.61 feet having a chord hearing of S 82 deg 06 min 00 sec E and a chord distance of 283.34 feet to a capped Iron rod (set) at the northeast turner of the herein described tract, bring the intersection of said southerly right-of-way line of Memorial Drive with the westerly right-of-way line of Buckingham Drive (60 feet in width);

**THENCE** S 31 deg 38 min 00 sec W along the east line of said Tang tract, with said westerly right-of-way line of Buckingham Drive, passing at a distance of 250.36 feet the northeast corner of Lot 2 of said Bayou Woods Section 2, a total distance of 254.36 feet to the Point of Beginning of a curve to the left in said westerly right-of-way line of Buckingham Drive;

**THENCE** continuing along the east line of said Tang tract and Lot 2 and the westerly right-of-way line of Buckingham Drive along a curve to the left having a radius of 1111.44 feet and a central angle of 02 deg 25 min 45 sec, an are length of 47.12 feet having a chord bearing of S 30 deg 25 min 08 sec W and a chord distance of 47.12 feet to a capped iron red (set) at the southeast corner of the herein described tract and being the northeast corner of a tract of land being a Part of Lot 2 of said Bayou Woods, Section 2 as described in deed to AZ Revocable Trust under Clerk's File Number 20110460652;

**THENCE** N 71 deg 28 min 00 sec W departing said westerly right-of-way line of Buckingham Drive along The south line of said Tang tract and the north line of said AZ Revocable Trust tract passing through a portion of Lot 2, a distance of 156.18 feet to a capped Iron rod (set) at the southwest corner of the herein described tract, being located on an easterly line of said Lot 1, Block 1 of Bayou Woods Section 2, Partial Replat No. 2;

**THENCE** N 09 deg 19 min 00 see E along the southwest line of said Tang tract and the westerly tine of Lot 2 with the easterly line of Lot 1, a distance of 50.56 feet to a capped iron rod (set) at the northwest orner of Lot 2, being an angle point in the westerly line of said Tang tract;

Exhibit A



**Exhibit 2**

**THENCE** N 04 deg 48 min 00 sec E along the northwest line of said Tang tract with the easterly line of Lot 1, a distance of 197.30 feet to the **POINT OF BEGINNING** and containing **1.34 acres** of land.

RP-2022-538332

Exhibit A

**Exhibit 2**



## EXHIBIT B
### PERMITTED EXCEPTIONS

Each of the liens and other encumbrances set forth in Schedule B to the title insurance commitment issued by Fidelity National Title Agency Inc. as Policy Issuing Agent for Fidelity National Title Insurance Company issued October 17, 2022 and effective October 9, 2022, identified as GF No. FTH-77F-FAH22012994, relating to the Land and delivered to Mortgagee.

RP-2022-538332

Exhibit B

**Exhibit 2**



County Clerk Harris County, Texas

RP-2022-538332

RP-2022-538332
# Pages 29
11/04/2022 08:23 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
TENESHIA HUDSPETH
COUNTY CLERK
Fees   $126.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

**Exhibit 2**





I, Teneshia Hudspeth, County Clerk of Harris County, Texas certify that these pages are a true and correct copy of the original record filed and recorded in my office, electronically or hard copy, as it appears on this date.

Witness my official hand and seal of office
This August 30, 2023

Teneshia Hudspeth, County Clerk
Harris County, Texas

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.



**Exhibit 2**

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2023-4999

FILED 8/14/2023 3:53:04 PM

# NOTICE OF FORECLOSURE SALE

ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE-DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.

## RECITALS:

A. The undersigned is the current owner and holder of the Promissory Note described below.

B. The Promissory Note is secured by the Deed of Trust described below.

C. The Borrower named below is in default under the Promissory Note and the Deed of Trust and the default has not been cured after receiving notice of default and opportunity to cure.

D. The undersigned has accelerated the indebtedness evidenced by the Promissory Note.

## NOTICE OF FORECLOSURE SALE:

Notice is given that the Property described below shall be sold at public auction on the date, at the time, and in accordance with the terms contained in this Notice of Foreclosure Sale and the applicable laws of the State of Texas.

1. **Date, Time, and Place of Sale:**

   **Date:** The sale shall be held on Tuesday, September 5, 2023.

   **Time:** The sale will begin at 10:00 AM and will be conducted within three hours thereafter.

   **Place:** In the area designated by the Commissioners Court of such County, pursuant to § 51.002 of the Texas Property Code as the place where foreclosure sales are to take place (if no such place is so designated, the sale will take place in the area where this Notice of Foreclosure Sale is posted).

2. **Terms of Sale:**

   Because of the default in performance of the obligations secured by the Deed of Trust, the Substitute Trustee will sell the property "As Is" by public auction to the highest bidder for cash.

3. **Instrument to be Foreclosed:**

   The security instrument to be foreclosed is the Deed of Trust dated November 2, 2022, by 2727 KIRBY 26L LLC as grantor(s), to Gary Lancaster, as Trustee, for the benefit of Cypress

**Exhibit 3**



TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2023-4999

FILED 8/14/2023 3:53:04 PM

Bridgeco, LLC as beneficiary, and recorded under **RP-2022-538321** in the official public records of Harris County, Texas.

**4.     Name and Address of Substitute Trustee:**

The name of the Substitute Trustee is: Brandon L. Collins.

The address of the Substitute Trustee is: 12140 Wickchester Drive, Suite 111, Houston, Texas 77079.

**5.     Obligations Secured:**

The indebtedness evidenced by the Promissory Note in the original principal amount of Two million seventy-nine thousand dollars ($2,079,000.00), including all accrued and unpaid interest and all other amounts payable by the debtor[s] as described in the promissory note, any other related documents and all modifications, renewals, and extensions thereof. Cypress Bridgeco, LLC is the current lien holder of the Deed of Trust and the current owner and holder of the Promissory Note.

**6.     Property to Be Sold:**

The property to be sold is described as follows:

See attached **Exhibit A** incorporated herein as if set forth at length.

**7.     Additional Provisions:**

Default has occurred in the payment of the Promissory Note and in the performance of the obligations of the Deed of Trust. Because of that default, Cypress Bridgeco, LLC, the owner and holder of the Promissory Note and Deed of Trust, has requested Substitute Trustee to sell the Property.

The Deed of Trust may encumber both real and personal property. Formal notice is given of Cypress Bridgeco, LLC's election to proceed against and sell both the real property and any personal property described in the Deed of Trust in accordance with Cypress Bridgeco, LLC's rights and remedies under the Deed of Trust and Section 9.604(a) of the Texas Business and Commerce Code.

Notice is given that on and at the Date, Time, and Place for the Foreclosure Sale described above, Substitute Trustee will sell the Property in accordance with the Terms of Sale described above, the Deed of Trust and applicable Texas law.

If Cypress Bridgeco, LLC passes the Foreclosure Sale, notice of the date of any rescheduled foreclosure sale will be reposted and refiled in accordance with the posting and filing requirements of the Deed of Trust and the Texas Property Code.

The Foreclosure Sale will be made expressly subject to any title matters set forth in the Deed of Trust, but prospective bidders are reminded that by law the Foreclosure Sale will be made

**Exhibit 3**



Page 3 of 4    Wednesday, August 30, 2023        County Clerk Harris County, Texas

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2023-4999

FILED 8/14/2023 3:53:04 PM

subject to all prior matters of record affecting the Property, if any, to the extent that they remain in force and effect and have not been released or subordinated to the Deed of Trust. For the avoidance of doubt, the Foreclosure Sale will not cover any part of the Property that has been released of public record by Cypress Bridgeco, LLC from the security interest of the Deed of Trust. Prospective bidders are urged to examine the applicable property records to determine the nature and extent of such matters, if any.

Pursuant to Section 51.009 of the Texas Property Code, the Property will be sold "AS IS," without any expressed or implied warranties, except as to the warranties (if any) provided for under the Deed of Trust. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the Property.

Pursuant to Section 51.0075(a) of the Texas Property Code, Substitute Trustee reserves the right to set further reasonable conditions for conducting the Foreclosure Sale. Any such further conditions shall be announced before bidding is opened for the first sale of the day held by Substitute Trustee.

This Notice of Foreclosure Sale is executed this 14 day of August 2023.

LANCASTER LAW FIRM, PLLC

By: _____
Brandon L. Collins

12140 Wickchester Drive, Suite 111

Houston, Texas 77079

LENDER CONTACT:

Cypress Bridgeco, LLC
info@bridgecofinancial.com

3

**Exhibit 3**



TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2023-4999

FILED 8/14/2023 3:53:04 PM

## **EXHIBIT A**

Legal Description of 2727 Kirby Dr #26L, Houston, Texas 77098

UNIT L, LEVEL 26, OF 2727 KIRBY CONDOMINIUMS, A CONDOMINIUM PROJECT IN HARRIS COUNTY, TEXAS, TOGETHER WITH THE LIMITED COMMON ELEMENTS AND AN UNDIVIDED INTEREST IN AND TO THE GENERAL COMMON ELEMENTS, AS DEFINED IN THAT DECLARATION RECORDED IN FILM CODE NO. 205251, CONDOMINIUM RECORDS OF HARRIS COUNTY, TEXAS.

Page 4 of 4    Wednesday, August 30, 2023    County Clerk Harris County, Texas

**Exhibit 3**





I, Teneshia Hudspeth, County Clerk of Harris County, Texas certify that these pages are a true and correct copy of the original record filed and recorded in my office, electronically or hard copy, as it appears on this date.

Witness my official hand and seal of office
This August 30, 2023

**Teneshia Hudspeth, County Clerk**
**Harris County, Texas**

Confidential information may have been redacted from the document in compliance with the Public Information Act.



**Exhibit 3**

RP-2022-538321
11/04/2022 ER $122.00

---------------------------------[Space Above This Line For Recording Data] -----------------------------

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

After recording return to:

Cypress BridgeCo, LLC
A. Kelly Williams, Executive Vice President
12140 Wickchester Lane, Suite 100
Houston, Texas 77079
Tel: 713-600-2687
kelly.williams@bridgecofinancial.com

Prepared by:

Lancaster Law Firm PLLC
12140 Wickchester Lane, Suite 111
Houston, Texas 77079
Telephone: (832) 594-3825
glancaster@lancasterlawfirmpllc.com

*FAH2201 3499*

## MORTGAGE, DEED OF TRUST, SECURITY AGREEMENT
## AND ASSIGNMENT OF LEASES

THIS MORTGAGE, DEED OF TRUST, SECURITY AGREEMENT, and ASSIGNMENT OF LEASES (this "**Mortgage**") is made as of November _2_, 2022, by 2727 KIRBY 26L LLC, a Wyoming limited liability company ("**Mortgagor**"), having its principal place of business at 412 W. Polk Street #1, Houston, Texas 77019 to GARY LANCASTER ("**Trustee**"), the trustee hereunder to the extent that this Mortgage operates as a deed of trust, and to and for the benefit of CYPRESS BRIDGECO, LLC, a Texas limited liability company ("**Mortgagee**"), having its principal place of business at 12140 Wickchester Lane, Suite 100, Houston, Texas 77079, which is the mortgagee hereunder to the extent that this Mortgage operates as a mortgage, the grantee hereunder to the extent that this Mortgage operates as a deed to secure debt, and the beneficiary hereunder to the extent that this Mortgage operates as a deed of trust.

