**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-32998 |
| | § | |
| HOUSTON REAL ESTATE PROPERTIES, LLC, | § | |
| | § | |
| *Debtor*. | § | (CHAPTER 7) |

**CO-DEFENDANTS' MOTION FOR EXPEDITED
RULE 2004 EXAMINATION AND DOCUMENT PRODUCTION
IN ADVANCE OF JUNE 16, 2026 HEARING ON TRUSTEE'S 9019 MOTION**

**NOTICE PURSUANT TO BANKR. S.D. TEX. LOCAL RULE 9013-1**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. BECAUSE EXPEDITED CONSIDERATION IS SOUGHT UNDER LOCAL RULE 9013-1(i), THE COURT MAY SET A SHORTENED RESPONSE PERIOD AND HEARING.

TO THE HONORABLE JEFFREY P. NORMAN, UNITED STATES BANKRUPTCY JUDGE:

Otisco RDX LLC, MCITBE, LLC, Jetall/Croix Properties LP, Jetall/Croix GP, LLC, 2727 Kirby 26L LLC, 9201 Memorial Dr. LLC, Arabella PH 3201 LLC, Galleria Loop Note Holder LLC, Shepherd-Huldy Development I, LLC, Shepherd-Huldy Development II, LLC, and Shahnaz Choudhri (collectively, the "Co-Defendants"), all named non-debtor defendants in Adversary No. 23-3141, move the Court under Federal Rule of Bankruptcy Procedure 2004 and Bankr. S.D. Tex. Local Rule 9013-1(i) for an Order (i) authorizing Co-Defendants to conduct oral examinations of the Chapter 7 Trustee, Randy W. Williams (the "Trustee"), and Travis B. Vargo, in his capacity as state-court Receiver for Ali Choudhri (the "Receiver"), and to issue subpoenas duces tecum to those persons and to additional witnesses identified below, including Joshua A. Cottle (counsel for Abdullatif) and Osama Abdullatif as the purchaser of the estate's litigation claims under 11 U.S.C.

§ 363(b) (ECF No. 182); (ii) compelling the production of documents on an expedited basis; and (iii) shortening the time for response and hearing on this Motion so that the discovery can be completed before the June 16, 2026 hearing on the Trustee's Motion to Compromise Controversy [ECF No. 246] (the "9019 Motion"). In support, Co-Defendants show:

## I.   JURISDICTION AND STANDING

1.      This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested are Federal Rule of Bankruptcy Procedure 2004 and Bankr. S.D. Tex. Local Rule 9013-1(i).

2.      Co-Defendants have standing to bring this Motion because they are named non-debtor defendants in Adversary No. 23-3141 and are directly affected by the relief sought in the Trustee's Motion to Compromise Controversy [ECF No. 246] (the "9019 Motion").

## II.   INTRODUCTION — WHY EXPEDITED DISCOVERY IS NECESSARY

3.      On May 12, 2026, the Trustee filed the 9019 Motion asking this Court to approve what he calls a "compromise" — a motion that would send approximately $447,924.57 in estate residuals directly to a state-court Receiver who has no filed claim in this case. The hearing is set for June 16, 2026 at 1:30 P.M. The 21-day response window closes only days before the hearing. Absent expedited discovery, this Court will be asked to approve the disbursement of nearly half a million dollars on a paper record that omits material facts, conceals the identity of a key participant, and fails to disclose a parallel state-court maneuver that — taken together with the 9019 Motion — would route over $2.5 million in court-held funds to the same Receiver in the span of weeks.

4.      Co-Defendants do not ask for broad or burdensome discovery. They ask for two focused oral examinations — one of the Trustee, one of the Receiver — and targeted document

subpoenas to two additional persons (Abdullatif's counsel and Abdullatif himself as the § 363(b) purchaser), covering communications and documents that go to the heart of whether the proposed "compromise" is the product of arm's-length negotiation or a coordinated two-forum scheme to extract funds from the estate and a state-court registry simultaneously. The answer to that question determines whether the Court can make the "fair and equitable" finding that Rule 9019 requires. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355–56 (5th Cir. 1997).

