**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HOUSTON REAL ESTATE | § | Case No. 22-32998 (JPN) |
| PROPERTIES, LLC, | § | |
| | § | Chapter 7 |
| *Debtor.* | § | |

**DEBTOR'S RESPONSE IN OPPOSITION TO CHAPTER 7**
**TRUSTEE'S MOTION TO COMPROMISE CONTROVERSY**

**Relates to ECF No. 246.**

TO THE HONORABLE JEFFREY P. NORMAN, UNITED STATES BANKRUPTCY JUDGE:

Houston Real Estate Properties, LLC ("HREP" or "Debtor"), by and through undersigned counsel, respectfully submits this Response in Opposition to the Chapter 7 Trustee's Motion to Compromise Controversy [ECF No. 246] (the "9019 Motion").

**PRELIMINARY STATEMENT**

Each of the following grounds as set forth below is independently sufficient to require denial of the 9019 Motion. In summary, there is no live controversy left to compromise: every allowed claim was withdrawn before the 9019 Motion was filed [ECF Nos. 243, 244; Ex. 2], the underlying judgment against HREP has been released [Ex. 7], Abdullatif has represented to the First Court of Appeals that he has released his claim and judgment against HREP and that the appeal as to HREP is therefore moot [Ex. 6], and the estate's litigation claims were already sold under 11 U.S.C. § 363(b) [Doc. 182; Ex. 5]. What the Trustee styles as a "settlement" is, in substance, a disguised distribution order — one that would route the Debtor's residual cash to a single member's state-court receiver in violation of Texas Business Organizations Code § 101.112 and 11 U.S.C. § 349(b)(3). Rule 9019 is not a vehicle for that result.

The retention the Trustee seeks confirms the point. The Trustee concedes that the estate's litigation claims were sold under 11 U.S.C. § 363(b) and that the adversary is now "being prosecuted by parties other than the estate." 9019 Motion ¶ 15 [Ex. 1]. Yet he asks this Court to keep that adversary open after dismissing the very case that created federal jurisdiction over it. 9019 Motion ¶ 16; Prayer ¶ (e) [Ex. 1]. With no estate interest remaining and no creditor body left to serve, the only party benefited by a continued federal forum is the purchaser of the estate's claims — on information and belief, Osama Abdullatif himself, the same non-creditor who withdrew the only allowed claims and released HREP. A Trustee who concedes that the main case should be dismissed cannot, in the same motion, prosecute a retention that serves a stranger's litigation strategy rather than any purpose of this bankruptcy.

The 9019 Motion presents four interrelated proposals that are properly evaluated in combination. Taken together, they would: (1) distribute the estate's residual cash — the balance of the approximately $447,924.57 the Trustee holds, after administrative payments — to the state-court purported receiver for Ali Choudhri, a member of the Debtor, in a manner that 11 U.S.C. § 349(b)(3) and Texas Business Organizations Code § 101.112 do not permit; (2) leave an adversary proceeding open against HREP and the non-debtor co-defendants after dismissal of the main case, at a point when the Debtor would have no funds with which to defend itself; (3) characterize the withdrawal of claims that were already withdrawn before the 9019 Motion was filed as the value supporting that distribution, although the Trustee concedes the settlement provides for no releases and the estate receives nothing it would not receive upon a simple dismissal; and (4) direct the entire residual to a single member's purported receiver even though the Trustee affirmatively admits he cannot establish that member's ownership percentage and admits that another person may own twenty percent or more of the Debtor.

The Fifth Circuit's fair-and-equitable standard under *Connecticut General Life Insurance Co. v. United Companies Financial Corp.* (*In re Foster Mortgage Corp.*), 68 F.3d 914 (5th Cir. 1995), and *Official Committee of Unsecured Creditors v. Cajun Electric Power Cooperative, Inc.* (*In re Cajun Electric Power Cooperative, Inc.*), 119 F.3d 349 (5th Cir. 1997), does not permit approval of a compromise of this character. The Debtor addresses each ground in turn and respectfully requests that the Court deny the 9019 Motion, dismiss the main case under 11 U.S.C. § 707(a), dismiss the adversary, and direct that estate residuals revert to HREP under 11 U.S.C. § 349(b)(3).

**RELEVANT BACKGROUND**

**A.  Status of Claims in the Main Case.**

1.    Claims 1, 2, 3, and 6 — ad valorem and governmental claims — were withdrawn (ECF Nos. 174–177). Claims 8 and 11, filed by Skaneateles rDX, LLC, were disallowed in full by order of this Court sustaining the Trustee's objection [ECF No. 190]. Claims 9, 10, and 12, filed by Ali Choudhri, Jetall Investment & Realty, Inc., and Jetall Companies, were likewise disallowed in full by order of this Court following the Trustee's objection and the absence of any response [ECF No. 196]. Claim 7, the $250.00 administrative claim of the U.S. Trustee, remains outstanding and is proposed to be paid under the settlement. Claims 4-1 and 5-1, filed by Osama Abdullatif and his related entity, were voluntarily withdrawn by Abdullatif on or about May 7, 2026 [ECF Nos. 243, 244]. No allowed unsecured claims remain other than the U.S. Trustee's administrative claim. On or about the same date, Abdullatif executed and filed in the underlying state-court matter (Cause No. 2013-41273, Harris County, Texas) a Partial Release of Judgment releasing HREP from personal liability on the judgment. On or about the same date, Abdullatif represented to the First Court of Appeals (No. 01-23-00109-CV) that the pending appeal as to HREP is now moot.

3

**B. The § 363(b) Sale and the Operative Pleading in the Adversary.**

2.    On or about August 1, 2023, John Quinlan, Omar Khawaja, and Osama Abdullatif filed Adversary No. 23-03141 against HREP and numerous other defendants. By Order dated October 26, 2023 [Doc. 101; Ex. 3], this Court granted the defendants' motion to dismiss, holding that the fraudulent-transfer and related claims regarding the debtor belong exclusively to the Chapter 7 Trustee and that the plaintiffs lacked standing to assert them. The Court allowed the Chapter 7 Trustee to substitute as plaintiff within fourteen days. By separate Order the same date [Doc. 102; Ex. 4], the Court denied the plaintiffs' request for derivative standing. The Trustee did not substitute in as plaintiff. Instead, the Trustee moved to sell the estate's litigation claims, and the Court approved that sale free and clear under 11 U.S.C. § 363(b) by Order dated January 5, 2024 [Doc. 182; Ex. 5], with liens, claims, and encumbrances attaching to the proceeds. The estate's litigation claims were sold for $15,000. The dismissed complaint was never amended, and no party with standing has filed an operative pleading in the adversary.

