**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-32998 |
| | § | |
| HOUSTON REAL ESTATE PROPERTIES, LLC, | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |

**DEBTOR'S REPLY IN SUPPORT OF ITS OBJECTION (DKT # 252) AND IN
RESPONSE TO THE TRUSTEE'S RESPONSE (DKT # 254) AND BRIEF ON
STANDING (DKT # 262)**

TO THE HONORABLE JEFFREY P. NORMAN, UNITED STATES BANKRUPTCY
JUDGE:

Comes now Houston Real Estate Properties, LLC ("HREP" or the "Debtor"), and files this
Reply in support of its Objection (DKT # 252) to the Chapter 7 Trustee's Motion to Compromise
Controversy (DKT # 246) (the "9019 Motion"), and in response to the Trustee's Response (DKT
# 254), and respectfully represents as follows:

**I.   INTRODUCTION**

1.   The Trustee's Response does not deny the Debtor a seat at the table—it asks the Court
to silence the one party whose property the proposed compromise gives away. The Trustee
concedes, as he must, that the proposed distribution sends the residual funds of the estate to a state-
court Receiver standing in the shoes of the Debtor's equity holder; indeed, he concedes the Debtor
"has a pecuniary interest in the surplus sufficient to assert an objection." Trustee Br. (DKT # 262)
¶ 22. A debtor whose surplus is the very subject of the compromise has precisely the pecuniary
interest that confers standing to object. The Trustee's reliance on the general rule that a Chapter 7
debtor lacks standing ignores the well-recognized surplus exception, which fits this case, and
conflates the Debtor's *right to be heard* with a supposed *right to direct* the estate—a strawman the

Debtor never advanced. The Debtor seeks only to be heard on a settlement that disposes of its property. That is all standing requires.

## II.     THE DEBTOR HAS STANDING TO OBJECT TO THE COMPROMISE

### A. The Surplus Exception Confers Standing Where, As Here, the Compromise Distributes the Debtor's Residual Property.

2.   The Trustee correctly states the general rule—a Chapter 7 debtor ordinarily lacks a pecuniary interest in the trustee's disposition of estate property—but omits the exception that controls this case. As the very authority the Trustee cites recognizes, a debtor has standing where success on the objection "would generate assets in excess of liabilities, entitling the debtor to a distribution of surplus." *In re Rivera*, 14 F.4th 60, 66 (1st Cir. 2021); *see also In re Karamoussayan*, 658 B.R. 221, 227 (B.A.P. 1st Cir. 2024) (reaffirming the surplus exception and requiring debtor to show "such surplus is a reasonable possibility"); *In re Gallagher*, 283 B.R. 342 (Bankr. M.D. Fla. 2002). This is not a no-asset case in which the debtor is a stranger to the estate. By the Trustee's own description, the estate holds residual funds remaining *after* payment of all allowed administrative expenses—that is, a surplus. The only question presented by the compromise is *who receives that surplus*. A party whose surplus is at stake has a pecuniary interest in the distribution of estate assets sufficient to confer standing under *Rivera*.

3.   The Trustee's own Response confirms the surplus posture. The Trustee represents that the compromise "distributes the residual funds to the Receiver as the party holding the interest of the Debtor's sole equity holder," and that the settlement "allows the estate to be closed" after "all allowed administrative expenses" are paid. A distribution of residual funds to equity is, by definition, a distribution of surplus. The Trustee cannot simultaneously characterize these funds as the Debtor's equity distribution for purposes of justifying the compromise and as property in which the Debtor has no cognizable interest for purposes of denying it standing to be heard.

B. **The Debtor Does Not Seek to Direct Estate Administration; It Seeks Only to Be Heard.**

4. The Trustee's principal argument attacks a position the Debtor has not taken. The Trustee devotes much of his Response to the proposition that a debtor's standing "does not confer upon it the authority to direct the manner in which the Trustee administers the estate." The Debtor agrees that the Trustee, not the Debtor, administers the estate under 11 U.S.C. § 323(a). But the right to *object* to a compromise and the asserted right to *dictate* its terms are not the same thing. Rule 9019 and Rule 2002(a)(3) require notice to parties in interest and afford them the opportunity to be heard precisely so that the Court—not the Trustee acting unilaterally—decides whether a settlement is fair and equitable. The Debtor exercises that right to be heard. It does not purport to displace the Trustee's fiduciary judgment; it asks the Court to test that judgment against the record, as the Code contemplates.

