4/7/2025 2:37 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 99362329
By: Tammie Young
Filed: 4/7/2025 2:37 PM

**Cause No. 2012-27197-D**

| | | |
|---|---|---|
| **MOKARAM-LATIF WEST LOOP, LTD.** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| **vs.** | § | |
| | § | |
| **ALI CHOUDHRI and ANGEL VALLE** | § | **HARRIS COUNTY, TEXAS** |
| *Defendants,* | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **ALI MOKARAM,** | § | |
| *Intervenor* | § | **333rd JUDICIAL DISTRICT** |

## AMENDED ORDER (2) GRANTING TURNOVER, CHARGING ORDER AND APPOINTMENT OF RECEIVER AGAINST JUDGMENT DEBTORS

On the date of entry below, this Court considered Mokaram's Second Application to Appoint Collection Receiver over Judgment Debtors (the "Motion"), and having reviewed the application, evidence and arguments, the Court enters the following amended order, which amends the prior order appointing a receiver issued on March 31, 2025:

**The Court DEFINES that:**

1)     "Mokaram" refers to Plaintiff (Plaintiff-in-Intervention) Ali Mokaram, c/o his attorney of record, D. Scott Funk.

2)     "Nemeti" refers to Plaintiff (Plaintiff-in-Intervention) Erica I. Nemeti, c/o her attorney of record, David Thornton.

3)     "Creditors" refers to Mokaram and Nemeti (and their assigns).

4)     "Choudhri" refers to Defendant Ali Choudhri.

5)     "Dalio I" refers to Defendant Dalio Holdings I, LLC.

6)     "Dalio II" refers to Defendant Dalio Holdings II, LLC.

7)     "Debtors" refers to Choudhri, Dalio I and Dalio II.

8)     "Judgment" refers to the Final Judgment Upon AAA Arbitration Award entered by this Court in the above referenced case on November 7, 2023 in favor of Mokaram against Debtors, jointly and severally, in the amount of $3,467,217.20, plus pre-judgment interest at the per diem rate of $430.38 from October 30, 2023, until November 7, 2023, and plus post-judgment interest

4921-1300-1779.1

at the rate of 5% compounded annually on all such amounts from the date of November 7, 2023, until the judgment is paid in full; and in favor Nemeti against Debtors, jointly and severally, in the amount of $294,151.85, plus pre-judgment interest at the per diem rate of $39.78 from October 30, 2023, until November 7, 2023, and plus post-judgment interest at the rate of 5% compounded annually on all such amounts from the date of November 7, 2023.  "Judgment" also includes the attorneys' fees and expenses awarded to Mokaram in the Order signed by the Court on March 6, 2025, in the total amount of $355,721.30, and the amount of any legal fees, costs and/or expenses awarded by the court to Mokaram herein or hereafter.  No amounts have been collected and the full amount of the Judgment remains due and owing.

9)      "Receiver," who is an agent of this Court, refers to Travis B. Vargo (State Bar No. 24047027), 12012 Wickchester, Suite 670, Houston, Texas 77079; (713) 524-2441 telephone; (832) 779-8838 facsimile; tvargo@vargolawfirm.com.

10)      "Texas REIT Bankruptcy" refers to that certain bankruptcy case styled *In re Texas REIT, LLC*, Case No. 24-10120-SMR, pending in the Bankruptcy Court.

11)      "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas, Austin Division.

12)      "Stay Order" refers to that certain Order Granting in Part Creditors' Expedited Motion for Relief from Stay (Document #524) entered in the Texas REIT Bankruptcy on March 20, 2025.

13)      "Dalio Receivership Assets" refers to all assets owned by Dalio I and/or Dalio II, as well as all right, title, ownership, and interest in and to all of the following:

    a.  The "IBC Note," which refers to that Real Estate Lien Note dated May 28, 2008, payable by Texas REIT, LLC to International Bank of Commerce in the original principal amount of $8,640,000.00 (see *Ex. 1 to Motion*).

    b.  The "IBC Deed of Trust," which refers to that Deed of Trust, Assignment of Rents, Security Agreement and Financing Statement dated May 28, 2008, executed by Texas REIT, LLC in favor of International Bank of Commerce to secure the IBC Note (see *Ex. 1 to Motion*).

    c.  All funds, cash and/or amounts in any bank account or other account collected and/or received by Dalio I or Dalio II, including but not limited to those arising out of or relating to the IBC Note.

    d.  All rights, claims and causes of action that Dalio I and/or Dalio II has against Texas REIT, LLC, including but not limited to claims for amounts owed under the IBC Note and/or the IBC Deed of Trust.

    e.  All claims and causes of action that Dalio I and/or Dalio II has against WCW Houston Properties, LLC ("WCW"), including but not limited to those asserted in Cause No. 2017-35320, and that were removed to the Bankruptcy Court.

    f.  The defense of all claims and causes of action asserted by WCW against Dalio I and/or Dalio II, including but not limited to those asserted in Cause No. 2017-35320, and that were removed to the Bankruptcy Court.