To secure (i) the payment of an indebtedness in the original principal sum in the amount referenced in the that certain note, to be paid with interest as described therein ("**Note**") dated the date hereof made by Mortgagor to Mortgagee, and all other sums, liabilities and obligations constituting the Debt (as defined in the Note), and (ii) the performance of the obligations and covenants herein contained, Mortgagor by these presents does hereby mortgage, give, grant, bargain, sell, alien, convey, confirm, warrant, pledge, assign and hypothecate unto Mortgagee and/or Trustee the following property, rights and estates ("**Mortgaged Property**"): (a) the real property described in Exhibit A attached hereto (the "**Premises**")

**Exhibit 3**



and the buildings, structures, fixtures and improvements now or hereafter located thereon ("**Improvements**"); (b) all right, title, interest and estate of Mortgagor now owned, or hereafter acquired, in and to all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, utility rights, air rights and development rights, and all estates, rights, titles, interests, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements; (c) all machinery, furnishings, equipment, fixtures (including, but not limited to, all heating, air conditioning, plumbing, lighting, communications, elevator, and other fixtures) and other property of every kind and nature (hereinafter collectively called the "**Equipment**") owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, including all building equipment, materials and supplies and the proceeds of any sale or transfer of the foregoing; (d) all awards or payments, including interest thereon, which may be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and Improvements; (e) all leases, subleases and other agreements affecting the use, enjoyment or occupancy of the Premises and the Improvements heretofore or hereafter entered into ("**Leases**") and all income, rents, issues, profits and revenues (including all oil and gas or other mineral royalties and bonuses) from the Premises and the Improvements ("**Rents**") and all proceeds from the sale or other disposition of the Leases; (f) all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property; (g) all accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code (as hereinafter defined, and all contract rights, franchises, books, records, plans, specifications, permits, licenses (to the extent assignable), approvals, actions, and causes of action which now or hereafter relate to, are derived from or are used in connection with the Premises, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively called the "**Intangibles**"); and (h) any and all proceeds and products of any of the foregoing and any and all other security and collateral of any nature whatsoever, now or hereafter given for the repayment of the Debt and the performance of Mortgagor's obligations under the Loan Documents.

**TO HAVE AND TO HOLD** the Mortgaged Property unto and to the use and benefit of Mortgagee and/or Trustee, and their successors and assigns, forever; PROVIDED, HOWEVER, these presents are upon the express condition that, if Mortgagor shall pay to Mortgagee the Debt at the time and in the manner provided in the Note and this Mortgage and shall abide by and comply with each and every covenant and condition set forth herein, in the Note and in the other Loan Documents in a timely manner, these presents and the estate hereby granted shall cease, terminate and be void.

Mortgagor represents and warrants to and covenants and agrees with Mortgagee as follows:

1.        **Warranty of Title.** Mortgagor warrants that (i) Mortgagor is (a) the sole owner of and has good, legal, marketable and insurable fee simple title to the Mortgaged Property, (b) possesses an unencumbered fee estate in the Premises and the Improvements, and (c) owns the Mortgaged Property free and clear of all liens, encumbrances and charges whatsoever, except for those exceptions shown in the title insurance policy insuring the lien of this Mortgage ("**Permitted Exceptions**") and (ii) this Mortgage is and will remain a valid and enforceable first lien on and security interest in the Mortgaged Property, subject only to said Permitted Exceptions. Mortgagor shall forever warrant, defend, and preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Mortgagee and/or Trustee against the claims of all persons whomsoever.

2.        **Taxes.** Mortgagor, at its sole cost and expense, will pay and discharge, or cause to be paid and discharged, the Taxes, as hereafter defined, not later than the earlier to occur of (i) the due date thereof, (ii) the day any fine, penalty, interest or cost may be added thereto or imposed, or (iii) the day any lien may

2

**Exhibit 3**



RP-2022-538321

be filed for the nonpayment thereof (if such day is used to determine the due date of the respective item) and Grantor shall deliver to Mortgagee a written report evidencing the payment of the respective Taxes. For purposes hereof, the term **"Taxes"** shall mean all real estate and personal property taxes, charges, assessments, standby fees, excises and levies and any interest, costs or penalties with respect thereto, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever which at any time prior to or after the execution hereof may be assessed, levied or imposed upon the Mortgaged Property or the ownership, use, occupancy, or enjoyment thereof, or any portion thereof.

3.        **Insurance.** (a) Mortgagor, at its sole cost and expense, will keep the Mortgaged Property insured during the entire term of this Mortgage for the mutual benefit of Mortgagor and Mortgagee against loss or damage by fire and against loss or damage by other risks and hazards covered by a standard extended coverage insurance policy and included within the classification "All Risks of Physical Loss". Such insurance shall be (i) in an amount equal to the lesser of the then full replacement cost of the Improvements and Equipment, without deduction for physical depreciation, or the outstanding amount of the Debt, and (ii) with extended coverage in amounts sufficient such that the insurer would not deem Mortgagor a co-insurer under said policies. The policies of insurance carried in accordance with this paragraph shall be paid annually in advance and shall contain the "Replacement Cost Endorsement" with a waiver of depreciation.

(b)        Mortgagor, at its sole cost and expense, for the mutual benefit of Mortgagor and Mortgagee, shall also obtain and maintain during the entire term of this Mortgage the following policies of insurance:

(i)        Flood insurance if any part of the Mortgaged Property now (or subsequently determined to be) is located in an area identified as being on land other than a 500 year flood plain or as otherwise identified by the Federal Emergency Management Agency as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (and any amendment or successor act thereto) in an amount at least equal to the lesser of the full replacement cost of the Improvements and the Equipment, the outstanding principal amount of the Note or the maximum limit of coverage available with respect to the Improvements and Equipment under said Act. Mortgagor hereby agrees to pay Mortgagee such fees as may be permitted under applicable law for the costs incurred by Mortgagee in determining, from time to time, whether the Mortgaged Property is then located within such area.

(ii)        Comprehensive General Liability insurance, including broad form property damage, blanket contractual and personal injuries (including death resulting therefrom) coverages and containing minimum limits per occurrence of $3 million for the Improvements and the Premises with excess umbrella coverage in an amount of at least $1 million arising out of any one occurrence.

(iii)        Rental loss insurance in an amount equal to the aggregate annual amount of all Rents payable under the Leases, such rental loss insurance to cover rental losses for a period of at least one year after the date of the fire or casualty in question. The amount of such rental loss insurance shall be reviewed annually and shall be increased from time to time during the term of this Mortgage to reflect all increased Rent payable under all Leases.

(iv)        Insurance against loss or damage from (1) leakage of sprinkler systems, and (2) explosion of steam boilers, air conditioning equipment, high pressure piping, machinery and equipment, pressure vessels or similar apparatus now or hereafter installed in the Improvements and including broad form boiler and machinery insurance (without exclusion for explosion) covering all boilers or other pressure vessels, machinery and equipment (including all electrical equipment, sprinkler systems, heating and air conditioning equipment, refrigeration equipment and piping) located in, on, or about the Premises and the Improvements, in an amount at least equal to the full replacement cost of such equipment and the building or buildings housing same.

3

**Exhibit 3**



RP-2022-538321

(v)     If the Mortgaged Property includes commercial property, worker's compensation insurance with respect to any employees of Mortgagor, as required by any governmental authority or legal requirement.

(vi)     Such other insurance as may from time to time be reasonably required by Mortgagee in order to protect its interests, including, but not limited to, environmental insurance.

(c)     All policies of insurance (**"Policies"**) required pursuant to Section 3: (i) shall contain a standard noncontributory mortgagee clause naming Mortgagee as the person to which all payments made by such insurance company shall be paid, (ii) shall be assigned and delivered to Mortgagee, (iii) shall contain endorsements providing that neither Mortgagor, Mortgagee nor any other party shall be a co-insurer under said Policies, (iv) Mortgagee shall receive at least thirty (30) days' prior written notice of any modification, reduction or cancellation, (v) shall be for a term of not less than one year, (vi) shall be satisfactory in form and substance to Mortgagee, (vii) shall be approved by Mortgagee as to amounts, form, risk coverage, deductibles, loss payees and insureds, and (viii) shall provide that all claims shall be allowable on events as they occur. Upon demand therefore, Mortgagor shall reimburse Mortgagee for all of Mortgagee's (or its servicer's) reasonable costs and expenses incurred in obtaining any or all of the Policies or otherwise causing the compliance with the terms and provisions of this Section 3, including (without limitation) obtaining updated flood hazard certificates and replacement of any so-called "forced placed" insurance coverages. All Policies required pursuant to subsections 3(a) and 3(b) shall be issued by an insurer and licensed in the state in which the Mortgaged Property is located with a claims paying ability rating of "A-" or better by Standard & Poor's Corporation or A: VIII or better by A.M. Best as published in Best's Key Rating Guide. Mortgagor shall pay the premiums for such Policies (**"Insurance Premiums"**) as the same become due and payable (unless such Insurance Premiums have been paid by Mortgagee pursuant to Section 5 hereof). Not later than **fifteen (15)** days prior to the expiration date of each of the Policies, Mortgagor will deliver to Mortgagee satisfactory evidence of the renewal of each Policy.

(d)     If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty, Mortgagor shall give prompt notice thereof to Mortgagee and the following shall apply:

(i)     In case of loss covered by Policies (an **"Insured Casualty"**), Mortgagee may either (1) settle and adjust any claim without the consent of Mortgagor, or (2) allow Mortgagor to agree with the insurance company on the amount to be paid upon the loss; provided that in any case Mortgagee shall and is hereby authorized to collect and receipt for any such insurance proceeds.

(ii)     In the event of any Insured Casualty, the net proceeds of insurance collected shall, at the option of Mortgagee in its sole discretion, be applied to the payment of the Debt or applied to reimburse Mortgagor for the cost of restoring, repairing, replacing, or rebuilding the Mortgaged Property or part thereof subject to the Insured Casualty, in the manner set forth below. Any such application to the Debt shall not reduce or postpone any payments otherwise required pursuant to the Note, other than the amount of the final payment on the Note.

(iii)     In the event that proceeds of insurance, if any, shall be made available to Mortgagor for the restoring, repairing, replacing, or rebuilding of the Mortgaged Property, Mortgagor hereby covenants to restore, repair, replace or rebuild the same to be of at least equal value and of substantially the same character as prior to such damage or destruction, all to be effected in accordance with applicable law and plans and specifications approved in advance by Mortgagee.

(iv)     In the event Mortgagor is entitled to reimbursement out of insurance proceeds held by Mortgagee, such proceeds shall be disbursed from time to time upon Mortgagee being furnished with (1) evidence satisfactory to it that the restoration, repair, replacement and rebuilding covered by the disbursement has been completed in accordance with plans and specifications approved by

4



**Exhibit 3**

Mortgagee, (2) evidence satisfactory to it of the estimated cost of completion of the restoration, repair, replacement and rebuilding, (3) funds, or, at Mortgagee's option, assurances satisfactory to Mortgagee that such funds are available, sufficient in addition to the net proceeds of insurance to complete the proposed restoration, repair, replacement and rebuilding, and (4) such architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of cost, payment and performance as Mortgagee may reasonably require and approve. With respect to disbursements to be made by Mortgagee: (A) no payment made prior to the final completion of the restoration, repair, replacement and rebuilding shall exceed eighty percent (80%) of the value of the work performed from time to time; (B) funds other than proceeds of insurance shall be disbursed prior to disbursement of such proceeds; and (C) at all times, the undisbursed balance of such proceeds remaining in the hands of Mortgagee, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Mortgagee by or on behalf of Mortgagor for that purpose, shall be at least sufficient in the reasonable judgment of Mortgagee to pay for the cost of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien and the costs described in subsection 3(d)(v) below. Any surplus which may remain out of insurance proceeds held by Mortgagee after payment of such costs of restoration, repair, replacement, or rebuilding shall be paid to any party entitled thereto.