### III.   THE STORY THE RECORD TELLS — AND THE STORY IT CONCEALS

5.   The facts that are on the record paint a troubling picture. On April 17, 2026, the Receiver filed a Notice of Appearance in the underlying state-court case, Cause No. 2013-41273, asserting for the first time an interest in $2,132,946.18 held in the supersedeas registry — cash that Choudhri deposited to stay execution of the judgment while his appeal proceeded. For over a year the Receiver had made no claim to those funds. Then, beginning in late April and accelerating through the first week of May, a rapid sequence of coordinated filings transformed the landscape of this case.

6.   On May 5, 2026, Osama Abdullatif executed a Partial Release of Judgment as to HREP — and only HREP — releasing the Debtor from "further personal liability for enforcement of the Judgment" in Cause No. 2013-41273. Two days later, on May 7, 2026, four things happened on a single day that cannot be coincidence: First, the Partial Release was filed in state court. Second, Abdullatif withdrew both of his proofs of claim in this bankruptcy — Claims 4-1 and 5-1 at ECF Nos. 243 and 244 — eliminating the only allowed unsecured claims against the estate. Third, Abdullatif filed in the First Court of Appeals a motion representing that the release rendered HREP's appeal "moot," citing *Rapp v. Mandell & Wright, P.C.*, 123 S.W.3d 431, 436 (Tex.

App.—Houston [14th Dist.] 2003, pet. denied). And fourth, Abdullatif (through his counsel Joshua A. Cottle) and the Receiver jointly filed in the state court an Agreed Motion to Reduce Supersedeas Bond and Disburse Registry Funds, asking the court to release $2,132,946.18 directly to Vargo.

7.      The very next day, May 8, 2026, Vargo filed a Notice of Submission setting the state-court Agreed Motion for hearing by submission — a procedure that, if unopposed, would have resulted in an order disbursing over $2.1 million to the Receiver without any oral hearing and without the participation of Co-Defendants. Four days after that, on May 12, 2026, the Trustee filed the 9019 Motion in this Court, proposing the parallel transfer of the bankruptcy estate's residual funds to the same Receiver.

8.      The design is evident from the sequence itself: release the judgment to moot the appeal, withdraw the claims to eliminate creditors, then use the resulting vacuum to divert estate cash to the Receiver through a "settlement" of a controversy that no longer exists — while simultaneously seeking the same Receiver's enrichment in state court. The state-court Agreed Motion itself admits the coordination in its own words: it states that "there is a creditor common to the judgment in this case and the judgments supporting the Turnover Orders, Osama Abdullatif, who desires money now over later."

9.      On May 15, 2026, Choudhri filed a Verified Opposition and Emergency Motion to Remove from Submission in the state court. The state court took the Agreed Motion off submission, and the matter is now set for oral hearing on June 29, 2026 — thirteen days after the bankruptcy hearing on June 16. The 9019 Motion, however, makes no mention of the parallel state-court motion. It does not disclose the coordinated May 7 filings. It does not identify the § 363(b) purchaser of the estate's litigation claims — who, on information and belief, is Abdullatif himself. And it does not explain the legal basis on which estate residuals should be paid directly to a

Receiver whose own counsel represented, in writing, on April 4, 2025, that "the Receiver has a charging order over the LLCs only" and that he does "not direct the acts and conduct" of non-LLC entities.

10.     These are not peripheral details. They go to the very core of the Rule 9019 inquiry. The Supreme Court has held that approval of a compromise in bankruptcy requires the Court to satisfy itself that the settlement is "fair and equitable" and in the best interest of the estate. *Anderson*, 390 U.S. at 424. The Fifth Circuit requires the bankruptcy court to evaluate (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise — including "the best interests of the creditors, with proper deference to their reasonable views" and "the extent to which the settlement is truly the product of arm's-length bargaining, and not of fraud or collusion." *Cajun Electric*, 119 F.3d at 356; *see also In re Heritage Org., L.L.C.*, 375 B.R. 230, 259–60 (Bankr. N.D. Tex. 2007) (same five-factor test; the court must also consider "the extent to which settlement is truly the product of arms-length bargaining, and not of fraud or collusion"); *In re Robertshaw US Holding Corp.*, 662 B.R. 300, 314 (Bankr. S.D. Tex. 2024) (applying the same factors). A court cannot make those findings on a record that conceals the identity of the real parties in interest, omits the existence of a parallel forum-shopping strategy, and fails to disclose that the only "controversy" being "compromised" was extinguished by the movants' own conduct before the motion was filed.