3.    The 9019 Motion acknowledges at Paragraph 15 that the estate sold its interest in the adversary litigation claims under § 363(b) and that the adversary is now "being prosecuted by parties other than the estate." The parties identified as prosecuting the adversary are Quinlan, Khawaja, and Abdullatif — the same plaintiffs this Court dismissed for lack of standing. The 9019 Motion does not disclose whether any party prosecuting the adversary, or any person or entity affiliated with such a party, purchased the estate's litigation claims or holds an interest in the proposed disbursement to the Purported Receiver. The Trustee's own counsel has since confirmed the sale: opposing a motion to disqualify in a related case before this Court, counsel represented that the HREP estate's claims against a co-defendant "were sold and are no longer property of the HREP estate." Resp. of Chapter 7 Trustee in Opp'n to Mot. to Disqualify, *In re Jetall Cos., Inc.*,

No. 24-35761, ECF No. 251 ¶ 22 (Bankr. S.D. Tex. May 28, 2025). On the Trustee's own admission, the estate retains no interest in the adversary that retention could protect.

**C.  What the 9019 Motion Proposes.**

4.    The 9019 Motion seeks the following forms of relief: (i) dismissal of the main case under § 707(a); (ii) payment of administrative claims totaling $55,843.40 ($250.00 to the U.S. Trustee; $33,000.00 plus $31.00 to the Chapter 7 Trustee; and $21,510.00 plus $1,052.40 to Okin Adams Bartlett Curry, LLP); (iii) distribution of the remaining balance of estate funds — approximately $392,081 — to Travis B. Vargo in his capacity as purported court-appointed receiver for Ali Choudhri individually (the "Purported Receiver"), not as receiver for HREP; (iv) confirmation of an indemnity running from Abdullatif to the Trustee as to the payments to the Purported Receiver; and (v) an order that the adversary proceeding shall not be dismissed and shall continue after dismissal of the main case, with this Court retaining jurisdiction for all purposes. 9019 Motion ¶¶ 10–11, 16; Prayer ¶¶ (b)–(e) [Ex. 1].

5.    The Trustee's stated basis for directing the residual to the Purported Receiver is that Choudhri claims an eighty-percent membership interest in the Debtor and that, because of the receivership, Choudhri's interest is property of the Purported Receiver. 9019 Motion ¶ 9 [Ex. 1]. In the same paragraph, however, the Trustee affirmatively admits that "it is unclear the basis for Choudhri's claim of 80% ownership or who the owner(s) of the remaining 20% is/are," that "Abdullatif may claim ownership of the 20% or more of the membership interests," and that "no proof of interests are filed in the case." *Id.*

6.    The Trustee characterizes Claims 4-1 and 5-1 as the consideration being exchanged for the proposed disbursement. Because those claims were withdrawn before the 9019 Motion was filed, they could not serve as consideration for any agreement entered thereafter.

<u>**ARGUMENT AND AUTHORITIES**</u>

**I.  THE FIFTH CIRCUIT'S FAIR-AND-EQUITABLE STANDARD GOVERNS AND IS NOT SATISFIED.**

7.    A bankruptcy court may approve a compromise under Federal Rule of Bankruptcy Procedure 9019(a) only if the settlement is "fair and equitable and in the best interest of the estate." *In re Foster Mortg. Corp.*, 68 F.3d at 917 (*citing In re Jackson Brewing Co.,* 624 F.2d 599, 602 (5th Cir. 1980)). The court must compare the terms of the proposed compromise with the likely rewards of litigation. *Id.* The Fifth Circuit has specified four considerations: (1) the probability of success in the litigation, with due consideration for uncertainty in fact and law; (2) the complexity and likely duration of the litigation and attendant expense; (3) the paramount interest of creditors with proper deference to their reasonable views; and (4) the extent to which the settlement is the product of arms-length bargaining rather than fraud or collusion. *In re Foster Mortg. Corp.*, 68 F.3d at 917–18; *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d at 355–56. The Trustee bears the burden of demonstrating that each consideration supports approval.

***A.  The Proposed Compromise Has No Legitimate Subject Matter.***

8.    Rule 9019 authorizes compromise of *estate claims*. *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d at 355–56. Here, the Trustee concedes that "[t]he proposed settlement does not provide for any releases." 9019 Motion ¶ 23 [Ex. 1]. The withdrawals of Claims 4-1 and 5-1 were filed on May 7, 2026 [ECF Nos. 243, 244; Ex. 2], before the 9019 Motion was filed on May 12, 2026, and took effect on filing without need of court approval. The estate therefore receives nothing from approval of the 9019 Motion that it would not receive from a simple dismissal: the claims are already gone, no releases are exchanged, and the only operative effect of the requested order is to route the residual cash to the Purported Receiver. A compromise that secures no release, resolves

no live claim, and confers no benefit on the estate beyond what dismissal alone accomplishes cannot satisfy the first or second factors of the fair-and-equitable analysis.

**B.  *No Creditor Body Remains Whose Interests Support the Proposed Disbursement.***

9.    The Fifth Circuit has recognized that "in the bankruptcy context, the interests of the creditors — not the debtors — are paramount." *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1159 (5th Cir. 1988). Here, every allowed claim has been paid, disallowed, or withdrawn. The Purported Receiver holds no allowed proof of claim in the main case. The paramount-interest factor accordingly provides no basis for approving a disbursement whose sole identifiable beneficiary is a party holding a state-law charging-order lien — a lien that, as discussed in Section II below, does not extend to HREP's property. More fundamentally, once every claim has been paid, disallowed, or withdrawn and the estate is solvent — that is, once the Debtor is "in the money" — there is no creditor body left to protect, and the Debtor is the sole residual stakeholder in the estate. In that posture the paramount-interest factor does not fall away; it inverts. The interest the Court must weigh becomes the Debtor's interest in its own surplus, because the residue of a solvent estate belongs to the debtor and is paid "to the debtor" under 11 U.S.C. § 726(a)(6). A settlement that strips that surplus from HREP and routes it to a non-creditor is the antithesis of what the paramount-interest inquiry exists to protect.