5. It would be a strange rule indeed that permitted a trustee to propose handing the estate's entire residual surplus to a third party while denying the party whose surplus it is any voice in the proceeding. The fair-and-equitable inquiry under *In re Foster Mortgage Corp.*, 68 F.3d 914, 918 (5th Cir. 1995), exists to protect exactly such interests. *See also In re Heritage Org., L.L.C.*, 375 B.R. 230, 249-50 (Bankr. N.D. Tex. 2007) (applying the *Foster Mortgage* factors and emphasizing that a compromise must be carefully scrutinized when it affects the interests of parties who object). Standing to raise that inquiry follows from the pecuniary stake, not from any claimed authority to administer the estate.

C. **The Debtor's Standing Does Not Depend on § 1109(b).**

6. The Trustee spends several paragraphs establishing that 11 U.S.C. § 1109(b) applies only in Chapter 11 cases. The Debtor does not rest its standing on § 1109(b). Constitutional and prudential standing to object to a compromise that distributes the Debtor's surplus arises from the

Debtor's pecuniary interest under *Rivera* and its progeny, not from the "party in interest" language of § 1109(b). The Trustee's extended discussion of *In re Sharif*, 447 B.R. 853 (Bankr. N.D. Ill. 2011), and *Truck Insurance Exchange v. Kaiser Gypsum Co.*, 602 U.S. 268 (2024), therefore addresses an argument the Debtor need not make. The surplus exception supplies an independent and sufficient basis for standing in a Chapter 7 case.

7.   Moreover, even setting aside the surplus exception, a Chapter 7 debtor retains standing to be heard on matters that directly affect its legal interests—including the revesting of property upon dismissal under § 349(b)(3), the scope of any order entered for "cause," and the disposition of a related adversary proceeding. The Trustee's Response itself raises each of these subjects. The Debtor is plainly a party whose rights are implicated by their resolution and is entitled to be heard accordingly.

### III. THE TRUSTEE'S REQUEST TO STRIKE THE DEBTOR'S OBJECTION SHOULD BE DENIED.

#### A. The Receiver Holds No Authority to Speak for the Debtor and Does Not Displace Its Right to Object.

8.   The Trustee alternatively asks the Court to strike the Debtor's Objection as unauthorized, on the theory that the state-court Receiver—not the Debtor's management—controls HREP and alone may act for it. That theory fails on the same record that defeats the compromise. The Receivership Orders do not reach HREP: they exclude "his ownership interests in any limited liability company" from the Choudhri Receivership Assets (D-Case Order ¶ 14); they do not list HREP among the "Choudhri LLC's" subject to the charging order (D-Case Order ¶ 16); and they provide that the charging order "does not apply to the Bankrupt LLCs" (D-Case Order ¶ 24)— defined to include every LLC then in bankruptcy, which HREP is. The Receiver acquired no

management authority over HREP, and the Debtor's governance—and its right to object to a settlement that gives away its property—remain intact.

9. The Receiver confirmed as much: in his April 4, 2025 email he wrote that he "has a charging order over the LLCs only," that he does "not direct the acts and conduct" of the listed entities, and that he is merely "allowed to monitor." A party who concedes he does not direct the Debtor's conduct cannot be heard to say he alone speaks for it. The authorities the Trustee cites—addressing receivers or officers who actually held an entity's management authority—are inapposite where the Orders withhold that authority.

**B. The Notice of Appearance and Rule 2016(b) Disclosure Cure Any Asserted Technical Defect.**

10. To the extent the Trustee contends the Objection is procedurally deficient for want of a Rule 9010(b) notice of appearance or a § 329(a)/Rule 2016(b) disclosure, counsel is contemporaneously filing both. Such matters are curable and do not warrant striking a substantive objection to a compromise that disposes of the Debtor's surplus. *See* Fed. R. Bankr. P. 9010(b), 2016(b); 11 U.S.C. § 329(a).