4921-1300-1779.1

14) "Choudhri Receivership Assets" includes all assets owned by Choudhri, except his ownership interests in any limited liability company.

15) "Receivership Assets" means the Dalio Receivership Assets and the Choudhri Receivership Assets. For the avoidance of doubt, Receivership Assets does not include the assets of Texas REIT, LLC, the Bankrupt LLCs, or any interest Choudhri holds in Texas REIT, LLC.

16) "Choudhri LLC's" shall mean each limited liability company in which Choudhri owns a membership interest, including but not limited to the following, but excluding his interest in the Bankrupt LLCs (defined below):

    a) ARABELLA PH 3201 LLC
    b) 2727 Kirby 26L LLC
    c) 9201 Memorial Drive LLC
    d) 50BH Acquisition, LLC
    e) BDFI LLC
    f) Forest Legacy LLC
    g) Jetall GP, LLC
    h) Jetall Capital, LLC
    i) Jetall Croix Properties LLC
    j) JETALL/CROIX GP, LLC
    k) JETALL CONSTRUCTION & DEVELOPMENT GP, INC.
    l) Jetall Investment and Realty Inc
    m) Meandering Bend LLC
    n) MCITBE LLC
    o) OTISCO RDX, LLC
    p) Otisco Rdx
    q) PBAC 507 Holdings LLC
    r) Vanguard Realty Partners LLC
    s) VGRP Holdings LLC
    t) Milestone Capital CRE 1, LLC
    u) Milestone Capital CRE 2, LLC
    v) Milestone Capital CRE 3, LLC
    w) QB Loop Property, LP
    x) Memorial Glen Cove, LLC

17) "Bankrupt LLCs" means each limited liability company in which Choudhri owns a membership interest that is presently subject to a bankruptcy proceeding, including but not limited to:

    a) Texas REIT, LLC
    b) 1001 WL LLC
    c) Galleria West Loop Investments LLC
    d) Jetall Companies Inc.

Unofficial Copy Office of Marilyn Burgess District Clerk

  e) NIA ATX LLC

  f) SAL ATX LLC

  g) Maya J ATX LLC

**The Court FINDS that:**

18) This court has jurisdiction for this proceeding and can proceed in granting the relief set forth herein immediately. *See* Tex. Civ. Prac. & Rem. § 31.002(a); *Childre v. Great Sw. Life Ins. Co.*, 700 S.W.2d 284, 289 (Tex. App.—Dallas 1985, no writ) (creditor does not have to wait 30 days before turnover can be granted because a receivership is in the nature of an attachment and garnishment, so the waiting period of Rule 627 is not required).

19) The Judgment is valid, and the amount of the Judgment is unsatisfied by Debtors. *See* Tex. Civ. Prac. & Rem. § 34.001.

20) Pursuant to this Order, the Receiver will have a judicial lien on all non-exempt Receivership Assets of Debtors that are the subject of this Order, regardless of whether the Receiver takes actual possession. No one-not even a lien holder with a prior filed deed of trust-can sell property held in *custodia legis* by a duly appointed Receiver without first obtaining approval from the Court in which the Receivership is pending; *provided, however*, that the foregoing shall not impact or otherwise limit the Bankruptcy Court's jurisdiction to consider and approve the sale or other disposition of any assets of Texas REIT, LLC in the Texas REIT Bankruptcy.[1] Any unauthorized transfer of property in the custody of a Receiver is *not merely voidable, it is* void.[2] Thus, any attempt by Debtors to transfer any nonexempt property after the turnover order has been signed is void, and any conveyance of property in the custody of a Receiver without approval by the court has no effect upon the Receivership and the accomplishment of its purposes.[3]

21) For the avoidance of doubt, this Order is not intended to, and does not, assert jurisdiction over Texas REIT, LLC or any of its rights, assets, real or personal property, lawsuits, claims, defenses and/or matters constituting property of its bankruptcy estate. Moreover, this Order is not intended to, and does not, assert jurisdiction over any interest Choudhri holds in Texas REIT, LLC. This Order is subject to all orders of the Texas REIT Bankruptcy, including the Stay Order. Subject to any approval required by the Bankruptcy Court, Receiver may assert rights and claims on behalf of Dalio against Texas REIT, LLC and/or WCW in the Texas REIT Bankruptcy.