(v)     Notwithstanding anything to the contrary contained herein, the proceeds of insurance reimbursed to Mortgagor in accordance with the terms and provisions of this Mortgage shall be reduced by the reasonable costs (if any) incurred by Mortgagee in the adjustment and collection thereof and in the reasonable costs incurred by Mortgagee of paying out such proceeds (including, without limitation, reasonable attorneys' fees and costs paid to third parties for inspecting the restoration, repair, replacement and rebuilding and reviewing the plans and specifications therefore).

4.     **Payment of Other Charges**. Mortgagor shall pay all assessments, water rates and sewer rents, ground rents, maintenance charges, other governmental impositions, and other charges, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (**"Other Charges"**) as the same become due and payable. Mortgagor will deliver to Mortgagee evidence satisfactory to Mortgagee that the Other Charges have been so paid or are not then delinquent no later than thirty (30) days following the date on which the Other Charges would otherwise be delinquent if not paid. Mortgagor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Mortgaged Property and shall promptly pay for all utility services provided to the Mortgaged Property.

5.     **Tax and Insurance Escrow Fund**. If initially required prior to the effective date of this Deed of Trust by mutual agreement of Mortgagor and Mortgagee, Mortgagor shall make an initial deposit to the Tax and Insurance Escrow Fund, as hereinafter defined, of an amount which, when added to the monthly amounts to be deposited as specified below, will be sufficient in the estimation of Mortgagee to satisfy the next due taxes, assessments, insurance premiums and other similar charges. Mortgagor shall pay to Mortgagee on the first day of each calendar month (a) one-twelfth of an amount which would be sufficient to pay all Taxes payable or estimated by Mortgagee to be payable, during the next ensuing twelve (12) months, and (b) one-twelfth of an amount which would be sufficient to pay the Insurance Premiums due for the renewal of the coverage afforded by the Policies upon the expiration thereof (said initial deposit and the amounts in [a] and [b] above are hereinafter called the **"Tax and Insurance Escrow Fund"**). Mortgagee may, in its sole discretion, retain a third-party tax consultant to obtain tax certificates or other evidence or estimates of tax due or to become due or to verify the payment of taxes and Mortgagor will promptly reimburse Mortgagee for the reasonable cost of retaining any such third parties or obtaining such certificates. Mortgagor hereby pledges (and grants a lien and security interest) to Mortgagee any and all monies now or hereafter deposited in the Tax and Insurance Escrow Fund as additional security for the payment of the Debt. Mortgagee will apply the Tax and Insurance Escrow Fund to payments of Taxes and

5

RP-2022-538321

**Exhibit 3**



Insurance Premiums required to be made by Mortgagor pursuant to Sections 2 and 3 hereof. If the amount of the Tax and Insurance Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to Sections 2 and 3 hereof, Mortgagee shall, in its discretion, return any excess to Mortgagor or credit such excess against future payments to be made to the Tax and Insurance Escrow Fund. If the Tax and Insurance Escrow Fund is not sufficient to pay the Taxes and Insurance Premiums due from time to time hereunder, Mortgagor shall promptly pay to Mortgagee, upon demand, an amount which Mortgagee shall estimate as sufficient to make up the deficiency. Upon the occurrence of an Event of Default, Mortgagee shall be entitled to exercise both the rights of setoff and banker's lien, if applicable, against the interest of Mortgagor in the Tax and Insurance Escrow Fund to the full extent of the outstanding balance of the Debt, application of any such sums to the Debt to be in any order in its sole discretion. The Tax and Insurance Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Mortgagee or its servicer. Unless otherwise required by applicable law, no earnings or interest on the Tax and Insurance Escrow Fund shall be payable to Mortgagor even if the Mortgagee or its servicer is paid a fee and/or receives interest or other income in connection with the deposit or placement of such fund (in which event such income shall be reported under Mortgagee's or its servicer's tax identification number, as applicable). Upon payment of the Debt and performance by Mortgagor of all its obligations under this Mortgage and the other Loan Documents, any amounts remaining in the Tax and Insurance Escrow Fund shall be refunded to Mortgagor.

6.      **Future Advance Escrow Fund.** If initially required prior to the effective date of this Deed of Trust by mutual agreement of Mortgagor and Mortgagee for anticipated or projected investments with respect to Other Property (as defined below) or the Mortgaged Property, Mortgagor shall pay to Mortgagee the agreed sum at Closing for Other Property and on the first day of each calendar month one-twelfth of the amount reasonably estimated by Mortgagee to be due for replacements, capital repairs, and other sums required to be made to the Mortgaged Property during each calendar year (all such monies being collectively referred to as the **"Future Advance Escrow Fund"**). Mortgagor hereby grants a lien and security interest in any Other Property and pledges to Mortgagee any and all monies now or hereafter deposited in the Future Advance Fund as additional security for the payment of the Debt. Mortgagee may, upon notice to Mortgagor, adjust the monthly amounts required to be deposited into the Future Advance Fund to a monthly amount equal to one-twelfth of the total amount estimated by Mortgagee to be required. So long as no Event of Default exists and is continuing, Mortgagee shall make disbursements from the Future Advance Fund for items specified in each approved Budget on a quarterly basis in increments of no less than $10,000.00 upon delivery by Mortgagor of Mortgagee's standard form of draw request accompanied by copies of paid invoices for the amounts requested and, if required by Mortgagee, lien waivers and releases from all parties furnishing materials and/or services in connection with the requested payment, delivery of such certificates and certifications as Mortgagee may require, including but not limited to a new certificate of occupancy for the portion of the Improvements covered by such repairs, if a new certificate of occupancy is required by applicable law, or a certification by Mortgagor that no new certificate of occupancy is required. Mortgagee may require an inspection of the Mortgaged Property in order to establish the amount required for deposit in the Future Advance Funds and/or prior to making a quarterly disbursement in order to verify completion of replacements and repairs. Mortgagee reserves the right to make any disbursement from the Future Advance Fund directly to the party furnishing materials and/or services. In the event that the amounts on deposit or available in the Future Advance Fund are inadequate to pay the costs of such repairs or capital expenditure, Mortgagor shall pay the amount of such deficiency. Upon the occurrence of an Event of Default, Mortgagee may apply any sums then present in the Future Advance Fund to the payment of the Debt in any order in its sole discretion. Upon payment of the Debt and performance by Mortgagor of all its obligations under this Mortgage and the other Loan Documents, any amounts remaining in the Future Advance Fund shall be refunded to Mortgagor. The Future Advance Fund shall not constitute a trust fund and may be commingled with other monies held by Mortgagee or its servicer. Unless otherwise required by applicable law, no earnings or interest on the Future Advance Fund shall be payable to Mortgagor even if the Mortgagee or its servicer is paid a fee and/or receives interest or other income in connection with the deposit or placement of such fund (in which event such income shall be reported under Mortgagee's or its servicer's tax identification number, as applicable). For all purposes of this Paragraph 6, the term **"Other**

6

RP-2022-538321

**Exhibit 3**

Property" means real property other than the Mortgaged Property originally subject to this Mortgage purchased, in whole or in part, with monies from the Future Advance Fund that hereafter becomes subject to the Mortgage.

7. **Condemnation.** Mortgagor shall promptly give Mortgagee written notice of the actual or threatened commencement of any condemnation or eminent domain proceeding and shall deliver to Mortgagee copies of any and all papers served in connection with such proceedings. Mortgagee is hereby irrevocably appointed as Mortgagor's attorney-in-fact, coupled with an interest, with exclusive power to collect, receive and retain any award or payment for said condemnation or eminent domain and to make any compromise or settlement in connection with such proceeding, subject to the provisions of this Mortgage. Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Mortgagor shall continue to pay the Debt at the time and in the manner provided for its payment in the Note, in this Mortgage and the other Loan Documents and the Debt shall not be reduced until any award or payment therefore shall have been actually received after expenses of collection and applied by Mortgagee to the discharge of the Debt. Mortgagor shall cause the award or payment made in any condemnation or eminent domain proceeding, which is payable to Mortgagor, to be paid directly to Mortgagee. Mortgagee may apply any such award or payment to the reduction or discharge of the Debt whether or not then due and payable.

8. **Representations Concerning Loan.** Mortgagor represents, warrants and covenants as follows:

(a)     Neither Mortgagor nor any guarantor of the Debt or any part thereof (a **"Guarantor"**) has any defense to the payment in full of the Debt that arises from applicable Federal, state, or local laws, regulations, or other requirements.

(b)     None of the Loan Documents are subject to any right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, nor will the operation of any of the terms of any such Loan Documents, or the exercise of any right thereunder, render any Loan Documents unenforceable, in whole or in part, or subject to any right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, and no such right of rescission, set-off, abatement, diminution, counterclaim or defense has been, or will be, asserted with respect thereto.

(c)     All certifications, permits and approvals, including, without limitation, certificates of completion and occupancy permits required for the legal use and occupancy of the Mortgaged Property, have been obtained and are in full force and effect.

(d)     The Mortgaged Property is in good repair, good order and good condition, free and clear of any damage that would affect materially and adversely the value of the Mortgaged Property as security for the Debt, and the Mortgaged Property has not been materially damaged by fire, wind or other casualty or physical condition that has not been fully repaired. There are no proceedings pending or threatened for the partial or total condemnation of the Mortgaged Property.

(e)     All of the Improvements which were included in determining the appraised value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of the Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property, and no easements or other encumbrances upon the Premises encroach upon any of the Improvements, so as to affect the value or marketability of the Mortgaged Property except for immaterial encroachments which do not adversely affect the security intended to be provided by this Mortgage or the use, enjoyment, value or marketability of the Mortgaged Property. All of the Improvements comply with all material requirements of any applicable zoning and subdivision laws and ordinances.

7

**Exhibit 3**



(f)     The Mortgaged Property is not subject to any leases or operating agreements other than the Leases and the operating agreements, if any, described in the rent roll delivered to Mortgagee in connection with this Mortgage, and all such Leases and agreements are in full force and effect. No person has any possessory interest in the Mortgaged Property or right to occupy the same, except under and pursuant to the provisions of the Leases and any such operating agreements.

(g)     All financial data, including, without limitation, statements of cash flow and income and operating expenses, delivered to Mortgagee by, or on behalf of Mortgagor are (i) true and correct in all material respects; (ii) accurately represent the financial condition of Mortgagor or the Mortgaged Property as of the date thereof in all material respects; and (iii) have been prepared in accordance with generally accepted accounting principles consistently applied throughout the periods covered.

(h)     To the best of Mortgagor's knowledge, the survey of the Mortgaged Property delivered to Mortgagee in connection with this Mortgage does not fail to reflect any material matter affecting the Mortgaged Property or the title thereto.