## IV.     LEGAL STANDARD FOR RULE 2004 DISCOVERY

11.     Federal Rule of Bankruptcy Procedure 2004 provides that "[o]n a party in interest's motion, the court may order the examination of any entity." FED. R. BANKR. P. 2004(a) (effective

Dec. 1, 2024). The permissible scope of examination extends to "the debtor's acts, conduct, or property," "the debtor's liabilities and financial condition," "any matter that may affect the administration of the debtor's estate," and "the debtor's right to a discharge." FED. R. BANKR. P. 2004(b)(1). The Rule further provides that in a Chapter 11 case the examination may also relate to "the operation of any business and the desirability of its continuing," "the source of any money or property the debtor acquired or will acquire for the purpose of consummating a plan and the consideration given or offered," and "any other matter relevant to the case or to formulating a plan." FED. R. BANKR. P. 2004(b)(2).

12. Rule 2004 discovery is intentionally broader than discovery under the Federal Rules of Civil Procedure. Unlike ordinary litigation discovery, which is confined by the pleadings and proportionality constraints of Rule 26, Rule 2004 is designed to permit investigation into all matters touching estate administration — including the conduct of fiduciaries and third parties whose actions may affect the estate. Courts routinely permit Rule 2004 examinations of trustees, their professionals, and third parties where the discovery is targeted to issues materially affecting the administration of estate assets or the propriety of proposed transactions. Indeed, the Advisory Committee Notes to Rule 2004 explain that the Rule derives from former Bankruptcy Act § 21(a), which "was the oldest provision for examination of persons other than the bankrupt" and was "designed to give a wide scope of inquiry." The Rule is a critical safeguard ensuring transparency in the administration of bankruptcy estates — particularly where, as here, the proposed disposition of estate funds raises questions about whether the fiduciary acted in the best interest of the estate or in the interest of third parties. This Court has both the power and the duty to look behind a proposed compromise when the moving papers raise more questions than they answer. *See Anderson*, 390 U.S. at 424 (the bankruptcy court must "form an intelligent and objective opinion

of the probabilities of ultimate success should the claim be litigated"); *Cajun Electric*, 119 F.3d at 356 (the court must evaluate the settlement factors in a "comprehensible fashion" to determine whether the compromise is fair and equitable); *In re Heritage Org.*, 375 B.R. at 259–60 (the court must evaluate whether the settlement is "truly the product of arms-length bargaining, and not of fraud or collusion"); *In re Robertshaw US Holding Corp.*, 662 B.R. 300, 314 (Bankr. S.D. Tex. 2024) (same). That canvassing cannot occur if the parties in interest are denied the tools to put the relevant facts before the Court.

13.     Local Rule 9013-1(i) of the Bankruptcy Court for the Southern District of Texas authorizes the Court to shorten time for response and hearing on any matter for good cause shown. Good cause is manifest here: the June 16 hearing is imminent, the record is materially incomplete, and the discovery sought is narrowly targeted to fill specific gaps in the Trustee's own moving papers.

## V.     PROPOSED EXAMINATIONS AND TOPICS

14.     The discovery sought is calibrated to fill the specific gaps in the Trustee's moving papers. Co-Defendants do not seek open-ended or roving discovery. Each examination topic and document request below corresponds to an undisclosed or inadequately disclosed fact that is material to the Court's Rule 9019 analysis. If the proposed compromise truly reflects arm's-length negotiation in the best interest of the estate, the respondents should welcome the opportunity to demonstrate that on the record.