**C.  *Material Disclosures Are Absent, Impairing the Court's Ability to Find the Settlement Fair and Equitable.***

10.   The arms-length factor requires full disclosure of all material terms. *In re Foster Mortg. Corp.*, 68 F.3d at 918. The 9019 Motion states that the estate's litigation claims were sold under § 363(b) [Doc. 182; Ex. 3] and are now being prosecuted by parties other than the estate. *See* 9019 Motion ¶ 15 [Ex. 1]. The parties presently prosecuting the adversary are plaintiffs John Quinlan, Omar Khawaja, and Osama Abdullatif. The 9019 Motion does not disclose whether any of those

parties — or any person or entity affiliated with them — purchased the estate's litigation claims, holds an interest in the proposed disbursement to the Purported Receiver, or otherwise stands to benefit from both the proposed disbursement and the continued prosecution of the adversary. That information is material to the fairness inquiry. Where the same constellation of parties may benefit from both halves of the proposed transaction — the disbursement and the preservation of the adversary — the Court cannot determine whether the settlement is the product of arms-length dealing without disclosure of those relationships and interests. The absence of that disclosure independently impairs the required finding and warrants denial. The Debtor reserves the right to seek discovery on these relationships and to supplement this Response accordingly.

### D.  The Trustee Concedes He Cannot Establish the Ownership Interests on Which the Proposed Distribution Depends.

11.  The proposed distribution to the Purported Receiver rests entirely on the premise that the residual cash belongs to Choudhri's membership interest, which the Purported Receiver controls. But the Trustee disclaims the factual foundation for that premise in the same breath in which he asserts it. The Trustee admits that the basis for Choudhri's claimed eighty-percent interest is "unclear," that the identity of the owner or owners of the remaining twenty percent is unknown, that Abdullatif himself "may claim ownership of the 20% or more," and that "no proof of interests are filed in the case." 9019 Motion ¶ 9 [Ex. 1]. A trustee cannot carry his burden of demonstrating that a distribution is fair and equitable while simultaneously conceding that he cannot establish who owns the interest to which he proposes to pay the entire residual. Even on the Trustee's own equity-distribution theory, directing one hundred percent of the residual to the Purported Receiver for a member whose ownership percentage is admittedly unproven would, if that member owns less than the whole, distribute funds belonging to an unidentified co-owner to a party not entitled to them. The Trustee's own admission defeats the factor-three (the paramount interests of

creditors) and factor-seven (arm's-length bargaining) analysis and, independently, confirms that the only administrable disposition is the one the Bankruptcy Code already prescribes: revesting in HREP under § 349(b)(3), as set out in Section III.

### E.  The Proposed Disposition of the Estate's Residual Warrants Heightened Scrutiny.

12.  The Fifth Circuit has held that a trustee should not be able to use the § 363(b) process or a Rule 9019 settlement to establish the terms of a distribution outside the ordinary bankruptcy framework in a way that deprives interested parties of their statutory protections. *Pension Benefit Guaranty Corp. v. Braniff Airways, Inc.* (*In re Braniff Airways, Inc.*), 700 F.2d 935, 940 (5th Cir. 1983). While the 9019 Motion is not framed as a § 363(b) sale, the practical effect of distributing the estate's entire residual to a single member's purported receiver — one whose state-law rights do not extend to LLC assets, and whose underlying ownership the Trustee cannot establish — while simultaneously requiring the Debtor to remain a defendant in active litigation it cannot fund, is an outcome of sufficient consequence to warrant close scrutiny under the fair-and-equitable standard. That scrutiny reveals the legal defects addressed in Sections II through V below.

### F.  The Proposed Administrative-Fee Payments Cannot Be Approved Without Detailed Fee Applications and an Independent Reasonableness Determination.

13.  The 9019 Motion proposes to pay, as administrative claims, $33,000.00 plus $31.00 to the Chapter 7 Trustee and $21,510.00 plus $1,052.40 to the Trustee's counsel, Okin Adams Bartlett Curry, LLP, in addition to the $250.00 fee of the United States Trustee. 9019 Motion ¶¶ 10–11 [Ex. 1]. Neither the Motion nor the record contains any detailed fee application or the fact that one will be filed which is required. The Trustee asks the Court — and the estate — to pay these sums on his say-so, without the transparency the Code requires.

14.  Because every dollar paid as an administrative expense reduces the residual that reverts to HREP under § 349(b)(3), the reasonableness of these fees is directly material to whether the

9

proposed compromise is "in the best interest of the estate." The Court should not approve payment of the administrative claims as a component of the 9019 Motion without first requiring detailed fee applications and supporting time and billing records, and affording interested parties an opportunity to be heard on reasonableness. The Debtor's concurrently filed Motion for Expedited Discovery seeks production of those billing records so that their reasonableness can be tested before any disbursement is approved.

## II.  THE TRUSTEE MAY NOT DIRECT ESTATE RESIDUALS TO THE RECEIVER BECAUSE TEXAS LAW DOES NOT PERMIT A CHARGING-ORDER HOLDER TO REACH LLC PROPERTY DIRECTLY, AND RULE 9019 DOES NOT ENLARGE THAT STATE-LAW RIGHT.

15.  It is the Trustee who requests the proposed disbursement. Whatever the rationale, the legal question is the same: whether a Chapter 7 trustee may, through a Rule 9019 motion, direct estate property to a party whose state-law rights do not extend to that property. The answer under controlling authority is no. A trustee acting under Rule 9019 cannot confer on a creditor greater rights than applicable nonbankruptcy law provides. *Butner v. United States*, 440 U.S. 48, 55 (1979); *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 549 U.S. 443, 450–51 (2007).

### A.  Section 101.112 of the Texas Business Organizations Code Limits the Purported Receiver to Distributions HREP Actually Makes.

16.  HREP is a Texas limited liability company. Travis B. Vargo was purportedly appointed receiver for Ali Choudhri personally — not for HREP. HREP is not listed in the Charging Order and therefore there is no standing or  controversy. The Purported Receiver's authority to reach any economic value from Choudhri's membership interest in HREP is governed exclusively by Texas Business Organizations Code § 101.112.

10

17. Section 101.112 provides, in relevant part: (a) a judgment creditor of a member may apply to a court to charge the membership interest of the judgment debtor to satisfy the judgment; (b) if so charged, the creditor has "only the right to receive any distribution to which the judgment debtor would otherwise be entitled" in respect of the membership interest; (c) the charging order constitutes a lien on the membership interest that "may not be foreclosed on"; (d) "[t]he entry of a charging order is the **exclusive remedy** by which a judgment creditor of a member or of any other owner of a membership interest may satisfy a judgment out of the judgment debtor's membership interest"; and (f) "[a] creditor of a member or of any other owner of a membership interest **does not have the right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company**." Tex. Bus. Orgs. Code § 101.112(a)–(f) (West 2024).