**C. The Settlement's Structure Warrants Scrutiny.**

11. The 9019 Motion proposes to distribute residual estate funds to a state court receiver for the benefit of a single individual's creditors, in a settlement supported by the same plaintiffs who purchased the estate's claims. The interlocking relationships among the purchasers of the claims, the supporters of the settlement, and the beneficiaries of the distribution are precisely the kind of circumstances that call for the careful, adversarial scrutiny Rule 9019 is designed to ensure. The Debtor is uniquely positioned to assist the Court in that inquiry. Silencing it does not serve the integrity of the process—it undermines it.

12. The 9019 Motion before this Court is not an isolated filing. It is one component of a coordinated, multi-forum strategy orchestrated by Creditor/Adversary Plaintiff Abdullatif and the state court receiver to funnel monies to themselves while an appeal of the judgment which forms the basis of Abdullatif's claims remains pending.

13. A review of the actions taken by Abdullatif and the state court receiver, and not disclosed in the 9019 Motion is instructive.

14. On October 23, 2023, a Final Judgment was entered in a state court case styled, *Osama Abdullatif, individually and Abdullatif & Company, LLC v. Ali Choudhri and Houston Real Estate Properties LLC, Cause* No. 2013-41273, ("State Court Case") against Ali Choudhri for $3,332,366.98 plus post-judgment interest (the "Judgment").

15. On April 8-9, 2025, Judge Wilson entered Amended Turnover Orders in Cause Nos. 2012-27197-A and 2012-27197-D (the "A-Case Order" and "D-Case Order," respectively), appointing Travis Vargo as Receiver. ("Receiver")

16. On May 7, 2026, Abdullatif and the Receiver filed an Agreed Motion in the State Court Case, which seeks to reduce the supersedeas bond posted by Defendants on the Judgment from $2,132,946.18 to $135.69. ("Agreed Motion") (Exhibit 1). It also requests that the $2,132,946.18 be disbursed to the Receiver and Abdullatif.

17. That same day, Abdullatif filed a Partial Release of Judgment as to Houston Real Estate Properties, LLC only. (A true and correct copy is attached hereto as Exhibit 2.) That Partial Release states on its face that "no payment, consideration, or satisfaction has been made or received by Judgment Creditors from or on behalf of HREP in connection with this Partial Release." Yet the Partial Release was executed "solely to facilitate the administration and

resolution of HREP's bankruptcy proceeding." The reason this facilitation was necessary becomes clear only when the bankruptcy filings are examined.

18. Five days later, on May 12, 2026, the Trustee filed the 9019 Motion, revealing that Abdullatif, the Receiver, and the Trustee reached a settlement. Under this settlement, Abdullatif agreed to withdraw his allowed unsecured claims against the HREP bankruptcy estate—claims totaling $2,216,212.41. In exchange, the Trustee will pay administrative expenses and then direct all remaining estate funds—approximately $447,924.57 less those expenses—to the Receiver. Abdullatif has further agreed to indemnify the Trustee, the estate, and the Trustee's professionals related to the distribution of funds to the Receiver.

19. Curiously, Abdullatif withdrew his claims on May 7, 2026, well before the 9019 Motion was filed. (DKT # 243, and 244) As a result there ceased to be any claims pending in the Estate well before the 9019 Motion was filed and any agreement relating to the 9019 Motion regarding the claims could not have been referenced as consideration for the settlement. What Abdullatif, Receiver and Trustee discussed leading up to the 9019 Motion needs to be detailed to the parties in interest and this Court.

20. The 9019 Motion did not disclose any of this to any party of interest or more importantly to this Court. The 9019 Motion makes no reference to the Agreed Motion, or the parallel pipeline of funds being directed to the Receiver from the HREP estate.  The Receiver and Abdullatif seek to receive not only the $2,132,946.18 from the supersedeas deposit in the State Court Case, but also the surplus of the HREP estate, which should be disbursed to the equity owners.