**THEREFORE, the Court ORDERS the relief as set out below:**

22) **Appointment / Bond.** After taking the oath of office, the Receiver shall be authorized, subject to the control of this Court, to do any and all acts necessary to the proper and lawful conduct of said Receivership. No bond is required of the Receiver because this is a Chapter 31 post-judgment appointment. *Children v. Great Sw. Life Ins. Co.*, 700 S.W. 2d 284, 289 (Tex. App.—Dallas 1985, no writ) (noting that a bond is not required in a Chapter 31 receivership and

---

[1] *First S. Props.*, at 341; *Huffmeyer v. Mann,* 49 S.W.3d 554,560 (Tex.Civ.App.-Corpus Christi, 2001).

[2] *First S. Props.*, at 341.

[3] *T.H. Neel v. WL. Fuller,* 557 S.W2d 73, 76 (Tex. 1977).

further noting that "since the underlying obligation has been determined by final judgment, the Debtors will not be harmed if no bond, or merely a nominal bond, is required.").

23) <u>Turnover</u>. The Receivership Assets are hereby turned over to the Receiver. Debtors is enjoined from selling, transferring, gifting, destroying, disposing of, or otherwise encumbering the Receivership Assets. The Receiver is now the legal and equitable owner of the Receivership Assets, regardless of whether Receiver takes actual possession of them.

24) <u>Charging Orders</u>. Pursuant to Texas Business Organizations Code Section 101.112, the Court hereby issues this charging order against all membership interests owned by Choudhri in the Choudhri LLC's (collectively, the "Companies"). All Companies and Choudhri shall pay to the Receiver any distributions and/or proceeds that would otherwise be due from such Companies to Choudhri until satisfaction of the Judgment is made in full. Choudhri may not receive any payment from any of the Companies, directly or indirectly, until the Judgment is paid in full and/or without written consent from the Court. For the avoidance of doubt, the foregoing paragraph does not apply to the Bankrupt LLCs.

25) <u>Debtors' Responsibilities to Receiver and the Court.</u> Debtors are Ordered to:

a. Deliver Receivership Assets to the Receiver, including by executing all documents to transfer ownership of same as requested by Receiver.

b. Deliver electronic copies of the items described in Exhibit A attached hereto as part of this Order within ten (10) calendar days, as well as all documents subsequently requested by Receiver in writing, also by providing within ten (10) calendar days.

c. Identify and provide a list in writing to Receiver of all property owned by Debtors that they contend are exempt from collection and turnover within ten (10) calendar days.

d. Comply with written requests of the Receiver. If Debtors believe that the Receiver's requests are inappropriate, Debtors must first comply, then seek protection from the Court, after giving full notice to the Receiver in writing and attempting to resolve the issues without Court intervention.

26) <u>Debtors' Business</u>. All authority and power of Debtors to manage and operate the business of Debtors is vested in the Receiver and no decision may be made or carried out without the express approval of the Receiver.[4] This order supersedes the authority of any officers, directors or managers of Debtors. For the avoidance of doubt, the foregoing paragraph shall not apply to Choudhri's ability to manage and operate the business Texas REIT, LLC, which is subject to the jurisdiction of the Bankruptcy Court.

27) <u>Peace Officers Responsibilities to Receiver and the Court.</u> Every constable, deputy constable, sheriff, deputy sheriff, and other peace officer may accompany Receiver to locations designated by Receiver where Receiver believes that Debtors' assets or records may be located.

---

[4] *Id.* "Texas law asserts that Receiver has the full rights that the corporation had."

The peace officers are ordered to prevent interference with Receiver's carrying out any duty under this order or interference with property in Receiver's control or subject to this order.

28)    Exclusive Jurisdiction Over Related Disputes and Lawsuits.

a.    *Custodia Legis.*  Receivership Assets are in *custodia legis*.  No other court or forum has jurisdiction to adjudicate rights relating to the Receivership Assets because this Court maintains exclusive, sole authority for assets held in *custodia legis* by it.[5]  Notwithstanding anything herein to the contrary, the Bankruptcy Court shall continue to have exclusive jurisdiction over any disputes pending or otherwise brought in the Texas REIT Bankruptcy, including disputes between Dalio I and/or Dalio II and WCW.