(i)     The Mortgaged Property (A) is served by public utilities and services in the surrounding community (including public water and sewer systems, police and fire protection, public transportation, refuse removal, public education, and enforcement of safety codes), (B) abuts upon a dedicated, all-weather road, or is served and benefitted by an irrevocable easement permitting ingress and egress, and (C) has parking and other amenities necessary for the operation of the business currently conducted thereon, which public utilities and services, ingress and egress and parking and other amenities are adequate in relation to the premises and location on which the Mortgaged Property is located.

(j)     The Mortgaged Property is a separate tax parcel, and there are no delinquent Taxes or other outstanding charges adversely affecting the Mortgaged Property.

(k)     The Mortgaged Property is not relied upon by, and does not rely upon, any building or improvement not part of the Mortgaged Property to fulfill any zoning, building code or other governmental or municipal requirement for structural support or the furnishing of any essential building systems or utilities, except to the extent of any valid and existing reciprocal easement agreements shown in the title insurance policy insuring the lien of this Mortgage that are Permitted Exceptions.

(l)     No action, omission, misrepresentation, negligence, fraud, or similar occurrence has taken place on the part of any person that would reasonably be expected to result in the failure or impairment of full and timely coverage under any insurance policies providing coverage for the Mortgaged Property.

(m)     There are no defaults by Mortgagor beyond any applicable grace period under any contract or agreement that binds Mortgagor and/or the Mortgaged Property, including any management, service, supply, security, maintenance or similar contracts; and Mortgagor has no knowledge of any such default for which notice has not yet been given; and no such agreement is in effect with respect to the Mortgaged Property that is not capable of being terminated by Mortgagor on less than thirty (30) days' notice, except as previously disclosed to Mortgagee by a delivery of a copy of all such agreements.

9.     **Representations Concerning Mortgagor**. Mortgagor represents, warrants and covenants that Mortgagor (i) will not enter into any contract or agreement with any Guarantor or any party which is directly or indirectly controlling, controlled by or under common control with Mortgagor or Guarantor (an "**Affiliate**"), except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any Guarantor or Affiliate; (ii) has not incurred and will not incur any indebtedness, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation), other than (a) the Debt, and (b) trade and operational debt incurred in the ordinary course of business with trade creditors and in amounts as are normal and reasonable under the circumstances and no indebtedness other than the Debt may be secured (subordinate

8

**Exhibit 3**



RP-2022-538321

Page 9 of 28   Wednesday, August 30, 2023   County Clerk Harris County, Texas

or *pari passu*) by the Mortgaged Property; (iii) has not made and will not make any loans or advances to any third party, nor to Guarantor, any Affiliate or any constituent party of Mortgagor; (iv) is and will remain solvent and will pay its debts from its assets as the same shall become due; (v) has done or caused to be done and will do all things necessary, to preserve its existence; (vi) will maintain books and records and bank accounts for the Mortgaged Property separate from those of its Affiliates and any constituent party of Mortgagor, and will file its own tax returns; (vii) will preserve and keep in full force and effect its existence, good standing and qualification to do business in the state in which the Mortgaged Property is located; (viii) will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations; (ix) will not commingle the funds and other assets of the Mortgaged Property with other funds or assets of Mortgagor or those of any Affiliate, any Guarantor, any constituent party of Mortgagor or any other person; (x) has and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any constituent party of Mortgagor, Affiliate, Guarantor or any other person; and (xi) shall obtain and maintain in full force and effect, and abide by and satisfy the material terms and conditions of, all material permits, licenses, registrations and other authorizations with or granted by any governmental authorities that may be required from time to time with respect to the performance of its obligations under this Mortgage.

10.   **Maintenance of Mortgaged Property.** Mortgagor shall cause the Mortgaged Property to be operated and maintained in a good and safe condition and state of repair and in keeping with the condition and repair of properties of a similar use, value, age, nature, and construction. Mortgagor shall not use, maintain, or operate the Mortgaged Property in any manner which constitutes a public or private nuisance, or which makes void, voidable, or cancelable, or increases the premium of, any insurance then in force with respect thereto. The Improvements and the Equipment shall not be removed, demolished, or materially altered (except for normal replacement of the Equipment) without the consent of Mortgagee. Mortgagor shall promptly comply with all laws, orders and ordinances affecting the Mortgaged Property, or the use thereof. Mortgagor shall promptly repair, replace, or rebuild any part of the Mortgaged Property which may be destroyed by any casualty, or become damaged, worn, or dilapidated or which may be affected by any proceeding of the character referred to in Section 7 hereof and shall complete and pay for any structure at any time in the process of construction or repair on the Premises.

11.   **Use of Mortgaged Property.** Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof, nor shall Mortgagor initiate, join in, acquiesce in, or consent to any zoning change or zoning matter affecting the Mortgaged Property. If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Mortgagor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee. Mortgagor shall not permit or suffer to occur any waste on or to the Mortgaged Property or to any portion thereof and shall not take any steps whatsoever to convert the Mortgaged Property, or any portion thereof, to a condominium or cooperative form of management. Mortgagor will not install or permit to be installed on the Premises any underground storage tank or above-ground storage tank without the written consent of Mortgagee.

12.   **Transfer or Encumbrance of the Mortgaged Property.** (a) Mortgagor acknowledges that Mortgagee has examined and relied on the creditworthiness and experience of Mortgagor in owning and operating properties such as the Mortgaged Property in agreeing to make the loan secured hereby, and that Mortgagee will continue to rely on Mortgagor's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for repayment of the Debt. Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Mortgagor default in the repayment of the Debt, Mortgagee can recover the Debt in full by a sale of the Mortgaged Property. Mortgagor shall not, without the prior written consent of Mortgagee, which shall not be unreasonably withheld by Mortgagee, sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any part thereof, or permit the Mortgaged

**Exhibit 3**



Page 10 of 28   Wednesday, August 30, 2023   County Clerk Harris County, Texas

RP-2022-538321

Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred; provided, however, Mortgagee may, in its sole but reasonable discretion, give such written consent (and shall have an obligation not to unreasonably withhold its consent) to any such sale, conveyance, alienation, mortgage, encumbrance, pledge or other transfer, and any such consent may be conditioned upon the satisfaction of such conditions precedent as Mortgagee, in its sole discretion, may require.

(b)     A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this Section 12 shall not include (x) transfers made by devise or descent or by operation of law upon the death of a joint tenant, partner or shareholder, subject, however, to all the following requirements: (1) written notice of any transfer under this subsection 12(b)(x), whether by will, trust or other written instrument, operation of law or otherwise, is provided to Mortgagee or its servicer, together with copies of such documents relating to the transfer as Mortgagee or its servicer may reasonably request, (2) control over the management and operation of the Mortgaged Property is retained by persons who are acceptable in all respects to Mortgagee in its sole and absolute discretion, and (3) no such transfer, death or other event has any adverse effect on the status of Mortgagor as a continuing legal entity liable for the payment of the Debt and the performance of all other obligations secured hereby, or (y) transfers other than by operation of law in the event of a bankruptcy, nor shall the meaning include a Lease, but shall be deemed to include (i) an installment sales agreement wherein Mortgagor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) an agreement by Mortgagor leasing all or a substantial part of the Mortgaged Property for any purpose other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in and to any Leases or any Rents; (iii) if Mortgagor, Guarantor, or any general partner of Mortgagor or Guarantor is a corporation, any merger, consolidation or the voluntary or involuntary sale, conveyance or transfer of such corporation's stock (or the stock of any corporation directly or indirectly controlling such corporation by operation of law or otherwise) or the creation or issuance of new stock in one or a series of transactions by which an aggregate of more than 10% of such corporation's stock shall be vested in a party or parties who are not now stockholders (provided, however, in no event shall this subpart (iii) apply to any Guarantor whose stock, shares or partnership interests are traded on a nationally recognized stock exchange); (iv) if Mortgagor, Guarantor, or any general partner of Mortgagor or Guarantor is a limited liability company or limited partnership, the voluntary or involuntary sale, conveyance or transfer by which an aggregate of more than fifty percent (50%) of the ownership interest in such limited liability company or more than fifty percent (50%) of the limited partnership interests in such limited partnership shall be vested in parties not having an ownership interest as of the date of this Mortgage; and (v) if Mortgagor, any Guarantor or any general partner of Mortgagor or any Guarantor is a limited or general partnership or joint venture, the change, removal or resignation of a general partner, managing partner or joint venturer or the transfer of all or any portion of the partnership interest of any general partner, managing partner or joint venturer.

(c)     Mortgagee's consent to one sale, conveyance, alienation, mortgage, encumbrance, pledge, or transfer of the Mortgaged Property shall not be deemed to be a waiver of Mortgagee's right to require such consent to any future occurrence of same. Any sale, conveyance, alienation, mortgage, encumbrance, pledge, or transfer of the Mortgaged Property made in contravention of this Section 12 shall be null and void and of no force and effect. Mortgagor agrees to bear and shall pay or reimburse Mortgagee on demand for all reasonable expenses (including, without limitation, all recording costs, reasonable attorney's fees and disbursements and title search costs) incurred by Mortgagee in connection with the review, approval, and documentation of any such sale, conveyance, alienation, mortgage, encumbrance, pledge, or transfer. In no event shall any of the terms and provisions of this Section 12 amend or modify the terms and provisions contained in Section 9 herein.

(d)     Mortgagee may release, regardless of consideration, any part of the Mortgaged Property without, as to the remainder, in any way impairing, affecting, subordinating, or releasing the lien or security interests evidenced by this Deed of Trust or the other Loan Documents or affecting the obligations of

10

**Exhibit 3**

RP-2022-538321

Grantor or any other party to pay the Indebtedness or perform and discharge the Obligations. For payment of the Indebtedness, Mortgagor may resort to any of the collateral therefor in such order and manner as Mortgagor may elect. No collateral heretofore, herewith, or hereafter taken by Mortgagor shall in any manner impair or affect the collateral given pursuant to the Loan Documents, and all collateral shall be taken, considered, and held as cumulative. Notwithstanding anything to the contrary herein, Mortgagee shall consent to partial releases of individual parcels of the Mortgaged Property; provided that Mortgagor shall pay to Mortgagee at the time of such partial release an amount equal 130% of the allocable loan payoff applicable to such parcel, with such allocable loan payoff amount to be determined in Mortgagee's sole and absolute discretion.

13. **Estoppel Certificates and No Default Affidavits.** (a) After written request by Mortgagee, Mortgagor shall within ten (10) days furnish Mortgagee with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note, this Mortgage and the other Loan Documents are valid, legal and binding obligations and have not been modified or, if modified, the particulars of such modification.

(b) After request by Mortgagee, Mortgagor shall, within ten (10) days thereafter, furnish Mortgagee with a certificate reaffirming all representations and warranties of Mortgagor set forth herein and in the other Loan Documents as of the date requested by Mortgagee or, to the extent of any changes to any such representations and warranties, stating such changes.

(c) If the Mortgaged Property includes commercial property, Mortgagor shall deliver to Mortgagee, upon request, tenant estoppel certificates from each commercial tenant at the Mortgaged Property in form and substance reasonably satisfactory to Mortgagee; provided that Mortgagor shall not be required to deliver such certificates more frequently than two (2) times in any calendar year.