**A. Randy W. Williams, Chapter 7 Trustee.**

15.     Co-Defendants request authority to take the oral Rule 2004 examination of the Trustee on the following topics:

(a) the negotiations leading to the proposed compromise reflected in the 9019 Motion, including the dates of communications, the participants, and the substance of the discussions among the Trustee, Abdullatif (and his counsel), and the Receiver (and his counsel);

(b) the timing of the 9019 Motion relative to (i) the May 5 Partial Release, (ii) the May 7 Notices of Withdrawal, and (iii) the May 7 appellate motion to dismiss as moot;

(c) the legal and factual basis for the proposed direct payment of estate residuals to the Receiver, including any analysis by the Trustee of the limits of the Receiver's charging-order authority under Tex. Bus. Orgs. Code § 101.112;

(d) the terms of the § 363(b) sale of the estate's litigation claims to Osama Abdullatif (ECF No. 182), including the marketing and notice of the sale, the consideration paid ($15,000), the scope of the rights transferred to Abdullatif, and any communications with Abdullatif or his counsel concerning the Osama Adversary;

(e) the Trustee's and Okin Adams Bartlett Curry, LLP's connections, if any, to Abdullatif, his counsel, the Receiver, or the § 363(b) purchaser, including any matters bearing on disinterestedness under 11 U.S.C. §§ 101(14) and 327(a);

(f) the factual basis for the proposed retention of jurisdiction over Adversary No. 23-3141 after dismissal of the main case, as requested in Paragraph 16 and Prayer ¶ (e) of the 9019 Motion; and

(g) the Trustee's administration of, and accounting for, the estate cash, including disposition of supersedeas funds and the breakdown of administrative expenses.

**B. Travis B. Vargo, Receiver.**

16.     The Receiver is the proposed recipient of approximately $447,924.57 in estate funds — yet the Receiver has filed no proof of claim in this case, holds no allowed claim, and has

previously represented in writing that his authority over the LLCs is limited to a passive charging order. How the Receiver came to be the beneficiary of a Rule 9019 "compromise" of a non-existent controversy is a question only he can answer. Co-Defendants request authority to take an oral Rule 2004 examination of Travis B. Vargo on the following topics:

(a) Mr. Vargo's April 4, 2025 representations that "the Receiver has a charging order over the LLCs only" and that he does "not direct the acts and conduct" of non-LLC entities, including the full context of those representations and any subsequent retraction, modification, or qualification;

(b) the scope of the receivership orders entered on April 7 and April 8, 2025 in Cause Nos. 2012-27197-D and 2012-27197-A, respectively, and the legal authority under which Mr. Vargo claims entitlement to direct payment of estate residuals rather than receipt of distributions from HREP in the ordinary course;

(c) the April 17, 2026 Notice of Appearance filed by Mr. Vargo in Cause No. 2013-41273 and the basis on which Mr. Vargo asserts an interest in registry account #88971 ($2,132,946.18);

(d) the May 7, 2026 Agreed Motion to Reduce Supersedeas Bond and Disburse Registry Funds filed jointly by Mr. Vargo and Mr. Cottle in Cause No. 2013-41273, including its origin, drafting, and execution;

(e) the relationship between the state-court Agreed Motion and the proposed disbursement of estate residuals to Mr. Vargo under the 9019 Motion in this Court;

(f) all communications between Mr. Vargo (or his counsel) and the Trustee (or his counsel), from January 1, 2025 to the present, of any kind and concerning any subject;

(g) all communications between Mr. Vargo (or his counsel) and Abdullatif (or his counsel), from January 1, 2025 to the present, of any kind and concerning any subject;

(h) any side agreements, fee-sharing arrangements, indemnities, releases, or other understandings between or among Mr. Vargo, Abdullatif, Abdullatif's counsel, the Trustee, and/or the Trustee's counsel relating to the proposed compromise, the § 363(b) sale (ECF No. 182), the parallel state-court motion, or the Osama Adversary; and

(i) all matters identified in the 9019 Motion that bear on the Receiver, including ¶¶ 7–9 (receivership and Mr. Vargo's appointment), ¶ 11 (proposed payment to the Receiver), ¶ 12 (the indemnity contemplated by Abdullatif), ¶ 13 (the indemnity itself), and Prayer ¶¶ (c) and (d).