18. By its plain text, § 101.112 does not permit the Purported Receiver to receive HREP's property directly. The Purported Receiver in this instance is not a party in controversy and therefore a 9019 is an inappropriate vehicle. The Purported Receiver may only receive distributions that HREP itself elects to make to Choudhri as a member. Estate residuals are property of HREP. The proposed disbursement bypasses the corporate-decision step — HREP's determination whether to make any distribution — that must precede any attachment of the charging-order lien.

**B. *In re Prodigy Services, LLC* Confirms That a Court May Not Order LLC Funds Paid Directly to a Charging-Order Holder.**

19. In *In re Prodigy Services, LLC*, No. 14-14-00248-CV, 2014 WL 2931358 (Tex. App.— Houston [14th Dist.] June 26, 2014, orig. proceeding) (mem. op., not designated for publication), the Texas Fourteenth Court of Appeals — the same court overseeing the parallel state proceedings in this matter — addressed a nearly identical issue. The Office of the Attorney General held child

support liens over a member's interest in Prodigy LLC and sought a court order directing Prodigy's own settlement funds, held in the court registry, to be disbursed directly to the OAG rather than to the LLC.

20. The court conditionally granted mandamus requiring the trial court to order the funds disbursed to Prodigy itself — not to the OAG. The court held that "the trial court cannot force Prodigy to make distributions to its members, and the OAG will have to wait for Prodigy to make such distributions before it can attempt to satisfy the child support judgment against Spates." *Id.* at *4. The court grounded that holding in § 101.112(b) and § 101.112(f): the judgment creditor of a member may only receive distributions the LLC actually makes; the creditor cannot reach LLC property directly. *Id.*

21. The statutory and factual parallel to the present matter is direct. Estate residuals belong to HREP. The Purported Receiver holds a charging-order interest in Choudhri's membership interest. The 9019 Motion asks this Court to order those funds disbursed to the Purported Receiver without HREP first making a distribution decision. Under Prodigy Services and § 101.112, that order is not available.

### C.  Pajooh, Stanley, and Klinek Confirm the Exclusive and Passive Character of the Charging-Order Remedy.

22. In *Pajooh v. Royal West Investments LLC, Series E*, 518 S.W.3d 557, 561–63 (Tex. App.—Houston [1st Dist.] 2017, no pet.), the First Court of Appeals confirmed that under § 101.112, the judgment creditor of a member is limited to receiving distributions the LLC actually makes and cannot reach LLC assets directly. In *Stanley v. Reef Securities, Inc.*, 314 S.W.3d 659, 663–65 (Tex. App.—Dallas 2010, no pet.), the court held the charging order to be the exclusive remedy and confirmed that a holder of a charging order "may not compel a distribution of profits by the partnership and does not obtain a right to participate in the partnership." *Id.* at 664–65. In *Klinek*

12

*v. LuxeYard, Inc.*, 672 S.W.3d 830 (Tex. App.—Houston [14th Dist.] 2023, no pet.), the Fourteenth Court reaffirmed the statutory architecture of § 101.112 and confirmed that creditors may not reach LLC property outside the charging-order framework.

23. The Purported Receiver himself has acknowledged this limitation. In a written communication dated April 4, 2025, the Purported Receiver stated that "the Receiver has a charging order over the LLCs *only*" and that he does "not direct the acts and conduct" of the related entities, citing the same *Klinek* and *Pajooh* authorities discussed above. *See* Ex. 8. The proposed disbursement is irreconcilable with the Purported Receiver's own understanding of the scope of his authority.

### D.  The Correct Statutory Sequence — Which the Proposed Disbursement Would Skip.

24.  If any payment to the Purported Receiver were ever appropriate, the required sequence is: (Step 1) estate residuals revert to HREP upon dismissal under §§ 707(a) and 349(b)(3); (Step 2) HREP, through its corporate governance, independently determines whether to make any distribution to Choudhri as a member; (Step 3) if and only if HREP makes such a distribution, the Purported Receiver's charging-order lien attaches to that distribution under § 101.112(b); (Step 4) if HREP does not distribute, the Purported Receiver waits — he may not compel a distribution and may not reach HREP's assets. Tex. Bus. Orgs. Code § 101.112(d), (f).

25. The proposed disbursement omits Steps 1 and 2. A Rule 9019 order cannot lawfully substitute for those steps.

### E.  Prayer ¶ (d)'s Indemnification Request Is Consistent With Concern That the Proposed Disbursement Is Vulnerable to Challenge.

26. Prayer ¶ (d) of the 9019 Motion requests an indemnity from Abdullatif protecting the Trustee against claims arising from the proposed disbursement. A trustee who regards an indemnity as necessary is signaling awareness that the proposed action may be challenged. An

13

indemnity from a third party does not cure a statutory defect in the proposed distribution; it acknowledges that one may exist.

### F.  Butner and Travelers Confirm That Rule 9019 Cannot Expand the Purported Receiver's State-Law Rights.

27.  Property interests are created and defined by state law, and "there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. at 55. Creditors' entitlements in bankruptcy are determined by the underlying nonbankruptcy substantive law unless the Bankruptcy Code expressly provides otherwise. *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. at 450–51. The Purported Receiver's rights against HREP are defined by § 101.112 of the Texas Business Organizations Code. Rule 9019 is a procedural rule. It does not, and cannot, expand those substantive state-law rights.

### III.  UPON DISMISSAL, 11 U.S.C. § 349(b)(3) AUTOMATICALLY REVESTS ALL ESTATE PROPERTY IN HREP; THE TRUSTEE LACKS POST-DISMISSAL AUTHORITY TO DISBURSE RESIDUALS TO ANY THIRD PARTY.

28.  Section 349(b)(3) provides that, unless the court for cause orders otherwise, dismissal of a bankruptcy case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3). Congress stated that the purpose of § 349 is to "undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." H.R. Rep. No. 95-595, at 338 (1977); S. Rep. No. 95-989, at 49 (1978).