> **D.  The Partial Release Was Not a Gratuitous Act—It Was Part of the Coordinated Deal.**

21.     The Partial Release purports to release HREP from the judgment for no consideration. But the timing reveals that it was an integral part of the bankruptcy settlement: by releasing HREP from the judgment, Abdullatif removed the basis for his claims in the HREP bankruptcy, thereby enabling the Trustee to try to disburse the surplus funds to the Receiver and Abdullatif. The Partial Release, the Agreed Motion, and the 9019 Motion settlement are three interlocking pieces of a single transaction. Abdullatif gives up his HREP claims (which were contingent on a pending appeal in any event) and in return receives the benefit of having the Receiver collect and hold funds from multiple sources—funds that will ultimately flow to Abdullatif as the primary judgment creditor. The Movants' failure to present this complete picture to the Court is misleading.

## IV. THE RECEIVER HAS NO AUTHORITY TO TAKE POSSESSION OF THE ESTATE SURPLUS UNDER SECTION 101.112 OF THE TEXAS BUSINESS ORGANIZATIONS CODE

### A. Section 101.112 Makes a Charging Order the Exclusive Remedy Against LLC Property

22.     The Receiver only has the authority given to him by the Case A Order and Case D Order and that set forth by the Texas Legislature.  The Case A Order and Case D Orders are attached hereto as Exhibits 3 and 4.

23.     The Texas Legislature has spoken clearly and repeatedly on this point. Section 101.112 of the Texas Business Organizations Code provides a comprehensive statutory framework governing creditor access to LLC property—and it permits only one remedy: a charging order against the debtor's membership interest.

The statute provides, in relevant part:

> *(a) On application by a judgment creditor of a member or of any other owner of a membership interest in a limited liability company, a court*

*having jurisdiction may charge the membership interest of the judgment debtor to satisfy the judgment. The charging order constitutes a lien on the judgment debtor's membership interest and entitles the judgment creditor to receive any distribution or distributions to which the judgment debtor would otherwise be entitled.*

*(b) A charging order is the exclusive remedy by which a judgment creditor of a member or of any other owner of a membership interest may satisfy a judgment out of the judgment debtor's membership interest.*

*(c) The court may not order foreclosure of a charging order lien described in this section.*

*(f) A creditor of a member or of any other owner of a membership interest does not have the right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company.*

*(g) This section applies to both single-member limited liability companies and multiple-member limited liability companies.*

TEX. BUS. ORGS. CODE § 101.112 (emphasis added).

24.     The statutory text could not be more explicit. A creditor—whether proceeding directly or through a receiver—"does not have the right to obtain possession of" LLC property. The charging order "is the exclusive remedy." The court "may not" order foreclosure. And these protections apply to both single-member and multiple-member LLCs alike. This is not a shield that can be pierced by creative lawyering or aggressive receivership practice.

25.     Every Texas appellate court to address Section 101.112 has enforced its exclusivity. In *Pajooh v. Royal West Investments, LLC*, 518 S.W.3d 557, 565 (Tex. App.—Houston [1st Dist.] 2017, no pet.), the Houston First Court of Appeals held that a receivership cannot be extended to control LLC assets where the proper remedy is a charging order against the member's interest. *Id*.

26.     In *Klinek v. LuxeYard, Inc.*, 672 S.W.3d 830, 839 (Tex. App.—Houston [14th Dist.] 2023, no pet.), the Fourteenth Court of Appeals confirmed that a charging order merely diverts distributions and does not authorize compelled distributions, banking directives, management rights, access to LLC assets, or the exercise of any legal or equitable remedies with respect to the LLC's property. *Id.* at 839. The court made clear that a creditor holding a charging order has no

greater right than to receive distributions—it cannot manage, possess, or sell LLC property. While *Klinek* distinguished *Pajooh* on its facts—noting that additional turnover relief may be permissible in limited circumstances when a charging order is already in place—the *Klinek* court simultaneously confirmed the core principle: Section 101.112 prohibits a creditor from obtaining possession of, or exercising legal or equitable remedies against, LLC property. *Id.* at 839-40 & n.10.