b.    Immunity.  Receiver and persons engaged or employed by him are not liable for loss or damage incurred by any person or entity by reason of any for any act performed or omitted to be performed by Receiver or those engaged or employed by Receiver for the discharge of their duties and responsibilities for the Receivership, including exercising control over Receivership Assets. This Court retains the exclusive jurisdiction, to the exclusion of any other court, over the Receiver for the purpose of determining whether the Receiver is immune for any action taken by Receiver. Any suit or claim against the Receiver must be brought in this appointing Court and/or transferred to this Court for adjudication. However, this paragraph 28(b) does not limit the jurisdiction of the Bankruptcy Court.

c.    Exempt Property Disputes.  If there is any dispute whether an asset of Debtors is non-exempt, or property of Debtors (as opposed to a third party), the Receiver is authorized to take custody or control of the asset pending objections, if any, and/or adjudication by this Court. Any of the Debtors claiming an exemption shall file an objection or statement with this Court that claims the exemption, cites the legal and factual grounds for the exemption, and describes the property with sufficient specificity that a constable can levy upon it.

d.    Disputed Third Party Rights to Property.  This Court shall maintain exclusive jurisdiction over fraudulent transfer lawsuits brought by the Receiver or Creditors; *provided, however*, that the Bankruptcy Court will continue to have exclusive jurisdiction over any claims brought against Texas REIT, LLC. The Court shall further maintain exclusive jurisdiction over any litigation pertaining to the ownership interests disputed during the Receiver's actions involving a third party; *provided, however*, that the Bankruptcy Court will continue to have exclusive jurisdiction over any claims brought against Texas REIT, LLC and the litigation currently pending between WCW, Dalio I, and Dalio II in the Texas REIT Bankruptcy and related adversary proceedings. If any third party alleges or claims that an asset in the possession of the

---

[5] *See Tex. Am. Bank/West Side v. Haven*, 728 S.W.2d 102, 104 (Tex. App.—Fort Worth 1987, writ dismissed for want of jurisdiction) ("If a court of competent jurisdiction, federal or state, has taken possession of property, or by its procedure has obtained jurisdiction over the same, such property is withdrawn from the jurisdiction of the courts of the other authority as effectually as if the property had been entirely removed to the territory of another sovereignty.") (quoting *Palmer v. Texas*, 212 U.S. 119 (1909)), *Chimp Haven, Inc. v. Primarily Primates, Inc.*, 281 S.W.3d 629, 633 (Tex. App.—San Antonio 2009, no pet); *see, also Neel v. Fuller*, 557 S.W.2d 73, 76 (Tex. 1977); *Lauraine v. Ashe*, 109 Tex. 69, 191 S.W. 563, 565 (1917).

Receiver or otherwise subject to this order is not or should not be a Receivership asset, they must file a verified claim or intervention into this turnover proceeding, that attaches admissible evidence substantiating their claim to Receivership Assets in *custodia legis,* with this court within twenty (20) days of their knowledge of the earlier of (1) this order or (2) the Receivership's collection, control, possession of the property; *provided, however*, that the foregoing shall not apply to Texas REIT, LLC or the Bankruptcy Court. The Court may require a disputing party to post a bond to cover the Receiver's efforts and additional costs associated with the dispute if the Court cannot promptly adjudicate the claim.

29)     Third Parties' Responsibilities to Receiver and the Court. Every person with actual notice of this order is ordered not to interfere with property in Receiver's control or subject to this order and is ordered not to interfere with Receiver in the performance of Receiver's duties. Notwithstanding anything herein to the contrary, the foregoing shall not apply to the Bankruptcy Court's ability to oversee and administer the Texas REIT Bankruptcy, including Texas REIT, LLC's plan confirmation and/or liquidation of its real or personal property or any property of the bankruptcy estate. Third parties are notified that Receiver (not Debtors) is the party entitled to possess, sell, liquidate, and otherwise deal with Debtors' non-exempt property and once any third party receives notice of this Order, the third party may be subject to liability if the third party releases property, unless directed by Receiver or the Court.

        a.     All third parties who hold Debtors' property or records are ordered to immediately notify Receiver and to deliver the property within five (5) business days of Receiver's demand. Notwithstanding the foregoing, any documents requested from Texas REIT, LLC must comply with the Federal Rules of Bankruptcy Procedure.

        b.     All third parties who owe money or other things of value to Debtors shall promptly pay or deliver same to Receiver; *provided, however*, that the foregoing shall not alter or otherwise impact the claims administration process in the Texas REIT Bankruptcy.

        c.     Comply with requests for records and documents from the Receiver as set forth herein.

        d.     Comply with Receiver's requests and notices for stenographic or non-stenographic examinations to discuss Receivership Assets, Debtors or third parties' knowledge of same.