14. **Changes in the Laws Regarding Taxation.** If any law is amended, enacted, or adopted after the date of this Mortgage which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Mortgaged Property, Mortgagor will pay such tax, with interest and penalties thereon, if any. In the event Mortgagee is advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury, then in any such event, Mortgagee shall have the option, by written notice of not less than forty-five (45) days, to declare the Debt immediately due and payable.

15. **No Credits on Account of the Debt.** Mortgagor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Mortgaged Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Mortgaged Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt. In the event such claim, credit or deduction shall be required by law, Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

16. **Documentary Stamps.** If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

17. **Books and Records.** Mortgagor will keep accurate books and records in accordance with sound generally accepted accounting principles in which full, true and correct entries shall be promptly made with respect to the Mortgaged Property and the operation thereof, and will permit all such books and

11

**Exhibit 3**



records (including without limitation all contracts, statements, invoices, bills and claims for labor, materials and services supplied for the construction, repair or operation of the Improvements) to be inspected or audited and copies made by Mortgagee and its representatives during normal business hours and at any other reasonable times. Mortgagor represents that its chief executive office is as set forth in the introductory paragraph of this Mortgage and that all books and records pertaining to the Mortgaged Property are maintained at such location. Within ninety (90) days following the end of each calendar year, Mortgagor shall furnish a statement of the financial affairs and condition of the Mortgagor and the Mortgaged Property, including a statement of profit and loss for the Mortgagor and the Mortgaged Property in such format and in such detail as Mortgagee or its servicer may request, and setting forth the financial condition and the income and expenses for the Mortgagor and the Mortgaged Property for the immediately preceding calendar year, which shall be certified to by Mortgagor as being complete and accurate to the best of Mortgagor's knowledge and belief. Mortgagor shall deliver to Mortgagee copies of all income tax returns, requests for extension and other similar items contemporaneously with its delivery of same to the Internal Revenue Service. Failure to provide annual reports shall constitute an Event of Default under Section 22 and shall entitle Mortgagee to audit or cause to be audited Mortgagor's books and records. The late charge and the cost of such audit shall be immediately payable from Mortgagor upon demand by Mortgagee or, at Mortgagee's election, deducted from the Future Advance Fund, and, until paid, shall be added to, and constitute a part of the Debt. At any time and from time-to-time, Mortgagor shall deliver to Mortgagee or its agents such other financial data as Mortgagee or its agents shall request with respect to the ownership, maintenance, use and operation of the Mortgaged Property, including, but not limited to, schedules of gross sales or percentage rents under Leases. Mortgagor will permit representatives appointed by Mortgagee, including independent accountants, agents, attorneys, appraisers and any other persons, to visit and inspect during its normal business hours and at any other reasonable times any of the Mortgaged Property and to make photographs thereof, and to write down and record any information such representatives obtain, and shall permit Mortgagee or its representatives to investigate and verify the accuracy of the information furnished to Mortgagee under or in connection with this Mortgage or any of the other Loan Documents and to discuss all such matters with its officers, employees and representatives. Mortgagor will furnish to Mortgagee, at Mortgagor's expense, all evidence which Mortgagee may from time-to-time reasonably request as to the accuracy and validity of or compliance with all representations and warranties made by Mortgagor in the Loan Documents and satisfaction of all conditions contained therein.

18. **Performance of Other Agreements.** Mortgagor shall observe and perform each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

19. **Further Acts; Sale of Loan and Advertising.** (a) Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, perform, execute, acknowledge and deliver any and all such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, Uniform Commercial Code financing statements or continuation statements, transfers and assurances as Mortgagee shall, from time to time, require to better assure and confirm unto Mortgagee the property and rights hereby mortgaged, conveyed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage. Mortgagor, on demand, will execute and deliver, and hereby authorizes Mortgagee to execute and deliver in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in the Mortgaged Property. Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including without limitation such rights and remedies available to Mortgagee pursuant to this paragraph.

(b)     Mortgagee (and its mortgage servicer and their respective assigns) shall have the right to disclose in confidence such financial information regarding Mortgagor, Guarantor or the Mortgaged



**Exhibit 3**

RP-2022-538321

Property as may be necessary (i) to complete any sale or attempted sale of the Note or participations in the Loan (or any transfer of the mortgage servicing thereof) evidenced by the Note and the Loan Documents, (ii) to service the Note or (iii) to furnish information concerning the payment status of the Note to the holder or beneficial owner thereof, including, without limitation, all Loan Documents, financial statements, projections, internal memoranda, audits, reports, payment history, appraisals and any and all other information and documentation in the Mortgagee's files (and such servicer's files) relating to the Mortgagor, any Guarantor and the Mortgaged Property. This authorization shall be irrevocable in favor of the Mortgagee (and its mortgage servicer and their respective assigns), and Mortgagor and Guarantor waive any claims that they may have against the Mortgagee, its mortgage servicer and their respective assigns or the party receiving information from the Mortgagee pursuant hereto regarding disclosure of information in such files and further waive any alleged damages which they may suffer as a result of such disclosure.

(c) The Mortgagor acknowledges that the Mortgagee may elect to sell the loan evidenced by the Note and the Loan Documents or a participation interest therein to a party who may pool the Loan with a number of other loans and to have the holder of such loans (most likely a special purpose REMIC) issue one or more classes of Mortgage-Backed Pass-Through Certificates ("**Certificates**"), which may be rated by one or more national rating agencies. Mortgagee (and its mortgage servicer and their respective assigns) shall be permitted to share any of the information referred to in subsection (b) above, whether obtained before or after the date of the Note, with the holders or potential holders of the Certificates, investment banking firms, rating agencies, accounting firms, custodians, successor mortgage servicers, law firms and other third-party advisory firms involved with the Loan and the Loan Documents or the Certificates. It is understood that the information provided by the Mortgagor to the Mortgagee (or its mortgage servicer and their respective assigns) or otherwise received by Mortgagee (or its mortgage servicer and their respective assigns) in connection with the loan evidenced by the Loan Documents may ultimately be incorporated into the offering documents for the Certificates and thus various prospective investors may also see some or all of the information. The Mortgagee (and its mortgage servicer and their respective assigns) and all of the aforesaid third-party advisors and professional firms shall be entitled to rely on the information supplied by, or on behalf of, the Mortgagor.

(d) Mortgagee shall have the unrestricted right (but not the obligation) to disclose in any advertising of the Mortgagee at any time or from time to time the name of the Mortgagor (and/or the Maker of the Note, if not the same), Guarantor and, the Mortgaged Property and the nature of the Loan. This authorization shall be irrevocable in favor of the Mortgagee and Mortgagor and Guarantor shall waive any claims that they may have against the Mortgagee pursuant hereto regarding disclosure of such information in such advertising and shall further waive any alleged damages which they may suffer as a result of such disclosure

20. **Recording of Mortgage, etc.** Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property and any instrument of further assurance, and all federal, state, county and municipal, fees, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. Mortgagor shall hold harmless and indemnify Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

21. **Reporting Requirements**. Mortgagor agrees to give prompt notice to Mortgagee of the insolvency or bankruptcy filing of Mortgagor or the death, insolvency or bankruptcy filing of any Guarantor.

22. **Events of Default**. The term **"Event of Default"** as used herein shall mean the occurrence or happening, at any time and from time to time, of any one or more of the following:

13

Page 13 of 28    Wednesday, August 30, 2023    County Clerk Harris County, Texas

**Exhibit 3**

(a)    if any portion of the Debt is not paid within ten (10) days from the date when the same is due;

(b)    if Mortgagor sells, conveys, alienates, mortgages, encumbers, pledges, or otherwise transfers any portion of the Mortgaged Property or permits the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, levied, pledged, or otherwise transferred without Mortgagee's prior written consent;

(c)    if any representation or warranty of Mortgagor, or of any Guarantor, made herein, in any Loan Document, any guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Mortgagee shall have been false or misleading in any material respect when made or thereafter becomes false or misleading in any material respect;

(d)    if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors or if Mortgagor or any Guarantor shall admit in writing its inability to pay, or Mortgagor's or any Guarantor's failure to pay, debts generally as the debts become due;

(e)    if a receiver, liquidator or trustee of Mortgagor or of any Guarantor shall be appointed or if Mortgagor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Mortgagor or any Guarantor or if Mortgagor or any Guarantor shall admit in writing its insolvency or bankruptcy or if any proceeding for the dissolution or liquidation of Mortgagor or of any Guarantor shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Mortgagor or such Guarantor, upon the same not being discharged, stayed or dismissed within sixty (60) days;

(f)    if Mortgagor shall default under any term, covenant, or condition of this Mortgage or any of the other Loan Documents other than as specified in any of the above subparagraphs;

(g)    if all or a substantial part of Mortgagor's assets (other than the Mortgaged Property) are attached, seized, subjected to a writ or distress warrant, or are levied upon (unless such attachment, seizure, writ, distress warrant or levy is vacated within sixty (60) days following the date of the same);

(h)    entry of a judgment in excess of $50,000.00 and the expiration of any appeal rights or the dismissal or final adjudication of appeals against Mortgagor (unless such judgment is vacated within sixty (60) days following the date of the same);

(i)    the Mortgage shall cease to constitute a first-priority lien on the Mortgaged Property (other than in accordance with its terms); and

(j)    seizure or forfeiture of the Mortgaged Property, or any portion thereof, or Mortgagor's interest therein, resulting from criminal wrongdoing or other unlawful action of Mortgagor, its affiliates, or any tenant in the Mortgaged Property under any federal, state, or local law.

23.    **Remedies.** Upon the occurrence of an Event of Default and subject to any applicable cure period, Mortgagee may, at Mortgagee's option, and by or through Trustee, by Mortgagee itself or otherwise, do any one or more of the following:

(a)    *Right to Perform Mortgagor's Covenants.* If Mortgagor has failed to keep or perform any covenant whatsoever contained in this Mortgage or the other Loan Documents, Mortgagee may, but shall not be obligated to any person to do so, perform or attempt to perform said covenant; and any payment made or expense incurred in the performance or attempted performance of any such covenant, together with

14

**Exhibit 3**



any sum expended by Mortgagee that is chargeable to Mortgagor or subject to reimbursement by Mortgagor under the Loan Documents, shall be and become a part of the **"Debt,"** and Mortgagor promises, upon demand, to pay to Mortgagee, at the place where the Note is payable, all sums so incurred, paid or expended by Mortgagee, with interest from the date when paid, incurred or expended by Mortgagee at the Default Rate as specified in the Note.

(b)     *Right of Entry.* Mortgagee may, prior or subsequent to the institution of any foreclosure proceedings, enter upon the Mortgaged Property, or any part thereof, and take exclusive possession of the Mortgaged Property and of all books, records, and accounts relating thereto and to exercise without interference from Mortgagor any and all rights which Mortgagor has with respect to the management, possession, operation, protection, or preservation of the Mortgaged Property.

(c)     *Right to Accelerate.* Mortgagee may, without notice, demand, presentment, notice of nonpayment or nonperformance, protest, notice of protest, notice of intent to accelerate, notice of acceleration, or any other notice or any other action, all of which are hereby waived by Mortgagor and all other parties obligated in any manner whatsoever on the Debt, declare the entire unpaid balance of the Debt immediately due and payable, and upon such declaration, the entire unpaid balance of the Debt shall become immediately due and payable.