## C. Joshua A. Cottle, Counsel for Abdullatif.

17. Mr. Cottle is at the center of the coordinated May 7, 2026 filings. He is counsel of record for Abdullatif in the state-court case, he filed the Partial Release, he filed the appellate mootness motion, and he co-filed the Agreed Motion to Disburse Registry Funds with the Receiver. The communications between Mr. Cottle, the Trustee, and the Receiver will reveal whether the 9019 Motion is truly a settlement of an adverse controversy or a predetermined distribution agreement dressed in the procedural clothing of Rule 9019. Co-Defendants request authority to issue a subpoena duces tecum to Mr. Cottle (without oral examination) for production of:

(a) all communications between Mr. Cottle (or his firm) and the Trustee (or his counsel), from January 1, 2025 to the present, of any kind;

(b) all communications between Mr. Cottle (or his firm) and the Receiver (or his counsel), from January 1, 2025 to the present, of any kind;

(c) all internal documents, drafts, term sheets, and notes relating to the May 5, 2026 Partial Release of Judgment, the May 7, 2026 Notices of Withdrawal (ECF Nos. 243 and 244), the May 7, 2026 appellate motion in No. 01-23-00109-CV, the May 7, 2026 Agreed Motion to Reduce

Supersedeas Bond and Disburse Registry Funds, the 9019 Motion, and the indemnity referenced in ¶ 13 and Prayer ¶ (d) of the 9019 Motion; and

(d) all documents reflecting any side agreement, fee-sharing arrangement, indemnity, release, or understanding between or among Abdullatif, the Receiver, the Trustee, and/or their respective counsel concerning the disposition of estate funds, the supersedeas registry, or the continued prosecution of the Osama Adversary.

### D.  Osama Abdullatif, § 363(b) Purchaser of the Estate's Litigation Claims.

18.     Abdullatif is the thread that ties the entire maneuver together. He is the judgment creditor who released the judgment, the claim-holder who withdrew the claims, the appellate party who declared the appeal moot, the co-movant on the state-court disbursement motion, the indemnitor of the Trustee under Prayer ¶ (d) of the 9019 Motion, and — on information and belief — the § 363(b) purchaser who bought the estate's litigation claims for $15,000 at ECF No. 182. The 9019 Motion does not disclose this last fact. If Abdullatif is both the purchaser of the claims and the proponent of the "settlement," that is a material conflict of interest that the Court must evaluate before approving the compromise. Co-Defendants request authority to issue a subpoena duces tecum to Abdullatif (through his counsel) for production of:

(a) all documents reflecting the § 363(b) purchase, including the purchase and sale agreement, bill of sale, transfer documents, and any side letters or understandings;

(b) all documents reflecting Abdullatif's current posture in the Osama Adversary, including whether he appears as plaintiff, defendant, assignee, real party in interest, or otherwise;

(c) all communications between Abdullatif (or his counsel) and the Trustee (or his counsel), from January 1, 2025 to the present, of any kind;

(d) all communications between Abdullatif (or his counsel) and the Receiver (or his counsel), from January 1, 2025 to the present, of any kind;

(e) all documents reflecting any side agreement, fee-sharing arrangement, indemnity, release, or understanding between or among Abdullatif, the Receiver, the Trustee, and/or their respective counsel concerning the matters set out above; and

(f) all documents reflecting the indemnity referenced in ¶ 13 and Prayer ¶ (d) of the 9019 Motion.

## VI.    DOCUMENT REQUESTS

19.    In addition to the documents sought through the individual subpoenas described above, Co-Defendants request an order requiring production of the following categories of documents on or before June 9, 2026. These requests are framed broadly but target specific, identifiable categories of communications and documents that the respondents either created, received, or relied upon in connection with the very transaction before this Court. As used herein, "Trustee" includes Randy W. Williams and his counsel Okin Adams Bartlett Curry, LLP (including but not limited to Timothy L. Wentworth) and any agents, accountants, or other professionals acting on the Trustee's behalf; "Receiver" includes Travis B. Vargo, his law firm Vargo Law Firm, Michael Poynter, and any agents acting on the Receiver's behalf; "Abdullatif" includes Osama Abdullatif individually, Abdullatif & Company, LLC, and any agents acting on Abdullatif's behalf; and "Abdullatif's counsel" includes Joshua A. Cottle, the Cottle Firm, and any other attorneys representing or appearing for Abdullatif (including Hoover Slovacek LLP and any attorneys at that firm).