29.  The residual cash at issue is the proceeds of the Trustee's sale of the Debtor's own real property at 801 Malone Street, Houston, Texas. 9019 Motion ¶ 3 [Ex. 1]. That property was HREP's, the proceeds are HREP's, and upon dismissal they revest in HREP — the entity in which they were vested before the case began. This conclusion is reinforced by the Code's distribution

scheme: had the case proceeded to distribution rather than dismissal, surplus remaining after payment of all claims would be paid "to the debtor" under 11 U.S.C. § 726(a)(6) — again, to HREP, not to the equity holders of HREP and not to a member's receiver. Both the dismissal path the Trustee has chosen and the distribution path he has forgone return the residual to the same place: the Debtor.

30. The Trustee's proposed distribution conflates the Debtor with the Debtor's equity owners. Surplus property of a corporate or limited-liability debtor returns to the debtor entity; it does not pass directly to the entity's members. Whether HREP thereafter makes any distribution to its members is a matter of HREP's internal governance and Texas law, not a determination this Court makes by approving a Rule 9019 motion. The distinction is dispositive here, because the Purported Receiver's rights reach only distributions HREP actually makes to Choudhri, not HREP's property itself. *See* Section II above; Tex. Bus. Orgs. Code § 101.112.

31. This provision operates automatically upon dismissal. Upon entry of a dismissal order, estate residuals vest in HREP as a matter of law. After that point, the Trustee has no authority to disburse those funds to any party other than HREP. *See* In re Beaird, 578 B.R. 643, 649 (Bankr. D. Kan. 2017) ("After this case was dismissed, the former Chapter 13 Trustee lacked authority to distribute the undisbursed funds to [the creditor].").

32. The Supreme Court addressed the parallel question in the conversion context in Harris v. Viegelahn, 575 U.S. 510 (2015), holding that undistributed funds held by a Chapter 13 trustee at the time of conversion must be returned to the debtor — not distributed to creditors — because once the governing chapter ceases to apply, the former trustee loses authority to disburse estate funds to creditors. *Id.* at 521. In re Beaird applied that reasoning directly to § 349 post-confirmation dismissal and reached the same result. 578 B.R. at 649–50.

15

33. The "cause" exception to § 349(b)(3)'s self-executing operation is construed narrowly. "The power to override the normal effects of dismissal is used sparingly." 3 Collier on Bankruptcy ¶ 349.03[2] (16th ed. 2024). The existence of a charging-order lien does not constitute cause. *See* In re Beaird, 578 B.R. at 650 (declining to find cause on facts more sympathetic to the creditor than those present here). The Trustee has not articulated any cause within the meaning of § 349(b)(3).

34. The proposed disbursement to the Purported Receiver — made at any point before or at the moment of dismissal — does not resolve this problem. Section 349(b)(3) is a statutory command, not a procedural default that yields to sequencing choices. Moreover, the Trustee's own Prayer ¶ (a) requests dismissal. A trustee who seeks dismissal cannot also seek, as part of that same motion, a disbursement that the law withholds upon dismissal. The positions cannot simultaneously be granted.

## IV. THE ADVERSARY PROCEEDING SHOULD BE DISMISSED UPON DISMISSAL OF THE MAIN CASE.

### A. The Trustee's Own Paragraph 15 Admission Eliminates "Related To" Jurisdiction.

35. Bankruptcy courts are courts of limited jurisdiction whose authority over non-bankruptcy civil proceedings derives solely from 28 U.S.C. § 1334(b). A civil proceeding is "related to" a bankruptcy case only if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir. 1987) (adopting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)); *see also* Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995). The Fifth Circuit applies this standard strictly. Bass v. Denney (In re Bass), 171 F.3d 1016, 1022–23 (5th Cir. 1999); Galaz v. Galaz (In re Galaz), 765 F.3d 426, 431 (5th Cir. 2014).

36. At Paragraph 15 of the 9019 Motion, the Trustee states that the estate's interest in the adversary claims was sold under § 363(b) and that the adversary "is being prosecuted by parties other than the estate." With no estate interest in the claims and no allowed creditor to benefit from any recovery, there is no scenario in which the outcome of the adversary could conceivably affect the estate. A dispute with the debtor alone is not sufficient to create "related to" jurisdiction where the outcome cannot benefit the estate. In re Bass, 171 F.3d at 1023.

## B.  Walker v. Cadle Forecloses Both Subject-Matter Jurisdiction and Supplemental Jurisdiction.

37.  In Walker v. Cadle Co. (In re Walker), 51 F.3d 562 (5th Cir. 1995), the Fifth Circuit held that the bankruptcy court lacked subject-matter jurisdiction over a non-debtor creditor's third-party claim against another non-debtor because the claim could be resolved between non-debtors with no conceivable effect on the estate. *Id.* at 569. The court further held that bankruptcy courts may not invoke supplemental jurisdiction under 28 U.S.C. § 1367 as a substitute jurisdictional basis because bankruptcy courts are not district courts and § 1367 does not apply to them. *Id.* at 570–73; *accord* In re Bass, 171 F.3d at 1024. The adversary is now, by the Trustee's own admission, a proceeding between non-estate parties over state-law claims. Walker is directly controlling.

## C.  No Operative Pleading Remains in the Adversary.

38.  This Court dismissed the complaint in Adversary No. 23-03141 on October 26, 2023 [Doc. 101; Ex. 3], holding that the fraudulent-transfer, alter ego, and joint enterprise claims regarding the debtor belong exclusively to the Chapter 7 Trustee and that the plaintiffs lacked standing to bring them. The Court gave the Trustee fourteen days to substitute in as plaintiff. The Trustee did not do so. He sold the estate's claims instead [Doc. 182; Ex. 5], and the complaint was never amended. The result is an adversary in which the only parties with a pleading on file were dismissed for lack of standing, the only party with standing declined to prosecute, and no operative

17

complaint has been filed since. The § 363(b) sale transferred whatever estate claims existed to a purchaser; it did not reinstate the dismissed complaint, cure the plaintiffs' standing defect, or supply the adversary with a live pleading. Retaining a proceeding in that posture after dismissal of the main case — when the estate that supplied the only basis for federal jurisdiction no longer exists — would serve no identifiable bankruptcy purpose. That conclusion is only reinforced by what has since occurred. When the Court addressed the adversary in 2023, it dismissed the complaint for lack of standing yet allowed the Trustee fourteen days to step in as plaintiff — a measured course that left the matter open at a time when proofs of claim were still on file and the estate still had creditors to serve. Those circumstances no longer exist. The only remaining proofs of claim — Abdullatif's Claim 4-1 and Claim 5-1 — have now been withdrawn [ECF Nos. 243, 244; Ex. 2], and every other claim has been paid, withdrawn, or disallowed. With no allowed claim and no creditor left to serve, there is no longer any reason for the main bankruptcy case to remain open — which is precisely why the Trustee himself now seeks dismissal of this case, representing in his own motion that the case "can be dismissed without awaiting disposition of that appeal." 9019 Motion ¶ 13; Prayer ¶ (a) [Ex. 1]. The adversary's only tie to a federal forum was the bankruptcy estate; once that estate is dissolved at the Trustee's own request, with no claim left to administer, nothing remains for the adversary to serve. When the main case is dismissed, the adversary must be dismissed with it.