27.      In *WC 4th & Rio Grande, LP v. La Zona Rio, LLC*, No. 08-22-00073-CV, 2024 WL 1138568, at *13-15 (Tex. App.—El Paso Mar. 15, 2024, no pet.), the El Paso Court of Appeals explicitly held that receivers are not exempt from Section 101.112's exclusivity. The court rejected the argument that a receiver's appointment somehow overrides the statutory protections afforded to LLC property., No. 14-23-00582-CV, 2025 WL _____ (Tex. App.—Houston [14th Dist.] Apr. 29, 2025, no pet. h.) (applying Section 101.112 to bar receiver from obtaining possession of LLC property).*WC 4th & Colorado, LP v. Colorado Third Street, LLC* The Fourteenth Court of Appeals reached the same result in

28.      In *In re Prodigy Services, LLC*, No. 14-14-00248-CV, 2014 WL 2936928, at *5-6 (Tex. App.—Houston [14th Dist.] June 26, 2014, orig. proceeding) (mem. op.), the Fourteenth Court of Appeals held that a judgment creditor of a member does not have the right to possess or otherwise exercise legal or equitable remedies with respect to the property of the LLC—rights are limited to the debtor-member's distributions. *See id.* (applying § 101.112(f)).

29.      To the extent the Receiver invokes the narrow exceptions in *Gillet v. ZUPT, LLC*, 523 S.W.3d 749 (Tex. App.—Houston [14th Dist.] 2017, no pet.), and *Heckert v. Heckert*, No. 02-16-00213-CV, 2017 WL 5184840 (Tex. App.—Fort Worth Nov. 9, 2017, no pet.) (mem. op.), neither applies. The *Gillet* circumstances are absent: the judgment creditor here is not HREP itself,

and no judgment awarded any membership interest. And the *Heckert* circumstance is absent: HREP is an existing entity that holds the estate's surplus, has equity holders whose interests are at stake (including a disputed 20% interest), and remains a party to a pending appeal—interests that turnover would disrupt. The charging order is therefore the exclusive remedy. Tex. Bus. Orgs. Code § 101.112(d), (f); *Klinek*, 672 S.W.3d at 839–40.

30.      This authority is uniform and uncontradicted. Not a single Texas appellate court has permitted a creditor or receiver to take possession of LLC property in contravention of Section 101.112.

**B. Judge Wilson's Own Opinion in Bran Confirms the Law Prohibits the Receiver's Requested Relief**

31.      Perhaps most remarkably, the presiding judge in the State Court Case, is himself the author of a leading opinion confirming these very principles. In *Bran v. Spectrum MH, LLC*, No. 14-22-00479-CV, 2023 WL 5487421 (Tex. App.—Houston [14th Dist.] Aug. 24, 2023, pet. denied), Judge Wilson authored the opinion confirming that Section 101.112(g) extends the charging-order regime to single-member LLCs. *Id.* at *7.

32.      In *Bran*, Judge Wilson confirmed that a charging order attaches only to the debtor's membership interest and constitutes the exclusive remedy regardless of the LLC's membership structure. *Id.* at *7-8. Judge Wilson concluded that a creditor cannot pierce the LLC shield merely because the debtor is the sole member., holding that Section 101.112 bars a receiver from obtaining possession of LLC property even where the receiver has been granted broad turnover authority.*WC 4th & Colorado* The Fourteenth Court of Appeals reaffirmed this principle in *Bran*.

The 9019 Motion asks this Court to do exactly what *Bran* prohibits. It asks this Court to authorize the gifting of the Debtor's entire surplus for a judgment against a single equity member. There is

no principled distinction between this case and *Bran*. The law does not change because the amounts at stake are larger or because the Trustee and Receiver would prefer a different result.

### V. THE TURNOVER ORDERS THEMSELVES EXCLUDE LLC PROPERTY FROM THE RECEIVERSHIP ESTATE

33. Even if Section 101.112 did not exist—and it does—the Court's own Orders preclude the relief the Receiver seeks.

#### A. The Definition of "Choudhri Receivership Assets" Expressly Excludes LLC Ownership Interests

34. Paragraph 14 of the D-Case Order defines "Choudhri Receivership Assets" to include all assets owned by Choudhri "except his ownership interests in any limited liability company." Paragraph 15 defines "Receivership Assets" as the Dalio Receivership Assets and the Choudhri Receivership Assets. This exclusion is not inadvertent or ambiguous. The Orders deliberately carved out LLC ownership interests from the receivership estate because the law required it—consistent with Section 101.112.