        Anyone resisting Receiver's order or request, based on legal or other advice, is ordered to give the full name, address, fax number, e-mail address, cell phone number, and direct telephone number for each person giving that advice and to instruct those persons to immediately contact Receiver. Doing so waives no attorney-client communication privilege.

30)     Other Judgments. The Receiver may obtain permission from this and other courts to satisfy several judgments against the same Debtors.[6] The Receiver may notice other subsequent

---

[6] *Barrera v. State*, 130 S.W.3d. 253 (Tex.App.--Houston [14th Dist.] 2004, no pet.)

receiverships or their controlling court of this receivership and may take legal actions necessary to abate or quash subsequent receiverships.

**Powers GRANTED unto the Receiver by this Court:**

31)     Possession of Receivership Property.  Receiver shall take possession, custody, and control of Receivership Assets in Debtors' actual and/or constructive possession, custody, or control, or that the Receiver reasonably believes that Debtors otherwise own or control in the possession of third parties.

32)     Possession of Documents and Devices.  Receiver may take possession, custody and control of records, documents, and devices containing records and information that may lead to the discovery of Receivership Assets in Debtors actual or constructive possession, custody, or control, or that Debtors otherwise owns or controls in the possession of third parties.  Receiver may review information and documents that come into his actual or constructive possession, custody, or control.

33)     Title Holds and Transfers.  Receiver is hereby granted power of attorney and authorized to sign the name of Debtors to transfer real property titled in the names of Debtors to himself (as Receiver) wherever located.  *See Reeves v. Federal Sav. & Loan Ins. Corp.*, 732 S.W.2d 380, 382-83 (Tex. App.—Dallas 1987, no writ) (authorizing the turnover of real property outside the state owned by a Debtors under the jurisdiction of Texas courts).  Receiver may also elect to place holds on titles to personal property (e.g., vehicles), intangible property, and file notices of receivership and turnover.  For the avoidance of doubt, the foregoing paragraph shall not include the right to transfer ownership interests in the Bankruptcy LLCs.

34)     Value and Sale.  Receiver shall use discretion in incurring expenses associated with appraisals, evaluations, listing and advertising agreements in connection with the sale of Receivership Assets.

35)     Documents from Third Parties.  Receiver may request documents and records from third parties in writing, without a subpoena, and set a reasonable deadline for responses within his reasonable discretion given the circumstances surrounding the request.  A written request from the Receiver has the same effect and subpoena and third parties are hereby directed to comply.  The Receiver may issue subpoenas with the following language to third parties: "Please do not disclose or notify the user of the issuance of this subpoena. Disclosure to the user could impede an investigation or obstruct justice."  Third Parties shall follow this instruction and refrain from informing the Debtors.  Notwithstanding the foregoing, any documents requested from Texas REIT, LLC must comply with the Federal Rules of Bankruptcy Procedure.

36)     Authority to Order Tax Returns.  The Court declares that Receiver is a person authorized to sign Internal Revenue Forms 4506-T (Request for Transcript of Tax Return) and 4506 (Request for Copy of Tax Return) to obtain the Debtors tax returns.  Receiver is further authorized and empowered to take additional steps, within the discretion of Receiver, in Order to obtain the Debtors' tax returns, e.g., logging into the Internal Revenue Service online tax return transcript system.

4921-1300-1779.1

37)     Tax Refunds.  Receiver is authorized to sign and submit documents to the Internal Revenue Service to obtain the Debtors' tax refunds or other monies due from the Department of the Treasury.

38)     Redirect Postal Mail.  Receiver may redirect, read, and copy Debtors' mail, whether electronic, paper, or facsimile, or otherwise, and whether sent to a street address, telephone line, post office box, or via the internet, before and exclusive of receipt. Receiver may establish procedures for allowing Debtors to retrieve the mail, or copies, which includes making copies available to the Debtors electronically.

39)     Support and Assistance.  The Receiver may hire any person, firm, or company to further remedies available to Receiver, including hiring persons to change locks to premises belonging to Debtor; exclude persons from interfering with Receiver's custody of the premises; moving or storing Debtors' property; collect accounts receivable; or sell Debtors' non-exempt property.  Receiver may employ counsel, at not more than $500.00 per hour, for representation and assistance in the prosecution of this Order, in defense of the Receiver, or in defense or prosecution of causes of action asserted by third parties to Receivership Assets.

40)     Checks and Transactional Instruments.  The Receiver may endorse and cash checks and negotiable instruments payable to a Debtors as described herein.

41)     Real Property Sale.  All real property sales of Receivership Assets must be individually ordered, after notice and hearing.