(d)     *Foreclosure; Power of Sale.* Mortgagee may institute a proceeding or proceedings, judicial, or nonjudicial, by advertisement or otherwise, for the complete or partial foreclosure of this Mortgage or the complete or partial sale of the Mortgaged Property under the power of sale contained herein or under any applicable provision of law. Mortgagee may sell the Mortgaged Property, and all estate, right, title, interest, claim and demand of Mortgagor therein, and all rights of redemption thereof, at one or more sales, as an entirety or in parcels, with such elements of real and/or personal property, and at such time and place and upon such terms as it may deem expedient, or as may be required by applicable law, and in the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Mortgaged Property.

(e)     *Rights Pertaining to Sales.* Subject to the requirements of applicable law and except as otherwise provided herein, the following provisions shall apply to any sale or sales of all or any portion of the Mortgaged Property under or by virtue of subsection (d) above, whether made under the power of sale herein granted or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale:

(i)     Trustee or Mortgagee may conduct any number of sales from time to time. The power of sale set forth above shall not be exhausted by any one or more such sales as to any part of the Mortgaged Property which shall not have been sold, nor by any sale which is not completed or is defective in Mortgagee's opinion, until the Debt shall have been paid in full. Any sale may be postponed or adjourned by public announcement at the time and place appointed for such sale or for such postponed or adjourned sale without further notice. It shall not be necessary for Trustee, Mortgagee or any public officer acting under execution or order of court to have present or constructively in its possession any of the Mortgaged Property. Any such sale or sales shall operate to divest all of the estate, right, title, interest, claim and demand whatsoever, whether under contract, at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and any and all persons claiming or who may claim the same, or any part thereof or any interest therein, by, through or under Mortgagor to the fullest extent permitted by applicable law. Upon any such sale or sales, Mortgagee may bid for and acquire the Mortgaged Property and, in lieu of paying cash, therefore, may make settlement for the purchase price by crediting against the Debt the amount of the bid made therefore, after deducting therefrom the expenses of the sale, the cost of any enforcement proceeding hereunder, and any other sums which Trustee or Mortgagee is authorized to deduct under the terms hereof, to the extent necessary to satisfy such bid.

15

RP-2022-538321

**Exhibit 3**

(ii)     After each sale, Mortgagee, Trustee, or an officer of any court empowered to do so shall execute and deliver to the purchaser or purchasers at such sale a good and sufficient instrument or instruments granting, conveying, assigning, and transferring all right, title and interest of Mortgagor in and to the property and rights sold and shall receive the proceeds of said sale or sales and apply the same as specified in the Note. Any and all statements of fact or other recitals made in any of such instruments given by Trustee or Mortgagee shall be taken as conclusive and binding against all persons as to evidence of the truth of the facts so stated and recited. Each of Trustee and Mortgagee is hereby appointed the true and lawful attorney-in-fact of Mortgagor, which appointment is irrevocable and shall be deemed to be coupled with an interest, in Mortgagor's name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the property and rights so sold, Mortgagor hereby ratifying and confirming all that said attorney, or such substitute or substitutes shall lawfully do by virtue thereof.

(f)     *Mortgagee's Judicial Remedies.* Mortgagee, or Trustee upon written request of Mortgagee, may proceed by suit or suits, at law or in equity, to enforce the payment of the Debt to foreclose the liens and security interests of this Mortgage as against all or any part of the Mortgaged Property, and to have all or any part of the Mortgaged Property sold under the judgment or decree of a court of competent jurisdiction.

(g)     *Mortgagee's Right to Appointment of Receiver.* Mortgagee, as a matter of right and (i) without regard to the sufficiency of the security for repayment of the Debt and without notice to Mortgagor, (ii) without any showing of insolvency, fraud, or mismanagement on the part of Mortgagor, (iii) without the necessity of filing any judicial or other proceeding other than the proceeding for appointment of a receiver, and (iv) without regard to the then value of the Mortgaged Property, shall be entitled to the appointment of a receiver or receivers for the protection, possession, control, management and operation of the Mortgaged Property, including (without limitation) the power to collect the Rents, enforce this Mortgage and, in case of a sale and deficiency, during the full statutory period of redemption (if any), whether there be a redemption or not, as well as during any further times when Mortgagor, except for the intervention of such receiver, would be entitled to collection of such Rents. Mortgagor hereby irrevocably consents to the appointment of a receiver or receivers. Any receiver appointed pursuant to the provisions of this subsection shall have the usual powers and duties of receivers in such matters.

(h)     *Other Rights.* Mortgagee shall have and may exercise any and all other rights and remedies which Mortgagee may have at law or in equity, or by virtue of any of the Loan Documents, or otherwise. For payment of the Debt, Mortgagee may resort to any collateral securing the payment of the Debt in such order and manner as Mortgagee may elect.

(i)     *Discontinuance of Remedies.* In case Mortgagee shall have proceeded to invoke any right, remedy, or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon same for any reason, Mortgagee shall have the unqualified right so to do and, in such event, Mortgagor and Mortgagee shall be restored to their former positions with respect to the Debt, the Loan Documents, the Mortgaged Property or otherwise, and the rights, remedies, recourses and powers of Mortgagee shall continue as if same had never been invoked.

(j)     *Remedies Cumulative.* All rights, remedies, and recourses of Mortgagee granted in the Note, this Mortgage and the other Loan Documents, any other pledge of collateral, or otherwise available at law or equity: (i) shall be cumulative and concurrent; (ii) may be pursued separately, successively, or concurrently against Mortgagor, the Mortgaged Property, or any one or more of them, at the sole discretion of Mortgagee; (iii) may be exercised as often as occasion therefore shall arise, it being agreed by Mortgagor that the exercise or failure to exercise any of same shall in no event be construed as a waiver or release thereof or of any other right, remedy, or recourse; (iv) shall be nonexclusive; (v) shall not be conditioned upon Mortgagee exercising or pursuing any remedy in relation to the Mortgaged Property prior to Mortgagee bringing suit to recover the Debt; and (vi) in the event Mortgagee elects to bring suit on the Debt

16

**Exhibit 3**

and obtains a judgment against Mortgagor prior to exercising any remedies in relation to the Mortgaged Property, all liens and security interests, including the lien of this Mortgage, shall remain in full force and effect and may be exercised thereafter at Mortgagee's option.

(k)     *Waivers.* Mortgagor hereby irrevocably and unconditionally waives and releases: (i) all benefits that might accrue to Mortgagor by virtue of any present or future law exempting the Mortgaged Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption, or extension of time for payment; (ii) all notices of any Event of Default, except as expressly provided herein or of Trustee's exercise of any right, remedy, or recourse provided for under the Loan Documents; and (iii) any right to a marshalling of assets, a sale in inverse order of alienation or any other right to direct in any manner, the order of sale of any of the Mortgaged Property.

(l)     *Application of Proceeds.* The proceeds from any sale, lease, or other disposition made pursuant to this Mortgage, or the proceeds from the surrender of any insurance policies pursuant hereto, or any Rents collected by Mortgagee from the Mortgaged Property, or the Tax and Insurance Escrow Fund or the Future Advance Fund or sums received pursuant to Section 7 hereof, or proceeds from insurance which Mortgagee elects to apply to the Debt pursuant to Section 3 hereof, shall be applied by Trustee, or by Mortgagee, as the case may be, to the Debt in the following order and priority: (1) to the payment of all expenses of advertising, selling, and conveying the Mortgaged Property or any part thereof, and/or prosecuting or otherwise collecting Rents, proceeds, premiums or other sums, including reasonable attorneys' fees and a reasonable fee or commission to Trustee, not to exceed five percent of the proceeds thereof or sums so received; (2) to the remainder of the Debt as follows: first, to the remaining accrued but unpaid interest, second, to the matured portion of principal of the Debt, and third, to prepayment of the unmatured portion, if any, of principal of the Debt applied to installments of principal in inverse order of maturity; (3) the balance, if any or to the extent applicable, remaining after the full and final payment of the Debt to the holder or beneficiary of any inferior liens covering the Mortgaged Property, if any, in order of the priority of such inferior liens (Trustee and Mortgagee shall hereby be entitled to rely exclusively on a commitment for title insurance issued to determine such priority); and (4) the cash balance, if any, to the Mortgagor. The application of proceeds of sale or other proceeds as otherwise provided herein shall be deemed to be a payment of the Debt like any other payment. The balance of the Debt remaining unpaid, if any, shall remain fully due and owing in accordance with the terms of the Note and the other Loan Documents.

(m)     *Notice and Cure.* Except to the extent otherwise specifically set forth in this the Deed of Trust or the Note, or any other loan document related to the Note, it shall not be an Event of Default unless if any default shall occur which is not cured: (i) In the case of any default which can be cured by the payment of a sum of money, within ten (10) days after written notice from Mortgagee to Mortgagor; or (ii) In the case of any other default, within thirty (30) days after written notice from Mortgagee to Mortgagor, except that if said default cannot be cured within such thirty (30) of days, and provided that Mortgagor is diligently pursuing a cure and no other default is then existing, then, Mortgagor shall have an additional reasonable period to effect a cure, but in no event shall the entire cure period be more than sixty (60) days.

24.     **Right of Inspection.** Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property during normal business hours upon reasonable notice.

25.     **Security Agreement.** This Mortgage is both a real property mortgage or deed of trust and a "security agreement" within the meaning of the Uniform Commercial Code as adopted and enacted by the State in which any of the Mortgaged Property is located ("**Uniform Commercial Code**"). The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property. Mortgagor, by executing and delivering this Mortgage, has granted and hereby grants to Mortgagee, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the

17

**Exhibit 3**

Page 18 of 28   Wednesday, August 30, 2023   County Clerk Harris County, Texas

RP-2022-538321

Uniform Commercial Code (said portion of the Mortgaged Property so subject to the Uniform Commercial Code being called in this paragraph the "**Collateral**"). Mortgagor hereby agrees with Mortgagee to execute and deliver to Mortgagee, in form and substance satisfactory to Mortgagee, such financing statements and such further assurances as Mortgagee may from time to time, reasonably consider necessary to create, perfect, and preserve Mortgagee's security interest herein granted. Notwithstanding the foregoing or anything else herein to the contrary, Mortgagor hereby authorizes Mortgagee to file all UCC Financing Statement forms, including but not limited to, Form UCC-1 and Form UCC-3 covering the Collateral, along with all attachments thereto with any and all filing entities that Mortgagee deemed necessary, at Mortgagor's expense; moreover, Mortgagor authorizes the Mortgagee to file one or more financing or continuation statement, and amendments thereto relating to all or any part of the Collateral without the signature of Mortgagor, where permitted by law. Mortgagor shall immediately give written notice to Mortgagee of any and all changes to Mortgagor's name, organizational status, state of organization, organization's chief operating office, and any other change that would affect the validity of any financing statement filing or perfection of lien or security interest. This Mortgage shall also constitute a "fixture filing" for the purposes of the Uniform Commercial Code. All or part of the Mortgaged Property are or are to become fixtures. Information concerning the security interest herein granted may be obtained from the parties at the addresses of the parties set forth in the first paragraph of this Mortgage. If an Event of Default shall occur, Mortgagee, in addition to any other rights and remedies which they may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee, Mortgagor shall, at its expense, marshal the Collateral and make it available to Mortgagee at a convenient place accessible to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including all costs, expenses, and reasonable attorneys' fees, incurred, or paid by Mortgagee in protecting the interest in the Collateral and in enforcing the rights hereunder with respect to the Collateral. Any notice of sale, disposition, or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper. If Mortgagee shall require the filing or recording of additional Uniform Commercial Code forms or continuation statements, Mortgagor shall, promptly after request, execute, where applicable, file and record such Uniform Commercial Code forms or continuation statements as Mortgagee shall deem necessary, and shall pay all expenses and fees in connection with the filing and recording thereof, it being understood and agreed, however, that no such additional documents shall increase Mortgagor's obligations under the Note, this Mortgage and the other Loan Documents. Mortgagor hereby irrevocably appoints Mortgagee as its attorney-in-fact, coupled with an interest, to file with the appropriate public office on its behalf any financing or other statements signed only by Mortgagee, as Mortgagor's attorney-in-fact, in connection with the Collateral covered by this Mortgage. Notwithstanding the foregoing, Mortgagor shall appear and defend in any action or proceeding which affects or purports to affect the Mortgaged Property and any interest or right therein, whether such proceeding effects title or any other rights in the Mortgaged Property (and in conjunction therewith, Mortgagor shall fully cooperate with Mortgagee in the event Mortgagee is a party to such action or proceeding).