20.    **Communications between the Receiver and Abdullatif (and their respective counsel):**

(a) All communications between the Receiver (or his counsel) and Abdullatif (or his counsel), from January 1, 2025 to the date of production, of any kind and in any form (including emails, text messages, letters, memoranda, meeting notes, telephone logs, drafts, and term sheets).

(b) All documents reflecting any agreement, arrangement, understanding, side agreement, fee-sharing arrangement, indemnity, or proposed indemnity between or among the Receiver, Abdullatif, and/or Abdullatif's counsel.

21.     Communications and documents between the Trustee and the Receiver (and their respective counsel):

(a) All communications between the Trustee (or his counsel) and the Receiver (or his counsel), from January 1, 2025 to the date of production, of any kind and in any form.

(b) All documents exchanged between the Trustee (or his counsel) and the Receiver (or his counsel), including drafts of the 9019 Motion and any settlement, term sheet, indemnity, or release.

22.     Communications and documents between the Trustee and Abdullatif (and his counsel):

(a) All communications between the Trustee (or his counsel) and Abdullatif (or his counsel), from January 1, 2025 to the date of production, of any kind and in any form.

(b) All documents exchanged between the Trustee (or his counsel) and Abdullatif (or his counsel), including all documents relating to the § 363(b) sale of the estate's litigation claims (ECF No. 182), the May 5, 2026 Partial Release of Judgment, the May 7, 2026 Notices of Withdrawal (ECF Nos. 243 and 244), the May 7, 2026 appellate motion in No. 01-23-00109-CV, the May 7, 2026 Agreed Motion to Reduce Supersedeas Bond and Disburse Registry Funds, the 9019 Motion, and the indemnity referenced in ¶ 13 and Prayer ¶ (d) of the 9019 Motion.

23.     Documents relating to the matters described in the 9019 Motion:

(a) All documents reflecting the negotiations leading to the proposed compromise reflected in the 9019 Motion, including drafts, term sheets, redlines, and notes of meetings or calls.

(b) All documents reflecting the identity of the § 363(b) purchaser (ECF No. 182), the consideration paid, the marketing and notice of the sale, the scope of the rights transferred, and any communications with prospective purchasers other than the eventual buyer.

(c) All documents concerning the indemnity referenced in ¶ 13 and Prayer ¶ (d) of the 9019 Motion, including drafts, term sheets, and any prior or contemporaneous versions of the indemnity.

(d) All documents reflecting the receivership orders cited in ¶ 8 of the 9019 Motion, any subsequent orders or modifications, and any communications between the Receiver and the Trustee (or his counsel) concerning the scope of the Receiver's authority, including with respect to the limits of the charging-order remedy under Tex. Bus. Orgs. Code § 101.112.

(e) All documents reflecting Mr. Vargo's April 4, 2025 statement that "the Receiver has a charging order over the LLCs only," including the full text of that communication, any prior or subsequent communications on the same subject, and any retraction, modification, or qualification of that position.

(f) All documents reflecting the Receiver's April 17, 2026 Notice of Appearance in Cause No. 2013-41273 and the basis for the Receiver's asserted interest in registry account #88971.

(g) All documents reflecting the May 7, 2026 Agreed Motion to Reduce Supersedeas Bond and Disburse Registry Funds filed in Cause No. 2013-41273, including drafts, term sheets, internal notes, and all communications among the Trustee, the Receiver, Abdullatif, and their respective counsel relating to that motion.

(h) All documents reflecting the May 5, 2026 Partial Release of Judgment, the May 7, 2026 Notices of Withdrawal (ECF Nos. 243 and 244), and the May 7, 2026 appellate motion in No. 01-

23-00109-CV, including all drafts and all communications among the Trustee, the Receiver, Abdullatif, and their respective counsel relating to any of those filings.

(i) All documents reflecting the factual and legal basis for the proposed retention of jurisdiction over Adversary No. 23-3141 after dismissal of the main case, as requested in ¶ 16 and Prayer ¶ (e) of the 9019 Motion.