### D.  The Querner Four-Factor Analysis Favors Dismissal.

39.  The Fifth Circuit has recognized that "the dismissal or closing of a bankruptcy case should result in the dismissal of related proceedings." Matter of Querner, 7 F.3d 1199, 1201 (5th Cir. 1993). That principle is widely shared among the circuits. *See* In re Morris, 950 F.2d 1531, 1534 (11th Cir. 1992); In re Smith, 866 F.2d 576, 580 (3d Cir. 1989); In re Porges, 44 F.3d 159, 162 (2d

18

Cir. 1995) (dismissal of the underlying bankruptcy case does not automatically strip jurisdiction but creates a presumption in favor of dismissing related proceedings). Retention is discretionary, and the party seeking it bears the burden of justification under a four-factor analysis: (1) judicial economy, (2) convenience to the parties, (3) fairness, and (4) comity with state courts. Matter of Querner, 7 F.3d at 1201–02; *see also* In re Bass, 171 F.3d at 1025 n.35. Because this Court's authority over the adversary derives from the reference of bankruptcy matters under 28 U.S.C. § 157(a), and because the estate that supported that reference will no longer exist after dismissal, each factor weighs in favor of dismissal here.

a) **Judicial Economy:** The adversary asserts fraudulent transfer, alter ego, and joint enterprise claims — state common-law claims over which this Court lacks constitutional authority to enter final judgment. *See Stern v. Marshall*, 564 U.S. 462, 487 (2011); *Executive Benefits Insurance Agency v. Arkison*, 573 U.S. 25 (2014). Retention would at most permit this Court to issue proposed findings and conclusions for de novo district-court review — an inefficient expenditure of judicial resources on claims this Court cannot finally decide and that, once the estate no longer exists, serve no bankruptcy purpose. Judicial economy favors dismissal.

b) **Convenience:** These are state-law claims that, once the main case is dismissed, bear no connection to any bankruptcy estate. A federal bankruptcy forum that will no longer have an estate before it serves no party's convenience, and this factor does not support retention.

c) **Fairness:** The 9019 Motion would, if granted as proposed, eliminate the Debtor's financial ability to participate in the adversary while simultaneously ordering the adversary to continue. It is fundamentally unfair to strip the Debtor of the very funds it would need to

defend and, in the same order, compel it to keep defending. Dismissal — not continued federal jurisdiction under the proposed order — is the fair result.

d) **Comity:**  Retaining jurisdiction over purely state-law claims after the federal bankruptcy proceeding has been dismissed serves no bankruptcy purpose and advances no federal interest. The comity factor does not support retention.

### E.  Paragraph 16 and Prayer ¶ (e) Seek Relief Against Non-Estate Parties That Rule 9019 Does Not Authorize.

40.  Rule 9019 authorizes compromise of estate claims. *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d at 355–56. It does not authorize a trustee to obtain, as part of a settlement order, an injunction binding non-debtor defendants to continued litigation in federal court after the bankruptcy predicate has dissolved. The relief requested at Paragraph 16 and Prayer ¶ (e) runs directly against HREP, Ali Choudhri, and the co-defendants in their capacities as adversary defendants — not as parties to any estate transaction. Each of those parties has independent standing to contest this relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017).

### F.  The Retention Request Serves a Non-Creditor's Litigation Strategy, Not Any Bankruptcy Purpose.

41.  The retention request reveals what the 9019 Motion is actually doing. The Trustee concedes that the estate's interest in the adversary's litigation claims was sold under 11 U.S.C. § 363(b) [Doc. 182; Ex. 5] and that the adversary "is being prosecuted by parties other than the estate." 9019 Motion ¶ 15 [Ex. 1]. The estate thus retains no stake in the adversary, and the Trustee himself now seeks dismissal of the main case. 9019 Motion ¶ 13; Prayer ¶ (a) [Ex. 1]. On that record, keeping the adversary alive "for all purposes" cannot benefit the estate or its creditors, because none remain to benefit. The only party served by continued federal-forum litigation is the

20

purchaser of the estate's claims — who, on information and belief, is Osama Abdullatif himself, the same party who withdrew the only allowed claims and released HREP. Preserving the adversary is, in substance, a litigation strategy by Abdullatif — a non-creditor and a stranger to this estate — to keep a federal forum and continued leverage against the adversary defendants after the bankruptcy that created that forum has ended.

42.  A Chapter 7 trustee may not lend the estate's machinery to that end. The trustee is the representative of the estate, 11 U.S.C. § 323(a), charged with "the duty to maximize the value of the estate" and bound to act "in accordance with the trustee's fiduciary duty to all interested parties." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352, 355 (1985). Those powers exist to administer the estate for the creditor body — not to advance the litigation interests of a non-creditor who purchased the estate's claims. A bankruptcy fiduciary cannot serve two masters. *See In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1256 n.7 (5th Cir. 1986); *Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262, 268–69 (1941). The indemnity the Trustee accepted from Abdullatif underscores the conflict: the Trustee is being held financially harmless, by the very party who benefits, for the distribution he proposes. 9019 Motion ¶ 13 [Ex. 1]. A trustee underwritten by the private beneficiary of his own motion has no estate-based interest in the retention he asks this Court to order. And because a proceeding that can have no conceivable effect on the estate lies beyond this Court's jurisdiction, preserving the adversary serves no bankruptcy purpose whatever. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995); *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987).

## G.  The Appellate Record Confirms No Live HREP Controversy Remains to Preserve.

43.  The Trustee offers no reason for the retention he requests. Paragraph 16 asks only that the adversary "shall not be dismissed and shall continue notwithstanding the dismissal of this main

bankruptcy case," with this Court "retain[ing] jurisdiction ... for all purposes." 9019 Motion ¶ 16 [Ex. 1]. The motion identifies no estate interest the adversary could affect and no controversy involving HREP that retention would serve; the immediately preceding paragraph concedes the opposite — that the estate sold its interest and the adversary "is being prosecuted by parties other than the estate." 9019 Motion ¶ 15 [Ex. 1]. The proponent of post-dismissal retention bears the burden of justifying it, and the motion supplies nothing to carry that burden. The appellate record removes any doubt: on or about May 7, 2026, Abdullatif represented to the First Court of Appeals (No. 01-23-00109-CV) that the appeal as to HREP is now moot, citing the Partial Release of Judgment as to HREP. *See* [Ex. 6]; *Rapp v. Mandell & Wright, P.C.*, 123 S.W.3d 431, 436 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (unconditional release of judgment moots creditor's right to appeal from that judgment).