35. If Choudhri's LLC membership interests are not receivership assets, then a fortiori the property owned by those LLCs cannot be receivership assets. The Receiver's attempt to leapfrog over the LLC entity and seize its property directly contradicts the plain text of the very Orders that confer his authority.

#### B. The Orders Impose Only Charging Orders Against LLC Interests

36. Paragraph 24 of the D-Case Order is the exclusive provision governing the Receiver's relationship to Choudhri's LLCs. It provides: "Pursuant to Texas Business Organizations Code Section 101.112, the Court hereby issues this charging order against all membership interests owned by Choudhri in the Choudhri LLC's . . . All Companies and Choudhri

shall pay to the Receiver any distributions and/or proceeds that would otherwise be due from such Companies to Choudhri until satisfaction of the Judgment is made in full."

37.     This paragraph explicitly invokes Section 101.112 and limits the Receiver's remedy to distributions. It does not grant the Receiver management authority, possessory rights, or sale authority over LLC-owned property. The Receiver's current Motion is inconsistent with, and in direct violation of, Paragraph 24 of the D-Case Order.

### VI. THE RECEIVER'S OWN WRITTEN ADMISSION CONFIRMS HIS LACK OF AUTHORITY

38.     Finally, The Receiver has admitted that he does not have authority to take the surplus of the Estate. The Receiver's April 4, 2025, email to attorney Kell Mercer is a powerful admission against interest. In that email, sent just days after his appointment, the Receiver stated unequivocally: "The Order speaks for itself. However, I read, and the law is that Receiver has a charging order over the LLCs only. I do not direct the acts and conduct of following entities and their lawyers . . . I am allowed to monitor." (A true and correct copy of the email is attached as Exhibit 5)

39.     This statement constitutes either a judicial admission or, at minimum, devastating impeachment evidence. The Receiver understood and acknowledged—correctly—that his authority over LLCs is limited to charging orders, that he does not "direct the acts and conduct" of the LLCs, and that he is only "allowed to monitor." He cannot now, months later, take the opposite position merely to get to the surplus.

### VII.     CONCLUSION AND PRAYER

40.     The Debtor has standing to object. The Trustee concedes as much. The surplus exception under *Rivera* and its progeny confers standing where, as here, the compromise distributes the estate's residual funds—funds that belong to the Debtor's equity holders. The

Trustee's motion to strike fails because the Receivership Orders never conferred management authority over HREP, the Receiver himself admitted he may only "monitor," and any procedural deficiency has been cured. On the merits, the compromise should be denied. It proposes to hand the Debtor's entire surplus to a Receiver who has no legal authority to possess LLC property under Section 101.112 of the Texas Business Organizations Code—a principle confirmed by every Texas appellate court to address the issue, including the presiding judge in the underlying State Court Case. The settlement was the product of an undisclosed, coordinated, multi-forum strategy among the Trustee, Abdullatif, and the Receiver, the full scope of which was never presented to this Court or to parties in interest.

WHEREFORE, Houston Real Estate Properties, LLC respectfully requests that this Court:

(a)     Deny the Trustee's request to strike the Debtor's Objection;
(b)     Deny the 9019 Motion to Compromise;
(c)     Order full disclosure of the Agreed Motion, the Partial Release, and all agreements among the Trustee, Abdullatif, and the Receiver relating to the distribution of estate funds; and
(d)     Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**SHACKELFORD, MCKINLEY & NORTON, LLP**

By: /s/ *Lori A. Hood*
**Lori A. Hood**
State Bar No. 09943430
S.D. Tex. Bar No. 7250
lhood@shackelford.law
**Tatiana P. Lutomski**
State Bar No. 24118446
S.D. Tex. Bar No. 3805031
tlutomski@shackelford.law
717 Texas Avenue, 27th Floor
Houston, Texas 77002
Telephone: (832) 415-1801
Facsimile: (832) 565-9030

**ATTORNEYS FOR DEBTOR**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served via the Court's ECF system on all parties registered to receive electronic notice in this case on this 18th day of June, 2026.

*/s/ Lori Hood*
Lori Hood