42)     Receiver's Writs.  Writs of turnover issued under this order, must not be limited in time, or have an expiration date. The clerk is ordered to issue writs on an expedited basis, upon request.

43)     Service to Receiver. All parties must serve Receiver with copies of all motions, notices, discovery responses, correspondence, and communications between them at the Receiver's address provided above, unless the Receiver provides alternative instructions.

44)     Service by Receiver.  The Receiver may serve Debtors by serving their attorney of record, or if any of them do not have an attorney of record, by sending the documents to Ali Choudhri's email (ali@jetallcapital.com), by placing the documents to be served in the Debtors' mailbox, by taping them to the Debtors' door, and/or delivering them to any adult person at the Debtors' residence or place of business.  The Receiver may serve non-natural entities by placing the documents to be served in the registered agents for the entities' mailbox, taping them to the registered agent for the entities' door, or delivering them to the receptionist of the registered agent for an entity's place of business.

45)     Receiver Reports. The Receiver will file reports with this Court every 90 days.  Any party to this suit or subject to the Receiver's actions may file an objection to the Receiver's report. Should no objections be timely received, reports by the Receiver will be considered facts and conclusions of law.  Unopposed facts will be conclusively admitted. The Court, *sua sponte,* may confirm, modify, correct, reject, reverse, or recommit the report, after it is filed, as the court may

4921-1300-1779.1

deem proper and necessary.  Objections must be filed at least three (3) business days before submission or hearing on Receiver's motion, state each disputed ground, the reasons for each dispute, and attach the documents supporting each objection.

46)     Abandonment of Receivership Assets.  Notice of abandonment of Receivership Assets must be provided: At least ten days before any abandonment, Receiver must file a notice of the intended sale or abandonment that describes the property to be abandoned, its price, if any, and how it will be abandoned; by first class mail to Debtors and every person who has filed a request for notice. Objections to the proposed abandonment must state the grounds and be filed within five days after Receiver's service of the notice. If no objection is timely filed, Receiver may abandon the property as described in the notice, without further order. If an objection is timely filed, the proposed abandonment must not be completed until the Court has decided the objection.

47)     Ancillary Litigations.  Receiver may but is not required to defend or prosecute any litigation regarding the Debtors or Receivership Assets.  Receiver may intervene into lawsuits being prosecuted by Creditors and/or Debtors given Receiver's potential interest in Debtors' assets.  Receiver is authorized to engage, employ, supervise and compensate legal counsel for litigation.  Any contingency fee agreement between Receiver and proposed counsel must be approved by this Court.

48)     Compromise and/or Settlement of Claims.  Receiver is authorized to compromise and settle any disputes, claims and/or causes of action by and/or against Debtors within his discretion.

49)     Receiver Expenses.  Receiver may incur reasonable expenses in furtherance of this Order and reimburse himself for same without further Order of this Court.  Receiver may advance these costs or accept an advance of costs from the Creditors.  Nevertheless, Receiver shall account for expenses incurred in his reports and file accountings when requesting reimbursement or fees.

50)     Fees and Expenses Taxed Against Debtors.  Receiver's fees and expenses are taxed as costs of court against the Debtors, jointly and severally.

51)     Receiver Expenses and Fees.  The Receiver is entitled to reimbursement of their expenses and a reasonable and customary fee.  Given that the Debtors has had an opportunity to pay the judgment(s) but has not and that the judgment creditor has labored to get the judgment(s), a contingency fee is the most economical and equitable way to compensate a receiver.  Competent and experienced receivers are rare.  The skills and tasks performed by Receivers are unique and separate from those ordinarily performed by lawyers, investigation, surveillance, use of law enforcement, etc.  Receivers who are licensed lawyers have a high opportunity cost insofar as they are foregoing hourly work billed against retainers and/or contingency fee work that does not pose a danger to their health, safety, and welfare as is many times the case with receivership work.  For these reasons, it is presumed that a reasonable Receiver's fee is 25% of all sales of Receivership Assets that come into his actual, constructive, or legal possession, and all recoveries and credits against the Judgment(s). In the case of a full collection of the Judgment(s), the Court presumes that 33% of all sales of Receivership Assets that come into his actual, constructive, or legal possession, and all recoveries and credits against the Judgment(s) is reasonable.  The presumptive

4921-1300-1779.1

fee shall be used by the Receiver to determine the amounts in excess of the Judgment(s) that the Receiver is authorized to collect. To be paid a fee or reimbursed expenses, the Receiver shall make application to this Court who shall consider the relevant factors. Notice shall be given to Debtors and Creditors. Receiver may apply for fees or reimbursement of expenses from collections as frequently as needed within his discretion.