26.     **Assignment of Leases and Rents.** The Leases and Rents are assigned to Mortgagee on the following terms, covenants, and conditions:

(a)     *Warranties Regarding Leases and Rents.* Mortgagor warrants to Mortgagee that (a) Mortgagor is the sole owner of the entire lessor's interest in the Leases; (b) the Leases are valid, enforceable and in full force and effect and have not been altered, modified or amended in any manner whatsoever except as disclosed to Mortgagee; (c) neither the Leases nor the Rents reserved in the Leases have been assigned or otherwise pledged or hypothecated; (d) none of the Rents have been collected for

18

 

**Exhibit 3**

Page 19 of 28 Wednesday, August 30, 2023 County Clerk Harris County, Texas

RP-2022-538321

more than one (1) month in advance; (e) the premises demised under the Leases have been completed and Lessees under the Leases have accepted the same and have taken possession of the same on a rent-paying basis except as explicitly identified on the certified rent roll delivered by Mortgagor to Mortgagee; and (f) there exist no offsets or defenses to the payment of any portion of the Rents.

(b)      *Covenants Regarding Leases and Rents.* Mortgagor covenants with Mortgagee that Mortgagor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send to Mortgagee copies of all notices of default which Mortgagor shall receive under the Leases; (iii) shall not collect any Rents more than one (1) month in advance; (iv) shall not execute any other assignment of lessor's interest in the Leases or the Rents; (v) shall execute and deliver at the request of Mortgagee all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Mortgagee shall from time to time require; (vi) shall not enter into any new lease of the Mortgaged Property without the prior written consent of Mortgagee, and in any event, any new Lease shall be on a form of lease approved by Mortgagee; (vii) shall deliver to Mortgagee, upon request, tenant estoppel certificates from each commercial Lessee at the Mortgaged Property in form and substance reasonably satisfactory to Mortgagee (provided, however, that Mortgagor shall not be required to deliver such certificates more frequently than two [2] times in any calendar year); and (viii) shall deliver to Mortgagee, at Mortgagee's request, executed copies of all Leases now existing or hereafter arising.

(c)      *Enforcement of Existing Leases.* Except to the extent that Mortgagor is acting in the ordinary course of business as a prudent operator of property similar to the Mortgaged Property, Mortgagor (i) shall promptly send to Mortgagee copies of all notices of default which Mortgagor shall send to Lessees under the Leases; (ii) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the Lessees thereunder to be observed or performed, short of termination thereof; (iii) shall not alter, modify or change the terms of the Leases without the prior written consent of Mortgagee, or cancel or terminate the Leases or accept a surrender thereof or take any other action which would effect a merger of the estates and rights of, or a termination or diminution of the obligations of, Lessees thereunder; provided however, that any Lease may be canceled if, at the time of cancellation thereof, a new Lease is entered into on substantially the same terms or more favorable terms as the canceled Lease; (iv) shall not alter, modify or change the terms of any guaranty of any of the Leases or cancel or terminate any such guaranty without the prior written consent of Mortgagee; (v) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Mortgagee; and (vi) shall not waive, release, reduce, discount or otherwise discharge or compromise the payment of any of the Rents to accrue under the Leases.

(d)      *New Leases.* Mortgagor further covenants with Mortgagee that (i) all Leases shall be written on the standard form of lease which has been approved by Mortgagee; (ii) no material changes may be made to the Mortgagee-approved standard lease without the prior written consent of Mortgagee; (iii) all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates and shall be arm's-length transactions; (iv) all Leases shall provide that (A) they are subordinate to the Mortgage and any other indebtedness now or hereafter secured by the Mortgaged Property, (B) Lessees agree to attorn to Mortgagee (such attornment to be effective upon Mortgagee's acquisition of title to the Mortgaged Property), (C) Lessees agree to execute such further evidences of attornment as Mortgagee may from time to time request, (D) the attornment of Lessees shall not be terminated by foreclosure, (E) Mortgagee may, at Mortgagee's option, accept or reject such attornment, and (F) Lessees agree to furnish, up to two times in any calendar year at such times as Mortgagee may request, a certificate signed by Lessee confirming and containing such factual certifications and representations deemed reasonably appropriate by Mortgagee; and (v) all new Leases shall be subject to the prior approval of Mortgagee.

(e)      *Present Assignment.* This assignment constitutes a present, absolute assignment and is not an assignment for additional security only. Mortgagor agrees to execute and deliver to Mortgagee such additional instruments, in form and substance satisfactory to Mortgagee, as may hereinafter be requested

**Exhibit 3**



Page 20 of 28    Wednesday, August 30, 2023    County Clerk Harris County, Texas

RP-2022-538321

by Mortgagee to further evidence and confirm said assignment. Mortgagee is hereby granted and assigned by Mortgagor the right to enter the Mortgaged Property for the purpose of enforcing its interest in the Leases and the Rents, this assignment constituting a present, absolute, and unconditional assignment of the Leases and Rents. Nevertheless, subject to the terms of this paragraph, Mortgagee grants to Mortgagor a revocable license to operate and manage the Mortgaged Property and to collect the Rents. Mortgagor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums. Upon an Event of Default, the license granted to Mortgagor herein shall automatically be revoked and Mortgagee shall immediately be entitled to receive and apply all Rents, whether or not Mortgagee enters upon and takes control of the Mortgaged Property.

(f)     *Rights of Mortgagee.* Upon or at any time after an Event of Default, Mortgagee may, at its option, without waiving such Event of Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, take possession of the Mortgaged Property and have, hold, manage, lease and operate the Mortgaged Property on such terms and for such period of time as Mortgagee may deem proper and either with or without taking possession of the Mortgaged Property in its own name, demand, sue for or otherwise collect and receive all Rents, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Mortgagee and may apply the Rents to the payment of the following in such order and proportion as Mortgagee in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (i) all expenses of managing, operating, maintaining and securing the Mortgaged Property as Mortgagee may deem necessary or desirable and all expenses of the Mortgaged Property; and (ii) the Debt. For purposes of this and the preceding paragraph, Mortgagor grants to Mortgagee its irrevocable power of attorney, coupled with an interest, to take any and all of the aforementioned actions and any or all other actions designated by Mortgagee for the proper management and preservation of the Mortgaged Property.

(g)     *No Liability of Mortgagee.* Mortgagee shall not be liable for any loss sustained by Mortgagor resulting from Mortgagee's failure to secure a new tenant to lease the Mortgaged Property after an Event of Default or from any other act or omission of Mortgagee in managing the Mortgaged Property after an Event of Default unless such loss is caused by the willful misconduct and bad faith of Mortgagee. Mortgagee shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or under or by reason of this assignment and Mortgagor agrees to protect, defend, indemnify, and hold Mortgagee harmless from and against any and all liability, loss or damage which may or might be incurred under the Leases or under or by reason of this assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Mortgagee. This assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Mortgaged Property upon Mortgagee; nor shall it operate to make Mortgagee responsible or liable for any waste committed on the Mortgaged Property, including without limitation the presence of any Hazardous Substances (as defined in the Environmental Liabilities Agreement executed by Mortgagor to Mortgagee of even date herewith), or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any Lessee, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Mortgagee a "mortgagee in possession" in the absence of the taking of actual possession of the Mortgaged Property by Mortgagee.

(h)     *Notice to Lessees.* Mortgagor hereby authorizes and directs Lessees named in the Leases or any other or future Lessees or occupants of the Mortgaged Property ("Lessee[s]") upon receipt from Mortgagee of written notice to the effect that Mortgagee is then the holder of the Note and that an Event of Default exists thereunder or under the other Loan Documents to pay over to Mortgagee all Rents and to continue so to do until otherwise notified by Mortgagee, without further notice or consent of Mortgagor and regardless of whether Mortgagee has taken possession of the Mortgaged Property, and Lessees may rely upon any written statement delivered by Mortgagee to Lessees without any obligation or right to inquire as to whether such default actually exists and notwithstanding any notice from or claim of Mortgagor to the contrary.

20

**Exhibit 3**

Page 21 of 28   Wednesday, August 30, 2023   County Clerk Harris County, Texas

RP-2022-538321

(i)     *Security Deposits.* All security deposits of Lessees, whether held in cash or any other form, shall be treated by Mortgagor as trust funds, shall not be commingled with any other funds of Mortgagor and, if in the form of cash, shall be deposited by Mortgagor in one or more segregated accounts at such commercial banks as is reasonably satisfactory to Mortgagee. Following the occurrence and during the continuance of any Event of Default, Mortgagor shall, upon Mortgagee's request, if permitted by applicable legal requirements, turn over to Mortgagee the security deposits (and any interest theretofore earned thereon) with respect to all or any portion of the Mortgaged Property, to be held by Mortgagee subject to the terms of the Leases.

27.     **Indemnification.** In addition to any other indemnifications provided in any of the Loan Documents, Mortgagor shall protect, defend, indemnify and hold Mortgagee, its subsidiaries, affiliates, persons controlling or under common control with Mortgagee, their agents, officers, directors, shareholders, employees, servants, consultants, representatives and their respective successors and assigns and Trustee (collectively, the **"Indemnified Parties"**) harmless from and against all liabilities, obligations, claims, demands, damages, penalties, causes of action, losses, fines, costs and expenses (including without limitation reasonable attorneys' fees and expenses), imposed upon or incurred by or asserted against any of the Indemnified Parties by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (d) any representation or warranty made in the Note, this Mortgage or the other Loan Documents being false or misleading in any respect as of the date such representation or warranty was made; (e) any claim by brokers, finders or similar persons claiming to be entitled to a commission in connection with any Lease or other transaction involving the Mortgaged Property or any part thereof under any legal requirement or any liability asserted against Mortgagee with respect thereto; and (f) the claims of any lessee to any portion of the Mortgaged Property or any person acting through or under any lessee or otherwise arising under or as a consequence of any Lease. Any amounts payable to any of the Indemnified Parties by reason of the application of this paragraph shall be secured by this Mortgage, become immediately due and payable, and bear interest at the Default Rate specified in the Note from the date that loss or damage is sustained by any of the Indemnified Parties until paid. The obligations and liabilities of Mortgagor under this Section 27 (A) shall survive for a period of one (1) year following any release of this Mortgage executed by Mortgagee and satisfaction of the loan evidenced by the Loan Documents, and (B) shall survive the transfer or assignment of this Mortgage, the entry of a judgment of foreclosure, the sale of the Mortgaged Property by nonjudicial foreclosure sale, or the delivery of a deed in lieu of foreclosure (including, without limitation, any transfer by Mortgagor of any of its rights, title and interest in and to the Mortgaged Property to any party, whether or not affiliated with Mortgagor).