(j) All documents reflecting Abdullatif's current posture in the Osama Adversary, including whether he appears as plaintiff, defendant, assignee, real party in interest, or otherwise.

24.     Trustee administration, disclosures, and fees:

(a) All bank statements, accountings, and disbursement records for the estate from January 1, 2025 to the date of production.

(b) All disclosures and supplemental disclosures of connections under Fed. R. Bankr. P. 2014 by the Trustee or Okin Adams Bartlett Curry, LLP, including any updates required to reflect connections to the Receiver, Abdullatif, Abdullatif's counsel, or any § 363(b) purchaser.

(c) All fee statements, time records, invoices, and supporting documentation for the $33,031.00 sought by the Trustee and the $22,562.40 sought by Okin Adams Bartlett Curry, LLP in the 9019 Motion.

(d) All documents reflecting the Trustee's consideration or analysis of the limits of the Receiver's authority under Tex. Bus. Orgs. Code § 101.112, including any opinion of counsel, internal memorandum, or written analysis supporting the legal basis for direct payment of estate residuals to the Receiver rather than to HREP.

### VII.     GOOD CAUSE FOR EXPEDITED CONSIDERATION

25.     The Court should grant expedited consideration because the alternative is to decide the 9019 Motion in the dark. Rule 9019 imposes on this Court a gatekeeping obligation: the Court

must independently satisfy itself that a proposed compromise is "fair and equitable" and in the best interest of the estate before lending it the imprimatur of a court order. *Anderson*, 390 U.S. at 424; *Cajun Electric*, 119 F.3d at 355–56. That obligation is not merely procedural — it is a substantive safeguard against the misuse of estate assets by fiduciaries. The Fifth Circuit has emphasized that the bankruptcy court must evaluate the compromise in light of the probability of success in the litigation, the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay, and all other factors bearing on the wisdom of the compromise — including "the best interests of the creditors" and "the extent to which the settlement is truly the product of arm's-length bargaining, and not of fraud or collusion." *Cajun Electric*, 119 F.3d at 356. These considerations assume an informed record. Yet the record here is riddled with gaps that were created by the movants themselves.

26.     The Trustee filed a motion proposing to send nearly half a million dollars to a non-creditor Receiver, but did not disclose (i) that the only person with an allowed claim had already released the judgment and withdrawn the claims before the motion was filed, (ii) that the very same Receiver and creditor had simultaneously filed a parallel motion in state court seeking an additional $2.13 million from a different pot of Choudhri's funds, (iii) that the purchaser of the estate's litigation claims under § 363(b) — who is, on information and belief, Abdullatif himself — is the architect of the coordinated strategy, or (iv) that the Receiver's own counsel previously conceded in writing that the Receiver's authority over the LLCs is limited to a charging order. These are not collateral details. They are the facts the Court needs to fulfill its gatekeeping duty under *Anderson* and *Cajun Electric* — and they point unmistakably toward a coordinated arrangement that the Trustee was required to disclose. *See Cajun Electric*, 119 F.3d at 356 (the court must consider "the extent to which the settlement is truly the product of arm's-length

bargaining, and not of fraud or collusion"); *In re Age Refining, Inc.*, 801 F.3d 530, 540 (5th Cir. 2015) (reaffirming the *Cajun Electric* factors for Rule 9019 approval).

27.     The timing makes expedited relief essential. The 9019 Motion was served on May 12, 2026. Under Local Rule 9013-1, responses are due within 21 days. The hearing is June 16. If discovery proceeds on the ordinary timetable — with 30 days for document production and depositions scheduled weeks out — the 9019 Motion will be heard and decided before any responsive evidence can be developed. Co-Defendants will have been denied the meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (due process requires, at a minimum, notice and a meaningful opportunity to be heard before deprivation of a property interest).

28.     The burden on the respondents is minimal. Co-Defendants seek only two oral examinations — one of the Trustee, one of the Receiver — and document subpoenas to two additional persons (Abdullatif's counsel and Abdullatif as the § 363(b) purchaser). The document categories track the matters the 9019 Motion itself places at issue: the § 363(b) sale, the receivership orders, the indemnity, the parallel state-court Agreed Motion, the coordinated May 7 filings, and the retention-of-jurisdiction request. The Trustee and Receiver should already have these documents readily at hand — they either drafted them, received them, or relied on them in preparing the very motion before this Court. If the proposed compromise is truly fair and equitable, its proponents should have no objection to showing the Court the full picture. If it is not, this Court should know that before — not after — it enters an order that cannot be undone.