44. The Partial Release extinguished the underlying judgment debt as to HREP — the same debt that supplied the predicate for Claims 4-1 and 5-1 in the main case, and that underlies the alter ego, fraudulent transfer, and joint enterprise theories in the adversary. Those theories are derivative: they exist to allow a judgment creditor to reach assets beyond the immediate debtor. Where the underlying judgment has been released as to HREP, the adversary claims against HREP lack the predicate debt that gives those theories their legal foundation. The Court should consider, in evaluating whether a live controversy justifying federal retention exists, that the appellate record reflects a voluntary concession by the adversary's principal plaintiff that no such controversy remains as to HREP.

45. Abdullatif cannot have it both ways. He has represented to the First Court of Appeals that the matter as to HREP is moot while, through the Trustee's motion, seeking to keep HREP bound to the adversary in this Court. A party may not assume inconsistent positions across proceedings

to gain an unfair advantage. *See New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001); *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc). The Court may take that record into account in evaluating whether any cause for post-dismissal retention has been shown.

## V. THE PARTIAL RELEASE OF JUDGMENT REMOVES THE PREDICATE DEBT UNDERLYING THE ADVERSARY CLAIMS AS TO HREP.

46. The adversary asserts alter ego, fraudulent transfer, and joint enterprise theories. Each is a derivative claim: it presupposes an underlying debt owed by a judgment debtor and seeks to extend collection of that debt to additional assets or entities. *See, e.g.,* Tex. Bus. & Com. Code §§ 24.005–24.006 (fraudulent transfer requires an existing or anticipated creditor claim); *Shapolsky v. Brewton*, 56 S.W.3d 120, 133 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (alter ego requires a predicate judgment or claim against the primary debtor).

47. The Partial Release of Judgment, executed on or about May 7, 2026 [Ex. 7], expressly releases and discharges HREP from further personal liability for enforcement of the underlying judgment. With the judgment extinguished as to HREP, the adversary claims against HREP are left without the predicate debt that gives them legal content. This is not a mootness argument in the technical sense; it goes to whether the adversary claims against HREP have a cognizable legal foundation. The Court should consider this defect in evaluating whether the adversary presents a viable controversy warranting retention of federal jurisdiction after dismissal of the main case.

## VI. HREP HAS STANDING TO SEEK THE RELIEF REQUESTED; ABDULLATIF AND THE RECEIVER DO NOT.

48. HREP has standing to seek dismissal of the main case under § 707(a) and to object to proposed orders that directly affect it. In a Chapter 7 case, a debtor has standing to object where it has a direct pecuniary interest in the outcome — most clearly where estate property would, absent the challenged order, revest in the debtor. *See In re Cult Awareness Network, Inc.*, 151 F.3d 605,

23

607–08 (7th Cir. 1998) (debtor has standing to appeal orders affecting property that would revert to it); *In re Andreuccetti*, 975 F.2d 413, 416 (7th Cir. 1992). HREP has precisely that interest: upon dismissal, the estate residuals of approximately $447,924.57, less administrative costs, revest in HREP by operation of 11 U.S.C. § 349(b)(3). The proposed disbursement would extinguish that interest before revesting can occur. HREP is therefore directly and pecuniarily aggrieved by the relief the 9019 Motion requests. To the extent § 1109(b) informs the analysis, it confirms the same conclusion. *See Truck Insurance Exchange v. Kaiser Gypsum Co.*, 602 U.S. 268, 277–80 (2024) (construing party-in-interest standing broadly).

49.   Nothing in this Response asks the Court to review, set aside, or modify the order appointing the Purported Receiver, and the *Rooker-Feldman* doctrine is not implicated. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005) (doctrine confined to cases inviting district-court review and rejection of a state-court judgment). Neither the Debtor nor Ali Choudhri concedes that the purported receivership is valid. To the contrary, the turnover orders on which it rests — together with the underlying judgment and the appointment of the Purported Receiver — are the subject of pending appellate proceedings asserting that they are void under Texas Rule of Civil Procedure 18a (Nos. 14-24-00057-CV and 14-25-00614-CV); the underlying judgment has been superseded by deposits made in lieu of bond; and whether that judgment remains superseded and whether the turnover orders are valid are themselves questions now under review in the Court of Appeals. The Debtor's grounds for denial do not depend on resolving any of those questions. Solely in the alternative, and assuming arguendo — without conceding — that the receivership order were valid, whatever authority it confers over Choudhri's membership interest still does not, and under Texas Business Organizations Code § 101.112 cannot, reach the property of HREP itself. Because the Debtor prevails on that ground, and under § 349(b)(3),

24

regardless of the orders' validity, the Court may deny the 9019 Motion without reviewing, setting aside, or modifying any state-court order. Giving § 101.112 its correct and limited effect is not a collateral attack on the receivership order.

50.  By contrast, neither Abdullatif nor the Purported Receiver holds an interest that supports the relief the 9019 Motion requests. Abdullatif withdrew his only allowed claims [ECF Nos. 243, 244; Ex. 2] and released HREP from the underlying judgment [Ex. 7]; he therefore has no remaining pecuniary stake in the distribution of estate residuals. The Purported Receiver never filed a proof of claim or proof of interest in this case, and the Trustee concedes that "no proof of interests are filed in the case." 9019 Motion ¶ 9 [Ex. 1]. Even crediting the receivership order in full, a charging order under Texas Business Organizations Code § 101.112(f) gives its holder no right to "obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company," and a bankruptcy trustee cannot confer rights greater than those state law provides. *Butner v. United States*, 440 U.S. 48, 55 (1979). The party to whom the 9019 Motion would pay the entire residual thus has no standing to demand it, and the party who withdrew the only claims retains no interest to support it. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (a party invoking the court's power must have a concrete, particularized, legally protected interest).