52)    Receiver Reports and Discharge. Receiver may file interim reports, accountings, and/or inventories to keep the Court apprised of developments, if any. Receiver shall file accountings, as necessary, setting forth the work performed, expenses incurred, and the proposed distribution of same for reimbursement of expenses, a fee, and Creditor distributions. If the Debtor(s) file bankruptcy, Receiver's fee shall be the greater of: (i) 25% of the value of assets held in *custodia legis* during the receivership; or (ii) a reasonable hourly rate for attorneys practicing in Harris County. Receiver shall file a final accounting with a motion to terminate the receivership when collection is complete or the Receiver, in their discretion, determines that collection will not be successful.

53)    Attorneys' fees. The Court takes judicial notice of the time that is reasonable and necessary for obtaining this order and conducting other post-judgment collection activities as set forth in the application to appoint receiver. Thus, Debtors are ordered to pay Creditors the amount of $5,000.00 in attorneys' fees for its fees and expenses. See Tex. Civ. Prac. & Rem. 31.002(e). Additional fees may be awarded, after notice and hearing. These fees are included in the definition of the Judgment.

54)    Tex. R. Civ. P. 679a. Personal Property Rights of Debtor: Receiver must comply with Texas Rule of Civil Procedure 679b. Receiver to Hold Property: Receiver must not disburse funds to Judgment Creditor or sell property within 14 days after serving Debtors with the Notice of Protected Property Rights, the Instructions for Protected Property Claim Form, and the Protected Property Claim Form approved by the Supreme Court, or within 17 days if service was by mail. If the Judgment Debtors asserts an exemption, Receiver may only disburse funds to Judgment Creditor or sell property with Judgment Debtors' written consent or a court order.

BE IT SO ORDERED. Any and all further relief not expressly stated herein is denied.

Signed this ____ day of April, 2025.


_____
Randy Wilson
Presiding Judge

Agreement to serve:

/s/ Travis Vargo

_____
Travis Vargo, Texas Bar # 24047027
PROPOSED RECEIVER

4921-1300-1779.1

## EXHIBIT A

<u>Deadline to Comply</u>: Debtors shall deliver the following documents in hard copy or electronic form to the Receiver within ten (10) calendar days of this Order.

**<u>Scope / Time Periods:</u> Unless otherwise stated in the request, all time periods are for January 1, 2021, through the present.**

<u>Continuing Obligation to Supplement</u>: The turnover order is continuing in nature and must be supplemented. Should Debtors come into possession, custody, or control of anything that was ordered turned over or produced, Debtors must turn over the item within ten (10) days.

<u>Format of Records Due to Receiver</u>: Debtors shall produce records electronically to the Receiver by email, dropbox, or other means authorized by the Receiver. The Receiver may authorize or require paper production or otherwise (e.g., native files) within his discretion.

**For the avoidance of doubt, this turnover request does not apply to any assets of Texas REIT, LLC or any rights Choudhri holds in Texas REIT, LLC.**

### Definitions and Instructions

a. "Account Information" means the login, username, or other account identifier along with all passwords associated with accessing the accounts.
b. "Contact Information," "telephone number," and "address," mean that person's full name, nick names, d/b/a's, and all addresses (including work and residence), all telephone numbers (including home, office, fax, pager, and cell numbers), as well as e-mail, Facebook, social networking, and web site addresses. If any of the information is lacking, provide the Contact Information for every person believed to be able to provide the missing information.
c. "Copies" means complete, legible copies.
d. "Debtor" has the meaning as defined in the Order for Turnover and Appointment of Receiver.
e. "Entity" or "Entities" includes all business organizations, whatever their form, including public or private corporations, professional corporations, limited liability companies, general and limited partnerships, joint ventures, unincorporated associations, and individual proprietorships in which Debtors or their spouse have an interest or over which they exercise management or control.
f. "Manager" refers collectively to anyone who is an officer, director, manager, or supervisor of an Entity, or who makes business decisions for the Companies.
g. "Receiver Order" means Order for Turnover and Appointment of Receiver entered by the Court.
h. "Produce," means to deliver. If an item is not listed in this exhibit, the Judgment Debtors or witness must turn over the item in the time period specified by the demand.