28.     **Trustee.** Trustee may resign by the giving of notice of such resignation in writing to Mortgagee. If Trustee shall die, resign, or become disqualified from acting in the execution of this trust, or if, for any reason, Mortgagee shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Mortgagee shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers, and duties of the aforenamed Trustee. Such appointment may be executed by any authorized agent of Mortgagee, and if such Mortgagee be a corporation and such appointment be executed in its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation. Mortgagor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute Trustees are appointed, each of such multiple substitute Trustees shall be empowered and authorized to act alone without the necessity of the

21

**Exhibit 3**

joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Mortgage or applicable law. Any substitute Trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed, or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its or his predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Mortgagee or of the substitute Trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute Trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute Trustee so appointed in the Trustee's place. No fees or expenses shall be payable to Trustee, except in connection with a foreclosure of the Mortgaged Property or any part thereof or in connection with the release of the Mortgaged Property following payment in full of the Debt.

29.    **Notices.** Unless oral notice is expressly permitted hereunder any notice, demand, statement, request or consent made hereunder shall be in writing and shall be deemed to be received by the addressee on the first (1st) business day after such notice is tendered to a nationally-recognized overnight delivery service or on the third (3rd) day following the day such notice is deposited with the United States postal service first class certified mail, return receipt requested, in either instance, addressed to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Mortgagor or Mortgagee, as the case may be, shall in like manner designate in writing.

30.    **Authority.** (a) Mortgagor (and the undersigned representative of Mortgagor, if any) has full power, authority and right to execute, deliver and perform its obligations pursuant to this Mortgage, and to encumber the Mortgaged Property pursuant to the terms hereof; and (b) Mortgagor represents and warrants that Mortgagor is not a **"foreign person"** within the meaning of Section 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations.

31.    **Sole Discretion of Mortgagee.** Wherever pursuant to this Mortgage, Mortgagee exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Mortgagee, the decision of Mortgagee to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Mortgagee and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

32.    **Non-Waiver; No Oral Change.** The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. This Mortgage may not be modified, amended, waived, extended, changed, discharged, or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge, or termination is sought.

33.    **Liability; Successors and Assigns.** If Mortgagor consists of more than one person, the obligations, and liabilities of each such person hereunder shall be joint and several. Subject to the provisions hereof requiring Mortgagee's consent to any transfer of the Mortgaged Property, this Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns forever.

34.    **Inapplicable Provisions; Headings, etc.; Counterparts.** (a) If any term, covenant or condition of this Mortgage is held to be invalid, illegal or unenforceable in any respect, this Mortgage shall be construed without such provision, (b) the headings and captions of various paragraphs of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof and (c) this Mortgage may be executed in any number of counterparts each of which shall be deemed to be an original but all of which when taken together shall constitute one agreement.

22

RP-2022-538321

**Exhibit 3**



35.     **Definitions.** Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and, whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa. For all purposes herein, the terms: (i) **"Mortgagor"** shall mean "each Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein" and shall include the Maker of the Note if the Mortgagor and the Maker of the Note are not the same; (ii) **"Mortgagee"** shall mean "Mortgagee and any subsequent holder of the Note"; (iii) **"Debt"** shall mean "indebtedness under the Note and other Loan Documents and any other evidence of indebtedness secured by this Mortgage"; (iv) **"person"** shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity; (v) **"Mortgaged Property"** shall include any portion of the Mortgaged Property and any interest therein; and (vi) **"attorneys' fees"** shall include any and all attorneys' fees, paralegal and law clerk fees, including, but not limited to, fees at the pre-trial, trial and appellate levels incurred or paid by Mortgagee in protecting its interest in the Mortgaged Property and Collateral and enforcing its rights hereunder.

36.     **Homestead.** Mortgagor hereby waives and renounces all homestead and exemption rights provided by the constitution and the laws of the United States and of the state in which the Mortgaged Property is located, in and to the Premises as against the collection of the Debt, or any part hereof.

37.     **Assignments.** Mortgagee shall have the right to assign or transfer its rights under this Mortgage and the other Loan Documents, including, without limitation, the right to assign or transfer its rights to a servicing agent. Any assignee or transferee shall be entitled to all the benefits afforded Mortgagee under this Mortgage and the other Loan Documents.

38.     **Survival of Obligations; Survival of Warranties and Representations.** Each and all of the covenants and obligations of Mortgagor (other than warranties and representations contained herein) shall survive the execution and delivery of the Loan Documents and shall continue in full force and effect until the Debt shall have been paid in full; provided, however, that nothing contained in this paragraph shall limit the obligations of Mortgagor except as otherwise set forth herein. In addition, any and all warranties and representations of Mortgagor contained herein shall survive the execution and delivery of the Loan Documents and (i) shall continue for a period of one (1) year following any release of this Mortgage executed by Mortgagee and satisfaction of the loan evidenced by the Loan Documents, and (ii) shall survive the transfer or assignment of this Mortgage, the entry of a judgment of foreclosure, sale of the Mortgaged Property by non-judicial foreclosure or deed in lieu of foreclosure (including, without limitation, any transfer of the Mortgage by Mortgagee of any of its rights, title and interest in and to the Mortgaged Property to any party, whether or not affiliated with Mortgagee). Any and all representations, warranties, covenants, and agreements made in this Mortgage (and/or in other Loan Documents) shall survive any investigation or inspection made by or on behalf of Mortgagee.

39.     **Covenants Running with the Land.** All covenants, conditions, warranties, representations, and other obligations contained in this Mortgage and the other Loan Documents are intended by Mortgagor, Mortgagee and Trustee to be, and shall be construed as, covenants running with the Mortgaged Property until the lien of this Mortgage has been fully released by Mortgagee.

40.     **Governing Law; Jurisdiction.** THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE MORTGAGED PROPERTY IS LOCATED (WITHOUT REGARD TO ANY CONFLICT OF LAWS PRINCIPLES) AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA. MORTGAGOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY COURT OF COMPETENT JURISDICTION LOCATED IN THE STATE IN WHICH THE MORTGAGED PROPERTY IS LOCATED IN CONNECTION WITH ANY

23

**Exhibit 3**

PROCEEDING OUT OF OR RELATING TO THIS MORTGAGE.

41. **Time.** Time is of the essence in this Mortgage and the other Loan Documents.

42. **No Third-Party Beneficiaries; Relationship of Parties.** The provisions of this Mortgage and the other Loan Documents are for the benefit of Mortgagor, Mortgagee and Trustee and shall not inure to the benefit of any third party (other than any successor or assignee of either Trustee or Mortgagee). The relationship of Mortgagee and Mortgagor is solely that of debtor and creditor, and Mortgagee has no fiduciary or other special relationship with the Mortgagor, and no term or condition of any of the Loan Documents shall be construed to be other than that of debtor and creditor. Mortgagor represents and acknowledges that the Loan Documents do not provide for any shared appreciation rights or other equity participation interest.

43. **Trustee Provisions.** In the event that this Mortgage operates as a mortgage, the provisions of this Mortgage which pertain to the Trustee shall be of no force or effect.

44. **Subrogation.** If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Mortgaged Property, then, to the extent of such funds so used, Mortgagee shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Mortgaged Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Mortgagee and are merged with the liens and security interests created herein as cumulative security for the repayment of the Debt and the performance and discharge of any and all obligations arising hereunder or otherwise. In the event a portion of the Debt cannot be lawfully secured against the Mortgaged Property by this Mortgage under applicable laws, it is agreed that the payments first made on the Debt shall be applied to the discharge of that portion of the Debt which cannot be so lawfully secured.

45. **Cross-collateralization.** In addition to the Note, all liens, security interests, assignments, suretyship obligations, stock pledges, rights and remedies granted to the Lender in the Loan Documents secure all obligations, debts and liabilities, plus interest thereon, of the Mortgagor to the Lender, as well as claims by the Lender against the Mortgagor, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, absolute or contingent, whether the Mortgagor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

[Remainder of Page Left Blank]

**Exhibit 3**



Page 25 of 28   Wednesday, August 30, 2023   County Clerk Harris County, Texas

Mortgagor has executed this instrument the day and year first above written.

**MORTGAGOR:**

2727 KIRBY 26L LLC,
a Wyoming limited liability company,

By: _____
Jennifer MacGeorge,
its General Counsel

## ACKNOWLEDGEMENT

THE STATE OF TEXAS§

COUNTY OF Harris§

This instrument was acknowledged before me on the 2nd day of November 2022, by JENNIFER MacGEORGE, in her capacity as the General Counsel of 2727 KIRBY 26L LLC, a Wyoming limited liability company, on behalf of said limited liability company.

_____
NOTARY PUBLIC, STATE OF TEXAS



SCARLET MACGEORGE
My Notary ID # 124519627
Expires April 9, 2023

Signature Page – Deed of Trust

**Exhibit 3**

## EXHIBIT A

### Legal Description of 2727 Kirby Dr #26L, Houston, Texas 77098

UNIT L, LEVEL 26, OF 2727 KIRBY CONDOMINIUMS, A CONDOMINIUM PROJECT IN HARRIS COUNTY, TEXAS, TOGETHER WITH THE LIMITED COMMON ELEMENTS AND AN UNDIVIDED INTEREST IN AND TO THE GENERAL COMMON ELEMENTS, AS DEFINED IN THAT DECLARATION RECORDED IN FILM CODE NO. 205251, CONDOMINIUM RECORDS OF HARRIS COUNTY, TEXAS.

RP-2022-538321

County Clerk Harris County, Texas

Exhibit B

**Exhibit 3**

## EXHIBIT B
### PERMITTED EXCEPTIONS

Each of the liens and other encumbrances set forth in Schedule B to the title insurance commitment issued by Fidelity National Title Agency Inc. as Policy Issuing Agent for Fidelity National Title Insurance Company issued October 24, 2022, and effective October 17, 2022, identified as GF No. FTH-77F-FAH22013499, relating to the Land and delivered to Mortgagee.

RP-2022-538321

Exhibit B

**Exhibit 3**



RP-2022-538321

==RP-2022-538321==
==# Pages 28==
==11/04/2022 08:20 AM==
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
TENESHIA HUDSPETH
COUNTY CLERK
Fees  $122.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



**COUNTY CLERK**
**HARRIS COUNTY, TEXAS**



**Exhibit 3**



I, Teneshia Hudspeth, County Clerk of Harris County, Texas certify that these pages
are a true and correct copy of the original record filed and recorded in my office,
electronically or hard copy, as it appears on this date.

Witness my official hand and seal of office
This August 30, 2023

Teneshia Hudspeth, County Clerk
Harris County, Texas

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and
unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the
Public Information Act.



**Exhibit 3**