## VIII.     PROPOSED SCHEDULE

29.     Co-Defendants propose the following expedited schedule, which balances the need for meaningful pre-hearing discovery against the respondents' right to reasonable notice:

(a) Hearing on this Motion: at the Court's earliest convenience, with a shortened response period of seven (7) days under Local Rule 9013-1(i);

(b) Document production by all respondents: on or before June 9, 2026;

(c) Rule 2004 examinations: on or before June 12, 2026; and

(d) Filing of supplemental papers based on discovery: on or before noon, June 15, 2026, in advance of the June 16, 2026 hearing on the 9019 Motion.

This schedule gives respondents a full week to gather and produce documents, and gives Co-Defendants three days to conduct two examinations. It is proportionate to the stakes: if the 9019 Motion is granted as proposed, approximately $447,924.57 will leave the estate permanently and irrevocably. The equities overwhelmingly favor brief, targeted transparency over a decision made on an incomplete and misleading record.

## IX.    RESERVATION OF RIGHTS

30.    Co-Defendants reserve all rights, including the right to seek additional discovery, to seek a continuance of the June 16 hearing if discovery cannot be completed in time, to use any documents and testimony obtained in connection with this Motion, the 9019 Motion, the Debtor's Motion to Dismiss (filed contemporaneously herewith), or any other matter properly before this Court, and to seek sanctions or fee-shifting if the discovery reveals conduct inconsistent with the Trustee's fiduciary obligations.

## X.    PRAYER

WHEREFORE, Co-Defendants respectfully request that the Court enter an Order:

31.    Granting expedited consideration of this Motion under Local Rule 9013-1(i);

32.    Authorizing Co-Defendants to conduct an oral Rule 2004 examination of the Trustee, Randy W. Williams, on the topics identified in Section V.A;

33.     Authorizing Co-Defendants to conduct an oral Rule 2004 examination of the state-court Receiver, Travis B. Vargo, on the topics identified in Section V.B;

34.     Authorizing the issuance and service of subpoenas duces tecum to the Trustee, Mr. Vargo, Joshua A. Cottle, and Osama Abdullatif as the § 363(b) purchaser of the estate's litigation claims (ECF No. 182), on the topics and for the documents identified in Sections V.C–D and VI;

35.     Requiring document production on or before June 9, 2026, and Rule 2004 examinations on or before June 12, 2026; and

36.     Granting Co-Defendants such other and further relief, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

**SHACKELFORD, MCKINLEY & NORTON, LLP**

By: /s/ *Lori A. Hood*

**Lori A. Hood**
State Bar No. 09943430
S.D. Tex. Bar No. 7250
lhood@shackelford.law
**Tatiana P. Lutomski**
State Bar No. 24118446
S.D. Tex. Bar No. 3805031
tlutomski@shackelford.law
717 Texas Avenue, 27th Floor
Houston, Texas 77002
Telephone: (832) 415-1801
Facsimile: (832) 565-9030
**ATTORNEYS FOR CO-DEFENDANTS**

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that prior to filing this Motion, counsel for Co-Defendants conferred or attempted to confer with the Chapter 7 Trustee, counsel for the Trustee, counsel for Abdullatif, and counsel for the Receiver regarding the relief requested. The positions of the respective parties are as follows:

- Chapter 7 Trustee: No response as of the date of this filing.

- Counsel for Abdullatif: No response as of the date of this filing.

- Counsel for Receiver: No response as of the date of this filing.

/s/ *Tatiana P. Lutomski*
**Tatiana P. Lutomski**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2026, a true and correct copy of the foregoing Motion was served via the Court's CM/ECF electronic notification system on all parties registered to receive such notice, and by U.S. Mail, postage prepaid, on the parties listed on the service list maintained in this case (see ECF No. 246).

/s/ *Lori A. Hood*
**Lori A. Hood**