## VII.  JOINDER AND RESERVATION OF ALL OBJECTIONS.

51.  To the extent any co-defendant in Adversary No. 23-03141 has filed or files an objection to the 9019 Motion or a motion seeking dismissal of the adversary, HREP joins in and adopts such filing to the extent it seeks dismissal of Adversary No. 23-03141 or denial of Paragraph 16 and Prayer ¶ (e) of the 9019 Motion, and not as to any ground that turns on facts particular to an individual co-defendant.

25

52. HREP reserves all rights, defenses, and objections raised herein. No failure to restate any objection in a subsequent filing or hearing shall be construed as a waiver.

## CONCLUSION

53. For the foregoing reasons, the Debtor respectfully requests that this Court:

**1.** Deny the 9019 Motion in its entirety;

**2.** Dismiss the main Chapter 7 case under 11 U.S.C. § 707(a);

**3.** Dismiss Adversary No. 23-03141 upon dismissal of the main case, for lack of subject-matter jurisdiction;

**4.** Order that all estate residuals revert to HREP upon dismissal by operation of 11 U.S.C. § 349(b)(3), without disbursement to the Purported Receiver or to any other party; and

**5.** Grant such other and further relief as is just and proper.

Respectfully submitted,

SHACKELFORD, MCKINLEY & NORTON, LLP

By: /s/ *Lori A. Hood*

**Lori A. Hood**
State Bar No. 09943430
S.D. Tex. Bar No. 7250
lhood@shackelford.law
**Tatiana P. Lutomski**
State Bar No. 24118446
S.D. Tex. Bar No. 3805031
tlutomski@shackelford.law
717 Texas Avenue, 27th Floor
Houston, Texas 77002
Telephone: (832) 415-1801
Facsimile: (832) 565-9030
**ATTORNEYS FOR HOUSTON REAL
ESTATE PROPERTIES, LLC**

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Response has been served via the Court's ECF system on all parties registered to receive electronic notice in this case, and by U.S. Mail, postage prepaid, on the parties listed on the attached service list, on this 2nd day of June, 2026.

/s/ *Lori A. Hood*
**Lori A. Hood**

Label Matrix for local n
0541-4
Case 22-32998
Southern District of Texas
Houston
Tue May 12 13:30:03 CDT 2026

5445 Almeda Rd., Ste. 500
Houston, TX 77004-7450

Linebarger Goggan Blair & Sampson LLP
C/O Jeannie Lee Andresen
P.O. Box 3064
Houston, TX 77253-3064

Harris County
Linebarger Goggan Blair & Sampson LLP
C/O Jeannie Lee Andresen
P.O. Box 3064
Houston, Tx 77253-3064

Houston Real Estate Properties LLC
1001 West Loop
Ste 700
Houston, TX 77027-9033

4
United States Bankruptcy Court
PO Box 61010
Houston, TX 77208-1010

Abdullatif & Company LLC
2500 West Loop S., Ste. 522
Houston, TX 77027-4523

Ali Choudhri
1001 W. Loop South, Suite 700
Houston, Texas 77027-9033

Allan D Goldstein
Morris Lendais Hollrah & Snowden
520 Post Oak, Suite 700
Houston, Texas 77027-9414

Allan D. Goldstein
James D. Salyer
Morris Lendais Hollrah & Snowden
1980 Post Oak Blvd., Ste. 700
Houston, TX 77056-3848

City of Houston Water
801 Malone
Houston, TX 77007-5125

FORT BEND INDEPENDENT SCHOOL DISTRICT
C/O FORT BEND COUNTY TAX OFFICE
1317 EUGENE HEIMANN CIRCLE
RICHMOND TX 77469-3623

Fort Bend County
c/o Jeannie Lee Andresen
Linebarger Goggan Blair & Sampson LLP
P.O. Box 3064
Houston, Tx 77253-3064

(p)HARRIS CENTRAL APPRAISAL DISTRICT
13013 NORTHWEST FREEWAY
HOUSTON TX 77040-6305

Harris County et al.
c/o Jeannie Lee Andresen
Linebarger Goggan Blair & Sampson LLP
P.O. Box 3064
Houston, Tx 77253-3064

Internal Revenue Service
Centralized Insolvency Office
PO Box 7346
Philadelphia, PA 19101-7346

Jetall Companies
1001 W. Loop South, Suite 700
Houston, Texas 77027-9033

Jetall Investment & Realty, Inc
1001 W. Loop South, Suite 700
Houston, Texas 77027-9033

Osama Adbullatif
2500WestLoopS., Ste. 522
Houston, TX 77027

Skaneateles rdX LLC
1001 W. Loop South, Suite 700
Houston, Texas 77027-9033

Skaneateles rdX, LLC
412 W. Polk #1
Houston, TX 77019-4763

(p)TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
REVENUE ACCOUNTING DIV - BANKRUPTCY SECTION
PO BOX 13528
AUSTIN TX 78711-3528

U.S. Trustee's Office
515 Rusk Avenue, Suite 3516
Houston, Texas 77002-2604

US Trustee
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002-2604

Ali Choudhri
1001 W. Loop S.
Suite 700
Houston, TX 77027-9033

John Quinlan
22310 Grand Corner Dr
Suite 140
Katy, TX   77494-7467

Melissa S Hayward
Hayward PLLC
10501 N. Central Expwy.
Suite 106
Dallas, TX 75231-2203

Randy W Williams
Byman & Associates PLLC
7924 Broadway
Suite 104
Pearland, TX 77581-7933

Ron Satija
Hayward PLLC
7600 Burnet Road
Ste 530
Austin, TX 78757-1269

Ruth A Van Meter
Ruth A. Van Meter, P.C.
9322 Shady Lane Circle
Houston, TX 77063-1305

Shahnaz Choudhri
Lenard M. Parkins
708 Main St. Fl 10
Houston, TX 77002-3246

c/o Leslie M. Luttrell
Luttrell Carmody Law Group
100 NE Loop 410
Suite 615
San Antonio, TX 78216-4713


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Harris County Appraisal District
13013 NW Freeway
Houston, TX 77040

Texas Comptroller of Public Accounts
P.O. Box 13528, Capitol Station
Austin, TX 78711-3528


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)9201 Memorial Dr. LLC                (u)Fort Bend Independent School District        (u)Okin Adams Bartlett Curry, LLP


(u)Skaneateles rdX, LLC                 (u)Dward Darjean                                 (u)Omar Khawja


(u)Osama Abdullatif                     End of Label Matrix
                                        Mailable recipients    31
                                        Bypassed recipients      7
                                        Total                   38