4921-1300-1779.1

i.  "Records" and "Documents" are mutually inclusive, and include the records, documents, and items formally ordered turned over, or requested by the Receiver. Requests regarding property or Documents owned or possessed by Debtors also apply to Debtors' spouse, brothers, sisters, children, mother, father, accountants, attorneys, advisors, clients, employees, partners, or co-owners of small businesses, if the requests involve documents that Debtors would be required to turnover if Debtors had possessed or controlled the item.

j.  "Shareholder" includes the owners, members, partners, and others who have ownership rights in any Entity.

k.  "Turnover" includes to create a list or report if no list or report currently exists.

l.  "Turnover" also means to convey the information that is available to you, not merely the information that is of your present knowledge, including providing information, Documents or Records that are known by you, or that are in your possession, or the possession of your family, employees, co-workers, co-owners or agents, including your attorney or any agent or investigator of your attorney.

m.  "Witness" means any person who is not Debtors but who may have information, Records or Documents relating to Debtors or their spouse.

n.  "You" means to Debtors identified on page one (1) of the attached Order.

o.  Document labeling and identification.

a.  "All" is presumed to apply to every item. If a type of item is listed, this Order means all similar items.

b.  Each turned over Document, file, or photograph must be given a consecutive identification number and produced in the condition and order of arrangement in which it existed when the application for this Order was filed, including all file labels, dividers, or associated identifying markers. An index must be provided, if the documents are large, or if the Receiver requests one.

c.  Creating lists and compilations. To the extent that the Order or this exhibit requires Debtors to compile or create a list or document, Debtors is ordered to do so.

d.  Lost Document, Records, or tangible things. If Debtor, or Debtors' wife, attorneys, agents or representatives, had possession or control of a Document, Record, or tangible thing ordered turned over which has been lost, destroyed, purged, or is not presently in their possession or control, the item must be identified and described in detail and the circumstances surrounding the loss, destruction, purging, or separation from their possession or control must also be provided, including the dates the circumstances occurred.

e.  No Document, file or photograph requested by the Receiver may be altered, changed, modified, disposed of, or destroyed.

Any other capitalized terms not defined on Exhibit A shall have the same meaning as defined in the Receiver Order.

**For the avoidance of doubt, the documents that Debtors are required to produce shall NOT include documents solely within the possession of Texas REIT, LLC.**

## Items to Due to the Receiver from Debtor
1)  The original IBC Note.
2)  The original IBC Deed of Trust.

4921-1300-1779.1

3)    All Documents reflecting transfer of the IBC Note from and/or to Debtors.

4)    All Documents reflecting transfer of the IBC Deed of Trust from and/or to Debtors.

5)    All Communications by and between Texas REIT, LLC and/or either of Debtors.

6)    All Documents reflecting payment by Texas REIT, LLC to either of Debtors.

7)    All Documents that calculate the amount due on the IBC Note, including any debits or credits to the amount owed on the IBC Note and any interest accrued on the IBC Note.

8)    All Documents reflecting payment received by Debtors from any tenant at the real property owned by Texas REIT, LLC (a "Tenant") and where the payment was deposited or sent.

9)    All statements from all accounts into which payments relating to the IBC Note have been deposited and/or maintained.

10)   All bank account statements of Debtors.

11)   All credit card statements of Debtors.

12)   All documents evidencing and/or reflecting all amounts paid by Debtors to any person or entity in the last three years.

13)   All direct communications between Debtors and any Tenant.

14)   All financial statements of Debtor, including but not limited to, profit and loss, balance sheets, cash flow statements, general ledgers, and journal entries.

15)   All documents evidencing and/or reflecting any asset owned by Debtors within the last three years.

16)   All documents evidencing and/or reflecting any asset sold, assigned, conveyed, transferred and/or gifted by Debtors within the last three years.

17)   For all of the Companies (for the avoidance of doubt, Companies does not include the Bankruptcy LLCs):

      a.   Each membership agreement and all other company agreements or organizational documents.

      b.   All documents evidencing and/or reflecting to whom any payment from any Tenant renting real property owned by such company was made, and where the payment was deposited or sent.

      c.   All statements from all accounts into which payments to the limited liability company were made.

      d.   All bank account statements.

      e.   All credit card statements of Debtors.

      f.   All documents evidencing and/or reflecting all amounts paid by such company to Choudhri and/or any entity owned and/or controlled by Choudhri.

      g.   All financial statements of each such company, including but not limited to, profit and loss, balance sheets, cash flow statements, general ledgers, and journal entries.

      h.   All documents evidencing and/or reflecting any asset owned by such company within the last three years.

      i.   All documents evidencing and/or reflecting any asset sold, assigned, conveyed, transferred and/or gifted by such company within the last three years.

Unofficial Copy Office of Marilyn Burgess District Clerk

4921-1300-1779.1